IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:24-CT-3006-M-RJ

| | |
|---|---|
| JONATHAN DAVID ENGLAND, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>O. ONIYA, et al., )<br>)<br>Defendants. ) | **STATEMENT OF MATERIAL FACTS<br>NOT IN DISPUTE** |

NOW COME Defendants Onyia, Windley, Osborne, McCourt and Miller (hereinafter "Defendants"), by and through Undersigned Counsel, pursuant to Local Civil Rule 56.1, to provide Defendants' Statement of Material Facts Not in Dispute, as follows:

1. On or about June 3, 2022, Plaintiff Jonathan England, who was previously released from NCDAC custody in September 2020, was readmitted after being convicted of Habitual Felon (principal), Violation of Protective Order (principal), and Inmate Possession of Weapon (Principal) and sentenced to six to eight years incarceration. (see OPUS Offender Information, **Exhibit A**, attached to **Exhibit 1**, Declaration of Counsel).

2. During his current incarceration, Plaintiff has been found guilty of 21 disciplinary infractions including, but not limited to, weapon possession, assault staff with weapon, disobey orders, lock tampering, escape, and threatening to harm/injure staff. (see OPUS Infractions History, **Exhibit 1-B**).

3. At the time of the events pertaining to this action, Plaintiff was housed at Central Prison. [D.E. 1].

4. On September 20, 2022, Plaintiff was transferred to Central Prison after he attempted to escape from Harnett Correctional Institution. (*see* **Exhibit 1-C** (external movements); *see also* **Exhibit 1-B**).

**Prior Allegations - PREA**

5. On November 28, 2022, Plaintiff was involved in a use of force incident involving Defendants Onyia and Windley, which is unrelated to his current claims. During this prior event, Plaintiff disobeyed orders and refused to be restrained, therefore, OC pepper spray was used to gain compliance. *See* **Exhibit 1-F** (November 28, 2022 – Incident Report). *See also* Declaration of Okechukwu Onyia attached as **Exhibit 2** at ¶ 18 (hereinafter "Onyia Decl."); *and* Declaration of Darnell Windley, attached as **Exhibit 3** at ¶ 18 (hereinafter "Windley Decl.").

6. Plaintiff was not injured during this prior use of force incident and had no complaints of injury, as he refused decontamination and refused to be seen by medical staff. *See* **Exhibit 1-G** (Plaintiff's Medical Records) at p. 15.

7. On December 15, 2022, Plaintiff submitted a PREA complaint, which is dated November 28, 2022, to his Housing Unit Manager, who turned the letter over to the PREA Compliance Manager. *See* **Exhibit 1-H** (PREA Incident Report) at p. 5; *see also* **Exhibit 1-I** (PREA Letter).

**December 21, 2022 – P.E.R.T. Search**

8. On December 21, 2022, Plaintiff's cell was searched as a part of a unit-wide P.E.R.T. search conducted in Unit 1, which is where Plaintiff was housed. [D.E. 1 at ¶ 1]. *See also*

**Exhibit 1-D** (Incident Report); *See also* Onyia Decl. and Windley Decl. at ¶ 7. *See also* Declaration of Joel Osborne, attached as **Exhibit 4** at ¶ 7 (hereinafter "Osborne Decl.").

9. P.E.R.T. stands for Prison Emergency Response Team, and is a specialized group trained to deal with emergencies and other situations at a facility in need of extra manpower, including unit-wide or facility-wide searches. *Id.*

10. During the P.E.R.T. activation, Defendants Onyia, Windley, and Osborne assisted with the search, and due to Plaintiff continuously flushing his toilet when the P.E.R.T. team entered the pod, his cell was among the first cells to be searched. *Id.* at ¶ 10.

11. At the time of the P.E.R.T. search on December 21, 2022, neither Defendant Onyia nor Windley had been made aware of the PREA allegations against them. *See* Onyia Decl. at ¶ 17; *see also* Windley Decl. at ¶ 17.

12. Plaintiff admits that he initially refused to comply with the orders to submit to a search, but he ultimately submitted to handcuffs. [*Id.* at ¶ 3-4].

