FILED

MAR 26 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____
_____ DEP CLK

cc

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### No. 5:24-CT-3006-M-RJ

| | |
|---|---|
| JONATHAN DAVID ENGLAND, <br> Plaintiff, <br><br> V. <br><br> OKECHUKWU M. ONYIA, et al., <br> Defendants. | PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

NOW COMES Plaintiff Jonathan England ("plaintiff") pro se, and Submits this Brief in Opposition of the Defendants' Motion for Summary Judgment.

## I. PROCEDURAL HISTORY

On February 2, 2026, defendants filed a Motion for Summary Judgment. Plaintiff Submits this brief in response, that the defendant's motion be denied. Defendants have failed to demonstrate that Summary Judgment is appropriate as a matter of law, i.e., (1) Plaintiff's claims of excessive force, retaliation, failure to protect, conditions of confinement, and deliberate indifference to a serious medical issue is cognizable under federal law; (2) defendants are liable for their failure to protect, excessive force, retaliation, unconstitutional conditions of confinement, and deliberate indifference to a serious medical issue; and (3) material facts remain in genuine dispute for resolution at trial.

On January 9, 2024, Plaintiff Jonathan David England filed a Complaint in this action. [D.E.1]. On September 27, 2024, the Court Completed it's frivolity review, as required by PLRA, in which it dismissed one of Plaintiff's Claim and retained five (5) other Claims in the individual Capacities of each of the above-referenced defendants. [D.E. 14]. On October 25, 2025, Plaintiff filed a Motion to amend his Complaint. [D.E. 18]. On December 4, 2024, the Court granted Plaintiff's Motion to amend, adding prison nurse Robin C. Miller as a Defendant. [D.E. 20].

On January 28, 2025, Defendant's Motion for extension of time to answer Plaintiff's Complaint was denied for Counsel's failure to comply with local civil rule 5.2, filing a Notice of appearance. [D.E.24].

On February 26, 2025, Defendant's filed their Answer. [D.E. 33].

On February 27, 2025, the Court issued a Scheduling Order requiring discovery to be completed by June 27, 2025, and dispositive Motions to be filed by July 28, 2025. [D.E.34].

On March 4, 2025, attorney Sunny Frothingham, attorney with N.C. Prison Legal Services, Inc. filed a Notice of appearance for the limited purpose of assisting Plaintiff with discovery. [D.E. 35].

On June 24, 2025, Plaintiff's counsel filed a Motion to extend the discovery and motions deadlines, which the Court granted, extending the discovery deadline to August 26, 2025, and the motions deadline to September 25, 2025. [D.E. 45, D.E. 47].

On August 25, 2025, Defendant's filed a motion for extension of time to extend all deadlines, which the Court granted, extending the discovery deadline through September 25, 2025, and the dispositive motions deadline through October 25, 2025. [D.E.50, D.E. 51].

cc

On September 25, 2025, Plaintiff filed a consent motion for extension of time to extend deadlines. [D.E.52] The Court granted the discovery deadline through November 10, 2025, and the dispositive Motions deadline through December 11, 2025. [D.E.53]. On October 8, 2025, after the completion of discovery, Plaintiffs' Counsel filed a withdrawl of representation. [D.E.54]. On December 11, 2025, Defendants filed their First motion for extension of time to file dispositive motions. [D.E.59]. On December 15, 2025, the Court granted the dispositive motions deadline through January 26, 2026. On January 25, 2026, Defendants filed their Second motion for extension of time to file dispositive Motions. [D.E.61]. On January 27, 2026, the court granted Defendants Second motion for extension of time to file dispositive motions. [D.E.62]. On February 23, 2026, the Court granted Plaintiff's motion for extension of time to respond to Defendants motion for Summary Judgment extending the response deadline to April 10, 2026. [D.E.63]. On February 24, 2026, Plaintiff filed his motion to Compel Defendant's to produce video obtained in discovery. [D.E.73].

On March 10, 2026, Defendants filed response in opposition regarding motion to Compel. [D.E.75].

On the next page begins the allegations in Plaintiffs' §1983 Complaint. It should be known that Plaintiff **"Verified"** his Complaint before he filed it.

Case 5:24-ct-03006-M-RJ    Document 76    Filed 03/26/26    Page 3 of 31

cc

4

(1) On Wednesday, December 21rst, 2022 at 7:20 a.m. Defendants' O. Onyina, D. Windley, and J. Osborne came to my cell door BU-206 EAST on the upper level of Unit-1 at Central Prison, and woke me up. The three Defendants wanted to do a "strip" search and "cell" search on me.

(2) Defendants Onyia and Windley are NOT supposed to be around me due to an active PREA complaint I filed on them on 12/15/2022. This was a violation of federal PREA Standards, and a violation of DAC Policy and Procedure. Also a violation of Central Prison Standard Operating Procedures.

(3) Defendant Onyia with his face upto my cell door window tells me to "strip naked, lift my dick and balls, then turn around and squat and cough." I told the Defendants I would comply with the "strip" search, but not for Onyia or Windley due to the active PREA that went into effect on 12/15/22. Defendant Windley starts taunting me saying "I'm out here, i'm here, wanna put a PREA on me, i'm right here!"

(4) Defendant Osborne then opens the small food passage trap door and tells me to "cuff up". I submit to the cuffs. Defendant Osborne handcuffs' me behind my back through the trap door and violently pulls my hands and arms out through the trap door until my feet came all the way off the floor. This action caused me pain, as I am short in stature and the trap door is very high up on the door.

(5) My cell door opened about a minute later, and both Defendants Onyia and Windley rush me, shoving me into my cell, both of them punching me over and over in my legs, knees, and sides of my stomach.

(6) As both Defendants Onyia and Windley are punching me they start pulling the right side of my boxer shorts down halfway off of me and Onyia says to me, "You Told Them I Raped You?", referring to the active PREA report I have on him and Windley.

(7) Defendant Osborne stood at the doorway and watched Onyia and Windley beat me while i'm handcuffed behind my back not violating any laws or prison rules.

cc.

