EC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3006-M-RJ

| | |
|---|---|
| JONATHAN DAVID ENGLAND, Plaintiff, | PLAINTIFF'S OPPOSING STATEMENT OF MATERIAL FACTS |
| v. | |
| OKECHUKWU M. ONYIA, et. al., Defendants. | |

NOW COMES Plaintiff Jonathan England ("Plaintiff"), pro se, pursuant to Local Civil Rule 56.1 to provide an Opposing Statment of Material Facts.

1. Undisputed.

2. Disputed. I have never assaulted staff with a weapon. This was a false disciplinary infraction. And at no time have I escaped from prison. (Please see Exhibit 1-B at Bates 0913 Offender Information Screen right below Plaintiffs' photograph which verifies **NO** Escapes.)

3. Undisputed.

GC



4. Disputed. I did not attempt to or escape from Harnett C.I. on September 20, 2022. False disciplinary infraction. (Please See Exhibit **1-A** Offender Information Screen at Most Recent Incarceration Summary, Escapes?: **N**; See also Exhibit **1-B** DAC Offender External Movements right below Plaintiff's photograph which further varifies **No** Escapes.)

## Prior Allegations – PREA

5. Disputed. On November 28, 2022, I entered Cell BU-206 East and was waiting on Defendant's Onyia and Windley to remove the handcuff's from my wrists through the food passage trap door when Defendant Onyia inappropriately touched me through my clothing and Defendant Windley made an inappropriate comment. This was witnessed by other people. (Please See Exhibit **1-C** ("Clevesey Decl.") and Exhibit **1-D** ("Uharu' Seken Kamara Ayani Obatieiyo-Allah Decl.") Although this particular incident is not part of this lawsuit, it is how the PREA report came about. This is also the first time Onyia and Windley used unnecessary force on Plaintiff. (Please See Exhibit **1-M** Video File Name: SQ#3100-22-782-November 28, 2022.)

6. Disputed. Plaintiff was wrongfully sprayed in the face/neck with OC pepper spray. Plaintiff's wrists were injured on 11/28/2022 by both Defendants Onyia and Windley repeatedly twisting, yanking, and pulling on the handcuffs while Plaintiff was restrained and Secure inside cell. Plaintiff did complain of injuries to wrists. And Sergeant Nateshia Pyatt took photo's of Plaintiff's wrists with digital camera. Plaintiff did refuse to goto decontamination-room with Defendant's Onyia and Windley for fear out of being further assaulted by Defendants as there are no Camera's in the decon-room. It is a well known fact that

CC



prison guards beat restrained prisoners in the decon-room on the upper level of Unit-1. Further, Plaintiff did not refuse to be seen by medical staff. (Please see Bates 0729 and 0730 Statement by Plaintiff; see also Bates 0722 Statement by Unit-1 manager, Venecia Outlaw on 12/15/22 at 7:22pm stating "The Offender was medically Screened.") Furthermore Nurse Bolanel G. Odo seen Plaintiff at his cell door, and she denied the Plaintiff a self-declared medical emergency request. Bolanel G. Odo told plaintiff to submitt sick call medical for Plaintiff's wrists, which Plaintiff did.

7. Disputed. Plaintiff submitted a PREA Complaint first to Mr. Todd Ishee then director of prisons on 11/28/2022 by mail. Then on 12/8/2022 Plaintiff again submitted a PREA Complaint to assistant Unit-1 Manager Sha-keeba Hudson on 12/8/2022 but she refused to take it saying "I dont have anything to do with that." (Please see Bates 0744 Statement by Plaintiff dated 1/16/2023 at 11:40pm.) Then on 12/15/2022 Sha-keeba Hudson took Plaintiff's PREA report and told Plaintiff "Ill take care of this Mr. England."