13. Plaintiff's cell is located on the upper level, at cell number BU-206. Video footage ("C116 MSB Unit 1"), attached as **Exhibit 1-E**, shows the following:

   - 07:24:26  Onyia (shaved head), Windley (hat/beard), and Osborne (tall), arrive at Plaintiff's cell.
   - 07:24:55  Onyia is seen speaking with Plaintiff through cell door.
   - 07:25:18  Osborne is seen speaking with Plaintiff through cell door.
   - 07:26:01  Another guard arrives to unlock the food passage door.
   - 07:26:33  Food passage door is opened and Onyia, Windley, and Osborne turn toward the food passage door.
   - 07:26:50  Onyia, Windley, and Osborne move away from food trap passage and signal for door to open.
   - 07:29:11  Onyia, Windley, and Osborne, again, signal for Plaintiff's cell door to be opened.
   - 07:29:15  Plaintiff's cell door opens and Onyia, Windley, and Osborne enter.
   - 07:29:24  Sgt. Slaczka (dressed in PERT shirt) walks to cell.

3

- 07:30:05   Plaintiff, dressed in white boxer shorts and socks, is seen exiting his cell with Sgt. Slaczka as they proceed downstairs to the lower level.

14. NCDAC (formerly NCDPS) Chapter F, Section .1503(a) and (b) states in part:

    a. The use of force shall be permissible only to the extent reasonably necessary for a proper correctional objective. This prohibition shall not be construed to mean that staff must suffer an assault upon their person before taking appropriate defensive action or that the use of force by another must be met with strictly equal force on the part of the staff.

    b. An officer is authorized to use whatever degree of force that reasonably appears to be necessary to defend the officer or a third party from imminent assault. Reasonable force is authorized in order to prevent an escape or to ensure compliance with a lawful order or to protect property or to return an escapee to custody. When time and circumstances permit, a sergeant or supervisor of higher rank should be present to supervise anticipated use of force or situations likely to result in use of force. An officer should attempt non-forcible methods of offender control, but only to the extent reasonably possible under the circumstances as they appear to that officer.

    *See* **Exhibit 1-S**, NCDPS Chapter F .1503 (a) and (b) at p. 2-3.

15. Plaintiff was escorted to medical by Sergeant Slaczka. *See* **Exhibit 1-D** (IR); *See also* **Exhibit 5**, Declaration of Kamil Slaczka (hereinafter "Slaczka Decl.").

16. On December 21, 2022, Plaintiff was assessed by Defendant Nurse Miller. *Id.* at p. 16.

17. Defendant Nurse Miller treated Plaintiff per policy on this date, but did not have any further interactions or evaluations with Plaintiff. *Id.* (generally). *See also* **Exhibit 8**, Declaration of Robin Miller (hereinafter "Miller Decl.")

4

18. On December 22, 2022, Plaintiff submitted Grievance No. 3100-2023-BBKU2-00025 alleging that on November 28, 2022, Onyia "pinched [him] on his right buttcheck," while removing restraints from his wrists, and Windley pepper sprayed him. *See* **Exhibit 1-K** (Grievance 00025). Though dated December 22, 2022, Plaintiff incorrectly submitted this grievance by mailing it outside of the facility. The grievance was returned to the facility and marked as received on January 7, 2023. Plaintiff's grievance is in writing and speaks for itself. *Id.*

19. On January 6, 2023, Plaintiff submitted Grievance No. 3100-2023-BBKU2-00217, regarding the December 21, 2022, PERT search. This grievance was also submitted incorrectly and mail back to the facility, being marked as received on February 7, 2023. *See* **Exhibit 1-L** (Grievance 00217). Plaintiff's grievance is in writing and speaks for itself. *Id.*

20. On January 8, 2023, Plaintiff submitted Grievance No. 3100-2023-BBKU2-00177, which is a duplicate of Grievance #00025. Plaintiff mailed this grievance incorrectly directly to the Prison Commissioner's Office. It was returned to the facility and marked as received on February 6, 2023. *See* **Exhibit 1-M** (Grievance 00177). Plaintiff's grievance is in writing and speaks for itself. *Id.*

21. On January 30, 2023, Plaintiff submitted Grievance No. 3100-2023-BBKU2-00178, regarding the December 21, 2022, PERT search, PREA allegations and retaliation claims. Plaintiff, again, submitted this grievance incorrectly. This grievance was returned to the facility and marked as received on February 6, 2023. *See* **Exhibit 1-N** (Grievance 00178). Plaintiff's grievance is in writing and speaks for itself. *Id.*

22. On January 24, 2023, the investigation into Plaintiff's PREA Complaint commenced. It was concluded on February 21, 2023, Plaintiff's initial PREA allegation from November 28, 2022, was investigated and deemed unfounded. *See* **Exhibit 1-H** (PREA Incident Report) at p.5, 9.