5

(8) Defendant Osborne then entered my cell and punched me in the left side of my head and kneed me in the right side of my stomach, while defendants Onyia and Windley were still punching me.

(9) Sergeant Kamil Slaczka came running into my cell shouting at the three Defendants to "Stop, Quit Guys, Stop, Guys Stop!", as he began pulling them off of me.

(10) Sergeant Kamil Slaczka says to me "Come on, come with me now!" He and I exited the cell. As seen on video, I am limping and my torso is extremely red all over when I exit the cell. The three Defendants searched and trashed my cell cell and did not uncover any Contraband. For there was no Contraband in my cell.

(11) Sergeants Kamil Slaczka and Christopher Vanderhoof placed me in A-EAST holding cell for over 3 hours still handcuffed behind my back. During this time period I spoke with warden Jamel James about the incident. I asked warden Jamel James if officers Onyia and Windley were supposed to be trying to do a "Strip" search on me while I had active PREA's on both of them? Warden James replied, "No They Are Not." I then asked warden James if officers Onyia, Windley, and Osborne were supposed to be handcuffing me behind my back through the trap, then entering my cell and punching me over and over? Warden James said "No Sir they are not."

(12) Also while in A-EAST holding cell a prison nurse Robin C. Miller (RN) came to me and noted the abrasions on my knees and upper right buttock, and I told her how Defendant Osborne had punched me in the left side of my head and kneed me in the right side of my stomach. And how Onyia and Windley had punched me over and over in my legs, knees and sides of my stomach. Sergeant Christopher Vanderhoof took pictures of my face but he refused to take pictures of my legs and knees and he refused to remove the handcuffs and take pictures of the damage done to both of my wrists. Lieutenant Todd Young had to make Vanderhoof take a picture of the abrasions on my right upper buttock.

Case 5:24-cv-03006-M-RJ   Document 76   Filed 03/26/26   Page 5 of 31

(13) Once I was returned to my cell the handcuffs were finally removed from my wrists and nurse Robin C. Miller looked at my very swollen and tore up wrists, and she rubbed my wrists with her hands. She told me she would bring me something for pain and a ice pack. She left the block and never returned.

(14) On Saturday, December 24, 2022 at 11am while passing out lunch trays in block BU-East Defendant Shon McCourt handed me my lunch tray and says to me, "Hey I heard you got your ass beat the other day!" I said yeah I reckon I did. On his way out of the block Defendant McCourt said that I was a rat, snitch and that I checked off from my last prison. These statements were false and meant to try and turn other prisoners against me.

(15) On Monday, February 13, 2023 at 4:25pm Defendant Shon McCourt handed me my dinner tray and asked me if I was still running from those boys (Onyia and Windley). I said yeah I guess I am. Defendant McCourt then referred to the active on-going PREA investigation as fake and made the comment that the cameras in the block only work when they are turned on. When I brought up the assault/PREA retaliation incident of December 21, 2022 McCourt insinuated that the two security cameras inside block BU-EAST may have not been turned on at the time of the incident.

(16) On Thursday, February 23, 2023 at 11:15am Defendant Shon McCourt sprayed me in my face with a large can of pepper spray as I was showing him there was something wrong with my food tray. Then later that same day, McCourt at 3:45pm McCourt was passing out dinner trays and he handed me one of the dirty, empty trays he had on the cart trying to be funny. He refused to take the empty tray back, and he refused to give me a tray with food on it. I then asked McCourt for my medically prescribed snack bag and he refused to give me my snack bag. McCourt then referred to the active on-going PREA investigation as fake.

CC

(17) On Monday, February 27, 2023, at 12:15pm Defendant Shon McCourt was passing lunch trays out in BU-East on Unit-1. He opened the food passage trap door and handed me my lunch tray. I lifted the lid on the tray to check and make sure there was food on the tray. Defendant McCourt pulled the tray back away from me. Then McCourt shoved the tray back at me and said he "would shove my tray into my cell and into the floor." I then said that we are going to check my food tray's everytime you serve at which McCourt replied "No were not, and you just won't get a tray when I feed."

(18) According to doctor Kyle Munday at Emerge Ortho I have an injury to my ACL and TDC in my right leg, and a tear in my right quadricep muscle. I have had X-rays and MRI of leg and wrist. However, it should be know that Central Prison medical staff waited four (4) months to take X-rays, so to give me time to heal up. I was beaten on 12/21/2022 and submitted many sick call medical requests, but was delayed medical care. X-rays taken on 4/19/2023. MRI done on 6/23/2023. It should also be known that they have both an "X-ray" machine and an "MRI" machine on site at Central Prison, so why would they wait so long to run tests? To give me plenty of time to heal. Delayed medical care is denied medical care.

After the beating both of my wrists were tore up, swollen and severly bruised up. Severe bruising to right leg, and abrasions on upper right buttock. Abrasions on left knee with slight bruising. Lump on left side of head. Sides of rib cage hurt for days. Still having some leg and wrist pain. Doctor Bell tried steriod shots in wrist for pain. Doctors have had me on Meloxicam, Diclofenac, and Ibuprofen for pain. Currently taking 800mg Ibuprofen for leg and wrist pain. Also have a wrist brace I wear.

CC

## II. STATEMENT OF FACTS

PLAINTIFF'S Background.

Plaintiff is currently serving 77-105 months in state prison for a charge that started out as a Misdameanor, violating a 50B Restraing Order, and then upgraded to a Class-D felony. While in custody in Davidson County Jail, Plaintiff was charged with Possession of a weapon for a small piece of flat metal found in a cell he shared with two other prisoners. The small piece of metal was <u>not</u> sharpend and did <u>not</u> have a point on it. Nonetheless, Plaintiff was charged with a weapon charge. Plaintiff has been in custody since 9/5/2021.

Plaintiff has had many rule violations while in custody.

But this Civil Court Case is not about Plaintiff's criminal record, nor does it have anything to do with Plaintiff's infraction history while in custody. This federal court case is about the five (5) Defendant's violating Plaintiff's Constitutional rights under both the First and Eighth Amendment while under Color of state law.

DEFENDANT'S Background.