December 21, 2022 – P.E.R.T. Search

8. Undisputed.

9. Undisputed.

10. Disputed. Plaintiff was in bed asleep at 7:20am on December 21, 2022. There was no flushing of toilet. Defendants entered block BG-East on December 21, 2022, at 7:20am and came straight to Plaintiff's cell door

CC



on a mission to hurt Plaintiff. Onyia and Windley beat the Plaintiff for the active PREA report that went into effect six days prior to the PERT team search on 12/15/2022. And Defendant Osborne beat Plaintiff for the grievance Plaintiff had filed on Osborne on 10/11/22 that went into effect on 12/1/2022. It should be known that both the PREA report and the Grievance Procedure is considered "Protected" Conduct. (Please See Exhibit **1-N** Osborne grievance no. 3100-2022-BBKU2-20034 which is in writing and speaks for itself. (See Video File Name: SQ#3100-22-1160-Dec. 21, 2022, Exhibit **1-O**; and Video File Name: SQ#3100-22-1198-Dec. 21, 2022, Exhibit **1-P**.)

**11.** Disputed. Both Defendants' Onyia and Windley knew about the active PREA Plaintiff had made against them on 12/15/2022, as they spoke about the PREA Complaint when they arrived at Plaintiff's door on 12/21/22, and while they were beating on the handcuffed Plaintiff once they entered the cell. (Please See Bates 0722 Statement by Venecia Outlaw on 12/15/22; see also Bates 0723 statement by nurse Angela Moore verifying PREA Screening and PREA Complaint Confirmed; See also Bates 0748 Section 1: Staff A: "**The Staff members has been temporarily reassigned away from the alleged victim's housing unit.**" Signed by L. Hicks on 12/16/22.) Defendant's Onyia and Windley used the PERT search as a "Pretext" to use force on Me. Defendant's did **not** accidentally come to my Cell door on 12/21/2022 because they thought they heard my toilet flush. Defendants came to my door on a mission to hurt me and make me pay for the PREA Complaint and Prison Grievance I had put on them just days before the 12/21/22 beating. And that's exactly what they did.

(Please See both videos SQ#3100-22-1160-Dec. 21, 2022, Exhibit 1-O and SQ#3100-22-1198-Dec. 21, 2022, Exhibit 1-P.)

CC



12. Disputed. Plaintiff only refused to strip naked for Defendants Onyia and Windley because of the active PREA Complaint that had went into effect the week before on 12/15/2022. Even warden Jamel James said Onyia and Windley were not supposed to be trying to make Plaintiff get naked while there was an active PREA Complaint on them. Further, it is a big violation of both DAC Policy and Procedure and Central Prison Standard Operating Procedures (S.O.P.) for prison guards to strip search a prisoner who has made PREA allegations against them. Furthermore, both Defendant's Onyia and Windley actually admit that they were not allowed to perform a strip search on a prisoner who has made PREA allegations against them. And both Defendants Onyia and Windley admit that there was an active PREA report pending against them when they came straight to Plaintiff's cell door on 12/21/2022. If a guard uses force on a restraind prisoner in order to cause the prisoner pain or to punish the prisoner, then the force is excessive. (Please see Defendants' Responses to Plaintiff's Second set, Interrogatory 23 Page 3-5.) (See also Defendants' Responses to Plaintiff's Second Set, Request for Admission 22, 23, and 24.) (See also Bates 0975 - 0986 Central Prison S.O.P. Chapter 4, Section. 3200 Sexual Violence Elimination Policy).

Plaintiff would also like to point out that despite the three Defendants' claims that Plaintiff was combative and aggressive during the P.E.R.T. Search Plaintiff was **not** found guilty of any disciplinary infraction from that day. Defefendant's accused Plaintiff of disobeying an order, but that charge was dismissed. (Please see Bates 0987 Email exchange between Hearing Officer Donnie Raynor and Deputy Warden Michelle Hartley; see also Bates 0889, 0891, 0894 and 0895.)