23. On February 23, 2023, Plaintiff claims that "Defendant McCourt, without valid reason, sprayed [him]…with pepper spray…as [he] was showing him there was something wrong with [his] food tray." He further alleges that McCourt then handed him an empty, dirty tray, refused to give him his snack bag, and called the PREA investigation a fake. [D.E. 1 at ¶ 16].

24. Incident Report #3100-23-177 shows that another staff member (Officer Amerson) was passing out food trays. Plaintiff informed Officer Amerson that he was missing an item. Officer Amerson advised him that she would get him a new tray, but Plaintiff began kicking his cell door, calling Officer Amerson a "black rat bitch." Officer Amerson called for assistance and Sergeant McCourt arrived. *See* **Exhibit 1-Q** (February 23, 2023 – Incident Report). *See also* **Exhibit 7,** a declaration provided by Sergeant Yadira Amerson.

25. As evidenced on the incident report and disciplinary file, Sergeant McCourt gave Plaintiff several directives to stop cussing at Officer Amerson and to stop kicking his cell door, but he refused. Sgt. McCourt then deployed pepper spray into Plaintiff's cell through the food passage trap. *See* **Exhibit 1-Q** (2/23/23 IR); *see also* **Exhibit 1-R** (February 23, 2023 - Disciplinary) at p. 3; *and* **Exhibit 6**, Declaration of Shon McCourt at ¶ 6 (hereinafter "McCourt Decl.").

26. On February 23, 2023, Plaintiff was seen for medical screening at his cell after use of pepper spray. It is noted that, "offender had been upset over fruit on/not on his meal tray and lost control. Had refused to come out for regular decontamination. Was washing his face in his sink on staff arrival at his door. Noted using profuse profanity towards custody staff and particularly the staff member who sprayed him." *See* **Exhibit 1-G** (Plaintiff's Medical Records) at p. 32.

27. Due to his actions on February 23, 2023, Plaintiff received disciplinary infractions and was found guilty of B24 and B25 (disobey orders and profane language). *See* **Exhibit 1-R** at p. 7.

28. During the disciplinary investigation for February 23, 2023, Plaintiff claimed that this was in retaliation to filing a PREA complaint. *Id.* at p. 3.

29. On February 28, 2023, Plaintiff submitted Grievance No. 3100-2023-BBKU2-00375, in which he makes numerous allegations about Sergeant McCourt including dates of December 24, 2022, February 13, 2023, and February 27, 2023. *See* **Exhibit 1-O**, (Grievance 00375). [D.E. 1 at ¶ 14, 15, 17]. Plaintiff's grievance is in writing and speaks for itself. *Id.*

30. An investigation was conducted into these allegations and during a review of camera footage, it was determined that Sergeant McCourt was not even in the same housing unit as Plaintiff on the dates of December 24, 2022, February 13, 2023, and February 27, 2023. *See* **Exhibit P** (March 2023 - Disciplinary Investigation). Additionally, Sergeant McCourt provided in his declaration that he has never retaliated against Plaintiff. *See* McCourt Decl. at ¶ 10.

31. On May 16, 2023, Plaintiff submitted a second PREA allegation in reference to the PERT search on December 21, 2022. *Id.* As this allegation was based on the prior PREA accusations, which were deemed unfounded/did not occur, investigation deemed the new allegation "non-PREA." *See* **Exhibit 1-J** (December 21, 2022 - PREA Incident Report).

**Plaintiff's Medical Records**

32. On November 28, 2022, (alleged PREA date) Plaintiff refused to be seen for a use of force encounter after he was pepper sprayed. It is noted that he refused to be cuffed and further refused decontamination, stating that he "washed up" in his room. Plaintiff was able to move both hands without difficulty. No swelling or open areas noted. *See* **Exhibit 1-G** (Plaintiff's Medical Records) at p. 15.

33. On December 21, 2022, Plaintiff was seen by Defendant Nurse Miller. It is noted that Plaintiff stated, "they barged into my cell and pushed me around for no reason. My knee is killing me," and "My butt cheek is on fire." He further states that he was wrist pain from the handcuffs for being "too tight for too long." *Id.* at p. 16. On exam, it is noted that Plaintiff had one mild abrasion on the left knee with full range of motion and a very minor 3-inch scratch on the outer aspect of his upper right buttock, no bruising, skin intact. His wrists showed slight redness where the cuffs made contact with the skin. When cuffs were removed, the top of the right wrist had minimal swelling. *Id.* at p. 16-18.