Defendant Shon McCourt has already been found liable in Federal Court for using unnecesary force on a restrained prisoner. (Please see Exhibit 1-K Federal Court Case 4th Cir. Ct. of App.) And upon information and belief, Defendant Shon McCourt was removed from working on Unit-1 because he kept assaulting prisoners, and is now working in the "Operations" section of Central Prison, where he's no longer allowed to work around the prisoner population, to prevent him from hurting anyone else.

Defendant Darnell Windley has been in both Federal Court and the Industrial Commission due to his abusive behavior. (Please see Exhibit 1-L Federal Court Case.)

cc

9

Also upon information and belief, and from speaking with the prisoner who Defendant Onyia beat, Onyia was again being investigated for use of excessive force the end of last year (2025).

Plaintiff also points out that some of his disciplinary infractions are "False" charges. Sometimes prison officials give false or misleading statements during an investigation, or exaggerated statements in order to make something seem greater than it really is. For example, Plaintiffs' disciplinary history shows the he was found guilty of assaulting staff with a weapon. This is simply not true. At no time has Plaintiff ever assaulted staff with a weapon. This is a False disciplinary rule violation. Plaintiff was also charged with an escape charge, but has never escaped from prison. (Please see Exhibit 1-A OPUS Offender Screen which verifies No Escapes) (Please also see Exhibit 1-B Offender External Movements right below Plaintiffs' photo which further verifies No Escapes.) False disciplinary rule violation.

Plaintiff further points out that there are a few things that fall under "Lock Tampering". Plaintiff had a Magazine sitting in his window sill and was charged with blocking the window. This particular rule violation shows as lock tampering. (Please see the Rules And Policies Offender Booklet at page #12 (B3) "Willfully tamper with, damage, or block any locking device, fence, door, gate or window".) (Exhibit 1-U.)

Plaintiff also points to the fact that what prison officials call a weapon does not always meet the definition of a weapon. For example, Plaintiff seen a prisoner at Central Prison, James Campbell, get charged with weapon possession for having a paperclip in his cell. Clearly a paperclip is not a weapon. So this would be an exaggerated response by prison officials.

Case 5:24-ct-03006-M-RJ   Document 76   Filed 03/26/25   Page 9 of 31

At the time of the events pertaining to this action, Plaintiff was housed at Central Prison. (Please see Exhibit 1-B Offender's External Movements.)

December 21, 2022 — P.E.R.T. Search
( Defendants Onyia, Windley, and Osborne )

It is undisputed that on December 21, 2022, Plaintiff's cell was searched. [D.E. 1 at 1]. It is disputed that Defendant's Onyia and Windley were not supposed to be trying to do a strip search on Plaintiff, due to the fact that Plaintiff had filed a PREA complaint on Onyia and Windley the week before. (Please See Bates 0748 SECTION 1: STAFF A: "The staff member has been temporarily reassigned away from the alleged victim's housing unit", signed by PREA Support Person L. Hicks and another staff member.) (See also Exhibit 1-T Plaintiff Jonathan England Declaration.) (See also Exhibit 1-F Declaration of Robert Williams; and Exhibit 1-G Declaration of Gavin Clevesy.)

Plaintiff's cell was searched as part of a unit-wide P.E.R.T. search on Unit-1, which is where Plaintiff was housed. Plaintiff also points out that the (B25) disciplinary charge the three Defendant's wrongfully charged the Plaintiff with ("Disobey Order") was dismissed by deputy warden Michelle Hartley. (Please see Bates 0987 Email exchange between deputy warden Michelle Hartley and disciplinary hearing officer (DHO) Donnie Raynor.) This email is in writing and speaks for itself. In this email Donnie Raynor tells deputy warden Michelle Hartley, "This inmate has a pending disciplinary from 12-21-22 at 0720 of a B25 Offense. I think it happened during a PERT search. The inmate snatched away from staff resulting in force being used. During the investigation PREA allegation that still pending and 1½ months later, under review. I have not seen the package but reading the investigative

summary and charging comments, I don't see where he was given any orders to disobey. He will not plead guilty. With there appearing to be issues with the investigation and considering the length of time since it occurred, I really don't think anybody will want to reinvestigate it with there being outside staff involved, which would make reinvestigation difficult if it happend yesterday. I would suggest it be dismissed. What do you think?"

Response from deputy warden Michelle Hartley was "I am ok with it being dismissed." This email exchange took place on Friday, June 9, 2023 10:25 AM.

Plaintiff would not plead guilty to the B25 prison disciplinary infraction because Plaintiff was **NOT** guilty of said charge. In fact, it was the three Defendant's Onyia, Windley, and Osborne who were guilty, as they were acting with a culpable state of mind on 12/21/2022. As seen on Video, Onyia, Windley, and Osborne enter the block, shoot up the staircase, and go past the first two cells, straight to Plaintiff's cell door. To make Plaintiff pay, to hurt the Plaintiff. Onyia and Windley were on a mission to punish and hurt the Plaintiff for the active PREA Complaint filed on 12/15/2022. Osborne was on a mission to punish and hurt the Plaintiff for the prison grievance, for the grievance Plaintiff filed on Osborne on 12/1/2022. (Please see Exhibit **1-N** Osborne grievance.) (Please also see Video File Name: SQ #3100-22-1198 - December 21, 2022; and Video File Name: SQ #3100-22-1160 - December 21, 2022, which verifies the attack.) The three Defendants used the P.E.R.T. Search as a Pretext to use unnecessary force on Plaintiff to hurt Plaintiff and make him pay.

GC

(Please also see Bates 0889 and 0891 which shows the False B25 charge, and further verifies that this charge was dismissed.)