cc



Exhibit 1-O

13. Disputed. Video File Name: SQ #3100-22-1160-December 21, 2022, shows three guards entering block BU-East (C116 MSB UNIT 1 BC-2B EAST) coming up the staircase by the first two cells straight to Plaintiff's door. Two of the guards had active PREA's on them and were **NOT** suppose to be around the Plaintiff (Onyia & Windley). The third guard, Osborne, had just had a grievance put on him by Plaintiff. Out of the thirty (30) guards in the block the two that's not suppose to be around the Plaintiff and the one that Plaintiff had recently filed a grievance on shoot straight to Plaintiff's door. This was no accident, it was planned. Defendant Windley is seen in front of Plaintiff's door smileing and waving, while Defendant's Onyia and Osborne open the food passage trap door; the Defendant Osborne reaches into the Plaintiff's cell through the trap door and handcuffing Plaintiff behind Plaintiff's back. Once cuffed, Defendant Osborne pulls Plaintiff's hands and arms out through the food passage trap door until Plaintiff's feet came off the floor. Plaintiff is only five foot, six inches tall at 140 pounds, and the food passage trap door is abnormally high up on the cell door. This action took Plaintiff's feet off the floor and caused Plaintiff severe pain. Attorney Sunny Frothingham was able to goto Central Prison and get the exact measurements on cell BU-206 from the floor to the trap, so that this can be recreated in the courtroom later at trial. At around the 7:29:15 mark on this video, Plaintiff's cell door opens, and the top of the Plaintiff's head is briefly visible. Instead of grabing Plaintiff and pulling Plaintiff out of the cell and putting him against the wall where the two (2) Security Camera's can record the incident, The three Defendants rush Plaintiff as soon as the cell door opens, shoving the Plaintiff into the cell swinging wildly on Plaintiff. At around the 7:30:05 mark, Plaintiff is seen being escorted out of his cell

CC



limping and torso extremely red all over. (Please see Bates 0903; See also Exhibit 1-G ("Clevesy Decl.") (Please see also Video File Name: SQ #3100-22-1198 - December 21, 2022.) * It should be known by the Court that there are two (2) seperate Videos of the 12/21/22 PREA Retaliation beating. Video File Name: SQ #3100-22-1160 Dec. 21, 2022 (Exhibits 1-O), and Video File Name: SQ #3100-22-1198 Dec. 21, 2022 (Exhibit 1-P). One of these Videos has multiple Camera views.

It should also be know that Plaintiff suspects that there appears to be some video footage missing from Video File Name: SQ #3100-22-1198 - Dec. 21, 2022 (Exhibit 1-P), as this particular video starts at time stamp 7:23:55 then appears to stop around the 7:24:59 mark at which time other video starts and other Video ends at the 7:35:18 mark and then video starts again and ends at around the 7:40:02 Mark. It appears there may be around six minutes and 17 seconds missing.

14. Undisputed.

15. Disputed. Plaintiff was escorted to BC-2A EAST side holding cell by Sergeant Kamil Slaczka to await for medical so that he could be medically screened. The medical assesement/screening took place in A-EAST holding Cell, just like Plaintiff alleges in his §1983 Complaint. (Please See Bates 0757 Statement by Sergeant Kamil Slaczka, which further verifies this.) At **no** time was Plaintiff taken to Medical on 12/21/2022.

cc



16. Undisputed.

17. Disputed. Nurse Robin Miller failed to provide Plaintiff with pain medication or an ice pack, like she told Plaintiff she was going to do. Robin Miller looked at Plaintiff in disbelieve when Plaintiff told her about the beating. when nurse Robin Miller left my block on 12/21/22. she told Plaintiff she would bring Plaintiff Pain Medication and an ice pack for legs and wrists. She left the block and never returned. Plaintiff did not see nurse Robin Miller again until Friday, May 19, 2023 at 9:30pm, when she entered block BU-EAST to speak with another prisoner. Plaintiff tried to speak with Robin Miller to ask why she failed to bring Plaintiff the pain meds and ice pack, but she put her head down and rushed by Plaintiff's cell and said "I don't have time to talk to anyone else, I really don't".

Plaintiff next seen nurse Robin C. Miller on wednesday, May 24, 2023 at 9:14pm when she came to see if Plaintiff wanted a flu shot or Vaccine of some sort. Plaintiff then asked Robin Miller why she had not brought him the pain meds and ice pack like she had promised on 12/21/2022? Robin C. Miller replied "I can't remember that far back". I asked her what I needed to do to be seen by a doctor for my leg and wrists and Miller responded "Put in a Sick Call". Plaintiff replied, I've been putting in Sick Call requests for five (5) months now and still haven't seen the doctor! Again, nurse Miller told Plaintiff to "put in a sick call". Plaintiff then told Miller he was going to have her subpoena to court and that she needed to start remembering. Nurse Miller replied "You have a good memory, and we will cross that bridge when we get to it."