34. Nurse Miller noted that Plaintiff "claims unnecessary use of force during room search, but he was vague in describing what occurred. He was angry that his room was searched." Plaintiff was given two ice packs and instructed to take two Acetaminophen 325 mg tablets, twice daily for five days. *Id.* This is the only treatment provided by Defendant Nurse Miller.

8

*See* **Exhibit 8**, Declaration of Robin Miller. Nurse Miller further stated that all supplies are stored in the Unit 1 clinic where Plaintiff's assessment took place, therefore, Plaintiff received these items after the assessment was complete. *Id.* at ¶ 8.

35. In the following two weeks, Plaintiff submitted three sick call requests with complaints of pain in his knees and wrists and requested pain medication. *Id.* at 19, 22, and 23. Plaintiff's prior prescription for Ibuprofen was refilled on January 13, 2023. *Id.* at p. 25. Thereafter, Plaintiff continued to complain of pain, stating that the medication was not helping. Meloxicam (Mobic) was prescribed on April 11, 2023, which Plaintiff also stated did not help. *Id.* at p. 38, 46.

36. On April 19, 2023, x-rays were obtained of his right knee which showed early arthrosis, and an x-ray of his right wrist was negative. *Id.* at p. 43, 44. Plaintiff had an MRI of both on June 21, 2023. The MRI of his right knee showed edema within the ACL which was reflective of a sprain, tendinosis and a low-grade insertional tear of quadriceps tendon, and patellofemoral chondrosis. The MRI of his right wrist showed no acute findings but showed a ganglion cyst along the radial and volar aspect of the wrist. *Id.* at p. 52, 54.

37. On June 23, 2023, Plaintiff transferred out of Central Prison to Foothills Correctional Institution. *See* **Exhibit 1-C** (external movements).

38. Plaintiff was seen by Emerge Ortho on July 7, 2023, for a consultation on his right knee. It is noted on assessment that Plaintiff has right knee pain with quadriceps tendinosis and patellofemoral chondromalacia and an old, healed ACL sprain. Non-surgical treatment was advised, including non-steroidal anti-inflammatory medication and activity modification to allow time to fully heal. *Id.* at p. 61.

39. Plaintiff was seen on July 18, 2023, by Emerge Ortho for his right wrist, where is it noted that while he has a ganglion cyst, this is not in the area where he reports pain. It is further noted that Plaintiff could be having some synovitis and inflammation in his wrist joint and was given a steroid injection and provided a wrist splint for protection and comfort. *Id.* at p. 69.

40. On September 25, 2023, Plaintiff followed up with Emerge Ortho, where he reported that the injection helped, but the pain was now reoccurring. He was given a repeat steroid injection in his right wrist. *Id.* at p. 77.

41. On October 18, 2023, Plaintiff had an incident involving other correctional staff where he allegedly sustained injuries to both wrists and his left elbow after slipping and falling in his flooded cell. *Id.* at p. 87-93. After this, he was again followed up with Emerge Ortho on February 7, 2024, where he reported numbness and tingling to this right hand; however, there is no note that Plaintiff informed the provider that he had any reinjury. *Id.* at p. 102. An EMG study was conducted on his right wrist in May 2024 showing that Plaintiff has carpal tunnel syndrome in the right upper extremity. *Id.* at p. 118.

42. On February 14, 2024, Plaintiff was involved in another incident where he reinjured his right knee; however, Plaintiff refused his medical trip to see Emerge Ortho on May 9, 2024. *Id.* at p. 108. After this, Plaintiff makes no more complaints concerning any of the alleged injuries. *Id.*

This the 2nd day of February 2026.

        **JEFF JACKSON**
        **ATTORNEY GENERAL**

        /s/ Clarence Turpin, V
        Clarence Turpin, V
        Assistant Attorney General
        N.C. State Bar No. 53926
        N.C. Department of Justice
        Public Safety Section
        P.O. Box 629
        Raleigh, NC 27602-0629
        Telephone: (919) 716-6431
        Facsimile: (919) 716-6761
        E-mail: cturpin@ncdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this day, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system, and I further hereby certify that I mailed this document to the following non-CM/ECF participant, first-class United States Mail, postage prepaid, addressed as follows:

      Jonathan England
      OPUS 0702210
      Alexander Correctional Institution
      633 Old Landfill Rd.
      Taylorsville, NC 28681
      PRO SE

      This the 2nd day of February 2026.

      /s/ Clarence Turpin, V
      Clarence Turpin, V
      Assistant Attorney General