P.E.R.T. does stand for Prison Emergency Response Team, and is a specialized group trained to deal with emergencies and other situations at a facility in need of extra manpower, including unit-wide and facility-wide searches. And because these guards are specially trained they know ALL of the policies and procedures upto and including the PREA policy and the Sexual Violence Elimination Standard Operating Procedure for Central Prison. And because Defendant's Onyia and Windley had an active PREA complaint filed on them six (6) days before the P.E.R.T. Search, and because they know PREA policy and procedure they knew they were **NOT** supposed to be in the same housing block as the Plaintiff. And because Defendants Onyia and Windley know they have an active PREA report on them they know that they are **NOT** supposed to be trying to make the Plaintiff get naked during the search. And because the three Defendants are specially trained they know that they are **NOT** supposed to be handcuffing Plaintiff behind his back, then violently pulling the restrained Plaintiff through the food passage trapdoor until Plaintiff's feet come all the way off of the floor. And because of their specialized training they surely knew that entering the Cell and punching on a helpless, defenseless, restrained, Plaintiff violates DAC Policy and Procedures. And because of all their special training they have taken they obviously were aware that their actions on 12/21/2022 would violate Plaintiff's federally protected Constitutional rights. But even with all of their special training, they still chose to violate Plaintiff's rights.

CC

Defendants Onyia, Windley, and Osborne knew exactly what they were doing before they entered Plaintiff's assigned housing block. Defendants did NOT accidently come straight to Plaintiff's cell because they thought they heard a toilet flush. Nor can they seriously argue this. Plaintiff was asleep. Plaintiff sleeps in the mornings. (Please see Bates 0184 at Progress Towards Goals " Offender England did not engage with this writer. It is noteworthy that Offender England, according to Custody Staff, spends much of his time in bed yet isn't disruptive.") Defendants are attempting to shift blame onto Plaintiff by "Claiming" they heard Plaintiff flush the toilet. And even if someone in the block did flush their toilet, there's nothing in DAC policy that says a prisoner can't flush their toilet. Someone may have used the toilet and flushed it. Human beings use the toilet all the time. Part of life.

As seen on video, when Plaintiff's top of head was clearly visible, as Plaintiff was standing cuffed behind his back at the doorway, when the cell door opened. So if Defendants were not acting with a culpable state of mind why would they not simply grab Plaintiff and put him against the wall (Flat surface) OUTSIDE of the cell where the camera can record the incident? Clearly Plaintiff was standing at his door when the door opened. So why would Defendants shove the handcuffed Plaintiff into the dimly lit cell (Blind spot) where the security cameras can not record the incident? These are questions a jury needs to decide. It is clear that the three Defendants wanted <del>to</del> <del>punish the Plaintiff for his PREA Complaint</del> and prison Grievance.

Case 5:24-ct-03006-M-RJ Document 76 Filed 05/26/26 Page 13 of 31

(Please see Exhibit **1-F** Robert Willams Decl. ; See also Exhibit **1-G** Gavin Clevesy Decl. ; See also Exhibit **1-T** at pages 2 through 5 Plaintiff Jonathan England Decl.) (Please also see both video Files SQ #3100-22-1160 - December 21, 2022 ; and SQ #3100-22-1198- December 21, 2022.) (Exhibits **1-O** and **1-P**.)

As seen on these two videos, as soon as Plaintiffs cell door opens the two Defendants Onyia and Windley both rush Plaintiff Shoving him into his cell, as Defendant Osborne Stands at the doorway. When Sergant Kamil Slaczka comes into the Cell he begins to pull the three Defendants off me while shouting at them to Stop. As seen on Video, when the Plaintiff exits his cell he is seen limping and favoring his right leg. Plaintiff's torso is also extremely red all over from where he was punched repeatedly.

The amount of force used on Plaintiff was beyond excessive, and malicously applied, as Plaintiff was fully restrained behind his back during the beating. Defendants can not seriously argue that they seen Plaintiff as being any kind of a threat to them, given Plaintiff was cuffed behind his back and locked in a one man cell with no weapons. And outnumbered, as there were approximately thirty (**30**) P.E.R.T. guards in the block at that time. Furthermore, Plaintiff points to the fact, out of the **30** P.E.R.T. guards conducting the search in Plaintiff's assigned housing block, the two that Plaintiff filed a PREA on, and the one that Plaintiff filed a prison grievance on, enter the block and make a beeline to Plaintiff's celldoor. This was no accident, it was planned.

Pure retaliation through the PREA Process, and retaliation by Osborne for filing the prison grievance on him.

cc

15

(Please See Exhibit 1-N Osborne Grievance; see also Bates 0722 which is a statement by Unit-1 manager Venecia Outlaw; see also Bates 0552 which states on "12/15/2022 PREA Complaint initiated by Lieutenant on Unit-1 on this date.") (Also see Bates 0748 L. Hicks "The staff member has been temporarily reassigned away from the victim's housing unit." This dated 12/16/2022.)

The grievance on Osborne was accepted on 12/01/2022. (Please see Exhibit 1-N Osborne grievance.) Twenty (20) days later Osborne took part in the beating on Plaintiff on 12/21/2022.

The PREA Complaint on Onyia and Windley was accepted on 12/15/2022. (Please see Bates 0722, 0552, and 0748.) Six (6) days later Onyia and Windley beat Plaintiff, while he was restrained behind his back.

It is clear that Plaintiff was engaged in "protected conduct." Like filing a lawsuit, a prison grievance procedure and filing a PREA report is protected conduct. The time line between the protected conduct and the beating is very close in time, which shows a causal connection between the two. Plaintiff initiated the protected conduct mere days **before** the adverse retalitory actions by the three Defendants. (Please See Exhibit 1-F Robert Williams Decl.; see also Exhibit 1-G Gavin Clevesy Decl.; see also Exhibit 1-T Plaintiff Jonathan England Decl.)

After the beating, the three Defendant's seem to have a hard time getting their stories straight, as there seems to be three (3) different stories of whether Plaintiff was handcuffed before or after his cell door opens. (Please see Bates 0771 Statement by Darnell Windley, "Inmate England was handcuffed before his cell door opened"; Bates 0770 Statement by Okechukwu Onyia "I don't recall offender Jonathan England being in

cc

cuffs' prior to entering his cell (BU-206)" ; Bates 0897 Statement by Joel Osborne which states that after entering the Cell he "Then placed restraints on offender England.")