cc



18. Disputed. Under the Old grievance policy Chapter: G Section. 0309 "**Confidential Grievances**" states "If an inmate believes that a grievance is a confidential nature, his grievance may be submitted directly with the Director of Prisons and mailed as legal mail. The inmate must clearly explain the nature of the Complaint and the reasons for not following the regular grievance procedure. If the Director determines that the grievance is not of a Confidential nature, the grievance shall be returned to the inmate with instructions to submit it in accordance with the procedure set forth in Section. 0310. If the Director determines that the grievance is in fact Confidential in nature, the Director shall order any necessary investigation. If the investigation indicates action should be taken, the Director shall cause the appropriate action to be taken to resolve the grievance." Plaintiff's "PREA" grievances submitted to Director of Prisons, mr. Todd Ishee, as "Confidential" grievances due to grievances Confidential in nature. Plaintiff submitted many grievances while housed at Central Prison. Some grievances would be processed, and some would disappear. Under the new grievance policy there is no Section for Confidential Grievances. (Please see Bates 0731.)

19. Disputed. Plaintiff's clearly marked "PREA"/Retaliation grievance was properly filed with Director of Prisons, Mr. Todd Ishee as a Confidential grievance, in line with the old grievance policy. **Chapter: G. Section. 0309 Administrative Remedy Procedures, Issue Date: 08/01/13, Supersedes 09/24/07.** (Please see Bates 0800).

CC·



20. Disputed. Plaintiff's grievance No. 3100-2023-BBKU2-00177 properly filed with Director of Prisons, mr. Todd Ishee, and is clearly marked as a "Confidential" grievance, and is addressed to mr. Todd Ishee. Plaintiff's grievance Confidential in nature. (Please see Bates 0789.)

21. Disputed. Plaintiff's grievance no. 3100-2023-BBKU2-00178 properly filed with "PREA"/"Retaliation" marked at top. (Please see Bates 0793.)

22. Disputed. Plaintiff's PREA Complaint commenced on December 15, 2022, at approximately 1630 hours by Unit-1 manager Venecia Outlaw. (Please See Bates 0722, statement by Outlaw; See also Bates 0723 Stat. Registered Nurse Angela Moore at 12/15/22 @ 2059 hours.; See also Bates 0746 NCDAC PREA Incident Detail Report 12/15/22; See also Bates 0748 PREA Support Services Status Notification Section 1: Staff A: "The staff members have been temporarily reassigned away from the alleged victim's housing unit." Signed by L. Hicks and another Staff member.) It should also be known that Plaintiff did not refuse to sign this particular form as it says. (Please also see Bates 0749 "PREA Retaliation Monitoring And Period Status Checks" which shows that PREA Retaliation Monitoring began on 12/16/22, signed by L. Hicks.) (Laine Hicks).

23. Undisputed.

24. Disputed. Plaintiff informed c/o Amerson there was no dessert on his lunch tray and Amerson blew him off. c/o Amerson called Plaintiff a "Cracker ass white boy", and Plaintiff referred to c/o Amerson as a "Stupid

cc



black bitch." Not a black rat bitch. C/o Yadira Amerson failed to bring a new tray to Plaintiff, as she was required to do.

25. Disputed. (Please see Exhibit 1-Q Video File Name: SQ #3100-23-177-February 23, 2023, Camera View Name C116 MSB Unit 1 BC-2B East Side/Shower at about the 11:27:49 time stamp which shows the gold color padlock is visible jiggling/moving as Plaintiff kicks his cell door about 10 times and stops.) Defendant Shon McCourt and C/o Yadira Amerson "claim" that Plaintiff was kicking his cell door when Defendant McCourt deploys the pepper spray onto Plaintiff with a large can of pepper spray. However, the gold padlock hanging off the end of Plaintiff's food passage "trap" door is **NOT** jiggling or moving at all the whole time Defendant McCourt is in the block, because Plaintiff is **NOT** kicking his cell door. You see, each cell is outfitted with a food passage trap door, and each trap door has a gold color padlock dangling or hanging loosely from each trap. When a prisoner hits or kicks their cell door the gold color padlock bounces around wildly. And that gold color padlock does **NOT** move at all the whole time Defendant Shon McCourt is in the block. That gold color padlock tells everything the Court needs to know. The "padlock" tells the truth. Plaintiff was able to view this video during discovery. This video speaks for itself.