There are some similarties between Plaintiff's case and another case. In **Dean v. Jones, 984 F. 3d 295 (4th Cir. 2021)** a prisoner (Dean) was shoved into a Supply closet (Blind spot) where he was beaten by guards. In the Dean Case, prison guards gave Six (6) different versions of who ended up in the Supply closet and how, differing in respects both relatively minor (how many guards accidently fell into the closet with Dean,) and more significant whether Dean fell into the closet or was "placed" there by Sergeant Jones. This is a Central Prison Case as well. Dean was shoved into a supply closet on Unit-1 and beaten while handcuffed.

In England v. Onyia, the Plaintiff was shoved into a cell and beaten while handcuffed behind his back. The force used was beyond excessive, unnecessary, and maliciously applied. After the beating, Plaintiff was escorted to A-East holding cell by Seargeant Kamil Slaczka where prison nurse Robin C. Miller performed a medical examination of Plaintiff. At no time was Plaintiff ever taken to medical on 12/21/2022. (Please see Exhibit 1-T at page #6 Plaintiff Jonathan England Decl. ; See also Bates 0757 Statement by Sergeant Kamil Slaczka which states that Plaintiff "was escorted to BC-2A East side holding cell to await for Medical so that he could be medically Screened.") This statement by Kamil Slaczka further verifies that the medical Screening took place in A-East side holding cell.

·cc

Once Plaintiff left his cell and was taken to A-East holding cell to be medically assessed, the three Defendant's trashed Plaintiff's cell. Throwing all of Plaintiff's personal property in the floor and then walking all over Plaintiff's property. Plaintiff's bed sheets, blanket, pillow, and mattress was also thrown in the floor and walked on. Plaintiff's toothbrush and comb was thrown in the toilet.

Chapter: 4   Section. 0804   Title: Search and Seizure, Standard Operating Procedures  Central Prison

" All searches will be conducted in an objective and professional manner. Every effort will be made to assure that inmates are not embarrassed or humiliated. The inmates' personal property will be handled with due consideration and Care."

Here again, because the P.E.R.T. Defendant's Onyia, Windley, and Osborne are specially trained to do unit-wide and facility-wide searches, they are aware that this type of behavior is unacceptable and not allowed.

Chapter: 4   Section. 1105   Title: Use of Force, Standard Operating Procedures Central Prison

.1105 Application   (A.) "Excessive force is prohibited..."   (D.) "An officer shall not strike or attempt to strike an offender who has abandoned his resistance or who is effectively restrained. The use of force as punishment is strictly prohibited." (E.) "All dealings with offenders should occur OUTSIDE the cell in camera view, if at all possible." "The incident will also be recorded via video camera in its entirety."

cc

.1106 Methods of Physical Force   (B.) "Pepper Spray or Foam - If feasible should be used as the first level of response."

The Specially trained Defendants knew the rules and what is expected of them. With all of their Specialized training they still chose to do the wrong thing, because the Defendant's were motivated with Sufficiently culpable mind sets, and wanted to punish and hurt the Plaintiff for his PREA complaint and prison grievance. And thats exactly what they did. And, even with all of the lying, denying, and blame Shifting by the Defendant's the truth is coming out.

Upon reviewing the "Training" records of both Defendants Okechukwu Onyia and Darnell Windley it is clear they have taken many online classes with regards to the PREA, so they can not Seriously argue they did nothing wrong, or did'nt know what was expected of them.

## Okechukwu Onyia

- PREA - Sexual Abuse and Sexual Harassment; Event Completed 1-Hour 5/15/2017
- PREA - Understanding the LGBTI Offender, Curriculum; 2-Hours Completed 9/20/2021
- PREA - DPS-OPA T10 - Information for Persons with Direct and Indirect Contact; Materials completed 9/19/2022.
- PREA - Hiring and Promotion Prohibitions (DPS); Curriculum 0.25 hours; Completed 9/19/2022
- PREA - DAC OPA T10 Information for Person(s); Policy; 0.25 hours; Completed 11/16/2022

## Darnell Windley

- PREA - Sexual Abuse and Sexual Harassment; 1-Hour Event; Completed 1/23/2018
- PREA - Sexual Abuse and Sexual Harassment; 1-Hour Online Class; Completed 12/15/2018
- PREA - DPS - OPA T10 - Information for Person(s) with Direct and Indirect Contact; Materials Completed 1/26/2019
- PREA - Sexual Abuse and Sexual Harassment; 1-Hour Online Class; Completed 9/23/2020.

CC

## Joel Osborne

- PREA - Sexual Abuse and Sexual Harassment; 1-Hour Online Class; Completed 1/28/2018
- PREA - Hiring and Promotion Prohibitions (DPS) Curriculum 0.25 Hour; Completed 4/18/2020
- PREA - Understanding the LGBTI Offender Curriculum 2-Hours; Completed 11/3/2021
- PREA - Sexual Abuse and Sexual Harassment Online Class 1-Hour; Completed 5/5/2022
- PREA - DPS - OPA T10 - Information for Person(s) with Direct and Indirect Contact; Materials Completed 8/7/2022

Central Prison Standard Operating Procedures   Chapter: 4
Title: Sexual Violence Elimination Policy    Section: .3200
.3205 Procedures    **D.** General Provisions    3. "In any incident involving a staff member as an aggressor, the staff member shall remain separated from the victim until the conclusion of the investigation."
**7.** "Retaliation against staff or offenders making an allegation of Offender Sexual abuse or harassment is prohibited."
**9.** "The Facility Investigator and all others involved in the PREA process will ensure the Confidentiality of PREA Complaints"...
**F.** Reporting Sexual Abuse and Harassment  2. "An Offender may report Sexual abuse or harassment through the Administrative Remedy Process."
**5.** "Any employee that receives a report of a sexual abuse or possible Sexual abuse, whether verbally or in writing, shall immediately notify the shift supervisor and complete a written statement for an incident report. The Shift Supervisor shall assure that the alleged victim/offender and aggressor are physically Separated..."
**7.** "Staff must report any retaliation against Offenders or Staff who reported Sexual abuse or harassment"    **9.** "Local law enforcement shall be notified if there is evidence or Suspicion that Criminal Conduct may have occurred."