26. Disputed. Plaintiff did not loose control over fruit not being on his tray. Plaintiff only became upset when C/o Yadira Amerson refused to correct the insufficient lunch tray, and called Plaintiff a "Cracker ass white boy."

cc



27. Undisputed.* Except that Plaintiff was not kicking the cell door when Defendant McCourt deployed the OC pepper spray.

28. Undisputed.

29. Undisputed.

30. Disputed. Defendant's "claim" that Defendant Shon McCourt was not in the same housing unit as Plaintiff on dates of December 24, 2022, February 13, 2023, and February 27, 2023, but Defendant's have refused to submit the video footage from these dates as evidence. Defendant's flat out refuse to let Plaintiff or the Court view this relevant video footage and have repeatedly told Plaintiff and attorney Sunny Frothingham that the video's of the above dates were not preserved. These video's should have been preserved due to the four (4) grievances Plaintiff filed on Defendant Shon McCourt. If Defendant McCourt has nothing to hide submit the video footage from the dates and times listed in Plaintiffs' grievances. (Please see Bates 0805, 0806, 0807, 0808; See also Exhibit **1-H** ("Robert Williams Decl.") and Exhibit **1-I** ("Gavin Clevesy Decl."); See also Bates 0869 Statment by Gavin Clevesy.)

CC



31. Disputed. The PREA Complaint went into effect on 12/15/2022 and ran until 6/15/2023. There was only One (1) PREA. (Please See Bates 0749, 0750.) However, with ALL of the PREA grievances Plaintiff submitted over the Course of several months, it is odd that Central Prison Staff member, L. Hicks, would claim "(NO) signs and /or Complaints of retaliation", once the investigation concluded on 6/15/23. (Please See Bates 0468 Psychologist Morgan E. Gunter states, "No Concerns regarding the Offender's wellbeing have been reported by Staff." This statement by Morgan Gunter was created on 01/04/2023 at 10:30 am, fourteen (14) days after the beating.)

32. Disputed. At no time did Plaintiff refuse to be seen by medical for a use of force encounter on November 28, 2022 after being pepper sprayed. (Please See Bates 0553 Registered Nurse Bolanle G. Odo states I was medically screened.) Plaintiff only refused to goto decon-room with Defendant's Onyia and Windley for fear of being further assaulted. No Camera's in decon-room. Further, Plaintiff tried to get Bolanle Odo to let him do a Self-declared emergency but was denied. Both wrist were tore up due to both Defendant's Onyia and Windley repeatedly twisting, yanking, and pulling on the cuffs while on Plaintiff's wrists. (See also Bates 0705 which verifies.) (Please See Exhibit 1-M Video File Name: SQ #3100-22-782-November 28, 2022, which verifies this.)

33. Disputed. Plaintiff told nurse Robin Miller exactly what happend, and at no time was vague about the beating. Defendant Miller looked at the Plaintiff in disbelief when Plaintiff told her what had happend.

Case 5:24-ct-03006-M-RJ Document 76-1 Filed 03/26/26 Page 13 of 23

CC



Furthermore, nurse Robin C. Miller herself says that Plaintiff alleged excessive force during the search. (Please See Bates 0752.) Plaintiffs' wrists were tore up because when your beaten while cuffed behind your back the cuffs' tend to cut into your wrists during the beating. After the beating, Plaintiff was escorted to A-EAST SIDE holding cell and left cuffed for just over three (3) hours. (Please See Bates Exhibit 1-V 0695 which shows the redness on Plaintiffs' wrists.) *Photo taken in A-EAST holding cell on 12/21/2022 a couple of hours after the beating. Defendant's Onyia and Windley punched me many many times, mostly on my right leg and torso. Defendant Osborne only hit me twice, left side of head above left ear, and then kneed me in the stomach.