CC

**I.** Investigations **1.** "If alleged sexual abuse is reported or discovered, an immediate preliminary investigation shall occur."

**3.** "A thorough investigation is necessary to ensure the potential for prosecution if it is determined that criminal activity has been committed."

(Please see Bates 0722 Statement by Unit-1 Manager Venecia Outlaw; see also Bates 0552 Clinical Encounter, PREA Complaint initiated by Lieutenant Unit 1 on 12/15/2022; see also Bates 0748 "The Staff member has been temporarily reassigned away from the victim's housing unit", statement by L. Hicks on 12/16/2022.)

That said, it is clear that Defendant's Onyia and Windley were **NOT** supposed to be around Plaintiff on 12/21/2022. And they knew this, as they both spoke about the active PREA Complaint before and during the beating. Defendant's are trying to play dumb now because the incident is now in federal Court, and they are attempting to dodge liability. But the evidence weighs against them. After the beating on 12/21/2022 Central Prison Staff quickly began to cover up the beating, and sweep it under the rug, so to speak. To protect their employees. Cover for their Co'workers. No Surprise there. And the Defendant's are now trying to do the same thing with this Court. And, I am hopeing that once the Court watches the four (4) videos obtained during discovery, and reviews all of the documents produced during the discovery period, the Court will hold the Defendants accountable for their actions. Because Central Prison administration did not. In fact, the three Defendant's were promoted to Sergeant positions not long after the beating. This is very Common at Central Prison. They are short handed, and can not afford to punish or lose Staff members.

cc.

# DEFENDANT SHON MCCOURT — Allegations

Defendant McCourt repeatedly retaliated against Plaintiff by interfering with the Plaintiff's food, making comments about the active PREA report, and even went as far as using pepper spray on Plaintiff for no reason.
(Please see Video File Name: SQ#3100-23-177- February 23, 2023 which is Exhibit 1-Q.)

This video verifies Plaintiff's allegations regarding the unnecessary use of pepper spray on Plaintiff by Defendant McCourt. As the Court will see, the padlock hanging loosely off the edge of the food passage trap door is seen jiggling/moving at about the 11:27:49 mark, because Plaintiff is kicking his cell door. However, Plaintiff stops kicking his cell before Defendant McCourt enters the block. As seen on this video, the gold color padlock hanging from Plaintiff's door is **NOT** moving the entire time McCourt is in the block. That gold padlock bounces and moves around when the cell door is kicked or hit. Defendant McCourt claims he used pepper spray on me only because I refused to stop kicking my door. Video footage proves thats a lie, because that lock that is visible on the Plaintiff's door **Never** moves not one time while McCourt is in the block. Thus I am Not kicking the cell door when McCourt sprays me with OC pepper spray. That gold padlock hanging from Plaintiff's cell door tells the truth. (Please see Exhibit 1-X which is a photograph of the gold color padlock hanging from the edge of the food passage trap door on cell BU-206.)
Defendant McCourt was only in front of Plaintiff's cell door about 30 seconds at the most, disproving Defendant McCourt's allegation that he spoke to Plaintiff to stop kicking his cell door.

·CC·

(Please See Bates 0825 and 0826 NC DAC Record of Hearing.)
This report is created by Hearing Officer Donnie R. Raynor on 4/10/2023.
Video footage of the incident disproves c/o Yadira Amerson, McCourt, and
Donnie Raynor's claims. (Video File Name: SQ#3100-23-177-February 23,
2023.) Defendant McCourt, c/o Amerson, and c/o Raynor's stories
do **NOT** match up with the Video footage. Because they are lying.
That gold Color padlock is **NOT** _moving_ on Plaintiffs' cell door when
McCourt deploys the pepper spray because I am **not** kicking the door.
The retaliation by Defendant McCourt was because I had filed a PREA
Complaint on two of his guards. The PREA retaliation by McCourt
would constitute an "adverse action" that was bad enough that it would stop
an "average person" from continuing with their grievances, lawsuit, or PREA report.
And the PREA investigation was pending throughout the entire time I was reporting
retaliation by McCourt. Defendant McCourt has a history of assaulting
people, but does it in a Cowardly way. He assaults people who are hand-
cuffed behind their back, and can't fight back, or able to protect themselves.
Or, he Sprays them through the food passage trap door for no reason, then
laughs about it later when he makes a round in the block.
And Defendant McCourt, along with his employers, have "claimed" that McCourt
was not in Plaintiff's assigned housing block/unit on the dates of December
24, 2022, February 13, 2023, and February 27, 2023, but refuse to turn
over the video footage from these dates/times to the Court, so that the Court
can review the video and Clear Defendant McCourt of any wrong doing.
If Defendant McCourt has nothing to hide he, and his employers, Should Submit
videos to the Court so that this issue may be resolved. Plaintiff filed four
Seperate & Detailed Grievances on McCourt regarding his PREA retaliation,

Case 5:24-ct-03006-M-RJ Document 16 Filed 03/26/25 Page 22 of 31

cc

and it is the grievance procedure that causes the preservation of the video. (Please see Bates 0805, 0806, 0807, and 0808, McCourt Grievances.) And because these four (4) grievances were tied into the PREA investigation, and labeled as "PREA/Retaliation", there's **no** reason why the video footage was'nt preserved. (Please see Exhibit 1-H Robert Williams Decl.; see also Exhibit 1-I Gavin Clevesy Decl.; see also Exhibit 1-T Plaintiff Jonathan England Decl. & at page 7, #36.)