34. Disputed. Again, Plaintiff was **NOT** vague in describing what had occurred when he spoke to nurse Robin C. Miller after the beating. Plaintiff told Robin Miller exactly what had happend. Robin Miller looked at Plaintiff in disbelief. Plaintiff was not angry that his room was searched, as Plaintiff's room is searched all of the time with **NO** problems. Cell searches are a normal part of everyday prison life. Being Beaten By Three (3) Prison Guards while your cuffed behind your back is not. Plaintiff was angry because he had been beaten by two guards who were not Supposed to be around him, while they were pulling his boxershorts down. This being the Second (2nd) Sexual assault on Plaintiff by the **SAME** two guards, Onyia and Windley. Plaintiff was angry that Defendant Osborne stood at the doorway and watched this happen without trying to intervene. And then stepped in the Cell and punched Plaintiff in left side of head and kneed him in the stomach. At no time did nurse Robin C. Miller provide Plaintiff with an ice pack.

GC



At no time did nurse Robin C. Miller provide Plaintiff with any pain medication. And at no time was Plaintiff taken to the Unit-1 clinic on 12/21/2022.

35. Disputed. Plaintiff was delayed medical care for weeks and even months after the beating. Plaintiff submitted Many Sick Call requests after the beating but wasn't seen for months. Defendant's, and their co-workers, refused to take plaintiff to Medical, so to let Plaintiff heal up real good, before being seen by the medical doctor. This is the oldest trick in the book. Plaintiff was beaten on 12/21/22. However, it was wednesday, June 7th, 2023 at 8:10am before c/o Bramer took me to see Doctor Lindwood A. Robinson. And it was June 23rd, 2023 at about 5pm when I had the MRI. This extremely long delay in Medical care is both deliberate and intentional, so to give Plaintiff plenty of time to heal up BEFORE all of the tests are done. Delayed medical care is denied medical care. And the federal courts are not blind to this.

36. Undisputed. Here again, X-rays taken on April 19, 2023. Four (4) months after the 12/21/2022 beating. They have both an "X-ray" Machine and an "MRI" machine at Central Prison, so why would they wait so long to run tests?

37. Undisputed.

cc



38. Disputed. Plaintiff was told by Doctor Kyle Munday, PA on 07/07/2023 at 2:33pm @ EmergeOrtho that Plaintiff had "mild edema within the ACL without fiber disruption which reflects mild Sprain with tendinosis and low-grade intersititial tear of the quadriceps tendon with patellofemoral Chondromalacia." (Please see Bates 0511 and 0512 which verifies this.) (Please also see Bates 0318 and 0319 by Doctor Lindwood A. Robinson which states exactly the same; see also Bates 0320 and 0321.) Dr. Kyle Munday also goes on to describe Plaintiff as a "Pleasant, Cooperative Patient," at Bates 0511.

39. Undisputed. Plaintiff has also been on, and is currently taking 800 mg Ibuprofen daily for leg and wrist pain, has leg and wrist brace. (Please see Bates 0274 by Christopher M. Gentry on 11/20/2023 at 13:23.)

40. Undisputed. Plaintiff did not have any wrist pain until the 12/21/22 beating, and was not being treated for wrist pain until the 12/21/22 beating.

41. Disputed. Plaintiff was cuffed behind back and walked through standing water and both he and the escorting staff member slipped and fell to the floor. This is how the "False" assault on staff with a weapon (A-3) charge came about. Plaintiff was restrained, did not assault staff, and there was no weapons involved. Incident also not part of this lawsuit, thus is irrelevant.

42. Disputed. (Please see Bates 0229.) Plaintiff did not refuse and tried to get doctor Keven Chung to re-schedule, but request was denied.

.cc



Plaintiff Further Assert's

43. Plaintiff has never had any Aftercare Following Surgery InJury And Trauma as claimed on Bates 0169. At no time has Plaintiff ever had any Surgery while incarcerated.

44. Plaintiff's PREA investigation Started on 12/15/2022 and ran until 6/15/2023 (see Bates 0749 and 0750) at which time Central Prison Staff "Claimed" the PREA was unfounded, transferred Plaintiff to the other end of North Carolina to Foothills CI on 6/23/2023, and charged Plaintiff with two (A-18) disciplinary infractions and then dismissed both A-18 disciplinary charges. (Please see Bates 0857, 0858, 0859, 0853, 0854, 0855, 0856, which states "Offense Dissmissed Per Request of Facility" at (0855). (A18) is lying on staff (Please see page #11 of Rules And Policies Offender Booklet (Green Booklet).) (Exhibit 1-U).