(Please see Bates 0810 at middle ways down the page, "Offender stated he asked for snack bag and Sgt. McCourt refused to give him his snack bag and removed his name tag from it, then gave it to prisoner in cell BU-202", See also Bates 0811 at middle ways down the page, "Sgt. McCourt then proceeds to feed the remaining offenders, then circles back to cell BU-202 and hands what appears to be a snack bag from the food cart.") This statement by the Facility Compliance Specialist, Martha J. Arguello, further verifies Plaintiff's allegation that Defendant McCourt did in fact give his medically prescribed snack bag to the prisoner in Cell BU-202. It also verifies that this particular video exists. However, Defendant McCourt refuses to submit this video to the Court, and let the Court review it. Plaintiff also points out, that not once, but twice, Plaintiff was wrongfully charged with an (A18) disciplinary infraction during the PREA investigation. And both of the (A18) charges were ultimately **dismissed** against Plaintiff. (Please see Exhibit **1-U** DAC Rules And Policies at pages 11,12 for full definition of (A18).) The short version is, an (A18) disciplinary infraction is lying on staff. Martha J. Arguello wrongfully accused Plaintiff of lying on Defendant McCourt and charged Plaintiff with an A18 but that charge was dismissed by both the Facility and Sergeant Christie Magnum. (Please see Bates 0853, 0854, 0855 which verifies the A18 charge was dismissed on 4/10/23.)

(Please also see Bates 0856 thru 0859, which is the Investigating Officer's Report.) As hard as Martha J. Arguello tried to pin the False A18 disciplinary charge on the Plaintiff in an attempt to cover for her Co-worker, Defendant McCourt, the charge was dismissed. (Please see Exhibit 2-A "Snack Bag Tag" out of Plaintiff's Medically prescribed Snack Bag.)

## DEFENDANT NURSE ROBIN C. MILLER

On December 21, 2022, Prison nurse Robin C. Miller evaluated Plaintiff after the beating. This evaluation/medical assessment took place in A-East holding cell on the upper level of Unit-1 @ Central Prison, with Plaintiff standing in the small holding cell. Plaintiff told nurse Miller exactly what had happend to him. Nurse Miller looked at Plaintiff in disbelief. while in the holding cell Defendant Miller tried to take Plaintiffs' vital signs but was not able to get the blood pressure machine to work. Once Plaintiff was taken back to his cell, nurse Miller came to Plaintiff's cell door with a hand-held mechanical blood pressure checking device, the kind with the rubber squeeze ball on the end of the rubber hose, and she took Plaintiffs' blood pressure. This was done with Plaintiff "<u>Standing</u>" inside and Miller standing outside of the cell reaching through the food passage trap door with the blood pressure cuff. After she took Plaintiffs' blood pressure she looked at Plaintiff's swollen and tore up wrists, and she rubbed Plaintiff's wrists with her hands. Prison nurse Miller asked Plaintiff if he was allergic to any medication to which Plaintiff replied no. Nurse Miller then told Plaintiff that she would bring him an ice pack and some pain medicine.. She left the block and never returned. Prison nurse Robin C. Miller contradicts herself in this area with regards to the Medical assessment. Nurse Miller "claims" that Plaintiff was taken to the Unit-1 Clinic after the beating. And "claims" that Plaintiff was given

an ice pack and pain medication in the Unit-1 Clinic where the phyical assessment took place. Here's the problem with that allegation.

(Please See Exhibit 1-S Defendants' Resp. To Plaintiff's Second Set of Interrogatories, etc. at page 7.)

To Defendant Miller:    14. State your contentions as to when you provided ice packs and pain medication to Plaintiff, and where you were located in the prison when you provided ice packs and pain medication to Plaintiff.

RESPONSE: "The ice pack and pain medication were given to the Offender in the Unit 1 Clinic where the physical assessment took place. All of our nursing protocol supplies are stored there. He received them after the assessment was Completed..."

(Please now see Exhibit 1-R Defendants' Resp. To Plaintiff's First set of Interrogatories, etc. at page 13.)

To Defendant Miller:    3. Describe in detail the procedures you follow when you evaluate a prisoner after a use of force including the preparation or filing of reports, medical Screening, and documentation.

RESPONSE: "when an Offender is medically assessed following a use of force, the Offender is brought into the Clinic and sits on the examination table. Name, OPUS number and time of the assessment are documented. Vital Signs are taken. Overall Visual assessment begins while VS are being taken"...
(Please see Bates 0611 at Blood Pressure.)

Blood Pressure:
                                                    ↓

| Date | Time | | Position | Cuff Size | Provider |
|---|---|---|---|---|---|
| 12/21/2022 | 09:50 | 110/80 Left Arm | Standing | Adult-regular | Miller, Robin C RN |

So, if Plaintiff is <u>Sitting</u> on the examination table in the Unit-1 Clinic, being medically assessed, while his Vital Signs are being taken, why would his position be "<u>Standing</u>"?

Because the medical assessment did <u>NOT</u> take place in the Unit-1 Clinic. In fact, the medical assessment took place in A-EAST holding cell and in cell BU-206, Just like Plaintiff said.

At no time was Plaintiff taken to the Unit-1 Clinic on December 21rst, 2022. At no time was Plaintiff provided any pain Medication or an ice pack on December 21rst, 2022. Not nurse Miller, or anyone else, provided Plaintiff with meds or ice pack (Please See Bates 0757 at middle ways down the page, Statement by Kamil X. Slaczka.) "I escorted inmate England to BC-2A east side holding cell to await for medical so that he could be Medically Screened".

This Statement by Sergeant Kamil X. Slaczka further verifies that the medical assessment/screening took place in A-EAST holding cell, Just like Plaintiff said.

(Please go back to page 13 of Def.'s Resp. To Pt. <u>First</u> Set of Interr., etc., again looking at nurse Miller's response.)

**RESPONSE:** "when an offender is medically assessed following a use of force, the offender is brought into the clinic and sits on the examination table... Each area identified, by visual inspection and by Offender's report, is thoroughly assessed for bleeding, bruising, lacerations, abrasions, etc. The areas are also <u>Manually</u> palpated for tenderness, warmth, range of motion, etc... OTC medication are administered per nursing protocol. If Offender has an injury that is deemed to require a hig<del>her</del>... provider is Notified, and Offender is sent there... The 138B form that is done by nursing staff summarizes