45. The B25 disciplinary infraction Plaintiff was wrongfully charged with on 12/21/2022 was also dismissed. This "False" B25 charge was Defendant's Onyia, Windley, and Osborne's attempt to cover their butt's, and shift blame onto Plaintiff and then deny themselves any blame. (Please see Bates 0889; B25 Charge dismissed by Hearing Officer (DHO) Donnie R. Raynor at Bates 0890.) (Please also see Bates 0891 which states "Offense Dismissed Per Email To Deputy Warden Hartley. Inmate's Allegations Are Under Review" by DHO Donnie R. Raynor.) (Please also see Bates 0987 which is the email exchange between the Disciplinary Hearing Officer Donnie R. Raynor and Deputy Warden Michelle Hartley on June 9, 2023.) Email Speaks for itself. (B25) is disobey order (Please see page #13 of Rules And Policies Offender Booklet. Note: Disobey order recently upgraded from (C3) to (B25) Charges.

CC.



46. Plaintiff would also like to point out that regardless of the amount of eviedence a prisoner has against a prison guard(s) the allegations will almost **always** be deemed "Unfounded". This because when you have prison guards investigating prison guards on the behalf of a prisoner they will never find the guards at fault. In other words, The guards always take care of the guards. And, will go as far as disregarding evidence in order to reach preferred conclusions to their so called investigations. Their Mock investigations. Prison internal investigations are **not** reliable and are Self-Serving.

47. Plaintiff further points out to the Court that the three (3) Defendant's, Onyia, Windley, and Osborne seem to have trouble with getting their stories straight, as there seems to be three (3) different stories of wether Plaintiff was handcuffed before or after his cell door opens on 12/21/2022. (Please see Bates 0771 Statement by Darnell Windley "Inmate England was Handcuffed Before His Cell Door Opened"; Bates 0770 Statement by Okechukwu Onyia "I Don't Recall Offender Jonathan England Being In Cuff's Prior To Entering His Cell (BU-206)"; Bates 0897 Statement by Joel Osborne which states that after entering the cell he "Then Placed Restraints On Offender England".)

48. Plaintiff further points out to the Court to the fact that Defendant prison nurse Robin C. Miller "claims" that Plaintiff was taken to the Unit-1 medical clinic on 12/22/2022 after the beating, etc. And that the Plaintiff was provided an ice pack and pain medication at the Clinic on Unit-1.

EC



Exhibit 1-S

Defendants' Responses To Plaintiff's Second Set Of Interrogatories Page #7 To Defendant Miller 14. State your contentions as to when you provided ice packs and pain medication to Plaintiff, and where you were located in the prison when you provided ice packs and pain medication to Plaintiff.

**RESPONSE:** "The ice pack and pain medication were given to the Offender in the Unit 1 Clinic where the physical assessment took place. All of our nursing protocol supplies are stored there. He received them after the assessment ~~took place~~ was completed..."

Exhibit 1-R

Defendant's Responses To Plaintiff's First Set Of Interrogatories Page #13 To Defendant Miller: 3. Describe in detail the procedures you follow when you evaluate a prisoner after a use of force including the preparation or filing of reports, medical screening, and documentation.

**RESPONSE:** "When an Offender is medically assessed following a use of force, the offender is brought into the clinic and sits on the examination table. Name, OPUS number and time of the assessment are documented. Vital signs are taken. Overall visual assessment begins while VS are being taken"...

So, if Plaintiff is sitting on the examination table while his vital signs are being taken then **WHY** is his Position **Standing**? (Please see Bates 0611 for verification.)

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 12/21/2022 | 09:50 | 110/80 | Left Arm | Standing | Adult-regular | Miller, Robin C. R |

Because the medical assessment did **NOT** take place in the Unit-1 clinic as Prison nurse Robin C. Miller Claims. It took place in holding cell and cell BU-29

Case 5:24-ct-03006-M-RJ Document 76-1 Filed 03/26/26 Page 19 of 23

CC



49. Bates 0073 and 0274 Speak for themselves regarding pain meds and leg/wrist braces.

50. Bates 0541 prison nurse Claims "Has Sick Call Scheduled, No sign indury on use of force noted." Statement by Sare Adams RN. However, prison nurse Robin C. Miller RN herself describes Plaintiff's indJuries at Bates 0549, 0550, 0551, 0751, 0752, 0753, 0754, 0755. (Please See also Bates 0520 UNC School of Med. Dept. of Radiology report for: CP Health Care Complex.) (see also Bates 0519.)