the medical assessment/treatment at the time of the incident, as well as offender's overall behavior."    With all of that said, why did prison nurse Robin Miller not have me taken to Urgent Care over the injury in my right leg after the beating? As seen on video, I am limping when I exit the cell. Clearly I am hurt. Injury to my ACL, and tear in my quadriceps muscle in my right leg. Prison nurse Miller chose to delay Plaintiff's X-rays and MRI, so to let Plaintiff heal up **before** these medical tests were performed. Also as seen on video, I am extremely red all over my torso, from being punched repeatedly, so why did nurse Miller not manually palpate these areas for tenderness and warmth as required per her nursing protocol. I told nurse Miller my right leg was injured, and video confirms this. At no time was I vague about the beating. They have both an "X-ray" Machine and an "MRI" machine on site at Central Prison, so why would nurse Miller delay these medical tests?  With my complaints of pain and injury why would she wait until April 19, 2023, to take X-rays?  why would she wait until June 21rst, 2023, to do an MRI?  To give Plaintiff plenty of time to heal up BEFORE these tests were done. Delayed medical care is denied medical care. (Please see Exhibit **1-V** Photograph of Plaintiffs' injured wrists.) By looking at this photo it is clear that the injuries to Plaintiff's wrists is **not** "Carpal Tunnel Syndrome". Plaintiff's wrists were injured from both being pulled through the food passage trap door by the cuffs until feet came off the floor, and from being beaten while cuffed behind the back. Of course, being left cuffed in A-East side holding cell for over three hours did not help. (Please see Bates 0761 at the last two lines, Statement by Robin Miller.) Defendant Miller describes Plaintiff as irritable and angry, but cooperative, alert and oriented after the beating on 12/21/2022.

CC

Courts should grant Summary Judgment where "there is no genuine dispute as to any material fact and the movant is entitled to Judgment as a matter of law." Fed. R. Civ. P. 56 (a). In determining whether a genuine issue of material fact exists, a court must view the facts, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011). "If the record, so viewed, gives rise to genuine factual disputes... then those questions must be resolved by a Jury, not on Summary Judgment." Dean v. Jones, 984 F.3d 295, 301-02 (4th Cir. 2021). "A dispute is 'genuine' for these purposes so long as a reasonable Jury could resolve it in [the nonmovant's] favor." Id. at 302. The party moving for Summary Judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) Thereafter, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." Id. At 322 n.3. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a Jury to return a verdict for that party." Id. at 323. Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).

## IV. LEGAL ARGUMENT

For the reasons provided below, Defendants are not entitled to Summary Judgment and their Motion should be denied as there is a lot of material facts that remain in genuine dispute for resolution at trial.

cc

## A. DEFENDANTS DID RETALIATE AGAINST PLAINTIFF                    29

Plaintiff states a plausible retaliation claim against Defendant's Onyia, Windley, and Osborne for beating Plaintiff on wednesday, December 21, 2022, at 7:20am. Defendant's Onyia, and Windley retaliated against the handcuffed Plaintiff because Plaintiff had reported them through the PREA process on 12/15/2022. This very close in time between the PREA report and the beating suggests a causal connection between the protected conduct (PREA Complaint) and the adverse action (Beating). Not to mention that both Defendant's Onyia and Windley spoke about the PREA report right before the beating (Windley), and during the beating (Onyia). Defendant Osborne retaliated against the handcuffed Plaintiff because Plaintiff had reported him through the Administrative Remedy Procedure (Grievance) on 11/01/2022. This very close in time between the ARP report and the 12/21/2022 beating suggests a causal connection between the protected conduct (Grievance) and the adverse action (Beating). Plaintiff further states a plausible retaliation claim against Defendant McCourt for using pepper spray on Plaintiff for no reason, interfering with Plaintiff's food, and repeatedly making comments about Plaintiff's PREA report against Onyia and Windley. The PREA investigation was pending throughout the entire time Plaintiff was reporting PREA retaliation and his comments shows he was acting in retaliation.

## B. DEFENDANTS ONYIA, WINDLEY, AND OSBORNE DID USE EXCESSIVE FORCE

Plaintiff states a plausible Excessive Force claim against Defendants Onyia, Windley, and Osborne for beating Plaintiff on wednesday, December 21, 2022, while Plaintiff was cuffed behind his back and compliant. The force used was excessive, maliciously applied, and unnecessary. Onyia, Windley, and Osborne used the PERT search as a "pretext" to use force on Plaintiff.

## C. DEFENDANTS DID FAIL TO PROTECT PLAINTIFF

On wednesday, December 21, 2022 Defendant Osborne failed to Protect Plaintiff

CC

from Onyia and Windley. Onyia failed to protect Plaintiff from Windley and Osborne, and Windley failed to protect Plaintiff from Onyia and Osborne.

## D. DEFENDANT MILLER WAS DELIBERATELY INDIFFERENT TO THE MEDICAL NEEDS OF PLAINTIFF

Plaintiff states a plausible deliberate indifference to serious medical needs claim against Defendant Miller for her failure to provide Plaintiff with both pain medication, and an ice pack after the 12/21/2022 beating. At no time was Plaintiff taken to the Clinic on 12/21/2022, and at no time did prison nurse Miller provide Plaintiff with any pain medication or an ice pack. At no time was Plaintiff vague in describing to Miller what had happend to him. Even Defendant Miller herself admits in her report that Plaintiff alleged excessive force during the search. Defendant Miller looked at Plaintiff in disbelief as Plaintiff told her what had happend to him. Defendant Miller should have had X-rays and MRI taken the day of the beating, instead of delaying treatment.

## E. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

when motivated by malicious intent, prison officials are not immune from liabilities for deprivations of prisoners' Constitutional rights. And all but the plainly incompetent government officer who willfully violates the law are entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment Should be denied.

This the 21 day of March 2026.

_Jon England_  Plaintiff pro se
Jonathan David England #0702210
Alexander CI

Rd. Taylorsville, N.C. 28681.

CC

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I have caused to be served to the below named true and correct copies of the foregoing document via the DAC prison mail service and the U.S. Postal Service, postage prepaid, addressed as follows:

Mr. Peter A. Moore, Jr., Clerk of Court
United States District Court
E.D.N.C.     W. D.
  P.O. Box 25670
   Raleigh, N.C.
    27611.

This the 21 day of March 2026.

Jon England
Jonathan England #0702210
Plaintiff pro se
Alexander CI
633 Old Landfill Rd.
Taylorsville, N.C.
28681.