51. Bates 0687 and 0686 at the top of the NCDPS Sick Call Request form contradict one another. Bates 0686 at top right of form clearly says "PRD 7/14/29" which means Prodective Release Date of 7/14/29. Bates 0687 at top right of form clearly says "**PRD - Life**" which means Prodective Release Date a Life Sentence.
Plaintiff does **NOT** have a life Sentence. (Please See Exhibit 1-A Offender Information Screen at Most Recent Incarceration Summary; Total Incarceration Term: 8 Years 9 Months.) Plaintiff's current sentence is **77-105** months. Not a life sentence.

52. Please see Bates **0733-0742** (letter to PREA office); See also Bates 0732 (letter from DPS PREA office) signed by Plaintiff and by Captain Brenda D. Corbett-Moore on 1/10/2023. Please also see Exhibit 1-E letter from assistant Unit-1 Manager Sha-Keeba Hudson which speaks for itself.

..CC



53. Plaintiff also points to Bates 0762 and 0763 Statement by the Plaintiff made to lieutenant Richard Perry on 12/28/2022 at 1:30pm, which is Seven (7) days after the beating. This Statement is in writing and speaks for itself.

54. Bates 0764 Statement by Lindsey Stover, Administrative Specialist II (SLW05) which is in writing and Speaks for itself. Plaintiff points out the fact that if Defendant's Onyia and Windley were'nt pulling down Plaintiff's boxer Shorts (underwear) while punching him, then how did Plaintiff get injuries to his right buttocks?

55. Bates 0829 – Disciplinary Hearing Officer (DHO) Donnie R. Raynor, Sergeant Slaczka, and Sergeant River claim "**Offender Jonathan England opus#0702210 refused to make a written Statement for his disciplinary hearing.**" This is disproven on Bates 0825 at middle of the page where DHO Donnie R. Raynor himself says "**Inmate England made a written Statement.** He did not request written Statements, live witnesses or staff assistance. He requested camera footage as evidence."... Donnie R. Raynor even continues to give Plaintiff's detailed Statement.

56. Bates 0800 – Plaintiff's properly filed PREA grievance which is very detailed, in writing, and Speaks for itself. However, Bates 0799 is a Statement by Kimberly Dawn Grande, the Executive Director of the "Inmate Grievance Resolution Board." Attorney Grande claims that "The Offender Denied Any Injury To Medical Staff." Really? Bates 0761 – Statement by Prison nurse Robin C. Miller "At 0950 on 12-21

cc



-2022, offender on Unit 1 was medically screened following a P.E.R.T. Search earlier that morning. **Offender Complained of several injuries,** requested/received vital Signs being taken... **alleged excessive use of force during the Search..."** Defendant Robin E. Miller goes on to describe Plaintiffs' injuries. This shows that attorney Kimberly Dawn Grande may have provided a false statement on Plaintiff's Step 3 grievance response. At **no** time did Plaintiff deny any injury to medical staff on 12/21/2022.

Plaintiff could keep going and keep pointing out all of the lies and the inconsistencies by prison officials, but will spare the Court. However, we are going to need a trial. Plaintiff closes with this. Plaintiff has to pay for his mistakes in life and so should these Defendants pay for theirs.

Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied.

57. Bates 0215 - Department of Adult Corrections mental health professional, Alen D. Hewitt M.A., describes Plaintiff as Cooperative, open + honest, without evidence of denial, evasiveness & dissimulation, Stable, genuine, rational, and Coherent.

.CC

# CERTIFICATE OF SERVICE

I hereby Certify that, on this day, I have Caused to be Served to the below named true and correct copies of the foregoing document via the DAC prison mail Service and the U.S. Postal Service, postage prepaid, addressed as follows:

Mr. Peter A. Moore, Jr., Clerk of Court
United States District Court
E.D.N.C. W.D.
P.O. Box 25670
Raleigh,
N.C. 27611.

This the 21 day of March 2026.

Jon England
Jonathan England #0702210
Plaintiff pro se
Alexander CI
633 Old Landfill Rd.
Taylorsville,
N.C. 28681.