# Exhibit Cover Page

EXHIBIT NUMBER  1-⅄

# EXHIBIT 1-A

## JONATHAN D ENGLAND
**Offender ID:** 0702210
**Inmate Status:** ACTIVE
**Probation/Parole/Post Release Status:** INACTIVE
**Gender:** MALE
**Race:** WHITE
**Ethnic Group:** NOT HISPANIC/LATINO
**Birth Date:** 02/21/1984
**Age:** 41
**Current Location:** MARION CI

## Name(s) Of Record

| Last Name | Suffix | First Name | Middle Name | Name Type |
|---|---|---|---|---|
| ENGLAND | | JONATHAN | D | COMMITTED |
| ENGLAND | | JONATHAN | DAVID | COMMITTED |

## Most Recent Incarceration Summary

| | |
|---|---|
| **Incarceration Status:** ACTIVE | **Total Incarceration Term:** 8 YEARS 9 MONTHS |
| **Conviction Date:** 06/01/2022 | **Projected Release Date:** 12/14/2028 |
| **Primary Crime:** HABITUAL FELON (PRINCIPAL) | **Primary Crime Type:** FELON |
| **Special Characteristics:** REGULAR | **Current Status:** FELON |
| **Admission Date:** 06/03/2022 | **Admission Facility:** FOOTHILLS CI |
| **Control Status:** REGULAR POPULATION | **Next Control Review:** UNKNOWN |
| **Custody Classification:** CLOSE | **Next Custody Review:** UNKNOWN |
| **Number Of Infractions:** 21 | **Last Infraction Date:** 10/15/2024 |
| **Current Location:** MARION CI | **Previous Location:** NOT PUBLIC INFORMATION |
| **Last Movement :** NOT PUBLIC INFORMATION | **Last Movement Date:** 05/01/2024 |
| | **Escapes?:** N |

## Offender Sentence History

**Most Recent Period of Incarceration Record**

Case 5:24-ct-03006-M-RJ   Document 76-1   Filed 03/26/26   Page 2 of 295
Case 5:24-ct-03006-M-RJ   Document 66-1   Filed 02/02/26   Page 1 of 11

# Exhibit Cover Page

EXHIBIT NUMBER 1-B



# Offender Information Screen

| Show Side Menu Buttons | Back To Search Results | Print | Refresh Screen |
|---|---|---|---|

**DOC Number:** 0702210   **Status:** ACTIVE INMATE   **DNA Test:** DOJ RECEIVED

**Name:** ENGLAND, JONATHAN D.   **Birth Date:** 02/21/1984

**SID:** NC1092298A   **FBI#:** 411059FC8   **SSN:** XXX-XX-9972

**Security Alert**



Active Inmate Specific Information   **# Infractions:** 21  (10/15/2024)   **Crime Type:** FELON

**Custody:** CLOSE **Nxt Rev:**   **Cur. Loc:** 3730 - MARION CI   **Bed:** FU3W-004

**Convicted:** 06/01/2022   **Admitted:** 06/03/2022   **SPL:** L1

**Sp. Char:** REGULAR   **Control:** REGULAR POPULATION **Nxt Rev:**

**Projected Release Date:** 05/22/2029   **Case Manager:** BASS, TIMOTHY C.

**Activity:** RDU PHASE 2   **Crime:** HABITUAL FELON (PRINCIPAL)

**Last Movement:** RETURN FRM COMM HOSP **On:** 05/01/2024

**Reason:** TREATMENT   **PC Analyst:** BREWINGTON, TREVA L.

**SRG:** No

**Victim:** No   **Detain/PC:** No

**Alerts:** Yes   **Escapes:** No

**Writs:** No   **Warrants:** No

**SBM:** No   **Conflicts:** No

| Offender's External Movements | | | | |
|---|---|---|---|---|
| **Date** | **Time** | **Reporting Location** | **Movement Type** | **Origin/Destination** | **Reason** |
| 05/01/2024 | 09:32:00 | MARION CI | RETURN FRM COMM HOSP | GRACE HOSPITAL, INC | TREATMENT |
| 05/01/2024 | 07:42:00 | MARION CI | OUT - COMM. HOSP. | GRACE HOSPITAL, INC | TREATMENT |
| 02/14/2024 | 09:32:00 | MARION CI | RECEIVED FROM | FOOTHILLS CI | RDU PROGRAM |
| 02/14/2024 | 08:51:00 | FOOTHILLS CI | TRANSFERRED TO | MARION CI | RDU PROGRAM |
| 06/23/2023 | 10:14:00 | FOOTHILLS CI | RECEIVED FROM | CENTRAL PRISON | REL FROM CONTROL |
| 06/23/2023 | 06:48:00 | CENTRAL PRISON | TRANSFERRED TO | FOOTHILLS CI | REL FROM CONTROL |
| 09/21/2022 | 04:26:00 | CENTRAL PRISON | RECEIVED FROM | HARNETT CI | AFTER HOURS TRANSFER |
| 09/20/2022 | 23:44:00 | HARNETT CI | TRANSFERRED TO | CENTRAL PRISON | AFTER HOURS TRANSFER |
| 06/29/2022 | 09:56:00 | HARNETT CI | RECEIVED FROM | FOOTHILLS CI | PROCESSING |
| 06/29/2022 | 05:30:00 | FOOTHILLS CI | TRANSFERRED TO | HARNETT CI | PROCESSING |
| 06/03/2022 | 11:55:00 | FOOTHILLS CI | RE-ADMISSION | DAVIDSON COUNTY | JUDGMT/COMMIT(FELON) |
| 09/04/2020 | 12:35:00 | COLUMBUS CI | EXPIRATION | DAVIDSON COUNTY | RELEASE |
| 08/26/2020 | 13:42:00 | COLUMBUS CI | RECEIVED FROM | PIEDMONT CI | PROCESSING |
| 08/26/2020 | 05:49:00 | PIEDMONT CI | TRANSFERRED TO | COLUMBUS CI | PROCESSING |
| 06/26/2020 | 08:25:00 | PIEDMONT CI | RETURNED FROM PAROLE | DAVIDSON COUNTY | ABSCOND/WARRANT |
| 11/08/2019 | 10:59:00 | ALEXANDER C.I. | PAROLE/RETURN TO PAR | DAVIDSON COUNTY | POST RELEASE |
| 11/06/2019 | 16:28:00 | ALEXANDER C.I. | RECEIVED FROM | PASQUOTANK CI | PAROLE |
| 11/06/2019 | 04:04:00 | PASQUOTANK CI | TRANSFERRED TO | ALEXANDER C.I. | PAROLE |
| 06/05/2019 | 19:38:00 | PASQUOTANK CI | RECEIVED FROM | CASWELL CC | FACL. CLASS. COMM. |
| 06/05/2019 | 09:54:00 | CASWELL CC | TRANSFERRED TO | PASQUOTANK CI | FACL. CLASS. COMM. |
| 04/01/2019 | 08:00:00 | CASWELL CC | RECEIVED FROM | PIEDMONT CI | PROCESSING |
| 04/01/2019 | 06:01:00 | PIEDMONT CI | TRANSFERRED TO | CASWELL CC | PROCESSING |
| 03/01/2019 | 11:10:00 | PIEDMONT CI | RE-ADMISSION | DAVIDSON COUNTY | JUDGMT/COMMIT(FELON) |
| 02/15/2019 | 23:59:00 | DAVIDSON CC | TERMINATED PAROLE | UNKNOWN | CRV/3M/PART REL |
| 01/08/2019 | 07:02:00 | DAVIDSON CC | PAROLE/RETURN TO PAR | DAVIDSON COUNTY | CRV/3M/PART REL |
| 01/03/2019 | 14:29:00 | DAVIDSON CC | RECEIVED FROM | TYRRELL WORK FARM | RELEASE |
| 01/03/2019 | 04:56:00 | TYRRELL WORK FARM | TRANSFERRED TO | DAVIDSON CC | RELEASE |
| 11/29/2018 | 17:53:00 | TYRRELL WORK FARM | RECEIVED FROM | CALDWELL CC | RETURN FRM REST.HOUS |

# Exhibit Cover Page

EXHIBIT NUMBER 1-c

Bu 207        Gavin Clevesty #1668818

Monday Nov 28, 2022 in between
9am-10am I observed Uo??? windly
& C/o onynia bring von England
back from DHO, when they got to
his cell I could tell that they wore
being very rough with Inmate England
it took them about 60-90 seconds to
get the cuffs off of him & at
the time C/o onynia was stocking
his hands in the cell trap door
trying to get the handcures off. Thats
When C/o windly sprayed Inmate England
when C/o windy was walking out
of the block he was telling Inmate
England to shut the Fuchup, such my Dick
and calling him a bitch multiple time
as was C/o onynia saying I win,
I win you lose I win.

11/30/22

# Exhibit Cover Page

EXHIBIT NUMBER __1-D__

On Monday November 28, 2022 I 'Uharu'seku Kamura Ajani Obataiye-Allah witnessed when prisoner Von England came back in the pod from P.H.O with C.O Oniya and Wingley. It took a very long term for them to take Mr Englands (hand) Cuffs off between 1 minute to 1½ minutes.

They were upset because C.O Oniya could not get the Cuffs off as he got frustrated. Prisoner Von England was being subjected to pain so he said "Please take these Cuffs off now". He was then sprayed with mace because I heard it and smelled it because I have very bad asthma.

While they were walking out the Unit the C.O's were talking they saying "Fuck you. you A Bitch. Suck my dick" Then C.O' Oniya repeated "el win you lose. el win you lose"

This is a ongoing problem here a CP Officers disrespecty prisoners and measuring Mace

Pursuant to 28 USC 1746 I declare under penalty of perjury that the foregoing is true and correct and to the best of my knowledge.

H-30-07

Uharu'seku Kamura Ajani Obataiye-Allah
#1646847

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 8 of 295

# Exhibit Cover Page

EXHIBIT NUMBER 1-ʈ



"Copy"

# NC Department of Adult Correction
**PROTECTION • INNOVATION • REHABILITATION**

Roy Cooper, Governor

Todd Ishee, Secretary

Jonathan England #0702210
Central Prison: BU-206

Date: 1/18/23

Mr. England,

Thank you for your letter regarding sexual misconduct and retaliation. The Commissioner has asked me to reply directly to you.

Staff should remain professional at all times. After communication with the PREA Compliance manager, your allegation regarding sexual misconduct that took place on November 28, 2022 involving Correctional Officer O. Oniya and D. Windley is currently under investigation. At the conclusion of the investigation you should be notified.

Regarding the alleged retaliation that took place on December 21, 2022, you informed CHUM II Mrs. Sha-Keeba Hudson of the alleged retaliation on December 21, 2022 and the incident was forwarded up the chain of command. An investigation is ongoing. During the investigation if staff failed to adhere to NCDPS policy, the appropriate actions will be taken.

Thank you again for you interest in this matter. If you have any additional questions or concerns, please do not hesitate to contact me.

Sincerely,

*Sha-Keeba Hudson*

Sha-Keeba Hudson, CHUM II

**MAILING ADDRESS:**
4285 Mail Service Center
Raleigh, NC 27699-4285

**OFFICE LOCATION:**
1300 Western Blvd.
Raleigh, NC 27606



*An Equal Opportunity Employer*

**FROM THE OFFICE OF:**
Jamel James
Warden V
Telephone: (919) 733-0800
Fax: (919) 733-6915

http://dac.nc.gov

# Exhibit Cover Page

**EXHIBIT NUMBER** 1-F

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 11 of 295

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### No. 5:24-CT-3006-M-RJ

| | |
|---|---|
| JONATHAN DAVID ENGLAND, Plaintiff, | Declaration of Robert Williams # 1615104 |
| V. | |
| OKECHUKWU M. ONYIA, et al., Defendants. | |

I, Robert Williams hereby declares:

On Wednesday, December 21st 2022 at around 7:20am I witnessed officers Osborne, Onyia, and windley at Jon England door. I am in cell BU 208 east block Jon England was in BU 206 east block Jon currently got PREA's on officers Onyia and windley, So they're not Suppose to be around him I was outside my cell cuffed and I watched Osborne attempt to cuff Jon behind his back through the trap door and then pulled Jons arms out the trap as far as they could then held him once Jon cell door opened both Onyia and windley shoved Jon into his cell. Sgt Slazcka came in the block and ran up into Jons cell I could hear the assault they was doing to Jon as he responded to every hit with a Ouch! serveal seconds later Jon came out with no shoes boxers halfway of him and limping when he walked by me to be escorted out the block I, Robert Williams, declare and verify under penalty of perjury that I have read the foregoing and that it is true and correct to the best of my knowledge and belief.

Robert Williams #1615104

# Exhibit Cover Page

EXHIBIT NUMBER 1-G

CC

On Wednesday, December 21st, 2022 at about 7:20 am the PERT team came into my block Bu-EAST on unit 7 here at Central Prison, C/o Oniya and C/o Windley along with C/o Osborne went to my buddies cell Bu-206 EAST which is right beside my cell (Bu-205 EAST). C/os Oniya and Windley are NOT supposed to be around my buddy Jonathan England because of an active PREA investigation going on involving another incident from November 28th 2022. I was standing at my cell door and I could hear C/o Oniya tell my buddy Jon to strip naked and squat + cough. Apparently my buddy Jon refused to strip. C/o Windley was all hyped up talking junk to my buddy Jon saying that he was there outside Jons door and "Oh you want to put a PREA on me I'm right HERE." They opened his "trap" and put Jon in handcuffs then a few seconds later they popped his door and ran in on him. I couldn't see what was going on but I could hear one of the C/os holler out "You told them I raped you". Standing at my cell I watched C/os Oniya and Windley run up in Jons cell Bu-206 EAST. I could hear the C/os punching on my buddy. They were Apparently hitting him repeatedly and I heard Jon holler out for them to stop. I then watched Sgt. Slazcha come into my block and he started down stairs to the lower floor of the block but he looked up and seen what was going on in my buddies cell and he turned away from the lower staircase and he ran up the upper level stair case. Sgt Slazcha ran up in to Jons cell and I could hear him yelling at all three of the C/os. Sgt Slazcha was yelling at Oniya and Windley and

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 14 of 295

Osborne for them to stop, "Guys stop, Quit Guys". The officers who were at my door to search me and my cell stopped what they were doing and leaned over to see what was going on in my buddy Jons cell. Then Sgt. Slezcha + Jon came out of Bu-206 EAST and walked by my cell to go down the stairs and I noticed Jons Side was really red and he was also limping. Sgt. Slezcha took Jon out of the block and they didn't bring him back for about 3 hours or so. Sgt Vanderhoof brought Jon back to his cell and he was still handcuffed behind his back and he had a chain wrapped around his waist. Theres two cameras in the block that saw every thing. One camera is right in front of mine and Jons cell. This all happend on the upper level of unit 1 in block Bu-EAST at Central Prison in Raleigh NC. I am willing to come to court and testify as to what I seen and heard that day. They really did Jon wrong. And 1/0 aniyabird 1/0 windley were NOT supposed to be around Jon. All kinds of policys and laws were violated.

Gavin Clevesy     #1068818   Bu 207 EAST    "unit 1"

# Exhibit Cover Page

EXHIBIT NUMBER 1-H

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
### NO. 5:24-CT-3006-M-RJ

| | |
|---|---|
| JONATHAN DAVID ENGLAND, <br> Plaintiff, <br><br><br> v. <br><br><br> OKECHUKWU M. ONYIA, et al., <br> Defendants. | Declaration of Robert Williams #1615104 |

I, Robert Williams, hereby declare:

I am two cells down from inmate Jon England and on 24th of December 2022, when lunch tray's were being served I heard Sgt McCourt that day tell Jon "Hey I heard you got your ass beat the other day" making fun of Jon he then called Jon a rat, check off, and a snitch. Sgt McCourt then called Jon PREA fake. On Monday 13th of February 2023 at about 4:30pm Sgt. McCourt again called Jon's PREA fake while he was serving dinner trays and asked Jon "if he was still running from CO Onyia and windley." And I was standing at my cell door on Thursday 23rd of february 2023 at lunch time when Sgt. McCourt pepper sprayed Jon with a big can of pepper spray while Jon was explaining something about his tray, then Sgt McCourt refused to give Jon a tray with food on it and the snack bag that come with it. I Robert Williams, declare and verify under penalty of perjury, that I have read the foregoing and it is true and correct to the best of my knowledge and belief. R #1615104

# Exhibit Cover Page

EXHIBIT NUMBER 1-I

CC

Statement by Witness    3/30/2023

I, Gavin Clavey have heard and witnessed Seargeant McCort come in my block Bu-East numerous times over the coorse of about 2½ monthes and call Jonathan England a "Rat" a "Snitch" and a "Chech off". This has been going on since the end of December of 2022. Seargeant McCort has said these things out loud to where everybody in the block could hear it. This has happend over and over. I have heard Seargeant McCort talk about how Jons PREA is fake and laugh at Jon a few days after Jon got beatup by C/o's Oniyo, windley and Osborne, I'm in the next cell right beside Jon and have been for the past 6 monthes now.

Seargeant McCort even gave Jon an empty tray one day at dinner time and gave his evening snack bag to another prisoner. Jon tried to get Sgt. McCort to stop playing games and give him a dinner tray that actually had food on it and Sgt. McCort refused.

Jon also tried to get Sgt. McCort to give him his snack bag and Sgt. McCort refused, instead gave it to cell Bu-202 East.

Several times since December of ~~last~~ last year (2022) Sgt. McCort has called Jonathan England a Chech off a Rat and a Snitch over and over. I will come to Court and testify to what I have heard and seen.

"Unit 1"

Gavin Clavey     Bu-287 East

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 19 of 295

# Exhibit Cover Page

EXHIBIT NUMBER __1-J__

CC

| | |
|---|---|
| JONATHAN DAVID ENGLAND, Plaintiff, | Declaration of: |
| v. | Lawrence Shrewsbury OPUS # 1411999 |
| OKECHUKWU M. ONYIA, et al., Defendants. | |

I, Lawrence Roger Shrewsbury hereby declare:

On Thursday July 29, 2025, I over heard inmate John England and Sergeant Stazika speaking about the incident happened on Unit 1 a couple of years ago, were inmate England was beaten by guards. It was about 3pm in the afternoon. Jon said to Sgt. Stazika, "Man you know what happened to me on December 21, 2022 inside my cell Sgt. Stazika told Jon "Yeah I Know" Jon told Sgt Stazika he needs him to come to court and tell the truth about what he seen when he entered Jons cell in 2022. Sgt Stazika told Jon "he was not going to court, that he was sticking to his story, not going against his staff because if he told the truth he would loose his job" Sgt Stazika then told Jon "To stay out of the way" Sgt. Stazika then left block.

I Lawrence Roger Shrewsbury declare and verify under the penalty of perjury that I have read the foregoing and that it is true and correct to the best of my knowledge and belief on Thursday July 29, 2025 at Central Prison in Raliegh NC

*Lawrence Roger Shrewsbury* 7-29-2025

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 22 of 295

# Exhibit Cover Page

EXHIBIT NUMBER  1-k

## 788 Fed. Appx. 935 (Mem)

This case was not selected for publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of Judicial decisions issued on or after Jan. 1, 2007. see also **U.S. Ct. of Appeals, Fourth Circuit.**

Jeremy R. Love, Plaintiff — Appellant,

V.

Correctional Officer Beasley; Correctional Officer McCourt; Sergeant Young, Defendants — Appellees, and Correctional Officer Comilloni, Defendant.

No. 19-6680

Submitted: November 26, 2019

Decided: January 6, 2020

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh, Terrence W. Boyle, Chief District Judge. (5:16-ct-03209-BO)

Attorneys and Law Firms

Jeremy R. Love, Appellant Pro Se.

Before Agee, Harris, and Richardson, Circuit Judges.

Opinion

Affirmed in part; Vacated and remanded in part by Unpublished per Curiam opinion. Unpublished Opinions are not binding precedent in this Circuit.

Per Curiam:

Case 5:24-ct-03006-M-RJ   Document 76-9   Filed 03/29/26   Page 24 of 293

*936 Jeremy R. Love, a North Carolina inmate, appeals the district Court's order granting Summary Judgment to Defendants on Love's 42 U.S.C. §1983 (2012) action alleging the use of excessive force in violation of the Eighth Amendment. On appeal, Love argues that Summary Judgment was improperly granted because genuine issues of material fact exist.

In his declaration in support of his Complaint, Love admitted that he initiated a fistfight with Correctional Officer Beasley but alleged that after he was taken to the ground and restrained, Beasley twice punched him in the face. Thereafter, Sergeant Young, Officer McCourt, and another officer took Love to the Sergeants' office. While Love was seated in a chair, Young elbowed Love in the face in retaliation for Love hitting Beasley. Love fell to the floor and was repeatedly kicked and punched in the head, face and body. Beasley denied punching Love after Love was restrained, and Young's and McCourt's affidavits deny, that Love was elbowed, kicked or punched while in the Sergeants' office.

We review de novo a district court's award of Summary Judgment, viewing the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. A summary Judgment award is appropriate only when the record shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Core Comm'cns, Inc. v. Verizon Md. LLC, 744 F.3d 310, 320 (4th Cir. 2014) (citation and internal quotation marks omitted). "A dispute is genuine if a reasonable Jury could return a verdict for the nonmoving party." Matherly v. Andrews, 859 F.3d 264, 279 (4th Cir. 2017) (internal quotation marks omitted.) "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are Jury functions, not those of a Judge ... ruling on a Motion for Summary Judgment." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). "[W]here affidavits present conflicting versions of the facts which require credibility determinations, Summary Judgment cannot lie." Raynor v. Pugh, 817 F.3d 123, 130 (4th Cir. 2016) (internal quotation marks omitted.) However, "[W]hen opposing parties tell two different stories, one of which is blantly contradicted by the record, so that no reasonable Jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for Summary Judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S.ct. 1769, 167 L.Ed. 2d 686 (2007) (Concluding that video of incident Contradicted plaintiff's version of events so "that no reasonable Jury could have believed him".)

State and federal inmates are protected under the Eight Amendment from the "Unnecessary and wanton infliction of pain" by prison staff. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed. 2d 251 (1986). "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component. The objective component asks whether the force applied was "Sufficiently serious" [*937] to establish a cause of action."

Brooks v. Johnson, 924 F. 3d 104, 112 (4th Cir. 2019). "[T]he Subjective Component... asks whether the officers acted with a sufficiently culpable state of mind." Id. (internal quotation marks omitted). Only the Subjective requirement is at issue in this case as the district court found that Love established the Objective prong. "[T]he 'core judicial inquiry' regarding the Subjective Component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and Sadistically to cause harm'." Iko v. Shreve, 535 F. 3d 225, 239 (4th Cir. 2008) (quoting Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). "Among unnecessary and wanton inflictions of pain are those that are totally without penological Justification." King v. Rubenstein, 825 F.3d 206, 219 (4th Cir. 2016) (internal quotation marks omitted).

We conclude that the district court did not err in finding that Beasley did not punch Love as alleged because video of the incident confirms Beasley's denial. Thus, the district court was not required to view the facts in the light most favorable to Love because his "version of events is so utterly discredited by the record that no reasonable jury could have believed him." Scott, 550 U.S. at 380, 127 S. Ct. 1769. Accordingly, we affirm the portion of the district court's order granting Summary Judgment to Beasley.

Love's declaration is in direct conflict with Young's and **McCourt's** affidavits as to whether Young elbowed Love and Love was kicked and punched while lying on the floor. Taking the evidence in the light most favorable to Love, Core Comm'ns, Inc., 744 F.3d at 320, the alleged use of force in the Sergeant's office could be considered unnecessary and wanton infliction of pain. The district Court, however, questioned Love's version of events, noting that the alleged acts occurred in less than a minute, that Love's injuries could have resulted from his fistfight with Beasley, and that Love failed to mention the alleged attack while at the nurse's station. The Court found that Young's and **McCourt's** acts were taken to restore order. We conclude that in granting Summary Judgment to **McCourt** and Young, the district Court improvidently made credibility determinations regarding genuine disputes of material fact based on conflicting sworn statements. Raynor, 817 F.3d at 130. Accordingly, we vacate the grant of Summary Judgment to Young and **McCourt** and remand for further proceedings.

Thus, we affirm in part and vacate and remand in part. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid decisional process.

# AFFIRMED IN PART; VACATED AND REMANDED IN PART

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 28 of 295

All Citations  788 Fed. Appx. 935 (Mem)

Footnotes                                                                     6

**1**   In his declaration, Love stated that he suffered no injuries from his fistfight with Beasley and that he did not mention the alleged attack in the Sergeant's office to the nurse because Young was present and he feared another attack.

**2**   We find no merit to Love's contentions on appeal that an allegedly missing video reveals a coverup and that the alleged attacks violated prison policy. See White by White v. Chambliss, 112 F.3d 731, 738 (4th Cir. 1997) (violations of state law or policy not cognizable under §1983.)

End of Document

© 2025 Thomson Reuters. No claim to Original U.S. Government works.

# Exhibit Cover Page

EXHIBIT NUMBER __1-2__

2025 WL 2793793

United States District Court
Eastern District of North Carolina
Western Division


Angela Carter, Plaintiff,


v.


North Carolina Department of Adult Correction, et al.,
No. 5:24-CT-03258-M  9/29/2025  Defendants.


Chief Judge Richard E. Myers, II


Prisoner was stabbed to death by another prisoner while housed at Central Prison on September 9, 2022, while under the care of **Darnell L. Windley** and **Yadira Amerson**.
Both **Darnell L. Windley** and c/o **Yadira Amerson** are also being sued in their Official Capacities for negligence in a Seperate action before the Industrial Commission pursuant to the Tort Claims Act of North Carolina N.C. Gen. Stat. § 143-291, et. al.

# Exhibit Cover Page

Video File Name: SQ #3100-22-782-Nov. 28, 2022

EXHIBIT NUMBER 1-M

# Exhibit Cover Page

EXHIBIT NUMBER 1-N

North Carolina Department of Public Safety

*Prisons*

Roy Cooper, Governor
Eddie M. Buffaloe, Jr., Secretary

Timothy D. Moose, Chief Deputy Secretary
Todd E. Ishee, Director

## DC-410 Screening Response

**Regarding Grievance No.: 3100-2022-BBKU2-20034**
**Received: 12/01/2022**

**Inmate:     ENGLAND, JONATHAN D - 0702210**
**Location: 3100-CENTRAL PRISON - BBKU2006**

The grievance you have submitted has been accepted and will begin a review process. A response will be sent within 15 calendar days of 12/01/2022.

| 12/01/2022 | LYNCH, NATOSHA D |
|---|---|
| Date | *Staff Electronic Signature* |

cc: CTS

**MAILING ADDRESS:**
4285 MAIL SERVICE CENTER
RALEIGH, NC 27699-4285



**OFFICE LOCATION:**
1300 WESTERN BLVD
RALEIGH, NC 27606-4285
Telephone: (919)733-0800
Fax: (919)715-3226

WWW.NCDPS.GOV
*An Equal Opportunity Employer/Affirmative Action Employer*

I wrote Natosha Lynch on 12-18-22 regarding the 15 day Time Limit on "STEP-1" Response.

I Signed off on This Grievance on 12-19-22

This Is The 2nd Grievance I've put In on This Matter. #6
The First Grievance Disappeard. I'm not asking for any special
treatment. I Just Want my Grievance Processed as per policy.
Please Help Assist Me Getting This Grievance Processed. Thank You

DC-410 (Rev. 07/15)

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

Inmate Name: Jonathan England     Inmate #: 0702210

Location: Central Prison/Level Unit-1, BU-206 (upper) Date: 10-11-22.

Grievance Statement: I recently transferd to Central Prison on 9-20-22. I was
placed on lower Unit-1 which is used for "Administrative + Disciplinary
Segregation. On 10-3-22 a officer Osborne told me to pack
up that I was moving to the Upper Level of Unit-1 which is for
Prisoners on "Restrictive Housing for Control Purpose". I was then
moved to upper Level of Unit-1 to BU-#206. I am being housed
in a block used strictly for prisoners who are on "Control Statuses".
But i have'nt been to DHO, FCC or DCA. I have'nt even
been found guilty of a Infraction or charge.

What remedy would resolve your grievance?: 
For "CP" staff to follow Add DPS Policy's + Procedures when
doing an investigation. CP staff is doing what they want to do even if it
violates Prison Policys. thus not setting a very good example. This is Prime

Inmate Signature: Jon. England   example of the Draconian Use of Solitary
Confinement within/N.C.DPS. I'm being punished and placed on and in
a control Housing unit and i'm not on Control

---

### OFFICIAL USE

Date received: __/__/__     _____     LNDD5
                            Receiving Officer Signature           Staff ID

Facility #: 3100   Year: 2022   Housing #: BBKU2   Sequence #: 20034

Distribution: White - Facility Copy; Pink - Inmate Copy

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 35 of 295

North Carolina Department of Public Safety

*Prisons*

Roy Cooper, Governor
Eddie M. Buffaloe, Jr., Secretary

Timothy D. Moose, Chief Deputy Secretary
Todd E. Ishee, Director

## Step One - Unit Response

**Regarding Grievance No.: 3100-2022-BBKU2-20034**
**Received: 12/01/2022**

**Inmate:  ENGLAND, JONATHAN D - 0702210**
**Location: 3100-CENTRAL PRISON - BBKU2006**

There is no policy based on housing in segregation, just differences in the conditions of confinement

12/19/2022
_____
Date

WILKINS, GERMEL S.
_____
*Staff Electronic Signature*

(A) ✓ Agree with grievance response

(B)____ Appeal to Step Two (24-hour limit)

12-19-22
_____
Date

_____
*Inmate Signature*

_____
Date

_____
*Witness Signature (optional)*

cc: CTS

**MAILING ADDRESS:**
4285 MAIL SERVICE CENTER
RALEIGH, NC 27699-4285



**OFFICE LOCATION:**
1300 WESTERN BLVD
RALEIGH, NC 27606-4285
Telephone: (919)733-0800
Fax: (919)715-3226

WWW.NCDPS.GOV
*An Equal Opportunity Employer/Affirmative Action Employer*



# State of North Carolina

Inmate Grievance Resolution Board
4207 MAIL SERVICE CENTER
RALEIGH, NC 27699-4207

Josh Stein
Governor

Adrina G. Bass
Executive Director

Members
David W. Addison, Esq.
Robert E. Campbell, Esq.
Travis F.Ellis, Esq.
Carlton B. Joyner
Jennifer L. Walsh

Feb 16, 2026

ENGLAND, JONATHAN D(#0702210)
4870
ALEXANDER CI

Re: Step One Response Copy

Dear Mr. England,

Your correspondence was forwarded to me for review. Enclosed is a copy of the Step One for Grievance No. 3100-2022-BBKU2-20034 per your request.

Thank you.

Sincerely,

HINTON, INA
*Electronic Signature*

cc: File/CTS

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 37 of 295

Note: Received on Thursday, February 19, 2026

STATE OF NORTH CAROLINA
INMATE GRIEVANCE RESOLUTION BOARD
4207 MSC
RALEIGH, NC 27699-4207

MEO6

ENGLAND, JONATHAN D(#0702210)
4870
ALEXANDER CI

Note: Received on Thursday, February 19, 2026.

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 38 of 295

# Exhibit Cover Page

Video File Name: SQ #3100-22-1160-Dec. 21, 2022

EXHIBIT NUMBER 1-0

# Exhibit Cover Page

Video File Name: SQ #3100-22-1198-Dec.21, 2022

EXHIBIT NUMBER 1-P

# Exhibit Cover Page

Video File Name: SQ #3100-23-177- Feb. 23, 2023

EXHIBIT NUMBER 1-Q

# Exhibit 1-R

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3006-M-RJ

| | | |
|---|---|---|
| JONATHAN DAVID ENGLAND, | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS' RESPONSES TO** |
| | ) | **PLAINTIFF'S FIRST SET OF** |
| v. | ) | **INTERROGATORIES, REQUESTS FOR** |
| | ) | **PRODUCTION OF DOCUMENTS, AND** |
| O. ONIYA, et al., | ) | **REQUESTS FOR ADMISSION TO** |
| | ) | **DEFENDANTS** |
| Defendants. | ) | |

NOW COME Defendants Onyia, Windley, Osborne, McCourt and Miller ("Defendants"), pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, and hereby provides responses to Plaintiff's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendants and, additionally, Plaintiff's First Request for Production of Documents to Defendants (hereinafter collectively "Discovery Requests").

## GENERAL OBJECTIONS

A.     Defendants object to any and all "Instructions" and "Definitions" contained in the Discovery Requests to the extent those "Instructions" and "Definitions" are beyond the scope of the requirements under the Federal Rules of Civil Procedure or beyond the scope of any prior orders entered in this case.  Furthermore, Defendants object to the Discovery Requests to the extent that they seek to define terms and/or characterize evidence in this matter.  To the extent that Defendants adopt any terms used by Plaintiff in the Discovery Requests, such adoption is solely limited to the objections and responses herein and does not constitute an admission of law or fact by Defendants.

B.     The inadvertent disclosure of information or the production of documents by Defendants containing information protected from discovery by the attorney-client privilege, work product doctrine, or any other applicable privilege, shall not constitute a waiver of such privilege with respect to that information or those or any other documents. In the event that inadvertent production occurs, the Plaintiff shall return all inadvertently produced documents to Defendants' counsel upon request, and/or shall make no use of the contents of such information or documents nor premise any further discovery on information learned therefrom.

C.      Pursuant to statute, prison records are maintained in a classified manner, N.C.G.S. § 148-76, "under the control and direction of the Secretary of Public Safety ['Secretary']," *id.* § 148-74. The records of prisoners in the custody of the Department of Public Safety ("DPS"), Division of Adult Correction ("DAC") are confidential and are not subject to inspection by the public or the inmate or those acting on behalf of the inmate. *Goble v. Bounds*, 13 N.C. App. 579, 186 S.E.2d 638, *aff'd* 281 N.C. 307, 188 S.E.2d 347 (1972). Except as otherwise noted, all documents referenced herein or provided herein are not in Defendant's possession or control, but have been provided to the undersigned Assistant Attorney General at the direction of the Secretary of Public Safety for the limited purpose of the defense of this action under the Defense of State Employees Act, N.C.G.S. § 143-300.2 *et seq.*  All such documents remain classified, confidential, privileged and under the control and direction of the Secretary.

D.      Defendants have responded to the Discovery Requests as they interpret and understand them. If Plaintiff subsequently asserts an interpretation of any Discovery Request differing from Defendants' understanding, Defendants reserve the right to supplement its objections and responses.

E.      Defendant objects to all interrogatories and request for production that is overly broad, unduly burdensome, harassing, duplicative or which requests documents which are already in the possession of Plaintiff.

F.      The Defendants expressly reserve their right to supplement or modify these responses with such pertinent information as he may hereafter discover and will do so to the extent required by the Federal Rules of Civil Procedure.  Defendants acknowledge their continuing duty to supplement these responses.  The Defendants expressly reserve the right to rely on, at any time, including trial, subsequently discovered documents and/or materials that have been produced promptly upon discovery.

G.      All answers to Discovery Requests are subject to these general objections.  Any answer provided herein is not intended to, and should not be understood to, waive these general objections.

2

## III. Interrogatories

### To All Defendants:

1.  Identify each person who has knowledge of any discoverable matter regarding the facts alleged in this lawsuit, and for each such person, state the subject matter as to which he or she has discoverable knowledge.

**RESPONSE:** Defendants object to this request because it is impossible to know "each person who has knowledge of any discoverable matter." Defendants furthermore object to this request as vague, indefinite, and uncertain in that "discoverable matter" is a legal conclusion that is undefined. Defendants have responded as they reasonable interpret this request.

Subject to and without waiving the foregoing objections, Defendants are currently unsure of who all may have information about this matter and what information they may have, except for the individuals identified in the relevant documents produced herewith and the below responses.

2.  For each employment position you have held with the North Carolina Department of Adult Correction, state the following: (1) your job title, (2) the dates of your employment, and (3) the prison in which you were employed.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants provide the following individual responses:

**ONYIA:** Correctional Officer since April 2017; promoted to Correctional Sergeant February 2022; PERT Officer February 2019; and Central Region Assist Platoon for PERT in 2023.

**WINDLEY:** My first job title in North Carolina Adult Corrections was at Central Prison in Raleigh North Carolina where I was an Officer III, my start date was Jan 16, 2018. My job duties are: Maintaining order Preventing disturbances, enforcing rules to ensure the safety and security of the institution Monitor inmate activities, supervise inmate work assignments, Search for contraband (weapons or drugs), enforce the rules through disciplinary action.

**OSBORNE:** I started working at NCDAC at Sampson Corrections in Clinton, NC, where I was an Officer II from 1/4/16-10/05/21. My next and current place of employment was Central Prison where I was promoted to Officer III. I started there on 10/05/21. I recently made Sergeant III on 03/07/25.

**MCCOURT:** Correctional Sergeant/January 2023/Central Prison.

**MILLER:** I have held two positions with NCDAC. I was a registered nurse at NC Correctional Institution for Women in Raleigh from July 2013 to November 2014. I returned

3

to NCDAC in September 2021 and have been employed at Central Prison since that time. At the time of the incident, I was a staff nurse. I was promoted to charge nurse in January 2025.

### To Defendants Onyia, Windley, and Osborne:

3. Identify each person who witnessed the use of force against Plaintiff on December 21, 2022, and as to each person identified, describe in detail the role they played, if any, in the use of force against Plaintiff.

**RESPONSE:** Defendants object to this request because it is impossible to know "each person who witnessed the use of force." Defendants further object in that this request assumes that a use of force occurred, which lacks foundation.

Subject to and without waiving the foregoing objections, Defendants do not currently recall any use of force against Plaintiff on December 21, 2022, and therefore, cannot identify any alleged witnesses.

4. Describe in detail your job duties and responsibilities on December 21, 2022.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants collectively respond to this Interrogatory as follows:

Defendants were on the PERT team, which was activated to conduct facility cell searches at Central Prison, Unit 1, in search of contraband. Duties as a PERT member include, but are not limited to, searching cells and common areas in the assigned unit. These searches are done for the safety and security of the facility.

5. State all reasons why Plaintiff's cell was searched on December 21, 2022.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants collectively respond as follows: There was a PERT activation. Cells were being searched in Unit 1. Offender England's cell was searched because he was housed in Unit 1.

6. Describe in detail the procedures followed after physical force is used against a prisoner, including the preparation or filing of reports, medical screening, and investigation procedures.

4

*Note:* Defendant's Stories have been inconsistent throughout this entire action.

**RESPONSE:** Defendants object to this request as unduly burdensome. Defendants object to this request in that it calls for a narrative. Defendants object to this request in that it requires Defendants to speculate. Defendants object to this request as vague, ambiguous, and uncertain.

Subject to and without waiving the foregoing objections, pursuant to Rule 33(d), in lieu of answering this request, Defendants have produced NCDAC "Use of Force" policy, which details the policies and procedures of physical force.

7. Describe in detail each use of force technique you used against Plaintiff on December 21, 2022. Specify when you used each technique, how you determined each technique was necessary, and what efforts you made to de-escalate conflict before resorting to force. If you did not make efforts to de-escalate conflict before resorting to force, please explain why.

**RESPONSE:** Defendants object to this request as vague and ambiguous as to "each use of force technique used." Subject to and without waiving the foregoing objections, Defendants collectively respond as follows: On December 21, 2022, verbal commands were initially given to gain compliance. Plaintiff refused direct orders to submit to being searched. He was aggressive and combative. When an offender does not comply, hands-on techniques are used to gain compliance. Plaintiff was placed on a flat surface and placed in handcuffs. In efforts to de-escalate the conflict, there were many chances for Offender England to comply. He chose not to. At no time was excessive force used. Only the necessary amount of force was used to gain compliance.

8. Describe in detail all conduct that you allege Plaintiff engaged in that necessitated the use of force against him on December 21, 2022. Specify where and when the conduct occurred, who was present for the conduct, Plaintiff's conduct immediately before force was used against him, Plaintiff's conduct as force was used against him, and Plaintiff's conduct immediately after force was used against him.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants provide the following individual responses:

**ONYIA:** Offender was aggressive and combative. I took hold of his arm. Offender was handcuffed and escorted to medical by another staff member, Sergeant Slaczka.
**WINDLEY/OSBORNE:** Offender England was combative and became very aggressive when asked to submit to being searched, at which time, use of force was reasonably necessary. This incident took place on 2B east side of Unit 1 housing area. Offender England was escorted to medical by Sgt. Slaczka.

5

9. Describe in detail the procedures that were followed after the use of force against Plaintiff underlying this lawsuit. Specify whether any reports or statements were written or filed regarding the use of force incident, when and by whom those reports or statements were written or filed, what determinations were made regarding this incident, and if and when Plaintiff was medically screened after this incident. For any procedure that was not followed, describe why the procedure was not followed and who decided it would not be followed.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond individually as follows:

**ONYIA:** After the offender was properly restrained in handcuffs, he was escorted to medical. Lieutenant Perry completed the report and collected statements.

**WINDLEY:** Offender England was restrained and escorted off the block. I provided a statement to the OIC.

**OSBORNE:** Offender England was restrained and escorted off the housing unit. I turned my statement in to the OIC.

10. Describe in detail all conversations and interactions you had with Plaintiff on December 21, 2022, including all discussions of the Plaintiff's PREA report(s), and all conversations leading up to, during, and after the use of force.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond individually as follows:

**ONYIA:** I do not remember having a conversation with the offender. I only remember assisting to ensure the offender was properly restrained.

**WINDLEY:** I recall directing Offender England to submit to being searched. I do not recall any conversation about a PREA report.

**OSBORNE:** The conversations that I had with Offender England was to submit to being searched and to stop resisting. I don't recall any conversation about a PREA report.

11. Describe how the use of force ended on December 21, 2022, including what happened when another correctional officer instructed you to "stop" or "quit."

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond individually as follows:

**ONYIA:** Once the use of force concluded and the offender was restrained, he was escorted to the nurse's station to be medically screened. I was not instructed to stop or quit by anyone.

6

**WINDLEY:** I don't recall a correctional officer instructing me to stop or quit.
**OSBORNE:** I do not recall being instructed to stop or quit.

12. State your contentions as to how Plaintiff received injuries to his knees, right buttock, wrists, head, and rib cage.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond individually as follows:

**ONYIA:** My only intention on December 21, 2022, was to search the offender's cell. I have no knowledge of injuries as I did not go with the offender to medical.
**WINDLEY:** I don't recall any injuries.
**OSBORNE:** I don't recall any injuries.

13. If any video or audio recordings responsive to Request for Production No. 8 once existed but are no longer available, state all reasons why they are no longer available.

**RESPONSE:** Defendants object to this request as vague and ambiguous in that it does not accurately describe the request. Furthermore, Defendants object to this request in that it assumes that there was relevant surveillance video. Furthermore, Defendants object to this request in that there are not cameras to cover every inch of the prison; and for the cameras that are available, they do not keep video indefinitely, but instead, automatically overwrite existing video to make room for new video.

14. Describe in detail the location and functionality of all video recording devices in place at Central Prison on December 21, 2022, that could have captured any of the use of force described in Plaintiff's complaint. For each video recording device identified, describe in detail what area the video recording device covered and whether it was functional during the use of force incident on December 21, 2022. For all devices that were not functional on December 21, 2022, state why they were not functional.

**RESPONSE:** Defendants object to this request in that it seeks highly confidential information to which Plaintiff would not otherwise be entitled, and the need for confidentiality outweighs Plaintiff's need. Defendants object to this request in that it seeks irrelevant information. Defendants object to this request as unduly burdensome. For all of the above reasons (both independently and collectively), Defendants object to this request as disproportionate to the needs of this lawsuit and the stakes involved.

7

15. Describe the substance of all conversations you had concerning the events alleged in this lawsuit with DAC employees. Specify who was present, what was said, and by whom, where, and when.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond individually as follows:

**ONYIA:** I spoke with the investigator Lt. Perry.
**WINDLEY:** I do not recall speaking about this incident with anyone.
**OSBORNE:** I haven't talked about this incident with anyone.

16. Identify all written communications (e.g., e-mails, text messages, letters, and memos) you have had with anyone concerning the events alleged in the complaint, including but not limited to, the use of force against Plaintiff on December 21, 2022, or about the Plaintiff's PREA report(s). As to each written communication identified, state who the sender(s) and recipient(s) are, what was said, and when. Exclude any written communications with your attorney.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond individually as follows:

**ONYIA:** I have no knowledge of any written communication other than my written statement.
**WINDLEY:** I haven't talked to anyone. I provided a written statement. _
**OSBORNE:** I haven't talked about this incident with anyone. I provided a written statement.

### To Defendants Onyia and Windley:

17. State your contentions regarding what happened in the underlying incidents that resulted in the Plaintiff's PREA report(s) against you.

**RESPONSE:** Defendants object to this request as overbroad, vague and ambiguous, and calls for speculation in that the requests refers to multiple incidents that resulted in PREA Reports against "you" (Onyia and Windley).

18. Identify all lawsuits brought against you by prisoners alleging any misconduct that resulted in settlement or favorable judgment for the prisoner related to use of force, sexual assault, sexual harassment, or retaliation. Please specify the following as to each lawsuit: (1) case caption; (2) court or forum where the lawsuit was adjudicated; (3) case number;

8

and (4) the date the lawsuit was filed.

**RESPONSE:** Defendants object to this request as overly broad in that it is not limited by a reasonable timeframe or subject matter. Defendants object to this request as unduly burdensome. Defendants object to this request in that Plaintiff's discovery counsel has equal access to court dockets and perform the requested searches herself. Defendants object to this request in that it seeks the production of irrelevant information. Defendants object to this request as it is intended to embarrass, harass, or annoy Defendants. Defendants object to this request in that Defendants are not always notified of lawsuits filed against them, and therefore, may not have the requested information. For all of the above reasons (both independently and collectively), Defendants object to this request as disproportionate to the needs of this lawsuit and the stakes involved.

Subject to and without waiving the foregoing objections, Defendants do not currently recall any other lawsuits alleging excessive force, sexual assault, sexual harassment, or retaliation.

19. Describe in detail all disciplinary actions taken, and disciplinary charges made, against you during the past five (5) years relating to use of force against prisoners, sexual harassment or sexual abuse of prisoners, or retaliation against prisoners.

**RESPONSE:** Defendants object to this request in that it seeks confidential information from personnel files protected by state law, that Plaintiff would not otherwise be entitled to receive. Furthermore, the need for confidentiality of that information outweighs Plaintiff's need for the information. Furthermore, Defendants object to this request in that it seeks the production of irrelevant information. For all of the above reasons (both independently and collectively), Defendants object to this request as disproportionate to the needs of this lawsuit and the stakes involved.

Subject to and without waiving the foregoing objections, Defendants do not currently recall any disciplinary actions for the requested subjects during the request timeframes.

**_To Defendant Osborne_:**

17. Identify all lawsuits brought against you by prisoners alleging any misconduct that resulted in settlement or favorable judgment for the prisoner related to use of force, retaliation, or failure to protect. Please specify the following as to each lawsuit: (1) case caption; (2) court or forum where the lawsuit was adjudicated; (3) case number; and (4) the date the lawsuit was filed.

9

**RESPONSE:** Defendant objects to this request as overly broad in that it is not limited by a reasonable timeframe or subject matter. Defendant objects to this request as unduly burdensome. Defendant objects to this request in that Plaintiff's discovery counsel has equal access to court dockets and perform the requested searches herself. Defendant objects to this request in that it seeks the production of irrelevant information. Defendant objects to this request as it is intended to embarrass, harass, or annoy Defendant. Defendant objects to this request in that Defendants are not always notified of lawsuits filed against them, and therefore, may not have the requested information. For all of the above reasons (both independently and collectively), Defendant objects to this request as disproportionate to the needs of this lawsuit and the stakes involved.

Subject to and without waiving the foregoing objections, Defendant does not currently recall any other lawsuits alleging excessive force, retaliation, or failure to protect.

18. Describe in detail all disciplinary actions taken, and disciplinary charges made, against you during the past five (5) years relating to use of force against prisoners, retaliation against prisoners, and failure to protect prisoners from excessive force used by other correctional staff.

**RESPONSE:** Defendant objects to this request in that it seeks confidential information from personnel files protected by state law, that Plaintiff would not otherwise be entitled to receive. Furthermore, the need for confidentiality of that information outweighs Plaintiff's need for the information. Furthermore, Defendant objects to this request in that it seeks the production of irrelevant information. For all of the above reasons (both independently and collectively), Defendant objects to this request as disproportionate to the needs of this lawsuit and the stakes involved.

Subject to and without waiving the foregoing objections, Defendant does not currently recall any disciplinary actions for the requested subjects during the request timeframes.

### To Defendant McCourt:

3. Describe in detail your job duties and responsibilities during the period from December 2022 to February 2023.

**RESPONSE:** Supervise 192 inmates that are in segregation, as well as supervise staff.

4. Describe in detail all conversations you had with Plaintiff on or after December 24, 2022, concerning his PREA report(s) or the use of force against him on December 21, 2022. As to each conversation, specify who was present, what was said, and by whom, where, and

10

when.

**RESPONSE:** Never.

5. Describe when and how you became aware of the Plaintiff's PREA report(s) against Defendant Onyia and against Defendant Windley.

**RESPONSE:** I am unaware of when I became aware of Plaintiff's PREA report.

6. Describe in detail all conversations you had with Defendant Onyia, Defendant Windley, or Defendant Osborne about the Plaintiff's PREA report(s) before February 27, 2023. As to each conversation, specify who was present, what was said, and by whom, where, and when.

**RESPONSE:** No conversations to my knowledge.

7. Describe in detail all conversations you had with Defendant Onyia, Defendant Windley, or Defendant Osborne between December 21, 2022, and February 27, 2023 that were about the use of force against the Plaintiff on December 21, 2022. As to each conversation, specify who was present, what was said, and by whom, where, and when.

**RESPONSE:** None to my knowledge.

8. If any video or audio recordings responsive to Request for Production No. 8 once existed but are no longer available, state all reasons why they are no longer available.

**RESPONSE:** N/A

9. Identify all written communications (e.g., e-mails, text messages, letters, and memos) you have had with anyone concerning the events alleged in the complaint, including but not limited to, the use of force against Plaintiff on December 21, 2022, the use of force against Plaintiff on February 23, 2023, or about the Plaintiff's PREA report(s). As to each written communication identified, state who the sender(s) and recipient(s) are, what was said, and when. Exclude any written communications with your attorney.

**RESPONSE:** N/A

10. Describe in detail all conversations and interactions you had with Plaintiff on December 24, 2022.

11

**RESPONSE:** None that I know of.

11.    Describe in detail all conversations and interactions you had with Plaintiff on February 13, 2023.

**RESPONSE:** None that I know of.

12.    Describe in detail all conversations and interactions you had with Plaintiff on February 23, 2023.



**RESPONSE:** On 2/23/22, I was called to the block due to Inmate England kicking the cell door. I gave Inmate England several direct orders to stop, which he refused. I then administered OC spray to the facial area of Inmate England.

13.    Describe in detail all conversations and interactions you had with Plaintiff on February 27, 2023.

**RESPONSE:** None that I recall.

14.    Describe in detail each use of force technique you used against Plaintiff on February 23, 2023. Specify when you used each technique, how you determined each technique was necessary, and what efforts you made to de-escalate conflict before resorting to force. If you did not make efforts to de-escalate conflict before resorting to force, please explain why.



**RESPONSE:** OC pepper spray due to Inmate England refusing to stop kicking the cell door.

15.    Describe in detail all conduct that you allege Plaintiff engaged in that necessitated the use of force against him on February 23, 2023. Specify where and when the conduct occurred, who was present for the conduct, Plaintiff's conduct immediately before force was used against him, Plaintiff's conduct as force was used against him, and Plaintiff's conduct immediately after force was used against him.

**RESPONSE:** Refusing to stop kicking the cell door.

16.    Describe in detail the procedures that were followed after the use of force against Plaintiff on February 23, 2023. Specify whether any reports or statements were written or filed regarding the use of force incident, when and by whom those reports or statements were written or filed, what determinations were made regarding this incident, and if and when Plaintiff was decontaminated and/or medically screened after this incident. For any procedure that was not followed, describe why the procedure was not followed and who

12

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 53 of 295

Note: Video File Name: SQ#3100-23-177 February 23, 2023 verifies I was NOT kicking cell door when McCourt sprayed me. Padlock hanging off cell door NOT moving.

decided it would not be followed.

**RESPONSE:** Not sure. I exited the area after I administered the OC spray. I did write a statement after the incident.

17. Describe in detail all disciplinary actions taken, and disciplinary charges made, against you during the past five (5) years relating to use of force or retaliation.

**RESPONSE:** None that I know of.

18. Identify all lawsuits brought against you by prisoners alleging any misconduct that resulted in settlement or favorable judgment for the prisoner, related to use of force or retaliation. Please specify the following as to each lawsuit: (1) case caption; (2) court or forum where the lawsuit was adjudicated; (3) case number; and (4) the date the lawsuit was filed.

**RESPONSE:** N/A

### _To Defendant Miller:_

3. Describe in detail the procedures you follow when you evaluate a prisoner after a use of force including the preparation or filing of reports, medical screening, and documentation.

**RESPONSE:** When an offender is medically assessed following a use of force, the offender is brought into the clinic and sits on the examination table. Name, OPUS number and time of the assessment are documented. Vital signs are taken. Overall visual assessment begins while VS are being taken, and offender is asked where he feels he has been injured. Each area identified, by visual inspection and by offender's report, is thoroughly assessed for bleeding, bruising, lacerations, abrasions, etc. The areas are also manually palpated for tenderness, warmth, range of motion, etc. Depending on the injury, it is cleaned and bandaged. OTC medications are administered per nursing protocol. If offender has an injury that is deemed to require a higher degree of care, the Urgent Care department is notified, and offender is sent there. Subsequently, a 138B Statement by Witness paper document is completed and given to custody for their report. A copy of the document is kept in the Outside Rounds medical office. The 138B form that is done by nursing staff summarizes the medical assessment/treatment at the time of the incident, as well as offender's overall behavior. A nursing Clinical Encounter is then typed on the HERO computer system, where more detailed information is documented.

⑬

Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 54 of 295

Note: See Bates 0611 which shows Plaintiff's Position as Standing while his Blood Pressure is being took. This because assessment took place in Cell and holding cell, not Clinic.

4.  Describe in detail the procedures you followed during and after your evaluation of Plaintiff on December 21, 2022, including the preparation or filing of reports, medical screenings, and documentation.

**RESPONSE:** Please see #3 answer, which I believe addresses this request.

5.  Describe in detail all conversations and interactions you had with Plaintiff on December 21, 2022. Identify who was in the room when you examined Plaintiff.

**RESPONSE:** Please see the nursing assessment for questions asked and statements made during the assessment. I do not recall who else was in the clinic at the time. I was the only medical staff present, and there were likely at least two custody staff present. Custody must always be present whenever nursing staff interact with offenders on Unit 1.

6.  Describe your evaluation of the injuries to the Plaintiff's legs and buttocks on December 21, 2022, including which treatment options you considered, and which treatments you provided.

**RESPONSE:** Please refer to the nursing evaluation.

7.  Describe your evaluation of the injuries to the Plaintiff's wrists on December 21, 2022, including which treatment options you considered, and which treatments you provided.

**RESPONSE:** Please refer to the nursing evaluation.

8.  Describe your evaluation of the injuries to the Plaintiff's head on December 21, 2022, including which treatment options you considered, and which treatments you provided.

**RESPONSE:** Please refer to the nursing evaluation.

9.  Describe your evaluation of the injuries to the Plaintiff's rib cage on December 21, 2022, including which treatment options you considered, and which treatments you provided.

**RESPONSE:** Please refer to the nursing evaluation.

10. If you did not provide Plaintiff any treatment on December 21, 2022, explain why you did not treat the Plaintiff's injuries.

**RESPONSE:** N/A. Treatment was provided on 12-21-25.

14

11. Describe in detail all disciplinary actions taken, and disciplinary charges made, against you during the past five (5) years relating to inadequate patient care.

**RESPONSE:** None.

12. Identify all written communications (e.g., e-mails, text messages, letters, and memos) you have had with anyone concerning the events alleged in the complaint, including but not limited to, your evaluation and treatment of the Plaintiffs injuries on December 21, 2022. As to each written communication identified, state who the sender(s) and recipient(s) are, what was said, and when. Exclude any written communications with your attorney.

**RESPONSE:** I provided a written statement.

13. Identify all lawsuits brought against you by prisoners alleging any misconduct that resulted in settlement or favorable judgment for the prisoner, related to deliberate indifference to serious medical needs. Please specify the following as to each lawsuit: (1) case caption; (2) court or forum where the lawsuit was adjudicated; (3) case number; and (4) the date the lawsuit was filed.

**RESPONSE:** None.

## IV. Requests for Production of Documents

### To All Defendants:

1. All policies, procedures, rules, and regulations in effect at Central Prison from December 2022 to February 2023 concerning use of force against prisoners by correctional staff. The response should include all relevant historical DAC policies, relevant facility level "standard operating procedures" and relevant DAC "security manual" policies.

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policy and procedure potentially contains highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC Policy Chapter F .1500, Use of Force (attached herein with Bates 0001-0016).

2. All policies, procedures, rules, and regulations in effect at Central Prison from December 2022 to February 2023 concerning complete or "strip" searches. The response should include all relevant historical DAC policies, relevant facility level "standard operating procedures" and relevant DAC "security manual" policies.

15

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policy and procedure potentially contains highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC Policy Chapter F .0100, Operational Searches (attached with Bates 0017-0022).

3. All policies, procedures, rules, and regulations in effect at Central Prison from December 2022 to February 2023 concerning PREA reports, PREA investigations, and PREA retaliation monitoring. The response should include all relevant historical DAC policies, relevant facility level "standard operating procedures" and relevant DAC "security manual" policies.

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policies and procedures potentially contain highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC PREA Reporting and DAC Policy Chapter F .3400, Offender Sexual Abuse and Sexual Harassment Policy (attached herein with Bates 0023-0062).

4. All policies, procedures, rules, and regulations Central Prison from December 2022 to February 2023 relating to the retention of video footage from video recording devices. The response should include all relevant historical DAC policies, relevant facility level "standard operating procedures" and relevant DAC "security manual" policies.

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policies and procedures potentially contain highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC Policy Chapter F .1500, Use of Force (attached herein with Bates 0001-00016).

5. All policies, procedures, rules, and regulations in effect at Central Prison from December 2022 to February 2023 concerning "PERT" searches, and/or "PERT activation." The response should include all relevant historical DAC policies, relevant facility level "standard operating procedures" and relevant DAC "security manual" policies.

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policies and procedures potentially contain highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC Policy Chapter F .0100, Operational Searches (attached with Bates 0017-0022).

6. All medical and mental health records concerning Plaintiff for the time period June 3, 2022, to the present.

16

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced Plaintiff's confidential medical and mental health records dated June 3, 2022, to November 21, 2024 (attached with Bates 0063-0694).

7.    All photographs taken of Plaintiff in connection with the events alleged in the Complaint, including but not limited to, any injuries Plaintiff sustained on December 21, 2022, and February 23, 2023.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants produce photos of Plaintiff on February 23, 2023 (attached with Bates 0695-0698). Defendants are not in possession of any photographs taken of Plaintiff on December 21, 2022.

8.    All video and audio recordings of the use of force and retaliation events alleged in the Complaint, including but not limited to the assault and cell search on December 21, 2022, and the use of pepper spray on February 23, 2023.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced video footage from December 21, 2022, and February 23, 2023, via Sharefile, to Plaintiff's attorney on record.

9.    All documents relating to any PREA reports or investigations related to the Plaintiff from June 3, 2022, to present, including but not limited to, incident reports, witness statements, handwritten and typed notes, memoranda, correspondence, and records of retaliation monitoring.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced the November 28, 2022, incident report #3100-22-1095 and investigative report with witness statements (attached with Bates 0699-0750).

10.    All documents relating to any investigations into the use of force against Plaintiff on December 21, 2022, and February 23, 2023, including but not limited to, incident reports, witness statements, notes, memoranda, and correspondences.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced the December 21, 2022, incident report #3100-22-1160; and February 23, 2023, incident report #3100-23-177, both with accompanying witness statements (attached with Bates 0751-0782).

11.    All documents relating to the grievances that Plaintiff filed in connection with the events alleged in the Complaint, including PREA grievances, grievances about use of force on

17

December 21, 2022, grievances about the use of force on February 23, 2023, and grievances about the incidents of retaliation described in the complaint. This request includes, but is not limited to, a copy of the grievances, all responses to the grievances, and all materials relied upon in formulating those responses.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced six (6) relevant grievances submitted by Plaintiff (attached with Bates 0783-0822).

12. All documents relating to any disciplinary charges brought against the Plaintiff from November 1, 2022, to March 1, 2023, including but not limited to incident reports, witness statements, notes, memoranda, correspondences, video and audio recordings, and decisions made by the Disciplinary Hearing Officer (DHO).

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced Plaintiff's disciplinaries during the requested timeframe (attached with Bates 0823-0907).

13. All documents relating to disciplinary actions taken, and disciplinary charges made, against Defendants Onyia, Windley, Osborne, and McCourt during the past five (5) years relating to use of force against prisoners, retaliation against prisoners who report staff misconduct, and failure to protect prisoners from use of excessive force by other correctional staff.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. Without waiving the foregoing objections, none.

14. All documents relating to disciplinary actions taken, and disciplinary charges made, against Defendants Onyia and Windley during the past five (5) years relating to sexual abuse and sexual harassment of prisoners.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. Without waiving the foregoing objections, none.

15. All communications—including but not limited to any writing (handwritten notes; typed notes; typed forms and reports; emails or any other electronic communication), voice messages, recordings of phone calls/video chats, or any other memoranda of

18

conversations or observations—identified in Interrogatory 16 to Defendants Onyia, Windley, and Osborne, Interrogatory 8 to Defendant McCourt, and Interrogatory 12 to Defendant Miller.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced all written statements in relation to the allegations in the Complaint.

16. PREA Incident Reports for all PREA investigations where Defendants Onyia or Windley are listed as an "aggressor" and where the type of misconduct is "staff sexual abuse" or "staff sexual harassment."

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. Without waiving the foregoing objections, none.

17. All correspondence between you and Plaintiff from June 3, 2022, to present.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. Without waiving the foregoing objections, none.

18. A screenshot of the Correspondence Tracking System as it relates to Plaintiff, reflecting communications from June 3, 2022, to present.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced Plaintiff's CTS screen (attached with Bates 0908-0912).

19. Training logs sufficient to show all trainings taken by defendants from the start of their employment with DAC through 2023.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery.

20. Shift rosters and shift narratives for the units where Plaintiff was housed on December 21, 2022, December 24, 2022, February 13, 2023, February 23, 2023, and February 27, 2023.

19

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. In addition, shift narratives contain highly sensitive security information not subject to disclosure as doing so poses a security risk.

21. A screenshot of Plaintiff's Offender Information Screen from the OPUS System showing housing assignments from June 3, 2022, to March 1, 2023.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. Without waiving the foregoing objections, Plaintiff's housing assignments have been produced (attached with Bates numbers 0913-0914).

22. All documents cited, relied upon, or to which reference was made in your response to any of the concurrently served interrogatories and requests for admission.

**RESPONSE:** To the best of Defendants' knowledge, none other than those identified or produced herein.

## V. Requests for Admission

### To Defendants Onyia and Windley:

1. Admit that on December 21, 2022, you were aware that Plaintiff had made a PREA report against you.

**ANSWER:** **Denied.**

2. Admit that you are required to follow the DAC's PREA policies while conducting PERT searches.

**ANSWER:** **Admitted.**

3. Admit that on December 21, 2022, you ordered Plaintiff to submit to a "strip" or "complete" search.

**ANSWER:**
**Defendant Onyia:** **Denied.**

20

**Defendant Windley: Admitted.**

4. Admit that on December 21, 2022, you used physical force on Plaintiff while he was handcuffed with his hands behind his back.

**ANSWER: Denied.**

5. Admit that you did not use pepper spray or another chemical agent before you used force against Plaintiff on December 21, 2022.

**ANSWER: It is admitted that pepper spray or another chemical agent was not used, otherwise denied.**

6. Admit that you did not use non-forcible methods to control Plaintiff before you used force against him on December 21, 2022.

**ANSWER: Denied.**

7. Admit that on December 21, 2022, you pulled Plaintiff's boxers down, exposing his right buttock, while you were using physical force on him.

**ANSWER: Denied.**

8. Admit that Plaintiff was not resisting when you used physical force on him on December 21, 2022.

**ANSWER: Denied.**

9. Admit that Plaintiff made no threatening movements immediately before you used force against him on December 21, 2022.

**ANSWER: Denied.**

10. Admit that you were in no risk of imminent assault immediately before you used force against Plaintiff on December 21, 2022.

**ANSWER: Denied.**

11. Admit that you mentioned the Plaintiff's PREA report(s) to the Plaintiff on December 21, 2022.

21

**ANSWER:** **Denied.**

12. Admit that on December 21, 2022, you struck the Plaintiff on his legs, knees, and stomach while he was handcuffed with his hands behind his back.

**ANSWER:** **Denied.**

13. Admit that on December 21, 2022, you witnessed Defendant Osborne strike the Plaintiff's head while Plaintiff was handcuffed with his hands behind his back.

**ANSWER:** **Denied.**

14. Admit that on December 21, 2022, you witnessed Defendant Osborne strike the Plaintiff's stomach while Plaintiff was handcuffed with his hands behind his back.

**ANSWER:** **Denied.**

15. Admit that on December 21, 2022, another correctional officer came to the cell and told you to stop using physical force on Plaintiff.

**ANSWER:** **Denied.**

16. Admit that Plaintiff did not receive a disciplinary infraction on December 21, 2022.

**ANSWER:** **Denied.**

17. Admit that Plaintiff sustained injuries to his knees because of the force you used against him on December 21, 2022.

**ANSWER:** **Denied.**

18. Admit that Plaintiff sustained injuries to his right buttock because of the force you used against him on December 21, 2022.

**ANSWER:** **Denied.**

19. Admit that Plaintiff sustained injuries to his rib cage because of the force you used against him on December 21, 2022.

22

**ANSWER:**   **Denied.**

20.   Admit that Plaintiff sustained injuries to his head because of the force you used against him on December 21, 2022.

**ANSWER:**   **Denied.**


*To Defendant Osborne*:

1.   Admit that on December 21, 2022, you knew Plaintiff had made a PREA report against Defendant Onyia.

**ANSWER:**   **Denied.**

2.   Admit that on December 21, 2022, you knew Plaintiff had made a PREA report against Defendant Windley.

**ANSWER:**   **Denied.**

3.   Admit that on December 21, 2022, you ordered Plaintiff to submit to a "strip" or "complete" search.

**ANSWER:**   **Admitted.**

4.   Admit that you heard Defendant Onyia mention the Plaintiff's PREA report(s) to the Plaintiff on December 21, 2022.

**ANSWER:**   **Denied.**

5.   Admit that you heard Defendant Windley mention the Plaintiff's PREA report(s) to the Plaintiff on December 21, 2022.

**ANSWER:**   **Denied.**

6.   Admit that you are required to follow the DAC's PREA policies while conducting PERT searches.

**ANSWER:**   **Admitted.**

23

7.  Admit that on December 21, 2022, you handcuffed Plaintiff though the trap door with his hands behind his back.

**ANSWER:    Denied.**

8.  Admit that on December 21, 2022, you pulled Plaintiff's hands and wrists through the trap door while handcuffing him.

**ANSWER:    Denied.**

9.  Admit that on December 21, 2022, you witnessed Defendants Onyia and Windley use physical force on the Plaintiff while he was handcuffed with his hands behind his back.

**ANSWER:    It is admitted that Defendants Onyia and Windley used the necessary amount of force to place handcuffs on Plaintiff, otherwise denied.**

10. Admit that on December 21, 2022, Plaintiff was not resisting when Defendants Onyia and Windley used physical force on him.

**ANSWER:    Denied.**

11. Admit that you did not intervene to stop Defendants Onyia and Windley from using physical force on Plaintiff on December 21, 2022.

**ANSWER:    It is admitted that I did not intervene with the actions of Defendants Onyia and Windley.**

12. Admit that on December 21, 2022, you witnessed Onyia and Windley striking the Plaintiff's legs, knees, and stomach while Plaintiff was handcuffed with his hands behind his back.

**ANSWER:    Denied.**

13. Admit that on December 21, 2022, Defendants Onyia and Windley were already using physical force on the Plaintiff when you approached and used physical force on the plaintiff.

**ANSWER:    Denied.**

14. Admit that on December 21, 2022, you used physical force on Plaintiff while he was

24

handcuffed with his hands behind his back.

**ANSWER:    Denied.**

15.    Admit that Plaintiff was not resisting when you used physical force on him on December 21, 2022.

**ANSWER:    Denied.**

16.    Admit that Plaintiff made no threatening movements immediately before you used force against him on December 21, 2022.

**ANSWER:    Denied.**

17.    Admit that you were in no risk of imminent assault immediately before you used force against Plaintiff on December 21, 2022.

**ANSWER:    Denied.**

18.    Admit that on December 21, 2022, you struck Plaintiff's head while he was handcuffed with his hands behind his back.

**ANSWER:    Denied.**

19.    Admit that on December 21, 2022, you struck Plaintiff's stomach while he was handcuffed with his hands behind his back.

**ANSWER:    Denied.**

20.    Admit that on December 21, 2022, another correctional officer came to the cell and told you, Onyia, and Windley to stop using physical force on Plaintiff.

**ANSWER:    Denied.**

21.    Admit that Plaintiff sustained injuries to his knees because of the force you used against him on December 21, 2022.

**ANSWER:    Denied.**

22.    Admit that Plaintiff sustained injuries to his right buttock because of the force you used

25

against him on December 21, 2022.

**ANSWER:** **Denied.**

23.    Admit that Plaintiff sustained injuries to his rib cage because of the force you used against him on December 21, 2022.

**ANSWER:** **Denied.**

24.    Admit that Plaintiff sustained injuries to his head because of the force you used against him on December 21, 2022.

**ANSWER:** **Denied.**

### _To Defendant McCourt_:

1.    Admit that on December 24, 2022, you were aware of the use of force incident against Plaintiff on December 21, 2022.

**ANSWER:** **Denied.**

2.    Admit that on December 24, 2022, you were aware that Plaintiff had filed PREA report(s) against correctional officers.

**ANSWER:** **Denied.**

3.    Admit that on December 24, 2022, you called Plaintiff a "rat" and a "snitch."

**ANSWER:** **Denied.**

4.    Admit that on February 13, 2023, you were aware that Plaintiff had filed PREA report(s) against correctional officers.

**ANSWER:** **Denied.**

5.    Admit that on February 13, 2023, you described Plaintiff's PREA report(s) as "fake."

**ANSWER:** **Denied.**

26

6.  Admit that on February 23, 2023, Plaintiff was locked in his cell when you administered OC pepper spray.

**ANSWER:    Admitted.**

7.  Admit that on February 23, 2023, Plaintiff did not pose a physical threat to you or other correctional staff when you administered OC pepper spray.

**ANSWER:    Admitted.**

8.  Admit that you were in no risk of imminent assault immediately before you administered pepper stray on Plaintiff on February 23, 2023.

**ANSWER:    Admitted.**

9.  Admit that on the afternoon of February 23, 2023, you gave plaintiff a used, dirty food tray instead of a dinner tray with food on it.

**ANSWER:    Denied.**

10. Admit that on the afternoon of February 23, 2023, you refused to give Plaintiff his medically prescribed snack bag.

**ANSWER:    Denied.**   See Page 0858 Video Shows McCourt Circling back to Cell BUL202 and hands prisoner Uhuru Obataiye Allah my snack bag.

11. Admit that on February 23, 2023, you described Plaintiff's PREA report(s) as "fake."

**ANSWER:    Denied.**

12. Admit that on February 27, 2023, you threatened to shove the Plaintiff's food trays onto the floor.

**ANSWER:    Denied.**

13. Admit that on February 27, 2023, you threatened to withhold food from the Plaintiff.

**ANSWER:    Denied.**

*To Defendant Miller:*

27

1. Admit that you have a duty and responsibility to provide medical care for prisoners in DAC custody.

**ANSWER: Admitted.**

2. Admit that incarcerated people in DAC custody rely on medical staff to provide them with appropriate medical treatment.

**ANSWER: Admitted.**

3. Admit that one of the goals of the DAC health care system is to provide care consistent with community standards.

**ANSWER: Admitted.**

4. Admit that you evaluated the Plaintiff in person on December 21, 2022.

**ANSWER: Admitted.**

5. Admit that you observed bruising and scrapes on Plaintiff's left knee on December 21, 2022.

**ANSWER: It is admitted that I observed a small, minor left knee abrasion on December 21, 2022, otherwise denied.**

6. Admit that you observed bruising on the Plaintiff's right leg on December 21, 2022.

**ANSWER: Denied.**

7. Admit that you observed swelling and bruising on Plaintiff's wrists on December 21, 2022.

**ANSWER: It is admitted that I observed minimal visible swelling on the top to Plaintiff's right wrist with slight redness on December 21, 2022, otherwise denied.**

8. Admit that you observed a scrape or scratch on the Plaintiff's right buttock on December 21, 2022.

**ANSWER: It is admitted that I observed a very minor 3-inch scratch on the outer aspect of Plaintiff's right buttock on December 21, 2022, otherwise denied.**

28

9. Admit that you observed a hematoma or lump on the left side of the Plaintiff's head on December 21, 2022.

**ANSWER: Denied.**

10. · Admit that you are authorized to administer ice packs and over-the-counter pain medication.

**ANSWER: Admitted.**

11. Admit that you told Plaintiff that you would bring him an ice pack and something for pain he was experiencing.

**ANSWER: It is admitted that Plaintiff was given acetaminophen pain reliever and two cold packs, as documented in the clinical encounter dated December 21, 2022, otherwise denied.**

12. Admit that you did not give Plaintiff an ice pack on December 21, 2022.

**ANSWER: Denied.**

13. Admit that you did not give the Plaintiff any pain medication on December 21, 2022.

**ANSWER: Denied.**

### "Plaintiff's First Request for Production of Documents to Defendants" (dated 4/27/25)

1. Please provide a copy of Plaintiff's DAC medical records from November 1st, 2022, to present [to include but not limited to X-rays, M.R.I., and E.M.G. test results for in-camera review].

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced Plaintiff's confidential medical and mental health records (attached with Bates 0063-0694).

2. Produce Grievance No. 3100-2023-BBKU2-00178 and Step's 1, 2, and 3 responses. Produce Grievance No. 3100-2023-BBKU2-00217 and Step's 1, 2, and 3 responses. Produce Grievance No. 3100-2023-BBKU-00375 and Step's 1, 2, and 3 responses.

29

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced six (6) relevant grievances submitted by Plaintiff (attached with Bates 0783-0822).

3.      Please produce any and all statements, reports, photos, video, and other communications concerning incident 3100-22-1160 dated December 21st, 2022, in cell block BU-206 EAST on the upper level of Unit-1 at Central Prison.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced the December 21, 2022, incident report #3100-22-1160; and February 23, 2023, incident report #3100-23-177, both with accompanying witness statements (attached with Bates 0699-0782). Video footage has been produced to Plaintiff's counsel via Sharefile.

4.      Please produce any and all camera (video) footage capturing BU-206 EAST on December 21st, 2022, between 7:00 am and 7:45 am for in-camera review made available to Plaintiff for viewing.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced video footage from December 21, 2022, and February 23, 2023, via Sharefile, to Plaintiff's attorney on record.

5.      Please produce any and all camera (video) footage capturing BU-206 EAST on the upper level of Unit 1 between 11:00 am and on February 23rd, 2023, for in-camera review made available to Plaintiff for viewing.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced video footage from December 21, 2022, and February 23, 2023, via Sharefile, to Plaintiff's attorney on record.

6.      Please produce any and all policies, procedures, and guidelines in place that keeps officers/staff that have alleged PREA's against them away from their victim. Include all rights under PREA and PREA standards.

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policies and procedures potentially contain highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC Policy Chapter F .3400, Offender Sexual Abuse and Sexual Harassment Policy (attached herein with Bates 0023-0062).

7.      Please produce any and all disciplinary infractions received between December 10th, 2022, and August 10th, 2023.

30

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced Plaintiff's disciplinaries from November 28, 2022, December 21, 2022, and February 23, 2023 (attached with Bates 0823-0907).

8.      Please produce any and all request forms/letters sent to Central Prison staff, Secretary of Corrections, from November 1st, 2022, through August 12th, 2023.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery.

9.      Please produce any and all policies and procedures concerning the Use of Force and Disciplinary process for DAC.

**RESPONSE:** Subject to and without waiving the foregoing objections, the requested policies and procedures potentially contain highly sensitive security information not subject to disclosure as doing so poses a security risk. Without waiving the stated objections, Defendants have produced DAC Policy Chapter F .1500, Use of Force (attached with Bates 0001-0016).

10.     Please produce any and all camera footage (video) from block BU-EAST capturing cell BU-206 EAST on the upper level of Unit 1 on February 23rd, 2023, between 3:15 pm and 4:00 pm for in-camera review made available to Plaintiff for viewing.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have produced video footage from December 21, 2022, and February 23, 2023, via Sharefile, to Plaintiff's attorney on record.

11.     Please provide the exact measurement from the floor to the food passage "trap" door in cell BU-206 EAST on the upper level of Unit 1 at Central Prison. This would be the height from the floor to food passage trap door in BU-206 EAST.

**RESPONSE:** Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery.

This the 16th day of June 2025.

31

**JEFF JACKSON**
**ATTORNEY GENERAL**

/s/ Clarence Turpin, V
Clarence Turpin, V
Assistant Attorney General
N.C. State Bar No. 53926
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6431
Facsimile: (919) 716-6761
E-mail: cturpin@ncdoj.gov

32

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I served the foregoing via email to the following individuals:

Sunny Frothingham
N.C. Prison Legal Services, Inc.
sfrothingham@ncpls.org

This the 16th day of June 2025.

/s/ Clarence Turpin, V
Clarence Turpin, V
Assistant Attorney General

33

Exhibit 1-S

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3006-M-RJ

| | | |
|---|---|---|
| JONATHAN DAVID ENGLAND, | ) | |
| | ) | |
| Plaintiff, | ) | DEFENDANTS' RESPONSES TO |
| | ) | PLAINTIFF'S SECOND SET OF |
| v. | ) | INTERROGATORIES, REQUESTS |
| | ) | FOR PRODUCTION OF |
| O. ONIYA, et al., | ) | DOCUMENTS, AND REQUESTS FOR |
| | ) | ADMISSION TO DEFENDANTS |
| Defendants. | ) | |

NOW COME Defendants Onyia, Windley, Osborne, McCourt and Miller ("Defendants"), pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, and hereby provides responses to Plaintiff's Second Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendants (hereinafter "Discovery Requests").

## GENERAL OBJECTIONS

A.    Defendants object to any and all "Instructions" and "Definitions" contained in the Discovery Requests to the extent those "Instructions" and "Definitions" are beyond the scope of the requirements under the Federal Rules of Civil Procedure or beyond the scope of any prior orders entered in this case. Furthermore, Defendants object to the Discovery Requests to the extent that they seek to define terms and/or characterize evidence in this matter. To the extent that Defendants adopt any terms used by Plaintiff in the Discovery Requests, such adoption is solely limited to the objections and responses herein and does not constitute an admission of law or fact by Defendants.

B.    The inadvertent disclosure of information or the production of documents by Defendants containing information protected from discovery by the attorney-client privilege, work product doctrine, or any other applicable privilege, shall not constitute a

Note: Received on Thursday, October 2, 2025. Central Prison, Unit-3.

waiver of such privilege with respect to that information or those or any other documents. In the event that inadvertent production occurs, the Plaintiff shall return all inadvertently produced documents to Defendants' counsel upon request, and/or shall make no use of the contents of such information or documents nor premise any further discovery on information learned therefrom.

C.      Pursuant to statute, prison records are maintained in a classified manner, N.C.G.S. § 148-76, "under the control and direction of the Secretary of Public Safety ['Secretary']," *id*. § 148-74. The records of prisoners in the custody of the Department of Public Safety ("DPS"), Division of Adult Correction ("DAC") are confidential and are not subject to inspection by the public or the inmate or those acting on behalf of the inmate. *Goble v. Bounds*, 13 N.C. App. 579, 186 S.E.2d 638, *aff'd* 281 N.C. 307, 188 S.E.2d 347 (1972). Except as otherwise noted, all documents referenced herein or provided herein are not in Defendant's possession or control, but have been provided to the undersigned Assistant Attorney General at the direction of the Secretary of Public Safety for the limited purpose of the defense of this action under the Defense of State Employees Act, N.C.G.S. § 143-300.2 *et seq*. All such documents remain classified, confidential, privileged and under the control and direction of the Secretary.

D.      Defendants have responded to the Discovery Requests as they interpret and understand them. If Plaintiff subsequently asserts an interpretation of any Discovery Request differing from Defendants' understanding, Defendants reserve the right to supplement its objections and responses.

E.      Defendant objects to all interrogatories and request for production that is overly broad, unduly burdensome, harassing, duplicative or which requests documents which are already in the possession of Plaintiff.

F.      The Defendants expressly reserve their right to supplement or modify these responses with such pertinent information as he may hereafter discover and will do so to the extent required by the Federal Rules of Civil Procedure. Defendants acknowledge their continuing duty to supplement these responses. The Defendants expressly reserve the right to rely on, at any time, including trial, subsequently discovered documents and/or materials that have been produced promptly upon discovery.

2

G.     All answers to Discovery Requests are subject to these general objections. Any answer provided herein is not intended to, and should not be understood to, waive these general objections.

## III. Interrogatories

### *To Defendant Onyia:*

20.     Describe in detail the role that Defendant Windley played in the use of force against Plaintiff on December 21, 2022.

**RESPONSE:** Sgt. Windley assisted with gaining control of the offender by placing him against the wall when he was pulling away from staff during the incident.

21.     Describe in detail the role that Defendant Osborne played in the use of force against Plaintiff on December 21, 2022.

**RESPONSE:** Sgt. Osborne performed a search of the offender's person and he applied restraints on him during the incident.

22.     State your contentions regarding what happened during the incident on November 28, 2022, which resulted in a PREA report against you for "Staff Sexual Harassment." *See* 0746.

**RESPONSE:** Sgt. Windley and I escorted Offender England to DHO. During this time, Offender England became upset and threatened to spit at the DHO officer. He was then escorted back to his cell. Once the door was secured, I opened the trap (food passage door) to remove Offender England's restraints. At this time, the offender was attempting to manipulate his restraints bringing them from the back to the front. I directed him to stop which he did not do. Sgt. Windley administered OC pepper spray into the offender's cell. Sgt. Windley directed the offender to come to the door, which he complied, and the restraints were removed.  This is the incident that the PREA was based on. The offender stated that I pinched his buttock.

23.     State your contentions as to whether, under DAC policy, an officer who is accused of sexually harassing a prisoner may perform a strip search on that prisoner while the sexual harassment is under investigation.

3

**RESPONSE:** No staff are not able to perform a strip search on an offender with an active PREA allegation.

24. State your contentions as to why Plaintiff was escorted to medical if you were not aware of any injuries. *Compare* Onyia Response to Interrogatory #8 *with* Onyia Response to Interrogatory #12.

**RESPONSE:** When force is used on an offender, per policy the offender must be medically screened.

25. State your contentions as to why the disciplinary charge made against Plaintiff related to the events of December 21, 2022 was dismissed.

**RESPONSE:** Upon information and belief, charges made against plaintiff were recommended for dismissal due to time elapsed and difficulty to reinvestigate.

### *To Defendant Windley:*

20. Describe in detail the role that Defendant Onyia played in the use of force against Plaintiff on December 21, 2022.

**RESPONSE:** Sgt. Onyia assisted with placing the offender against the wall.

21. Describe in detail the role that Defendant Osborne played in the use of force against Plaintiff on December 21, 2022.

**RESPONSE:** Sgt. Osborne applied handcuffs to Offender England's wrist.

22. State your contentions regarding what happened during the incident on November 28, 2022 which resulted in a PREA report against you for "Staff Sexual Harassment." *See* 0746.

**RESPONSE:** I escorted Offender England to DHO during this time Offender England became upset and threatened to spit on the DHO officer. Sgt. Onyia and I escorted him back to his cell. Once the door closed, Sgt. Onyia opened the food passage door to remove the offender's restraints. Offender England attempted to manipulate his restraints by

4

bringing them from the back to the front of his body. Sgt. Onyia told him to stop, which he did not comply. I pepper sprayed into the offender's cell which landed on his facial area. Then I directed him to come to the door, which he did. Sgt. Onyia removed the restraints. Offender accused Sgt. Onyia of pinching his buttocks when he removed the restraints from his wrists.

23. State your contentions as to whether, under DAC policy, an officer who is accused of sexually harassing a prisoner may perform a strip search on that prisoner while the sexual harassment is under investigation.

→ RESPONSE: No, they cannot perform a strip search.

24. State your contentions as to why Plaintiff was escorted to medical if you were not aware of any injuries. *Compare* Windley Response to Interrogatory #8 *with* Windley Response to Interrogatory #12.

RESPONSE: Anytime force is used on an offender by staff a use of force medical assessment must be conducted to ensure there are no injuries.

25. State your contentions as to why the disciplinary charge made against Plaintiff related to the events of December 21, 2022 was dismissed.

RESPONSE: Upon information and belief, charges made against plaintiff were recommended for dismissal due to time elapsed and difficulty to reinvestigate.

*To Defendant Osborne:*

19. Describe in detail the role that Defendant Windley played in the use of force against Plaintiff on December 21, 2022.

RESPONSE: On Dec. 21, 2022, Defendant Windley assisted with the Use of Force with Plaintiff England because Plaintiff England was combative and aggressive. Use of force was necessary Plaintiff England was escorted to medical.

20. Describe in detail the role that Defendant Onyia played in the use of force against Plaintiff on December 21, 2022.

5

Note: If I was so combative and aggressive as Defendants claim the B25 charge would not have been dismissed.

**RESPONSE:** Defendant Onyia assisted with the Use of Force with Plaintiff England because Plaintiff Egland was combative and aggressive. Use of Force was necessary; Plaintiff England was escorted to medical.

21. State your contentions as to why Plaintiff was escorted to medical if you were not aware of any injuries. *Compare* Osborne Response to Interrogatory #8 *with* Osborne Response to Interrogatory #12.

**RESPONSE:** On Dec. 21, 2022, Plaintiff England was brought to medical, because after a Use of Force Offender's are Medically screened Under DAC Policy.

22. State your contentions as to whether, under DAC policy, an officer who is accused of sexually harassing a prisoner may perform a strip search on that prisoner while the sexual harassment is under investigation.

**RESPONSE:** Officers who are under a sexual harassment investigation will/ shall not strip search any Offender who is involved with that investigation, as long as that Officer has knowledge of the investigation or are aware of the investigation on him or her.

23. State your contentions as to why the disciplinary charge made against Plaintiff related to the events of December 21, 2022 was dismissed.

**RESPONSE:** Upon information and belief, charges made against plaintiff were recommended for dismissal due to time elapsed and difficulty to reinvestigate.

### To Defendant McCourt

19. For each employment position you have held with the North Carolina Department of Adult Correction, state the following: (1) your job title, (2) the start and end dates of your employment, and (3) the prison in which you were employed.

**RESPONSE:**
(1) Correctional Officer / Correctional Sergeant III (current)
(2) January 2003 – Present.

6

(3) Johnston Correctional Inst 2003 - 2008, Wayne Correctional Inst 2010 – 2012. Central Prison 2012 – Present.

## To Defendant Miller

**14.** State your contentions as to when you provided ice packs and pain medication to Plaintiff, and where you were located in the prison when you provided ice packs and pain medication to Plaintiff.

**RESPONSE:** The ice pack and pain medication were given to the offender in the Unit 1 clinic where the physical assessment took place. All of our nursing protocol supplies are stored there. He received them after the assessment was completed. I do not recall any photos being taken of the offender.

## IV. Requests for Production of Documents

### To All Defendants:

23. All photographs taken of Plaintiff in connection with the incident on November 28, 2022, as referenced in the Incident Report produced at Bates 0699 and 0701.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants are not in possession of any photographs taken of Plaintiff on November 28, 2022.

24. All video recordings of the incident on November 28, 2022, as referenced in the Incident Report produced at Bates 0701.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have provided video footage obtained from November 28, 2022, Incident Report #3100-22-782, via Sharefile to Plaintiff's attorney.



Note: See Bates 0611 which shows Position: "Standing"

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 81 of 295

25. All documents relating to any disciplinary charges brought against the Plaintiff from March 1, 2023 to August 10, 2023, including but not limited to incident reports, witness statements, notes, memoranda, correspondences, video and audio recordings, and decisions made by the Disciplinary Hearing Officer (DHO).

RESPONSE: Defendants object to responding to this Request on the grounds that it is overly broad and unduly burdensome; and that it requests information that is irrelevant and not proportional to the needs of this case, and therefore, seeks information outside the scope of discovery. Subject to and without waiving the foregoing objections, Defendants have produced Plaintiff's disciplinaries dated 3/23/23, 6/28/23, and 7/15/23 (attached with **Bates 1070-1103**).

Additionally, Defendants have requested any investigative materials pertaining to Plaintiff's 3/23/23 and 6/28/23 disciplinaries and will supplement if/when available. Defendants object to providing any additional investigative materials for Plaintiff's disciplinary dated 7/15/23, as it is irrelevant to the matters of this lawsuit.

26. All training or instructional materials provided to PERT members at Central Prison in 2022 concerning strip searches in the performance of PERT searches and uses of force in the performance of PERT searches.

RESPONSE: Defendants object to responding to this Request on the grounds that the requested training or instructional materials potentially contain highly sensitive security information not subject to disclosure as doing so poses a security risk.

27. All photographs taken of Plaintiff's right buttock and/or knee on December 21, 2022. See Bates 0894, 0901-0902.

RESPONSE: Subject to and without waiving the foregoing objections, Defendants have produced all photographs obtained on December 21, 2022, which were included with Incident Report #3100-22-1160. There were no additional photographs saved with the PREA Incident Report # 3100-22-1198.

28. All Incident Reports or "investigator reports" for PREA Incident # 3100-22-782 and PREA Incident # 3100-22-1198. *See* Bates 0746, 0783, 0787, 0788, 0803.

8

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants have previously provided the November 28, 2022, PREA Incident Report #3100-22-782 (*see* Bates 0699-0750). Hereto, Defendants have produced the December 21, 2022, PREA Incident Report #3100-22-1198, with accompanying witness statements (attached with Bates 1104-1118), in addition to video footage saved with Incident Report #3100-22-1198, which has been provided via Sharefile to Plaintiff's attorney.

## V. Requests for Admission

### To Defendant Onyia:

21. Admit that there was a PREA report by the Plaintiff pending against you on December 21, 2022.

**RESPONSE:** Upon information and belief, it is admitted that a PREA incident was reported on December 15, 2022, regarding incident #3100-22-782; however, it is denied that an investigation into the allegations had commenced, or that any named staff had been informed of an investigation as of December 21, 2022.

22. Admit that when a prisoner makes a PREA report against a member of correctional staff, the staff is supposed to remain separated from the victim until the conclusion of the investigation.

**RESPONSE:** Admitted.

23. Admit that when a prisoner makes a PREA report against a member of correctional staff, DAC policy requires the staff member to remain separated from the victim until the conclusion of the investigation.

**RESPONSE:** Admitted.

24. Admit that it is against DAC policy for a staff member to strip search a prisoner who has filed a PREA report against them, in the absence of exigent circumstances, while an investigation is pending.

**RESPONSE:** Admitted.

9

25.    Admit that the disciplinary charge leveled against Plaintiff related to the events of December 21, 2022 was dismissed.

RESPONSE: Admitted.

### To Defendant Windley:

21.    Admit that there was a PREA report by the Plaintiff pending against you on December 21, 2022.

RESPONSE: Upon information and belief, it is admitted that a PREA incident was reported on December 15, 2022, regarding incident #3100-22-782; however, it is denied that an investigation into the allegations had commenced, or that any named staff had been informed of an investigation as of December 21, 2022.

22.    Admit that when a prisoner makes a PREA report against a member of correctional staff, the staff is supposed to remain separated from the victim until the conclusion of the investigation.

RESPONSE: Admitted.

23.    Admit that when a prisoner makes a PREA report against a member of correctional staff, DAC policy requires the staff member to remain separated from the victim until the conclusion of the investigation.

RESPONSE: Admitted.

24.    Admit that it is against DAC policy for a staff member to strip search a prisoner who has filed a PREA report against them, in the absence of exigent circumstances, while an investigation is pending.

RESPONSE: Admitted.

25.    Admit that the disciplinary charge leveled against Plaintiff related to the events of December 21, 2022 was dismissed.

10

→ **RESPONSE:** Admitted.

### *To Defendant Osborne:*

25. Admit that the disciplinary charge leveled against Plaintiff related to the events of December 21, 2022 was dismissed.

→ **RESPONSE:** Admitted.

This the 15th day of September 2025.

**JEFF JACKSON**
**ATTORNEY GENERAL**

/s/ Clarence Turpin, V
Clarence Turpin, V
Assistant Attorney General
N.C. State Bar No. 53926
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6431
Facsimile: (919) 716-6761
E-mail: cturpin@ncdoj.gov

11

**CERTIFICATE OF SERVICE**

I hereby certify that, on this day, I served the foregoing *Defendants' Responses to Plaintiff's Second Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendants* via email to the following individuals:

> Sunny Frothingham
> N.C. Prison Legal Services, Inc.
> sfrothingham@ncpls.org

This the 15th day of September 2025.

/s/ Clarence Turpin, V<br>Clarence Turpin, V<br>Assistant Attorney General

12

Exhibit 1-T

CC

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
## No. 5:24-CT-3006-M-RJ

| | |
|---|---|
| JONATHAN DAVID ENGLAND, <br> Plaintiff, | DECLARATION OF <br> JONATHAN D. ENGLAND |
| V. | |
| OKECHUKWU M. ONYIA, et al., <br> Defendants. | |

I, Jonathan England, being competent to testify, and having personal knowledge of the matters herein, hereby state:

1. I am an adult over the age of 18, have never been adjudged incompetent, and make this declaration of my own free will, stating facts of which I have personal knowledge.

2. I am the Plaintiff in this action.

3. I have been incarcerated since September 5th, 2021.

4. Before fileing this action I have never filed a lawsuit.

5. On December 21, 2022, at about 7:20am I was awoken to the sound of three (3) prison guards outside of my cell BU-206 EAST SIDE on the Upper

2

6. Two of the guards, Okechukwu Onyia and Darnell Windley, were <u>NOT</u> Supposed to be around me due to an active PREA Complaint I had put on them on 12/15/2022. They were <u>NOT</u> supposed to even be in the same block as myself.

7. This was a <u>major</u> violation of both federal PREA Standards and DAC Policy and Procedure. Not to mention a <u>major</u> violation of Central Prison Standard Operating Procedures (S.O.P.).

8. The third guard, Joel Osborne, had just had a DC-410 Prison Grievance put on him that was received and accepted by grievance Coordinator, Natoshia Lynch on 12/01/2022. This grievance was filed by Me on Joel Osborne regarding housing assignments on Unit-1.

9. Unit-1 is restrictive housing and per DAC Policy and Procedure all prisoners <u>MUST</u> be restrained in Mechanical cuffs <u>BEFORE</u> their cell door is opened. This rule is Strictly enforced at Central Prison, and at all other Close Custody/Maximum Security prisons in North Carolina.

10. The <u>ONLY</u> exception to this rule is when guards suit up in fluffy plastic Shoulder pads, helmet, shin guard, and a clear plastic Shield. The incident <u>MUST</u> be recorded with a small handheld digital camera.

11. Upon arriving at my cell door on December 21, 2022, Defendant Onyia, with his face up to my cell door window, immediately started demanding that I get naked for him. Asking me to "Strip naked, lift my dick and balls

Case 5:24-ct-03005-M-RJ    Document 78-3    Filed 03/06/25    Page 88 of 295

çc

and then turn around and squat and cough." Defendant Windley was right beside Onyia and began taunting me saying " I'm here, i'm out here, wanna put a **PREA** on me, im right here".

12. I told them that I would comply with the strip search, but NOT for Onyia or Windley because of the active PREA complaint I had filed against them six (6) days prior.

13. At the time of this P.E.R.T. search all three (3) Defendant's were low ranking prison guards.

14. Defendant Windley stands in front of my cell door, as he is seen on camera, smileing and waveing at the other guards down on the bottom level of the block. He knows he's fixing to hurt me in order to punish me for the PREA complaint I had put on him and Onyia mere days before this search. When the food passage trap door opens I submitted to the mechanical restraints.

15. Defendant Osborne handcuffed me behind my back through the trap, then violently pulled me out through the trap until he could not pull me any further. This action took my feet off the floor.

16. This was captured by the surveilance camera's mounted on the wall inside of the housing unit.

17. As seen on video, as soon as the three (3) Defendant's get my cell door opened they immediately attack me, shoving me into my cell out of sight of the wall mount cameras. Both Onyia and Windley swinging wildly on me. Punching me repeatedly in my legs and torso.

18. Defendant Osborne stood at the doorway and watched them beat me without trying to stop them.

19. During the beating both Defendant's Onyia and Windley began pulling my underwear/boxers down, and Onyia said to me "you told them I raped you", referring to the active PREA report I had just put on him and Windley six (6) days before.

20. Defendant Osborne then steped in and punched me in the left side of my head, and kneed me in my stomach.

21. I was handcuffed behind my back during the beating.

22. When my cell door first opened the top of my head can be seen on the video, because I was standing at my doorway. And, instead of grabbing me and pulling me out of my cell and placing me on a flat surface (the wall) **outside** of my cell where the camera can record the incident, the Defendant's violently shove me **into** the cell (blind spot) where the camera's can't see the beating. Why did they do this? Because Defendant's Onyia and Osborne acted with a sufficiently culpable state of mind.

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 90 of 295

cc

23. As seen on video, the three (3) maliciously motivated Defendants enter my housing block and make a bee line to my door. On a mission to hurt me and make me pay for the PREA complaint and prison grievance. And thats exactly what they did.

24. When guards interact with prisoners it is supposed to happen in front of security Cameras if at all possible. And prison guards are not to be inside of cells with prisoners. The Defendants know this. Defendants could have, and should have pulled me **out** of my cell once the door opened. They Chose not too.

25. Instead, they Chose to Shove me into my dimmly lit cell so they could beat me.

26. I can be seen on video red all over and limping, when Kamil Slaczka and I exited the Cell. Why am I limping? Why am I red all over? I'm not laying in that dimmly lit cell getting Sun burned through the Cell window.

27. The Force used by the three Defendants was beyond excessive and maliciously applied, and was not necessary, nor did it serve any legitimate penalogical objective.

28. It is clear that Defendants, Onyia, Windley, and Osborne violated my Constitutional rights and that's exactly what they wanted to do. And the rights violated were clearly established at the time of the 12/21/22 beating.

Case 5:24-cv-03006-NCRJ    Document 76-9    Filed 03/28/26    Page 91 of 295

cc


29. Defendant's, and their attorney, Can NOT seriously argue that the three Defendant's did not violate my Constitutional rights on December 21rst, 2022.

30. And the three Defendant's can NOT Seriously argue that they are entitled to any kind of immunity, as there is No immunity for guards who willfully violate the law.

31. Furthermore, the three Defendants are very lucky not to be in prison as an inmate, and are getting off easy with facing only a Civil lawsuit.

32. The three Defendants trashed my cell once I was escorted out of my cell. They did not find any weapons, drugs, or any other Contraband in my Cell.

33. At no time did Kamil Slaczka take me to the Unit-1 medical clinic, nor did anyone else take me to the Unit-1 Clinic on 12/21/2022. The medical assessment took place in A-East Holding Cell and blood pressure taken with me "Standing" inside of Cell BU-206.

34. At no time did prison nurse Robin C. Miller give me or bring me an ice pack. At no time did prison nurse Robin C. Miller give me or bring me any pain medication.

35. I was not kicking my cell door when Defendant Shon McCourt used OC pepper spray on me on February 23, 2023. Video footage obtained in discovery will verify this, due to Padlock on Cell door NOT moving when I was sprayed

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/25   Page 92 of 295

36. Defendant McCourt repeatedly made comments about the PREA I had on two of his guards (Onyia and Windley). This was witnessed by other people. Defendant McCourt has a long history of assaulting people. Upon information and belief Defendant Shon McCourt is now working in "Operations" at Central Prison, and is no longer allowed to work around the prisoner population due to his assaultive behavior. Another Prison Official told me last year that Shon McCourt was removed from working on Unit-1 because he kept getting into trouble. And on February 23, 2023, Sgt. Mcourt handed me an empty tray, and refused to give me my snack bag at 3:45pm.

37. Okechukwu Onyia was being investigated the end of last year (2025) for another incident involving excessive force on another prisoner. This upon information and belief, as I spoke to the prisoner personally.


38. Central Prison administration punishes prisoners for bad behavior, but rewards prison guards for bad behavior. Onyia made Sergeant two months after he beat me. He made Sergeant February or March of 2023, not 2022. Windley and Osborne was also promoted to Sergeant position soon after the beating. And prison nurse Robin Miller was also promoted to Charge Nurse. This reward for bad behavior, by prison staff, encourages other guards and prison nurses to break the laws and violate prisoners' Constitutional rights. Beat a handcuffed, helpless, prisoner who's confined in a one-man cell and get a promotion! And, if the prisoner files a lawsuit later the State of North Carolina will even get you a free lawyer under the Defense of State Employees Act! This is dangerous and invites the unnecessary use of excessive force on restrained prisoners' at the guards unbridled discretion.

Case 5:24-ct-03086-M-RJ   Document 76-3   Filed 03/26/25   Page 93 of 295

39. Defendant's can NOT seriously argue that I am just another inmate to them, and they did not then, and do not now, hold any feelings of ill-will towards me. Nor can Defendant's Onyia, Windley, Osborne, and McCourt seriously argue that they never wanted to harm me.

40. Upon information and belief, Defendant Darnell Windley's wife also works at Central Prison as a prison nurse, which may have played a part in Robin C. Miller's attempt to try and down play or minimize my injuries on 12/21/2022. And may have played a part in the extremely long delay in both the X-ray's and MRI.

41. Law enforcement officers take an oath, and swear to protect the people they serve, including those in their custody. The Defendant's defiled that responsibility and violated my civil rights. Prison guards are supposed to carry out their duties honorably and with integrity. Defendant's Onyia, Windley, and Osborne abused their position of power to carry out a violent assault on me while I was restrained, and posed no threat to them, or the other 25 guards in the block. The Defendant's disgraced their badge and harmed a person they were sworn to protect. Violence against inmates and false reporting have no place in the prison system. And Department of Adult Corrections (DAC) should have zero tolerance for prison guards who commit these egregious crimes. A badge and a uniform is not a license to beat and bully. Defendant's Onyia, Windley, and Osborne falsified their use of force reports after the beating, and Sergeant Kamil Slaczka went right along with it... his fellow Defendant McCourt also falsified his use of force report after he sprayed me with pepper spray

for no reason, and c/o Yadira Amerson went right along with him. Most law enforcement officers are dedicated, honest, and fully committed to building trust within their communities, but those who break the law stain the reputation of the law enforcement profession. Defendant's Onyia, Windley, Osborne, and McCourt are a stain on the reputation of the law enforcement profession. Being a prison guard does not come with the authority to ignore the Constitution or the rights of others, and those who violate it will or should be held accountable.

42. And, even with all of the lying, denying, and shifting of blame by the five Defendants, the truth is coming out.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Further the declarant sayeth not.

This the 21 day of March 2026.

Jon England
Jonathan /England
Plaintiff pro se

Exhibit 1-U

DC-239

# RULES AND POLICIES

Governing the Management and Conduct

of Offenders Under the Control of

the Prisons

# OFFENDER BOOKLET



NC Department of Adult Correction

**DEPARTMENT OF ADULT CORRECTION**

**Raleigh, North Carolina**

**October 2023**

# CONTENTS

Introduction ........................................................................................................................3
Definitions .........................................................................................................................4
Offender Property and Offender Trust Fund ......................................................................6
Money .................................................................................................................................6
Personal Property ...............................................................................................................6
Authorized Items ................................................................................................................6
Custody Classification ........................................................................................................7
Sentence Reduction Credits ...............................................................................................8
Good Time ..........................................................................................................................8
Gain Time ............................................................................................................................8
Meritorious Time ................................................................................................................8
Earned Time ........................................................................................................................8
Misdemeanants ...................................................................................................................8
Emergency Leave ................................................................................................................9
Disciplinary Procedures .....................................................................................................9
Disciplinary Offenses ........................................................................................................10
Administrative Fees ...........................................................................................................15
Disciplinary Punishments ..................................................................................................15
Offender Disciplinary Rights .............................................................................................17
Mail .....................................................................................................................................18
Health Care Services ..........................................................................................................19
DNA Testing .......................................................................................................................19
Visitation .............................................................................................................................19
Tobacco Policy and Procedures .........................................................................................20
Exercise of Religion ...........................................................................................................20
Work Activities ...................................................................................................................20
Program Activities ..............................................................................................................23
Home Leave Program .........................................................................................................23
Community Volunteer Program ..........................................................................................24
Access to the Courts ...........................................................................................................25
Outstanding Charges, Detainers .........................................................................................26
Offender Grievances-Administrative Remedy Procedure (ARP) ......................................27
Structured Sentencing Act – Release .................................................................................30
International Prisoner Transfers ..........................................................................................30
Foreign Consular Notification ............................................................................................30
Post Release Supervision and Parole .................................................................................30
Post Release Supervision and Parole Eligibility ...............................................................31
The Parole Process ..............................................................................................................33
Factors Considered in Making Parole Decision .................................................................34
Notification of Parole Denial .............................................................................................36
Interstate Parole Compact ..................................................................................................37
Parole Supervision/Post Release Supervision ...................................................................37
Sexual Abuse .......................................................................................................................37

Revised April 2010

## INTRODUCTION

This booklet has been prepared for you as a guide while you are in prison. Important rules that you are to follow while you are in prison are written here.

These rules have been written in agreement with the law and written in this booklet in short form. If there is any conflict between the rules contained in this booklet and the Department of Adult Correction's Policy and Procedures Manual, go by the rules in the Policy and Procedures Manual. If you will read and follow the rules in this booklet, your time in prison will be easier.

The people who work for the Prisons can be of help to you. If you have any questions about any matter, ask a member of the staff. If you have any questions about any of the rules in this booklet, see a staff member and they will answer your questions.

Obey all prison rules and make the most of chances to show that you can act in a manner which can lead to your release.

se 5:24-ct-03006-M-RJ     Document 76-3     Filed 03/26/26     Page 98 of ?

3

## DEFINITIONS

**ADMINISTRATIVE SEGREGATION-** An assignment status that temporarily removes an offender from the general population and places them in a single cell on a short-term basis to provide control or protection of the offender pending final classification or disciplinary action.

**REGION DIRECTOR-** A person who is in charge of several prison facilities in a geographic region.

**COMBINED RECORDS-** A place located in the main office in Raleigh where copies of offender records are kept.

**COMMUNITY VOLUNTEER-** Persons from the community who give their time to help offenders. Under certain conditions, a volunteer may take an offender out on pass for short periods.

**COMMITTED YOUTHFUL OFFENDERS-** Offenders who are under 25 years of age and who are sentenced as a Committed Youthful Offender by a judge. This designation was eliminated by the structured sentencing laws for offenses committed on or after October 1, 1994.

**DEATH ROW-** The assignment status of offenders admitted to prison on a death order commitment. These persons are housed only at Central Prison and at the North Carolina Correctional Institution for Women.

**DIRECTOR OF PRISONS-** The person who is in charge of all prisons in the state.

**DISCIPLINARY SEGREGATION-** The assignment status of offenders who are subject to punishment after being found guilty of a rule violation.

**HIGH SECURITY MAXIMUM CONTROL-** The most restrictive location within the Prisons where the most disruptive and dangerous offenders may be housed.

**INDETERMINATE SENTENCE-** A sentence that has two parts - a lesser (minimum) and a greater (maximum). An example is 4 (lesser) to 6 (greater) years.

**WARDEN, CORRECTIONAL ADMINISTRATOR or SUPERINTENDENT-** A person who is in charge of a prison.

**INTENSIVE CONTROL-** An assignment status for offenders who have shown disruptive behavior through disciplinary offenses, assaultive actions or who otherwise have been a continuous disruptive influence on the operation of the facility to the extent that additional structure and management by prison authorities are required.

**INVESTIGATING OFFICER-** A person who gathers the facts when it is felt that an offender may have broken the rules or some incident has happened.

MAXIMUM CONTROL- A status designated to control offenders who pose a threat to the safety of staff and other offenders or who otherwise pose a serious threat to the security of a prison facility.

PAROLE CASE ANALYST- A person who works for the Post-Release Supervision and Parole Commission. This person is in charge of studying the offender's records to decide if the offender is ready to be considered for parole.

PROTECTIVE CONTROL- Segregation to protect offenders when their lives or well-being may be threatened by staying in the general population.

RESIDENCE PLAN- The place where offenders plan to live when they get out of prison.

SECRETARY OF ADULT CORRECTION- The person appointed by the Governor who is in charge of the Department of Adult Correction.

SECURITY RISK- A possible danger to offenders, staff, the general public, etc.

SECURITY CONTROL STATUS- Level of individual supervision, isolation, and control.

SENTENCE REDUCTION CREDITS- Time credits applied to an offender's sentence that reduce the amount of time to be served. Included are Good Time, Gain Time, Earned Time and Meritorious Time.

STUDY RELEASE- Under certain conditions offenders may be allowed to leave prison for job training or to attend a school. They must return to the prison at the end of the school day.

UNSUPERVISED ACTIVITY- Under certain conditions offenders are allowed to leave the prison alone to go to work, school, or visit in their homes.

WORK PROGRAM- All offenders are expected to work either at the facility, or under certain conditions, offenders may be allowed to leave prison during the day to work. They must return to the prison at night.

# GENERAL REGULATIONS GOVERNING THE SUPERVISION AND CONDUCT OF OFFENDERS

## 1. OFFENDER PROPERTY AND OFFENDER TRUST FUND

**Money-** At all prisons a cashless canteen system is used and offenders are not allowed to have cash in their possession. Their canteen purchases are made with a debit card. Any offender found possessing cash shall be disciplined.

**Personal Property-** The following rules are used in each prison facility. Some prison facilities may add to these rules because of a need for more security and control. Any item you have not been authorized to possess is contraband, and in some situations illegal, and may be taken from you. Further, this may result in disciplinary action.

**Authorized Items-** A list of personal property items other than clothing that offenders may have is shown below. The Prisons will not be responsible for any items in the possession of the offender if they are damaged, lost, or stolen.

    (1)    Unless an offender in Medium or Close Custody is in a control status which prevents it, they may receive a reasonable number of books, newspapers, magazines, and other reading material directly from the distributor or publisher. (Publisher is defined to include legitimate wholesale marketers and distribution centers for published materials. This definition does not include retail bookstores.) An offender in Minimum Custody may receive reading material from any source. The reading material will be searched to make sure that it is not used to hide items that offenders are not allowed to have and that the material does not contain sexually explicit or nude pictures or other threats to security, order, or rehabilitation.

    (2)    Eyeglasses and cases not made of metal.

    (3)    Approved religious items.

    (4)    Offenders may possess one canteen purchased watch. They may also possess a wedding ring and engagement ring for women. All other jewelry will be sent home at the owner's expense. The cost of these items shall not exceed $100.00 total value.

    (5)    Offenders may possess one battery operated transistor radio ("Walkman" style) with earplugs, not larger than 5" long by 3" high by 1" deep. These radios must be purchased from a facility or institutional canteen. The Prisons will not replace any radio that is lost, damaged, or stolen. The officer-in-charge may designate an area where radios can be used without earplugs.

    (6)    Toothbrushes, shaving cream, safety razors, and blades.

(7) Unframed pictures not larger than 8 inches by 10 inches.

(8) Canteen items which are purchased at one facility of the prison system by an offender
may be taken to another facility by the offender when he/she is transferred.

(9) Offenders are allowed to receive personal mail approved according to the mail policy after these items have been searched for unauthorized items by a correctional officer.

(10) Wallets or pocketbooks.

(11) Legal papers- Offenders are allowed to keep legal papers for cases that are or may be coming before the courts. They may also keep other papers connected with legal matters when it is necessary for proper handling of the matter. Other legal papers may also be kept, but the amounts will be controlled in order to keep proper cleanliness, storage space, and security. If offenders have questions whether they can keep legal papers, they may ask the Director of Prisons or someone who may act for the Director to settle the question. When an offender is not allowed to keep legal papers that may be needed in the future, they may be stored in a safe place at the facility if space is available.

(12) Personal clothing- In addition, offenders granted community based privileges are allowed to have some items of personal clothing.

(13) Offenders may possess one pair of canteen purchased tennis shoes, one pair of shower shoes, and one pair of State issued work boots.

Prohibited Items- Items of personal property which offenders are not allowed to keep will be taken by an officer. If the offender has money to pay mailing costs, the property will be mailed to a person named by the offender. If the offender has no money, mailing costs will be paid by the Prisons. If the offender will not or cannot name a person to whom items may be sent, the unauthorized items will be given to charity or destroyed. The Prisons will not be responsible for storing or handling items that are not authorized.

## 2. CUSTODY CLASSIFICATION

Offenders are initially classified based on conduct, types of criminal offenses (Misdemeanor or Felony), sentence length, and other factors as **Minimum Custody, Medium Custody or Close Custody.**

**Minimum Custody-** This custody is the least restrictive and has the most privileges of the custody grades.

(1) Offenders in **Minimum Custody, Level One** may work on the grounds and away from a prison facility, as long as an officer is with them.

(2) Offenders in **Minimum Custody, Level Two** may work on the grounds

(2)      of a prison or away from the facility with supervision. They may also go out with a person from the community who has volunteered and is certified to work with the offender.

(3)      Offenders in **Minimum Custody, Level Three** may go off site from the facility for specific programs, jobs, school, or other kinds of training.

**Medium Custody-** This custody is more restrictive and has fewer privileges than **Minimum Custody**. Offenders in **Medium Custody** are under armed supervision.

**Close Custody-** This custody is under armed supervision and more restrictive than **Medium Custody** and is for those offenders who must be closely watched because they are an escape risk, they have been convicted of a very serious crime, or their actions in prison have shown that they will not follow the rules.

**3.     SENTENCE REDUCTION CREDITS**

**Good Time-** All offenders whose crimes occurred before October 1, 1994, except those serving sentences for which State laws prohibit the awarding of Good Time, will receive credit for good behavior at the rate of (1) day deducted for each day spent in custody without a major infraction. Good Time credits that have been awarded may be taken away through the disciplinary process as a result of being found guilty of a rule violation. Good Time forfeited through the disciplinary process may be restored, if the offender's behavior improves, by administrators, institution heads, and/or local confinement authorities.

**Gain Time-** If an offender's crime occurred before October 1, 1994, additional time may be earned off his/her sentence through what is known as Gain Time, except in those situations in which State law prohibits the awarding of Gain Time. Gain Time earning rates vary and are based on the type of job or program the offender is assigned and other factors as may be determined by the Prisons. Contact your case manager for more detailed information about Gain Time.

**Earned Time-** If an offender's crime occurred on or after October 1, 1994, additional time may be earned off his/her sentence through what is known as Earned Time, with the exception of those persons convicted of certain felonies and Driving While Impaired (DWI). Earned Time eligible offenders are not eligible for Good Time. Earned Time may not reduce the offender's sentence to less than the minimum term.

**Misdemeanants-** Offenders sentenced for misdemeanors, other than DWI, committed on or after October 1, 1994, may receive Earned Time credit for work performed and participation in specific training programs. Misdemeanants may only receive up to 4 days Earned Time credit per month.

**Meritorious Time-** If an offender works more than 40 hours per week, works in bad weather or works under emergency conditions, the Prisons may award additional Gain Time credits. Meritorious Time credits vary according to the reason for the reward.

All sentence credits are calculated separately for each sentence and time credits for one

sentence do not affect another sentence.

## 4. EMERGENCY LEAVE

Minimum Custody offenders may be given as much as 72 hours Emergency Leave. Medium and Close Custody offenders may only attend a private viewing. The reasons for granting Emergency Leave are listed below:

    (a)    Critical illness of an immediate family member- The nature of the illness of an immediate family member must be verified by a capable medical person. The word "critical" means probable death within a short period of time. The birth of a child will not be regarded as critical illness unless the doctor in charge says that the mother's condition is not normal and that unusually serious conditions are involved.

    (b)    Death of an immediate family member- Verification of death of an immediate family member may be received from a local law enforcement officer (sheriff or chief of police), physician, undertaker, or director of social services. (The immediate family is considered to be father, mother, sister, brother, husband, wife, child, foster parents, grandparents (Minimum Custody only), or other persons who have acted in the place of parents, where such relationship can be verified.) The approving authority is dependent upon the offender's custody level. Offenders on control status should not be approved for Emergency Leave.

Emergency Leave to go outside the State of North Carolina must be approved by the Region Director or designee. Offenders leaving the State of North Carolina must be in Minimum Custody, must post a cash bond in the amount of $500 with the Superintendent or Facility Head, and must sign a waiver of extradition. (Form DC-128).

## 5. DISCIPLINARY PROCEDURES

    (a)    Any violation of departmental rules and regulations could result in disciplinary action. Please make certain that you fully understand all rules, or ask your assigned case manager to assist you. Any employee or agent of the Department of Adult Correction who observes misconduct by an offender may try to counsel with him/her to correct this misbehavior. If counseling does not improve the behavior, the officer-in-charge can be notified.

    (b)    The officer-in-charge will determine if further investigation is needed. If so, an investigating officer will be assigned. Written statements will be obtained from all parties involved. The offender has a right to request in writing prior to the hearing witness statement(s), live witness (es) to be present at the hearing, evidence at the hearing, and staff assistance. The offender will be given 24 hours notice before being required to appear at a disciplinary hearing, unless that is waived.

After a thorough investigation, if the facts do not support the charge, the investigating officer may recommend that the Superintendent or designee discontinue disciplinary action. Confidential statements may be a part of the investigation, if deemed appropriate.

(c)     If the Facility Head or designee determines that disciplinary action is appropriate, an official report will be prepared. When the charges are referred by the Facility Head or designee, the offender may voluntarily offer a plea of guilty and accept a punishment less than the presumptive punishment specified in policy. The punishment will be one class below the offense to which the offender is pleading guilty or the Facility Head or designee may suspend the presumptive punishment if deemed appropriate. Should you offer a plea of not guilty, your case will be referred to a Disciplinary Hearing Officer. You may offer a plea of guilty to the Disciplinary Hearing Officer, or if found guilty, the hearing officer will determine the appropriate punishment as authorized by policy.

(d)     Disciplinary Hearing Officers (DHOs) are chosen to provide a fair and impartial disciplinary hearing. Anyone who initiates a charge or is a witness can neither investigate the incident nor can he/she represent the accused. If an offender is found guilty, the Disciplinary Hearing Officer (DHO) may impose punishment consistent with disciplinary offenses, Class A through Class D. Class A offenses are the most serious and Class D are the least serious. Punishment for the serious offenses include disciplinary segregation for up to 60 days, demotion from Minimum to Medium Custody, or Medium to Close, and loss of (40) days sentence reduction credits. Less punishment is imposed for less serious offenses.

(e)     After the Disciplinary Hearing Officer (DHO) imposes punishment, except when a hearing is waived and plea of guilty is entered, the offender has (15) days from the date of the hearing to appeal in writing to the Director of Prisons stating full name, prison number, facility/ number, offense and date of offense. Punishment is active immediately and may be imposed by the Facility Head or designee. Appeal of the disciplinary will not delay punishment from being imposed.

## 6.     DISCIPLINARY OFFENSES

**CLASS A:**

(A1)    Seize or hold a hostage or in any manner unlawfully detain any person against his/her will;

(A2)    Participate in a riot, insurrection, work stoppage or group demonstration, or incite/encourage others to riot, participate in an insurrection, work stoppage or other group demonstration;

(A3)    Commit an assault on a staff member with a weapon or by any other means likely

to produce injury, such as hitting, kicking, pushing, pulling, throwing objects.

(A4) Commit an assault on another with a weapon or any other means likely to produce injury;

(A5) Commit an assault on another with intent to commit any sexual act;

(A6) Escaping or attempting to escape from any prison facility, community assignment, during transport, or from the supervision of DAC staff or its authorized agent. Attempt will include possession of escape plans, possession of any object that could aid in an escape, attempt to hide within the facility to affect an escape, or any other action that could result in escape if correctional staff did not intervene;

(A7) Possess, manufacture, and/or detonate an incendiary or explosive device;

(A8) Set a fire that endangers the life of another person or damages State property;

(A9) Commit an assault on a staff member by throwing liquids, (including but not limited to urine and feces) or spitting on a staff member;

(A10) Fight or engage in a mutual physical confrontation involving weapons (including but not limited to knives, locks, and razors); or resulting in outside medical attention;

(A11) Commit an assault on a staff member with intent to commit any sexual act;

(A12) Manufacture, possess, introduce, sell or use any unauthorized controlled substance, unauthorized intoxicant or alcoholic beverage, or possess associated paraphernalia;

(A13) Refuse to submit to a drug test or breathalyzer test, or interfere with the taking of such tests;

(A14) Participate in, or organize, whether individually or in concert with others, any gang or Security Threat Group (STG), or participate in any activity or behavior associated with a Security Threat Group;

(A15) Offer, give, solicit, or accept a bribe or offer to give or withhold anything to persuade staff to neglect duties or perform favors;

(A16) Possess or use in any manner any type of unauthorized recording or image taking device or any type of unauthorized communication device whether audio, video, or data. Examples include but are not limited to cell phones, personal digital assistants, cameras, tape recorders or digital recorders that can be used to send and/or receive any type of messages/images for any purpose;

(A17) Commit an assault on any person, other than an employee or offender, with intent to commit any sexual act;

(A18) Knowingly make to any person a false oral or written allegation about a staff

member that, if true, could expose the staff member to criminal liability; Be advised that staff shall include DAC employees and/or agents;

(A19)   Commit an assault on another by throwing liquids (including but not limited to urine and feces) or spitting on another;

(A20)   Wrongfully take, give away, or carry away, canteen inventory/cash, which results in a loss of more than one hundred dollars ($100.00);

(A21)   Extortion, strong-arming, verbal or physical intimidation for personal or financial gain;

(A98)   Deliberately provide false and/or misleading information to staff during an investigation related to any offense in this class;

(A99)   Attempt to commit any of the above-listed offenses, aid another person to commit any of the above-listed offenses, or make plans to commit any of the above-listed offenses. It shall be no defense that an individual was prevented from completing any of the above offenses by prison staff or intervening circumstances;

**CLASS B:**

(B1)    Possess or have under control any weapon or instrument to aid in an escape, assault, insurrection, or riot;

(B2)    Flood cell(s);

(B3)    Willfully tamper with, damage, or block any locking device, fence, door, gate or window;

(B4)    No longer in use.  Upgrade to A12;

(B5)    Knowingly inhale, smell, or breathe any vapors, fumes, odors, or possess for the purpose of inducing or attempting to induce intoxication through inhalation; or possess, inject, or ingest any non-controlled substance for the purpose of altering mental or physical capacity;

(B6)    Commit, solicit, or incite others to commit any sexual act or indecently expose oneself or touch the sexual or other intimate parts of oneself or another person for the purpose of sexual gratification;

(B7)    Instigate or provoke an assault on another;

(B8)    Interfere with a staff member in the performance of his or her duties;

(B9)    Violate any law of the State of North Carolina or the United States of America.
(B10)   Commit or incite others to commit acts which spread or may spread communicable

diseases; or possess any instruments capable of spreading communicable diseases (including but not limited to tattooing instruments and needles);

(B11)     No Longer in use. Upgraded to A13;

(B12)     Leave, quit without authorization, fail to report, or neglect to adhere to approved schedules for community based programs;

(B13)     Instigate or provoke an assault on a staff member;

(B14)     Willfully damage, destroy, alter, tamper with, or lose State property or property belonging to another;

(B15)     Communicating directly, indirectly, via a third party, or in any manner with victims, or family members of the victims, who have requested in writing to Department of Adult Correction officials that such communication is unwanted;

(B16)     Possession of any tobacco products or paraphernalia; or possession of unauthorized lighters or lighting devices; or using any tobacco products;

(B17)     Causing a work stoppage or delaying work while on community work assignment in the community, causing the offender to be returned to the facility due to offender misconduct;

(B18)     Threaten to harm or injure staff; (Upgrade from C12)

(B19)     Sell, accumulate, give, misuse, or hide medication; (Upgrade from C1)

**(B25) Disobey Order; ...**

(B98)     Deliberately provide false and/or misleading information to staff during an investigation related to any offense in this class.

(B99)     Attempt to commit any of the above offenses, aid another person to commit any of the above-listed offenses, or make plans to commit any of the above-listed offenses. It shall be no defense that an individual was prevented from completing any of the above offenses by prison staff or intervening circumstances;

## CLASS C:

(C1)     No longer in use. See Offense B19;

(C2)     Direct toward or use in the presence of any State official, any member of the prison staff, any offender, or any member of the general public, oral or written language or specific gestures or acts that are generally considered disrespectful, profane, lewd, or defamatory;

(C3)     Willfully disobey or fail to obey or cause another offender to disobey or fail to obey any lawful order of a prison official or employee, or any other lawful order to which subject;

(C4)     Fight or engage in mutual physical confrontation not involving weapons;

Upgraded To B25

(C5)   Offer, give, solicit, or accept a bribe or offer to give or withhold anything to persuade another to neglect duties or perform favors;

(C6)   Leave, quit without authorization, or fail to report to any facility job, work or program assignment, or scheduled appointment;

(C7)   Threaten to harm or injure another or threaten to damage the property of any person;

(C8)   Wrongfully take or carry away the personal property of another or State property or accept or buy such property with the knowledge it has been wrongfully taken;

(C9)   Barter or trade; loan or borrow; solicit or engage in any business activity;

(C10)  Intentionally inflict self-injury for any reason;

(C11)  Misuse or use without authorization, the telephone or mail;

(C12)  No longer in use.  See Offense B18;

(C13)  Willfully create a hazardous or physically offensive condition or situation; (Formerly Offense D5)

(C14)  Possess funds in a form other than authorized by Prisons' Policy, in excess of the authorized amount, or from an unauthorized source, or possess any funds at a cashless prison facility; (Formerly Offenses D10 and D11)

(C99)  Attempt to commit any of the above-listed offenses, aid another person to commit any of the above-listed offenses, or make plans to commit any of the above-listed offenses.  It shall be no defense that an individual was prevented from completing any of the above offenses by prison staff or intervening circumstances.

**CLASS D:**

(D1)   Be in an unauthorized location;

(D2)   Negligently fail to perform or complete assigned duties;

(D3)   Possess contraband not constituting a threat of escape or a danger of violence;

(D4)   Gamble or possess gambling paraphernalia;

(D5)   No longer in use.  See Offense C13;

(D6)   Fail to go to bed when the lights are dimmed or get up during the night without securing permission of the correctional staff;

(D7)   Exchange articles of clothing or possess unauthorized or excess clothing or

mutilate or alter State issued clothing or wear same;

(D8)  Counterfeit, forge, alter or reproduce without authorization any document, article of identification, money, stamps, or other papers, or knowingly possess such falsified materials;

(D9)  No longer in use.  Upgraded to B14;

(D10)  No longer in use.  See Offense C14;

(D11)  No longer in use.  See Offense C14;

(D12)  Fail to keep living quarters in a clean and/or proper condition;

(D13)  Fail to observe basic standards of personal hygiene in bathing and grooming;

(D14)  Feign physical or mental illness or disablement for any purpose;

(D15)  Misuse prison supplies;

D16)  Assist another person with litigation or legal matters;

(D99)  Attempt to commit any of the above-listed offenses, aid another person to commit any of the above-listed offenses, or make plans to commit any of the above-listed offenses.  It shall be no defense that an individual was prevented from completing any of the above offenses by prison staff or intervening circumstances.

7.  **ADMINISTRATIVE FEES**

(a)  All offenders whose offenses result in a guilty disposition will be assessed an administrative fee of $10.00. Only one fee per disciplinary report is to be assessed regardless of the number of charges or number of reinvestigation.

(b)  All administrative fees will be electronically collected through Offender
Banking and transferred to the General Fund.

8.  **DISCIPLINARY PUNISHMENTS**

(a)  For a <u>Class A</u> offense, the following presumptive punishments are authorized:

(1)  Confinement in disciplinary segregation for up to 60 days.

(2)  Demotion from Minimum to Medium Custody or Medium to Close.

(3)  Loss of 40 days sentence reduction credits, as applicable.

(4)  Up to 50 hours extra duty within the next 60 days following

15

the hearing or release from disciplinary segregation. Not more than 4 hours shall be performed on a work day and not more than 8 hours on other days.

(5)    Loss of up to three (3) privileges for a period not to exceed 6 months. These privileges include but are not limited to: work release, home leave, community volunteer leave, canteen, telephone and visitation.

(6)    Limit weekly trust fund withdrawals to $10.00 for a period not to exceed 6 months.

(b)    For a Class B offense, the following presumptive punishments are authorized:

(1)    Confinement in disciplinary segregation for up to 45 days.

(2)    Demotion from Minimum to Medium Custody.

(3)    Loss of 30 days sentence reduction credits, as applicable.

(4)    Up to 40 hours extra duty within the next 60 days following the hearing or release from disciplinary segregation. Not more than 4 hours shall be performed on a work day and not more than 8 hours on other days.

(5)    Loss of up to two (2) privileges for a period not to exceed 4 months. These privileges include but are not limited to: work release, home leave, canteen, community volunteer leave, telephone and visitation.

(6)    Limit weekly trust fund withdrawals to $10.00 for a period not to exceed 4 months.

(c)    For a Class C offense, the following presumptive punishments are authorized:

(1)    Confinement in disciplinary segregation for up to 30 days.

(2)    If the offender is in Minimum Custody, demotion to Minimum Custody Level I or Level II.

(3)    Up to 30 hours extra duty within the next 45 days following the hearing or release from disciplinary segregation. Not more than 4 hours shall be performed on a work day and not more than 8 hours on other days.

(4)    Loss of up to two (2) privileges for a period not to exceed

2 months. These privileges include but are not limited to: work release, home leave, community volunteer leave, canteen, telephone and visitation.

(5)     Loss of 20 days sentence reduction credits, as applicable.

(6)     Limit weekly trust fund withdrawals to $10.00 for a period not to exceed 2 months.

(d)     For a <u>Class D</u> offense, the following presumptive punishments are authorized:

(1)     Confinement in disciplinary segregation for up to 15 days.

(2)     Loss of one (1) privilege for a period not to exceed 1 month. These privileges include but are not limited to radio, canteen, organized sports, gym or recreational buildings, visitation, telephone, movies or other leisure time activities and privileges.

(3)     Up to 20 hours extra duty within the next 30 days following the hearing or release from disciplinary segregation. Not more than 4 hours shall be performed on a work day and not more than 8 hours on other days.

(4)     Loss of 10 days sentence reduction credits, as applicable.

(5)     Limit weekly trust fund withdrawal to $10.00 for a period not to exceed 1 month.

## 9.     Offender DISCIPLINARY RIGHTS

(1)     The offender has a right to:

(a)     At least 24 hours advance written notice of the disciplinary charges before the hearing;

(b)     Be informed of the alleged misconduct and make a verbal and/or written statement to the Investigating Officer;

(c)     Request in writing to the Investigating Officer, during the investigation, that a written witness statement(s) or evidence be gathered, or evidence or witness(es) be present at the hearing if charges are referred. If an offender is unable to write, he/she may request that the Investigating Officer transcribe his/her oral request(s) which the offender will sign and date. Failure to make those requests on the offender witness form shall be deemed a waiver of such requests;

d)      Request the Facility Head/designee to appoint a staff member to assist

him/her at the hearing;

(e)  Be read the substance of the evidence and have the opportunity to explain or refute the evidence at the disciplinary hearing;

(f)  Appeal to the Director of Prisons.

## 10.  MAIL

Correspondence between offenders is generally prohibited. This general prohibition includes offenders housed in any correctional facility (federal prisons, county jails, prisons in other states etc.) that seek to correspond with offenders housed in N.C. Prisons facilities. Correspondence between offenders can be approved by both superintendents involved when the offenders are immediate family members or if another compelling reason for the correspondence is presented. Other than the previously mentioned restrictions, offenders may write to anyone, unless advised otherwise. For example, any offender may lose the right to write to certain people if the person who is being written to does not want to hear from the offender. If the person being written to is a minor, his or her parent(s) or legal guardian(s) may ask the officer-in-charge of the facility to stop the offender from writing to the minor. Offenders can also lose writing privileges for the following reasons:

(a)  the letter contains a threat to hurt someone or a plan to break the law or prison rules or regulations; or

(b)  the letter states that someone will be hurt or injured unless the offender is paid money or some action is taken to help the offender.

Exceptions shall be made if either the offender or the person corresponding with the offender is determined to be unable to read or write in English.

### Incoming Mail

Incoming mail from lawyers, any legal aid service helping prison offenders, and state and federal officials must be opened in the presence of the offender to whom it is addressed before it may be checked for illegal items. All other incoming and outgoing letters and packages will be checked to see if they contain illegal items. Personal letters will not be read unless the officer-in-charge, or designee, has reason to believe that the letter contains threats of harm or criminal activity, escape plans, or plans to violate prison rules or policies. If the officer-in-charge decides to delay or not deliver an offender's letter, the offender will be told in writing the reason for this action. Offenders may write to the Director of Prisons to challenge these actions.

### Outgoing Mail

Offenders who have no money and who the Department determines to be indigent will be provided up to 10 stamps per month for one ounce letters for personal mail. This 10 letter limitation on personal mail does not apply to legal mail. To determine whether you are entitled to free postage, contact your case manager.

## 11.     HEALTH CARE SERVICES

Offenders who have no money will be given those health items needed for bodily cleanliness. The officer-in-charge or his designee will inform the offender of the facility or institutional procedure for requesting these items.

Offender initiated visits for medical care are subject to a $5.00 co-payment fee. Offender declared emergency visits are subject to a $7.00 co-payment fee. With some exceptions, there will be a charge for services provided by a nurse, doctor, dentist or psychologist. However, no one will be denied access to health care whether they have money or not. The money will be taken from offender trust fund accounts. The trust fund balance will not be reduced below a two dollar ($2.00) minimum when collecting for a co-payment. Balances owed for co-payments will be collected when deposits are made to the trust fund account. However, no more than half or 50% will be taken for a deposit to pay a co-payment. This will always ensure money is left in the account for the offender.

The co-payment will pay for the visit, prescribed medications, lab work, x-rays, and any follow-up care ordered by a health care provider. You will not be charged for visits about life or limb threatening emergencies, referrals to specialty clinics, defined chronic disease such as TB, HIV, high blood pressure, diabetes, pregnancy care, vaccinations, and periodic health assessments.

## 12.     DNA TESTING

North Carolina state law requires that the Prisons obtain DNA blood samples from all new and existing felon prisoners and some misdemeanants prior to release or parole. The misdemeanants who must be tested are those convicted of Stalking, Assault on a Handicapped Person or Sexual Battery. If an offender is a felon or a misdemeanant convicted of Stalking, Assault on a Handicapped Person or Sexual Battery, they will be required to give a blood sample during processing. Failure to comply with this requirement can result in use of force and disciplinary proceedings.

## 13.     VISITATION

A completed visitor application must be approved by the facility staff before a visit can occur. Offenders must obtain blank application forms from the facility and mail the blank applications to those persons from whom they wish to receive a visit while incarcerated. An application for each adult and minor must be completed. Completed applications must be returned to the facility where the offender is currently housed. Applications will not be accepted from offenders. Incomplete applications will not be approved. The following reasons may be grounds for disapproving a visitor application:

> (a)     application form was copied and not an original;
>
> (b)     application was not complete or did not include proper documents;
>
> (c)     application contained false information;

(d)      the visitor has a prior criminal record.

Each offender is allowed 18 approved visitors, (adults, minors, and clergy). When an offender reaches the maximum number of approved visitors (18), he/she will not be able to adjust their visitation list until their open enrollment period. An offender's open enrollment period will be every six months based on the date of admission to prison. If an offender has 18 approved visitors and they want to add a new visitor during open enrollment they must first remove one of the current approved visitors from the list. An offender may request that an approved visitor be removed at any time. They may not add a replacement until his/her open enrollment period. An application for a new visitor must be submitted, completed, returned, and approved before the new visitor can visit. It will be up to the offender to inform the new visitor of their visitation status.

## 14.    TOBACCO POLICY AND PROCEDURES

As of January 1, 2006, the use of all tobacco products and tobacco materials at all prison facility buildings is prohibited.

Tobacco products include cigarettes, cigars, snuff, smokeless tobacco, chews or any other substance containing tobacco. Tobacco materials include rolling papers, pipes, or other products used to smoke, inhale, or ingest tobacco products.

The use of tobacco products, tobacco materials, and lighting devices is prohibited at all facilities.

Offenders are subject to disciplinary action for violation of smoking or tobacco use policy. It is a misdemeanor crime to sell or give away cigarettes or tobacco to any minor under the age of 18.

Tobacco use is prohibited on all facility grounds by visitors.

## 15.    EXERCISE OF RELIGION

Offender religious practices may be regulated consistent with the needs for security and the orderly operation of the prison facility. See the prison chaplain for information regarding approved religious practices and programs.

## 16.    WORK ACTIVITIES

The Prisons believes in the value of work and requires all offenders to work while in prison. The development of lasting work skills and work habits are fundamental to an offender's success in prison and success following release. All work performed by offenders in the Prisons is meaningful and productive work performed for the benefit of the State or for the benefit of other valid interests.

Work assignments are based on the needs of the prison facility and on the skills and interests of the offenders. It is typical for offenders to be assigned to a variety of jobs as

changes are made in their security status and housing. Offenders can earn better jobs in prison through positive work performance and through the development of new work skills by participating in vocational training. Refusal to accept work assignments or poor work performance are violations of prison rules and will result in punishment. Cooperative participation in work activities is rewarded by allowable sentence reduction credits and incentive wage pay. Successful work performance demonstrates positive behavior and can make an offender eligible for participation in other programs and activities.

Offenders can earn wages of up to $1.00 per day for most job assignments. Offenders assigned to Correction Enterprise can earn a maximum of $3.00 per day. Full time jobs require an eight hour work day and include a five to seven day work week. Sentence reduction credits for working are awarded as Gain Time or Earned Time. The amount of sentence reduction credit awarded can be limited by the type of sentence an offender receives in court. Sentence reduction credits are earned at different rates. For details please refer to your case manager.

Offenders who are not assigned to an incentive wage job may be required to perform short-term work tasks for up to three hours a day for three consecutive days without pay.

Offender work in the Prisons can take place at the prison facility, at a Correction Enterprise plant, at another government facility or at a site in the community. Work performed away from the prison facility by offenders in Medium Custody requires that the offenders be directly supervised by correctional officers who carry firearms to prevent escapes. Minimum Custody offenders who are assigned to work away from the prison facility have earned a greater degree of trust, but are under the direct supervision of correctional officials or other responsible supervisors. Offenders are approved for a particular work assignment by the prison Superintendent based on recommendations received from other prison staff and based on the availability of vacant jobs. The major categories of work to which offenders are assigned are listed below. Some categories of work require offenders to be in a certain custody or possess specific skills. All work categories require offenders to work hard, to exhibit cooperation, and to ensure safe work practices for themselves and for others. Offenders can obtain more information about work assignments and requirements by talking with their case managers or other facility staff.

### (1) FACILITY DUTY

Facility duty assignments at each prison include a number of skilled and unskilled work opportunities. Work assignments in food service, janitorial duties, maintenance, clothes house operations and other areas are all necessary to support the daily operations of the prison.

### (2) HIGHWAY DUTY

Offenders are assigned to the Department of Transportation to work on State roads. Road work is related to maintenance, clean-up and repair of roadways and adjoining areas. Work for the Department of Transportation includes Medium Custody road squads and Minimum Custody work crews.

### (3) CORRECTION ENTERPRISE

Correction Enterprise is the prison industry operation in the Department of Adult Correction. Correction Enterprise operations are varied and include, among other activities, farm production, furniture making, sewing and tailoring, print plant operations, laundry operations and the manufacture of metal products. The majority of offenders who work in Correction Enterprise are in Medium Custody and usually have earned their assignment to Correction Enterprise by displaying good work performance in other duty assignments. Offenders assigned to Correction Enterprise have the opportunity to earn up to $3.00 per day.

### (4) Offender CONSTRUCTION PROGRAM

Offenders with selected job skills in the construction trades are assigned to the Offender Construction Program and perform work involving the construction and refurbishing of prison facilities and buildings. This work assignment requires assigned offenders to be housed near the construction site and can result in them occasionally relocating to different parts of the state. Extra incentives are provided for offenders selected for this important program. Offenders are able to work independently on the job site based on their skill level. Work supervision is provided by engineers employed by the Department of Adult Correction.

### (5) WORK FOR GOVERNMENTAL AGENCIES

Offenders are assigned to work for county, city and state governmental agencies as part of labor agreements made with the prison facility. Offender earnings are based on the incentive wage scale of up to $1.00 per day. Work activities vary and are similar to facility duty assignments, but are performed at the local government site in the community under the supervision of an approved employee of that agency.

### (6) NON-PROFIT SERVICE PROGRAM

Offenders assigned to this program perform community service work for non-profit agencies in the local community. The type of work varies and is performed under the supervision of employees of the non-profit agency. Offenders assigned to this work program are in Minimum Custody Level Two or higher.

### (7) OTHER WORK PROGRAMS

Other work programs are available to eligible offenders. One program designed for young male offenders is BRIDGE. This program is sponsored through a partnership with the Division of Forest Resources and operates in a limited area of the state. Offenders assigned to BRIDGE learn forest fire fighting techniques and forestry maintenance.

### (8) WORK RELEASE

Offenders who have displayed positive behavior and who meet certain eligibility requirements can be assigned to the Work Release program. Work Release provides selected offenders the opportunity to earn minimum wage or greater in salary by working for a private employer in the community. Work Release offenders must be in Minimum Custody Level Three and are usually approaching the end of their sentence or are eligible for release when assigned to this program. Offenders on Work Release are required to pay a daily fee for room and board to the Prisons, to support their dependents and to make restitution payments if ordered by the court. Offenders on Work Release are supervised by the private employer and are monitored frequently by prison staff. Only those offenders who display the highest degree of trust and responsibility are granted the privilege of Work Release.

## 17.  PROGRAM ACTIVITIES

The Prisons believes in the ability of each offender to change their behavior and provides opportunities for change through program participation. Programs are designed to help offenders adjust to prison and to prepare them for their return to the community. All offenders are expected to participate in a variety of program activities while in prison for the purpose of self-improvement. Programs are offered during the day and during evening hours. Offenders can participate in programs and maintain a full time work assignment.

Each offender is evaluated when they enter prison. From that evaluation decisions are made concerning programs that will be of benefit to them. Those offenders who do not have a high school education or a job skill are expected to participate in educational programs. Those offenders who have had problems related to alcohol and drug use are expected to participate in substance abuse programs. Those offenders who have trouble controlling their anger or cooperating with others can participate in counseling programs. Other programs and activities are available that provide learning opportunities, health benefits, and self-enrichment.

Participation in full time programs can result in sentence reduction credits. Successful program completion demonstrates positive behavior and can make an offender eligible for new programs and added privileges.

## 18.  HOME LEAVE PROGRAM

The purpose of the Home Leave Program is to allow an offender nearing their release to begin re-establishing themselves with their family and community.

Offenders in Minimum Custody III who have maintained this status for a minimum of 90 days and are within 12 months of a release date or parole eligibility date are eligible for consideration of home leaves. In addition, the offender must be infraction free for a minimum of 90 days.

Offenders must make a formal request in writing about program participation. The facility Superintendent will request the appropriate staff to conduct an investigation. In determining whether or not to grant the request, issues that are considered include the offender's behavior,

attitude toward authority, performance in their work and program activities, reports from counselors, work supervisors, community volunteers, and custodial recommendations. Only those offenders who have gained the highest level of trust are granted home leaves.

The home leave sponsor is restricted to adult (21 years or older) immediate family members or others who have acted in the place of parents where the relationship can be verified. Additionally, the existing relationship between the offender and prospective family sponsor should prove to be overall positive and supportive.

The offender and family sponsor must follow all of the rules and restrictions. All activities planned for the family visit are pre-approved by the prison staff and restrictions are placed on the visits. Visits are restricted to the home of the family sponsor and going to any other location must have prior approval.

Offenders should contact the appropriate facility staff for more detailed information about the Home Leave Program.

## 19. COMMUNITY VOLUNTEER PROGRAM

Citizens from the community enter facilities each day as volunteers. They may perform activities at the facility and escort eligible offenders to activities outside of the facility.

Activities conducted or sponsored by volunteers on facility grounds include: drug/alcohol and personal counseling; tutoring; religious services (Yoke-fellow Prison Ministry, Prison Fellowship, worship services, scripture study); and special events (guest speakers, films, singing groups). Requirements for participation vary by activity and facility. Offenders should contact their case manager and/or chaplain who can also discuss the schedule of events, locations, and available space for an activity in which they are interested.

Eligible offenders may be considered for participation in the Community Leave Program. Trained volunteers are allowed to escort eligible Minimum Custody Level Two offenders to approved activities outside of the facility. Custody level is not the sole requirement reviewed when an offender is being considered for the program. Offender progress reports, infractions, and criminal history may be considered.

Other information about the Community Leave Program includes:

(1) all activities must be approved prior to the leave;

(2) offender can not have contact with relatives while on the Community Leave Pass;

(3) leaves may not exceed six hours; however, an offender may be allowed a maximum of three leaves per week; and,

(4) female volunteers <u>may not</u> sponsor male offenders; male volunteers <u>may not</u> sponsor female offenders on outside activities.

Offenders should contact the appropriate facility staff for more detailed information about

the program.

## 20. ACCESS TO THE COURTS

Every offender committed to the Department of Adult Correction shall be afforded reasonable access to the courts. In an effort to provide such access, the Department has contracted with North Carolina Prisoner Legal Services (NCPLS) to provide assistance to offenders.

Offenders are to be counseled and encouraged to utilize North Carolina Prisoner Legal Services in order to access the courts. No offender will be penalized for allegations against the Department or its employees presented in petitions and/or complaints. However, offenders whose petitions/complaints are not successful will be required by the courts to pay from their trust fund account the costs of their litigation. Also, under the Prison Litigation Reform Act of 1995, if an offender files a civil lawsuit or files an appeal in *forma pauperis,* the offender will be required by the courts to pay the full amount of a filing fee. In no event, however, will an offender be prohibited from filing a civil lawsuit or appealing a civil or criminal judgment because the offender has no money or means by which to pay a filing fee.

A. Each Superintendent or Institution Head will be responsible for the following:

(1) appointing a facility coordinator for offenders to access the North Carolina Prisoner Legal Services staff;

(2) designating reasonable private areas in the facility for offenders and attorneys to meet, consistent with custody, security, and operational requirements. The North Carolina Prisoner Legal Services staff as well as private attorneys retained by an offender will not be permitted access to staff or other areas of the facility without the approval of the Department's legal counsel;

(3) offenders will be provided paper, carbon paper, and writing implements with which the North Carolina Prisoner Legal Services staff or private attorneys may be contacted. The Department will not provide photocopying services, law libraries, legal text or other legal materials.

B. Methods of accessing courts:

(1) The primary and preferred method for offenders' access to the courts is through North Carolina Prisoner Legal Services which is available to each offender in every facility within the Prisons.

(2) Offenders may retain private counsel for representation. Such attorneys shall be permitted access to the offender/

been established with the offender in a matter pending or soon to be brought before a court. The attorneys will be provided access to their offenders/clients as frequently as is required to provide adequate legal representation. Contact between offenders and attorneys is to be in the form of written correspondence or personal visits. In exceptional situations where legal deadlines make a personal visit or correspondence impractical, attorneys may initiate a request with the Department's legal section for approval to contact offenders/clients by telephone. Authorization will be provided to the Superintendent or Institutional Head by the Department's legal section.

(3)     Offenders may represent themselves in legal matters before the court. Offenders may have legal text and materials in their possession. The amount of legal materials and text an offender may be permitted to keep at the prison facility will be based upon personal storage space provided, his or her custody classification, security, safety, sanitation and fire hazard considerations affecting the orderly operation of the prison facility.

The contract with North Carolina Prisoner Legal Services has eliminated the need for one offender to provide legal assistance to another offender. Offenders who are found providing legal assistance to others will be subject to disciplinary action.

## 21.     OUTSTANDING CHARGES, DETAINERS

Offenders who have criminal charges pending against them in any court in the State of North Carolina for which a detainer has not been filed with the Department of Adult Correction may request a speedy trial on the charges by writing to the Clerk of Court in the county in which the charges are filed. Offenders who have a detainer filed against them by a court in the State of North Carolina may request a speedy trial by completing forms provided by the Combined Records Section of the Department of Adult Correction. Offenders who have a detainer filed against them by a court outside of the State of North Carolina may request a speedy trial by writing the Interstate Agreement Administrator, Extradition Office, 2020 Yonkers Road, Raleigh, North Carolina 27699. The courts filing the detainers must bring the offenders to trial within six (6) months of the date of the offender's request for a speedy trial or the detainer will be withdrawn. If there are any questions about detainers, contact the officer-in-charge.

## 22. Offender GRIEVANCES-ADMINISTRATIVE REMEDY PROCEDURE (ARP)

(1)     GRIEVANCES

Offenders with unresolved complaints about conditions of confinement, such as actions, conduct, incidents, or policies may file a formal grievance after they have sought assistance by talking with staff.  Grievance Forms (DC-410) are available to offenders upon request, or in most facilities and living areas.  To start the grievance process, offenders must complete items 1-7 on the DC-410 and either place the form in a designated collection point or give it to a staff member.

(2)     POSTING OF PROCEDURE

The Administrative Remedy Procedure is posted in living areas and is available in the facility library.

(3)     REJECTION OF GRIEVANCES

Certain grievances will not be accepted.  Grievances will be rejected whenever offenders seek to challenge:

(a)     State or Federal court decisions;
(b)     Parole Commission decisions;
(c)     Disciplinary actions; and
(d)     actions not yet taken.

Grievances will also be rejected when they:

(e)     are filed more than 1 year after the event sought to be complained about;
(f)     seek a remedy for another offender;
(g)     involve more than 1 incident;
(h)     do not follow the ARP; or
(i)     direct toward persons language that is generally considered profane, vulgar, abusive or threatening.

(4)     CONFIDENTIAL GRIEVANCES

If an offender thinks that a grievance is of a confidential nature, his/her grievance may be filed directly with the Director of Prisons and mailed as legal mail.  The offender must explain in the letter to the Director the nature of the complaint and the reasons for not following the regular grievance procedure.

If the Director determines that the grievance is not of confidential nature, the grievance shall be returned to the offender with instructions to submit it in accordance with the procedures set forth in policy (through the normal channel).

(5) EMERGENCY GRIEVANCES

(a) Any offender who is in need of urgent medical care may present himself to a member of the medical or custodial staff, who shall handle the matter according to emergency health care procedures set out in the Health Care Manual. If offenders fear for their personal safety, they may contact the officer-in-charge or any other custodial official. Any request for protective housing will be handled in accordance with policy.

(b) Matters relating to administrative transfers, time computation disputes, and family illness or death are not to be treated as emergencies for purposes of this procedure, but shall be handled expeditiously and compassionately by the Superintendent or Institution Head or their designee where appropriate.

(6) STEPS IN THE GRIEVANCE PROCESS

(a) Offender and staff seek to resolve problem through informal communication.

(b) If informal resolution does not work, offender submits a written grievance, which is screened under the rules.

(c) If accepted, the facility seeks to resolve the grievance with the offender consistent with Department of Adult Correction policies.

(d) If the offender does not accept the resolution, the grievance goes to the Region Director/Institution Head. This is accomplished by offenders indicating their rejection and signing their name in the proper place (Line 26 (B) of Step One on Form DC-410A.) The Region Director/Institution Head will try to resolve the grievance.

(e) If the offender is not satisfied with the decision reached in Step Two the grievance may be appealed to an Offender Grievance Examiner by checking line 26 (B), dating line 27, and signing line 28. Following investigation by an Offender Grievance Examiner, the grievance may be resolved or dismissed. The Examiner and Prisons staff may resolve the grievance or the Examiner may write an order to resolve the grievance.

The Secretary of Adult Correction accepts, modifies, or rejects the order and this action is the final step in the Administrative Remedy Procedure.

(7)    OTHER CONSIDERATIONS

(a)    The total grievance process will take no longer than 180 days. Each step is to be completed in a set number of days, as set out in the Administrative Remedy Procedure.

(b)    Except for emergency grievances, offenders may submit only one (1) grievance at a time. When more than one is submitted, the second or subsequent grievances will be returned to the aggrieved offender. Once the initial grievance has completed Step One or been resolved, offenders may submit a new grievance or resubmit a grievance previously returned to them.

23.     STRUCTURED SENTENCING ACT- RELEASE

An offender whose crime(s) occurred on or after October 1, 1994, is subject to the Structured Sentencing Act under which most offenders are not eligible for parole. Each felon will receive a minimum and a maximum sentence and release date. The maximum sentence will be 120% of the minimum sentence, plus nine months in the case of certain felonies. Offenders sentenced for a Class "A" felony and some persons convicted of a Class "B" felony will not have a release date. Those convicted of Driving While Impaired will be the only persons who will be eligible for parole.

24.     **INTERNATIONAL PRISONER TRANSFERS**

North Carolina is one of 48 states, along with the Federal Bureau of Prisons, which allows some foreign-born offenders to be transferred to their home countries to serve their sentences. Specific criteria must be met for international transfer consideration, including at least 12 months on the active sentence remaining to be served at the time of request for transfer. Also, those serving a maximum sentence of life or death will not be considered for transfer. The transfer program is discretionary and not everyone who applies will be qualified or approved for transfer.

25.     **FOREIGN CONSULAR NOTIFICATION**

As part of processing, each offender will be asked whether they are citizens of the United States. If an offender is not a citizen of the United States, his/her consulate will be contacted in accordance with the policies and procedures set forth by the United States Department of State.

26.     **POST RELEASE SUPERVISION AND PAROLE**

Effective October 1, 1994, the Parole Commission is renamed the Post Release Supervision and Parole Commission. This coincides with the start of Structured Sentencing.

The Post Release Supervision and Parole Commission has the following powers as defined in the North Carolina General Statutes for persons whose crimes occurred prior to October 1, 1994.

(a)     To grant paroles, including both regular and temporary, to persons held by virtue of any final order of judgment of any court in this state;

(b)     To revoke, terminate, or suspend paroles;

(c)     To assist the Governor in exercising his/her authority in granting reprieves, commutations, and pardons and perform such other services as may be required by the Governor in exercising his/her powers of executive authority;

(d)     To exercise all releasing authority over all Committed Youthful Offenders, and Work Release for offenders with maximum sentences

in excess of five years whose crimes were committed prior to July 1, 1981;

(e) To adopt rules and regulations whereby prisoners eligible for parole consideration will have their cases reviewed, investigated, and considered; and

(f) To establish rules and regulations for the management of prisoners on parole or post release supervision

## 27. POST RELEASE SUPERVISION AND PAROLE ELIGIBILITY

(a) Structured Sentencing- Other than offenders convicted of Driving While Impaired, no one whose crime(s) occurred on or after October 1, 1994, will be eligible for parole. He/she may be eligible for post release supervision at the completion of no less than the minimum portion of his/her sentence(s). In the case of certain felony crimes, offenders convicted of Class "B1" through "E" class felonies will be placed on a supervised release known as post release supervision no earlier than 9 months before their final release dates. The supervision period will be nine months. If an offender violates the terms of his/her post release supervision, he/she may be required to serve the maximum sentence. The Post Release Supervision and Parole Commission will review the case if the offender is returned to prison as a violator and determine if he/she will be returned to post release supervision at any point in the future.

(b) All prisoners committing crimes prior to July 1, 1978, except those sentenced as CYOs and those sentenced to life must serve at least one-fourth of their minimum sentences to be eligible for parole consideration.

To establish parole eligibility (P.E.) dates, the Parole Commission uses the following procedures:

(1) When the sentence is determinate ("flat"), the P.E. date is set at one-fourth of the sentence from the date of admission to prison.

(2) Where the sentence has a minimum sentence, the P.E. date is set at one-fourth of the minimum sentence from the date of admission.

(3) Where two or more sentences are imposed, and are concurrent, the P.E. date is set at one-fourth of the sentence that has the latest P.E. date.

(4) Where two or more consecutive sentences are imposed, the minimums are added and the P.E. date is set at one-fourth of this.

(c) For felons committing crimes after July 1, 1978, and before July 1, 1981, except those sentenced as CYOs and those sentenced to life, parole eligibility is determined as follows:

   (1) Where the sentence is determinate ("flat") the offender is eligible for release at any time.

   (2) Where the sentence has a minimum sentence, the P.E. date is determined either by when the offender completes serving the minimum sentence (less Good Time) or when he/she completes serving one-fifth of the statutory maximum (less Good Time), whichever is less.

   (3) Where two or more sentences are imposed and are concurrent, the parole eligibility date is set by computing the eligibility date of each sentence and using the latest date.

   (4) Where two or more consecutive sentences are imposed, the P.E. date is determined by computing the eligibility date on each sentence and adding them together.

NOTE: Jail and other pre-sentence credits awarded by the courts are applicable to the parole eligibility date.

(d) Offenders convicted of felony crimes committed on or after July 1, 1981, and prior to October 1, 1994, and sentenced to a term of 18 months or longer will be granted re-entry parole 90 days before the expiration of their sentence(s), provided the offender was not sentenced as a Committed Youthful Offender or as a misdemeanant. Effective July 1, 1981, offenders eligible for parole will be given Good Time towards the parole eligibility date. Community Service Parole may be considered.

An offender committing offenses of Robbery With a Firearm, Explosive, or Other Weapons, or First and Second Degree Burglary on or after October 1, 1977, shall not be eligible for parole until completion of 7 years flat.

Offenders serving life sentences may be eligible for parole consideration in either ten or twenty years, depending upon the date the crime was committed. For those whose crimes were committed prior to April 8, 1974, the eligibility date is ten years from the date of admission, less any pre-sentence credits, and Good Time credit. For those whose crimes were committed on or after April 8, 1974, the eligibility date is twenty years from the date of admission, less any pre-sentence credits and Good Time credit. Offenders whose crimes were committed on or after July 1, 1978 and prior to July 1, 1981 who are sentenced to life

terms that are <u>determinate</u> are eligible for parole immediately except offenders convicted of First Degree Murder. Offenders sentenced to <u>indeterminate</u> life terms (life minimum and life maximum) are eligible for parole after serving 20 years less Good Time.

Offenders sentenced to life terms on or after July 1, 1981 and prior to October 1, 1994 (Fair Sentencing Act) are eligible for parole as follows: If the crime is an "A" or "B" class felony, the eligibility date is 20 years, which <u>cannot</u> be reduced by good conduct time. Offenders sentenced to life terms whose crimes occurred on or after October 1, 1994 <u>are not</u> eligible for post-release supervision (parole). Life-term offenders with consecutive sentences must serve the minimum required by law for each sentence.

Prisoners sentenced as Committed Youthful Offenders (CYO) are eligible for Conditional Release at any time following admission unless they are convicted of a trafficking offense after 2/1/89. Then he/she is only eligible for parole the last 270 days. However, the Commission may not grant such release without first receiving a favorable recommendation from the Secretary of Adult Correction unless the offender is within 90 days of his/her unconditional discharge date. The Secretary has delegated his authority to make such recommendations to the Director of Prisons, who has established review committees at the facility and regional levels to make these recommendations to the Parole Commission.

NOTE: Offenders with both CYO and Regular Youthful Offender (RYO) sentences must satisfy the statutory requirement for parole eligibility on the RYO sentence before they can be paroled. CYO status only pertains to pre-Structured Sentencing Act cases.

## 28. THE PAROLE PROCESS

Every offender that comes into prison is given a number and a file jacket. All information that the offender and the prison have in common goes into this jacket. This includes commitment papers, medical history, and reports from the Prisons on conduct and activities. Also, letters written to and about the offender are placed in the files.

Before an offender is considered for parole, the Post Release Supervision and Parole Commission will do the following things:

     (a)   conduct a pre-parole investigation;

     (b)   contact persons who are interested in the case` (victim, arresting officer, district attorney, media, etc.);

     (c)   after the information is received from the pre-parole investigation, the parole case analyst will prepare a report for the Parole Commission and a decision will be made to either parole the offender or deny his/her parole.

A pre-parole investigation usually takes 60 days before a decision is made by the Commission. Then the offender is told of this decision.

If there is no pre-parole investigation, and the parole case analyst recommends that parole not be given, two members of the Commission must agree with this decision. Any of the commissioners can disagree with the parole case analyst. The commissioner can order an earlier review date or further investigation upon request. If parole is not recommended, a new parole review date is set within the next 12 months. Only the Parole Commission can move up this date.

In all felony cases the Post Release Supervision and Parole Commission will ask the opinion of the following individuals or agencies:

(a)     The district attorney, who may request a public parole hearing;
(b)     The police or sheriff's department;
(c)     Parole officers;
(d)     Staff at offender's prison facility;
(e)     The parole case analyst.

Family and individuals who know the offender may offer recommendations for the offender. These recommendations will be written. They must tell why the offender deserves parole. These recommendations are put in the offender's file to be read by the commissioners.

In some cases the offender may be called to meet with members of the Commission. When offenders know they are to meet and talk with a member of the Commission, they should have in hand their employment plan and home plan. Offenders should tell the Commission what their reasons are for thinking they can succeed on parole.

In some cases the local media is contacted advising them that the case is under consideration for parole. Because there are so many offenders to meet and talk with, the Commission does not want visitors present. When visitors have permission to meet with the Commission for an offender, the visitors will have only five minutes to say what they want to say. The visitor gets permission to meet with the Commission from the parole case analyst or the Office of the Post Release Supervision and Parole Commission. This meeting gives the Commission a chance to meet the visitors face-to-face. Then offenders are able to speak for themselves in private.

## 29.     FACTORS CONSIDERED IN MAKING PAROLE DECISION

Post release supervision and parole are not rights. There are certain things that must be done before an offender can be granted parole. The Commission must by law be sure of the following things:

(a)     The prisoner will (most likely) not break any laws.

(b)     The prisoner is not a threat or danger to the people who live in his/her town or to other people in the state.

(c)     The prisoner has shown (by his/her record) to have followed the rules of prison.

(d)      The prisoner does not want to get even with any person who arrested, sentenced or testified against him/her.

The two reasons why parole is most often turned down are: (1)The Commission thinks that the offender will most likely break another law. (2)The offender's record in prison shows that he/she did not follow the rules while in prison.

Offenders who have been in prison more than one time, on probation, or have been on probation where it has been revoked, will most likely not make parole the first time they are considered. Offenders who have never received a probation revocation or have only been convicted of lesser criminal acts may receive parole as soon as they have served the least (smallest) amount of time needed by law. The way offenders act in prison can show the Post Release Supervision and Parole Commission that they are ready for parole. North Carolina says that the Post Release Supervision and Parole Commission must be sure that the offender has gone by the rules and regulations while in prison. Offenders who have been locked up because of a disciplinary hearing must prove that they have changed by doing more than the rules ask of them to prove that they are able to get along in prison. Doing well in prison does not ensure an offender's chances of getting paroled. However, offenders will not get parole if they have not done well in prison.

The following are examples which have either positive or negative effects on the chances of making parole:

(1)      The Type of Crime and How It Was Committed- The Commission wants to answer the question "Has the offender served enough time on the sentence as punishment for the crime?"

(2)      Feelings of Officials and Individuals in the Community- The police department and the individuals in the neighborhood are asked about offenders and how they think that they will get along on parole. The opinions of these individuals carry weight with the Commission.

(3)      Medical, Psychiatric, and Psychological Reports- These reports are very useful to the Commission in answering questions about the fitness of the prisoner for parole. These reports will not be shown to anyone else.

(4)      Custody Level- The Commission does not give parole to offenders in Close Custody unless they are being kept at this level for their own protection. As a rule, offenders will not be paroled out of Medium Custody. The Commission wants offenders to be in Minimum Custody so it can monitor their actions and the way they handle responsibility.

(5)      Escapes, Break-outs- The Commission looks at recent escapes by offenders as a sign that they are likely to abscond parole supervision.

(6)      Attitude- N.C. law says that offenders should not hold a grudge against individuals who put or kept them in prison.

(7)     Work Release/Study Release- Offenders can help their chances for parole by doing well on Work Release or Study Release.

(8)     Alcohol/Drug Background- Offenders who have never had an alcohol or drug problem find themselves in good standing with the Commission in these matters.  Offenders who have used alcohol and/or drugs can off-set their bad influence by joining groups like AA, drug counseling, mental health counseling, and by not using either alcohol or drugs while in prison, or away from the prison on work release or on home leaves.

(9)     Previous Parole and Probation- Both probation and parole are favors given by the State which must be repaid by the individual with responsible behavior.  An offender who has gone to prison, gotten out on parole and did not "mess up" before parole ended, has a good chance of making parole again.  Someone who has lost parole privileges before or "messed up" while on parole would have a lesser chance of making it again.  To commit a new crime while on probation or parole is the worst thing an offender can do.

(10)    Employment Plan- Offenders will not be granted parole unless they have a job or have money to support themselves without going on welfare. The Commission calls for the offender to have a full-time job.  The Commission will not agree to a job in which the offender must handle alcoholic beverages or which brings the offender close to negative influences. A school plan may be used by offenders who need more education or training.

NOTE:  After offenders have met all conditions for parole except for finding a job, they may be able to get a 30 day parole in order to look for a job.  These leaves will be given to offenders whose prison records are spotless and who have no drug or alcohol problems.

(11)    Residence Plan- The Commission demands that the home in which the offender plans to live be cooperative, stable, and moral.  Without the cooperation of the home, the parolee has a greater chance of failure.

## 30.     NOTIFICATION OF PAROLE DENIAL

When offenders are turned down for parole/post release supervision, they will get a letter giving the reasons why they were denied.  The reasons will be given in terms of the requirements for parole and certain points in the offender's case will be given to back-up the decision.

## 31. INTERSTATE PAROLE COMPACT

In some cases, an offender may be granted parole to another state. Parole cannot be granted to another state unless there is an agreement between that state and North Carolina concerning parole. This agreement is called the Interstate Parole Compact.

## 32. PAROLE SUPERVISION/POST RELEASE SUPERVISION

Offenders on One-Third Parole may or may not have a parole officer in charge of their paroles, but all other offenders on parole will have a parole officer whose job it is to make sure offenders live up to the rules and conditions of their parole. The Commission has the power to end an offender's parole. This means that offenders will be released from their sentences the same as if they have served the whole sentence. When offenders serving a felony sentence either complete the sentence or have the parole terminated by the Commission, their citizenship rights will be returned to them.

There are times when an offender on parole will not be given credit for time served on parole. These two times are:

(1) TIME SERVED IN PRISON OR JAIL- Any offender found guilty of a new crime while on parole will not have that time spent on the new sentence counted against the offender's sentence from which they were paroled. The Commission can order that the time count against the offender's sentence.

(2) ABSCONDERS- Any offender is said to have absconded (escaped) from parole when the offender's parole officer cannot find the offender or the offender has changed his/her place of work or place where he/she lives and has not told his/her parole officer. The time that the offender spends as an absconder does not count toward his/her sentence.

Offenders on parole must live by the rules and conditions of their parole/post release supervision. When offenders do not live up to these conditions, the parole may be revoked (stopped), and the offender will be returned to prison to serve his/her sentence.

Parole is only granted to those offenders who can be trusted to live in the community as good citizens. Parole is a privilege (favor) granted to offenders because of good behavior in prison and because it is believed that they will live in the community without returning to crime.

## 33. SEXUAL ABUSE

North Carolina Prisons is committed to a standard of zero-tolerance of sexual abuse of offenders.

A. OFFENDERS WHO SEXUALLY ABUSE OTHER OFFENDERS

1 If allegations of sexual assault or misconduct against you are substantiated, sanctions will be harsh. Your custody level

will be reviewed and likely increased, which could mean a transfer to a higher security prison or unit with significantly less freedom of movement and limited privileges. If you have family, this may affect them and their ability to visit you.

2. All cases of substantiated sexual assault or misconduct will be referred to law enforcement for criminal investigation. You may be prosecuted and if you are found guilty additional prison time may be added to your current sentence.

3. Consider that regardless of how you choose to characterize it, unprotected sex significantly increases your risk of HIV infection, along with exposing you to other sexually transmitted diseases.

4. If you have trouble controlling your actions, please seek help from mental health staff and/or consider participating in programs designed to control anger or reduce stress. To reduce immediate feelings of anger or aggression you may want to try talking or writing to a friend, meditating or doing breathing exercises to relax, working on a hobby, or engaging in some type of exercise.

## A. SEXUAL ASSAULT AND SEXUAL MISCONDUCT DEFINITIONS

Aggressor: The offender or staff member who commits a sexual assault and/or sexual misconduct.

Sexual Assault: Any contact between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion of any part of the body of one person, or of any object into the sex organ, mouth or anus of another person, by the use of force or threat of force. Any sexual contact between an offender and staff member is considered sexual assault, whether "consensual" or not.

Sexual Misconduct: Forms of sexual harassment including willful and intentional indecent exposure of private parts of the body in the presence of another, touching of private parts of offenders or staff, and the taking of such photographs.

## B. PREVENTING SEXUAL ABUSE OR RAPE

1. The only way rape can be prevented is when a potential rapist chooses NOT to rape. However, you may avoid an attack by keeping the following safety guidelines in mind:

a. Be aware of situations that make you feel uncomfortable. Trust your instincts. If it feels wrong, LEAVE the area.

b. Don't let your manners get in the way of keeping yourself safe. Don't be afraid to say "NO" or "STOP IT, NOW".

c. Walk and stand with confidence. Many rapists choose victims who look like they won't fight back or are emotionally weak.

d. Avoid talking about sex and casual nudity. These things may be considered a come on, or make another offender believe that you have an interest in a sexual relationship.

e. Do not accept canteen items, offers of protection,or other gifts from other offenders. Placing yourself in debt to another offender can lead to the expectation of repaying the debt with sexual favors.

f. Avoid secluded areas. Position yourself in plain view of staff members. If you are being pressured for sex, report it to a staff member immediately.

2. If you are aware that another offender is being sexually abused, you have a responsibility to report it to staff.

C. WHAT TO DO IF YOU ARE SEXUALLY ABUSED OR RAPED

1. If the attack has just happened.......

a. Get to a safe place. REPORT THE ATTACK TO A STAFF MEMBER IMMEDIATELY. The longer you wait to report the attack, the more difficult it is to obtain the evidence necessary for a criminal and/ or administrative investigation.

b. Request immediate medical attention. You may have serious injuries that you are not aware of, and any sexual contact can expose you to sexually transmitted diseases.

c. Do not shower, brush your teeth, eat, drink, use the restroom or change your clothes. You may destroy important evidence.

2. Later on...................

    a. Seek the support of a trusted friend, family member or staff member. The days ahead can be traumatic and it helps to have people who care about you supporting you.

    b. Seek professional help. Mental Health staff is available for crisis care 365 days a year, to listen and offer support.

D. WHILE YOU ARE ENCOURAGED TO REPORT ANY INCIDENTS INVOLVING SEXUAL ABUSE, KEEP IN MIND THAT IT IS IMPORTANT TO BE TRUTHFUL. IF IT IS DETERMINED THAT YOU HAVE MADE A FALSE REPORT, SERIOUS ACTIONS COULD BE TAKEN.

# Exhibit Cover Page

**EXHIBIT NUMBER** 1-W

# RIGHT TO REPORT

If you, or someone you know, are experiencing sexual abuse or sexual harassment, the Department wants to know. We want you to report right away! Why?

- We want to keep YOU safe; it is our job! It is your right to be free from sexual abuse, sexual harassment and to be free from retaliation for reporting such incidents. Allegations of retaliation may also be reported.

- We want to conduct an investigation of the reported incident.

- We want to hold the perpetrator accountable for their actions.

- We want to provide YOU with relevant information and support services.

## How to Report

The Department offers multiple ways to report sexual abuse and sexual harassment:

- By writing to the PREA Office at MSC 5230, Raleigh, NC

- Report to any staff, volunteer, contractor, or medical or mental health staff.

- Submit a grievance or sick call slip.

- Report to the PREA Coordinator or PREA Compliance Manager.

- Tell a family member, friend, legal counsel, or anyone else outside the facility. They can report on your behalf by calling **1(844) 208-4018.**

- You also can submit a report on someone's behalf, or someone at the facility can report

## External Reporting Option

You also can make a report to the People in Confinement Reporting Sexual Abuse and Sexual Harassment hotline at (972) 535-3499. This resource is located outside the department through a partnership with the Department of Public Safety, and you can remain anonymous upon request.

# IF YOU ARE ABUSED

Support services are available from local Rape Crisis Center and can be reached at *63 from a dorm phone: (Calls to the Rape Crisis Center are NOT recorded or monitored).

## What to Do If You Have Been Sexually Abused

- Tell a staff member as soon as possible.

- Seek medical attention BEFORE you shower, eat, drink, change clothing, brush your teeth, or use the bathroom.

- Share as much information as possible when answering questions to assist with the investigation.

# NOTICE FOR FAILURE TO REPORT

Anyone who engages in, fails to report, or knowingly condones sexual harassment or sexual abuse of an person in confinement shall be subject to disciplinary action and may be subject to criminal prosecution.



Zero Tolerance for Sexual Abuse and Sexual Harassment: Prison Rape Elimination Act



**NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION**

March 24 2023

---

# ZERO TOLERANCE

The Department has a zero-tolerance policy for sexual abuse and sexual harassment. What does this really mean? It means that YOU have the right to be free from sexual abuse and sexual harassment by anyone at the facility, including offenders, staff members, volunteers, or contractors. No one has the right to sexually abuse or sexually harass you. No one.

## What is Sexual Harassment?

- Repeated and unwelcome comments or gestures of a sexual nature, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

- Repeated and unwelcome sexual advances; requests for sexual favors; or verbal comments, gestures, or actions of a derogatory or offensive sexual nature.

## What is Sexual Abuse?

- Forced or coerced sexual intercourse or sexual contact when the victim does not consent or is unable to consent or refuse. This may include the use of fear or threat of physical violence, psychological intimidation, bullying, and physical force.

- Sexual abuse also can include incidents of penetration by a foreign object.

## What is staff voyeurism?

An invasion of privacy of offender by a staff member, contractor, or volunteer for reasons unrelated to official duties.

## Examples of Staff Voyeurism

- Watching a person in confinement use the toilet, shower, or change clothes.

- Requiring a person in confinement to show his/her buttocks, genitals, or breasts.

- Taking pictures of a person in confinement's naked body or toilet use.

## Tips for Avoiding Sexual Abuse and Sexual Harassment

A victim is never to blame for being attacked, but these tips may help you lower your risk of sexual abuse or sexual harassment.

- Pay attention to your surroundings.

- Carry yourself in a confident manner at all times.

- Do not accept gifts or favors from others. They usually come with "strings attached" or future paybacks, including sexual favors.

- Do not accept an offer from another resident to be your protector or "friend."

- Find a staff member with whom you feel comfortable discussing your fears and concerns. Confide in them if you feel threatened; or call (972) 535-3499.

- Be alert! Do not use contraband such as drugs or alcohol, as they will weaken your ability to be alert and make good choices.

- Be direct and firm when others ask you to do things that you do not want to do.

- Do not give mixed messages to others regarding your wishes for sexual activity.

- Choose your acquaintances wisely.



MEANS

The Department does not tolerate any form of sexual abuse or sexual harassment. The goal of this facility is the safety of the people who are confined. The facility will hold accountable any persons found to have committed any form of sexual abuse or sexual harassment against another person.

If any of the information presented here is confusing, or you have questions about something that may be happening to you, ask a staff person you trust.

You also can contact the PREA Coordinator, or the PREA Compliance Manager at your facility. A sign in the day-room should explain how they can be reached. This information will be dependent on the location where you are housed.

PREA Office may be contacted at MSC 5230, Raleigh NC 27610. Also, the PREA office will receive the calls made to the external reporting hotline.

# THE SILENCE OF ABUSE, POWER, AND CONTROL

# ELP

# XUAL ABUSE
# & SEXUAL
# ARASSMENT

# 72.535.3499

# MAKE A REPORT

## Pin codes not required

Department of
Adult Correction
PROTECTION · INNOVATION
REHABILITATION

# Exhibit Cover Page

EXHIBIT NUMBER 1-Y

**Exhibit 1-Y**

Received Wednesday, 1-3-24



# U.S. Department of Justice
# Civil Rights Division

*Washington, DC 20530*

December 15, 2023

Jonathan England#0702210

5150 Western Avenue

Morganton, NC 28655

Dear Jonathan England#0702210,

You contacted the Department of Justice on December 4, 2023. Based on our review to this point, we want to make you aware that you may want to contact your state's PREA Coordinator.

What we did:

Your report number is 385045-KSK.

Team members from the Civil Rights Division reviewed the information you submitted. Based on your report, our team determined that you raised concerns involving sexual abuse or sexual harassment in detention. This may fall under the Prison Rape Elimination Act (PREA). PREA is a law that makes it illegal to:

 • sexually abuse or sexually harass prisoners and detainees; and

• retaliate against a prisoner or staff member who reports sexual abuse or sexual harassment.

We will continue to review your report and will contact you if we need additional information. However, you should be aware that in situations involving sexual abuse or sexual harassment of prisoners and detainees, the Civil Rights Division can only become involved where there is a widespread pattern of misconduct. Therefore, we generally cannot open investigations based on individual claims.

Accordingly, we want to make you aware that your state's PREA Coordinator may be able to help in your situation. A PREA Coordinator can investigate individual

claims such as yours. To help you connect to your state's PREA Coordinator, we have included a directory with this response.

What you can do:

Your state's PREA Coordinator may be able to help in your situation. You can contact your state's PREA Coordinator by referring to the attached directory.

You can also learn more about PREA at the PREA Information Center's website: www.prearesourcecenter.org/training-technical-assistance/prea-101/prisons-and-jail-standards (http://www.prearesourcecenter.org/training-technical-assistance/prea-101/prisons-and-jail-standards)

How you helped:

Your report will help us advance civil rights. Information from reports such as yours helps us understand emerging trends and issues in civil rights. This helps inform how we protect the civil rights of all people in this country.

Thank you for taking the time to contact the Department of Justice about your concerns.

Sincerely,

U.S. Department of Justice
Civil Rights Division

# Exhibit Cover Page

EXHIBIT NUMBER 1-Z

Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984) (Prisoner who was injured when prison guards at Central Prison used high-pressure water hoses, tear gas, and billy clubs to subdue him while he was confined in a one-man cell.) $32,500 award.

Jermal Bacote v. Sgt. Dillard, No. 5:18-CT-03199-M (3/1/2021) (Prisoner at Central Prison punched and kicked by guard while in full restraints. Prisoner was not provided anything for pain. He submitted many sick-call requests due to being in extreme pain yet they refused to treat him or even acknowledge his sick calls.)    Settlement conference.

Dean v. Jones, 984 F. 3d 295 (4th Cir. 2021) (Prisoner sprayed with pepper spray while laying on his back, and cuffed behind his back, and subdued. Prisoner then slammed into slider door twice by Sergeant during escort to medical, and then shoved into the supply closet off camera where he was kicked and beaten by several guards on Unit-1 at Central Prison.)    Settlement.

Linda Ray Burt v. N.C. DOC, 167 N.C. App. 653 605 S.E. 2d. 740 (No. COA04-60) (12/21/04) (Female prisoner punched in her face twice by male Sergeant at womens Central Prison (NCCIW).) $50,000 award

Love v. C/o's Beasley; McCourt; Young, 788 Fed. Appx. 935 (4th Cir. 1/6/20) (Prisoner beaten at Central Prison on Unit-1 in Sergeants office while handcuffed behind his back.)

Zito v. Peppers, et al., No. 5:20-CT-3002-FL (9/29/22) (Prisoner at Central Prison handled roughly by prison guards, handcuffs on to tight, bent wrist technique and inverted finger technique used which broke prisoner's finger requiring Surgery.) Settlement Conference.

Seba v. Joyner, et al., No. 5:16-CT-3051-BO (7/26/16) (Prisoner beaten by two guards at Central Prison in Sally port area on Unit-1 in holding cell while prisoner was standing with his hands up, about his head and body. Guard pulled Seba's shirt over his head, and placed a knee on Seba's neck. The assault broke Seba's eyeglasses, knocked him unconscious, and caused him to suffer multiple Seizures. After the assault, a prison nurse examined Seba's injuries and said "You're good... there's no bruising." Seba's swollen and bloodied wrists were released from the handcuff's when he arrived in his cell. Lacking feeling in either hand and unable to move his right hand at all, Seba screamed for help. When the nurse returned, Seba told her that he needed to declare a Medical emergency because he was in extreme pain and believed his right wrist was broken. The nurse told Seba, "You'll be fine", and left him without providing any medical assistance. It took Seba almost 11 months to see an Orthopedist, at which time he was told that any fractures would have healed. After the beating, Seba's requests for medical care were ignored.)

# Exhibit Cover Page

EXHIBIT NUMBER 2-A

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 145 of 295

BBKU2                006        JONATHAN D ENGLAND                          0702210
REGULAR W/SNACK

Exhibit 2-B

# Inmate/Patient

# Orientation Booklet



# Health Services

**North Carolina Department of Public Safety**
**Prisons**

# Table of Contents

| | Page |
|---|---|
| Introduction | 3 |

      a. Mission Statement
      b. Healthcare Treatment Philosophy

| | |
|---|---|
| Right to Receive Medical Treatment | 4 |
| Right to Refuse Medical Treatment | 4 |
| State Mandated Medical Test | 4 |
| Patients with Physical Disabilities | 5 |
| Medical Appliances and Prostheses | 5 |
| Special Diets | 6 |
| Intake Physical Examination | 6 |
| Chronic Disease | 6 |
| Co-Payment for Medical Services | 7 |
| Access to Health Care | 7 |

      1. Sick Call Procedures
      2. Medical Emergencies
      3. Self-Declared Emergencies
      4. Work Related Incidents
      5. Non-Work Related Incidents
      6. Segregation

| | |
|---|---|
| Medication Administration | 9 |
| Mental Health Services | 9 |
| Dental Health Services | 10 |
| Radiology Services (X-ray) | 10 |
| Hospitalization | 10 |
| Pregnant Inmates/Patients | 11 |
| Immunizations | 11 |
| Medical Records Request | 11 |
| Health Profile and Patient Acuity Rating | 11 |

# Introduction

## Mission Statement

It is the mission of the North Carolina Department of Public Safety, Prisons, Health Services section to:

Ensure that all incarcerated individuals receive comprehensive healthcare equivalent to that available in the community and subject to the same regulations.

Provide continuous monitoring and evaluation of the accessibility, availability and quality of healthcare provided by Prisons.

Provide opportunities for professional development of staff through continuing education and effective health education for inmates.



## Healthcare Treatment Philosophy

Health professionals are committed to respect all human beings. This commitment cannot be altered by the fact that individuals being cared for are in correctional facilities. The philosophy, ethics, responsibilities, functions, roles, skills, and legal authority that guide the practice of community health professionals also guide the practice of health professionals in corrections.

All employees involved in the delivery of health services within the Prisons, shall treat all inmates who are receiving healthcare professionally and with dignity.

Privacy for the inmate will be a consideration when providing medical treatment or procedures. Where indicated, a chaperone (same sex as inmate) may be present.



Inmates are encouraged to be responsible for their own health. Over-the-counter medications are available in the canteen to treat minor illnesses for a small fee. Education on various health topics, diseases and medications are provided by sick call nurses, chronic disease nurses and the pharmacy. These services are provided to assist you in becoming responsible for your own health.



### Right to Receive Medical Care:

Each patient has the right to receive medical, dental, and mental health services to maintain basic health.

### Right to Refuse Medical Treatment:

Patients, if found competent to make this decision, may elect to refuse all diagnostic and treatment recommendations, with the exception of State mandated medical test. They may be isolated for observation when the patient's condition is a danger or potential danger to himself, the inmate population, or employees of the Department of Public Safety, as determined by the facility health authority in coordination with the facility head.

### State Mandated Medical Test:

Each patient will receive the following **mandatory** tests upon entry to the correctional system:



1. TB Skin Testing
2. Urine Analysis
3. Syphilis Testing
4. DNA Testing  (If applicable and not previously completed from a prior admission)

In addition, female offenders must receive a pregnancy test and PAP Smear.

HIV testing is optional.  However, dependent on your health history, it may be strongly recommended.

## Patients with Physical Disabilities:

The general purpose of services for inmates with physical disabilities is to facilitate adjustment to the prison environment. Inmates will be provided access to and encouraged to participate in regular prison programs and services.



Prisons prefer to integrate these inmates into the regular prison population to the greatest extent feasible, however, some inmates may require specialized housing, equipment, and/or procedures to participate in and benefit from programs, services, and activities.

## Medical Appliances and Prosthesis:

 

Orthopedic and prosthetic devices must be prescribed by a physician. This includes, **but is not limited to** eyeglasses, dentures, artificial limbs, hearing aids, pacemakers, and artificial eyes.  The eye physician will determine if contact lenses are medically necessary and can only be used when vision can not be corrected with eyeglasses.  Appliances and prostheses issued to patients during their incarceration remain the property of the Department of Public Safety upon release.



## Special Diets:



Therapeutic diets are changes made to the normal diet to cover the requirements created by disease or injury.

Therapeutic medical and dental diets will be served to a patient upon the written order of a treating physician, dentist, or a physician extender.

Patients with food allergies must have laboratory testing to confirm food allergies. The diet will be adjusted based on the laboratory test results.

Patients who require special diets for religious purposes will be referred to the facility chaplain.

## Intake Physical Examination:

A complete physical examination will be performed at the reception and diagnostic center by appropriate health professionals.

## Chronic Diseases:

Patients with certain chronic diseases and conditions such as seizures, heart disease, diabetes, hypertension, TB, chronic obstructive pulmonary disease, and HIV/AIDS, require close follow-up by the facility nurse and physician.





## Co-Payment (charges) for Medical Services

Inmates are charged for healthcare services. This charge is called a co-payment. The co-payment is taken from the inmate's account electronically. That means the charges are automatically withdrawn from your account. **Every inmate will have access to healthcare regardless of his or her ability to pay.**

The co-payment is:
$5.00 for sick call visits
$7.00 for inmate declared emergencies when no emergency is found to exist by healthcare staff.
There is no charge for treating:
- Work related injuries that are reported properly and timely.
- Initial medical screening / examinations when you arrive to the North Carolina Department of Public Safety.
- Follow-up medical visits at the request of a medical provider.
- Visits related to a chronic disease.
- Initial mental health screening / examination.

## Access To Healthcare:

The N.C. Department of Public Safety, Prisons will provide the opportunity for all patients to have access to medical services. All patients will be provided the opportunity to report an illness or other health concern and receive evaluation and treatment as determined by licensed healthcare providers.



1. **Sick Call:** This is a process in which the inmate has the opportunity to make his/her non-emergent health needs known. Sick call request forms are made available to inmates and must be submitted to healthcare staff only in a designated secure location. The patient must fully complete the top section of the sick call form, including signature and date. The patient will be seen by a healthcare provider for their health concerns within 24 to 72 hours if appropriate.

Inmates should check the posted sick call listing for their scheduled appointment date and time. Some sick call request can be answered by written response. **Sick call visits will have a $5.00 co-pay.**

2. **Medical Emergencies:** An emergency is defined as a life or limb threatening event. It means immediate treatment is necessary to prevent death, severe disability, permanent disability, uncontrolled bleeding or severe breathing problems.



3. **Self-Declared Emergency:** This is an emergency in which the patient seeks healthcare outside the sick call process. It means the patient decides he/she cannot wait for the normal routine sick call process to seek healthcare. **Self declared emergencies determined not to be a true emergency will cost a $7.00 co-pay.**

4. **Work Related Incidents:** These occur when patients get injuries while performing their job duties. This includes but is not limited to: lacerations, burns, and suspected fractures. The injury must occur on the job and be reported promptly to appropriate custody staff. This should be the same day the injury happens. The custody staff will complete a report of what happened and notify appropriate medical staff.

5. **Non-Work Related Incidents:** This is an injury or illness that occurs outside of the patient's job assignment. Healthcare may be accessed by the sick call process or self-declared emergency process.

6. **Segregation:** Patients housed in segregation areas will have access to healthcare via the sick call or Inmate Declared Emergency process. Nurses making rounds in the segregation areas will provide sick calls for the patients. Custody staff should be notified to report an Inmate Declared Emergency. Medical appointments for segregation patients will be provided according to the process used at the prison the inmate is housed at.

## Medication Administration:



Upon initial admission to a prison unit, the medication an inmate comes in on will be ordered for a two week period or until you are examined by an appropriate DPS provider. Some medicines will need approval by the physician / physician extender. The provider will review your medications during your physical examination and new orders will be written if needed.

Medications will be administered by two methods, direct observation therapy and self-administered medication program. Direct observation therapy (DOT) is when the patient must be observed taking the medication by authorized DPS personnel. Self-administered medications are medications that the patient can keep himself / herself and take as directed.

Inmates will be responsible for their own medication. If an inmate is caught misusing, abusing, destroying, giving or selling their prescription medication, they will be subject to disciplinary action. Outdated medication may be considered contraband.



Inmates will be instructed by the facility medical staff when and where to report to receive their medicines. Inmates should review their copy of the self-medication program instruction and agreement form.

## Mental Health Services:

 

It is the policy of the Department of Public Safety to provide appropriate mental health services to maintain basic mental health. Mental health staff and services will be available to all inmates. Some facilities have in-patient and/or out-patient services and housing assignments will be based on individual mental health needs which will be determined by an appropriate mental health provider.

## Dental Health Services:

Upon admission to a DPS facility, each patient will be screened for major dental problems that cannot wait for a regularly scheduled sick call appointment. It is the responsibility of the inmate/patient to initiate sick calls for routine dental care as



well as emergency dental care. A $5.00 co-payment will apply for all routine dental sick call visits and a $7.00 co-payment will apply for all emergency dental appointments.



Each patient is responsible for his/her oral hygiene and dental health. All patients will be given access to a toothbrush and toothpaste through admission kits, welfare kits (if indigent), or the canteen.

## Radiology Services: (X-RAY)



X-rays Services are available at many DPS facilities. Inmates needing x-rays will be scheduled or transferred to appropriate facilities to complete the necessary testing.

## Hospitalization:

When needed, arrangements shall be made for providing hospital care for medical illnesses and injuries. The attending Prisons physician will determine whether a patient will be hospitalized locally or is transferred to another more appropriate DPS facility.

### Pregnant Inmates/Patients

All inmates with confirmed pregnancy shall be housed at the North Carolina Correctional Institution for Women. After pregnancy is confirmed, patients shall receive regular prenatal care, including medical examination, nutritional guidance and counseling.



### Immunizations:



Immunizations will be administered to all patients in accordance with North Carolina law (North Carolina Immunization Regulations and Instructions are published by the North Carolina Commission for Health Services).

### Medical Records Request:

Inmates **shall not** have personal access to their medical records. However, a former inmate's current physician or legal representative can receive photocopies of medical records with a valid patient release form.



### Health Profile and Patient Acuity Ratings:

Each inmate in the North Carolina Department of Public Safety, Prisons will be assigned a health profile resulting in an activity grade, which indicates the inmate's overall ability to participate in work, education, recreation, and other activities.

Every inmate will be placed in a prison facility that is capable of meeting his/ her health needs. Every inmate will also have an acuity rating,

which shall be determined by a nurse. Every facility is assigned an acuity level to assist in the proper housing of the inmate.



The acuity rating is based on the number of hours needed for nursing staff to care for the inmate's health needs. This differs from the health profile activity grade, which rates the inmate's functional abilities, (hearing, sight, use of arms/legs, etc.). While there may be a need for some degree of nursing care for inmates with a particular activity grade, some inmates with limited functional abilities may not require any nursing care.



| | | |
|---|---|---|
| **State of North Carolina**<br>**Department of Public Safety**<br>**Prisons** | Chapter:<br>Section:<br>Title:<br><br>Issue Date:<br>Supersedes: | 4<br>.3200<br>**Sexual Violence Elimination**<br>**Policy**<br>11/02/21<br>07/20/20 |

## Standard Operating Procedures

### .3201 AUTHORITY

The Warden or designee of Central Prison in accordance with all applicable North Carolina Department of Public Safety, Division of Adult Corrections policy manuals.

### .3202 PURPOSE

This Standard Operating Procedure is to provide guidelines for the prevention, detection, response, investigation, prosecution and tracking of offender on offender and staff on offender sexual abuse and sexual harassment.

### .3203 APPLICATION

This policy applies to all offenders and to all persons employed by the Division of Adult Corrections, volunteers, agents of the Department of Public Safety and contractors assigned to a facility and/or providing services to offenders.

### .3204 DEFINITIONS

As used in this document, the following terms will apply:

A. ABUSER: the offender or staff member who commits an act of sexual abuse and / or sexual harassment.

B. CONTRACTOR: a person who provides services on a recurring basis pursuant to a contractual agreement with the agency.

C. EXIGENT CIRCUMSTANCES: any set of temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility.

D. FIRST RESPONDER: the first staff member to respond to a report of alleged sexual abuse or sexual harassment.

*Page 1 of 12*

England v. Onyia, et al.; EDNC 5:24-CT-3006
Supplemental Responses          CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

0975

E.   INVESTIGATOR:   a staff member who has been assigned or designated to administratively investigate a report of alleged offender sexual abuse and / or sexual harassment.

F.   PREA SUPPORT PERSON:   a designated employee that has been screened for appropriateness to serve as a victim advocate and has received education concerning sexual assault and forensic examination issues in general.

G.   PREA COMPLIANCE MANAGER:   a designated employee with sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards.

H.   SECONDARY PREA COMPLIANCE MANAGER:   a designated employee with sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards.

I.   SEXUAL ABUSE:  Any contact between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion of any part of the body of one person, or of any object into the sex organ, mouth or anus of another person, by the use of force or threat of force. ANY SEXUAL CONTACT BETWEEN AND OFFENDER AND A STAFF MEMBER IS CONSIDERED A SEXUAL ASSAULT. Also, forms of sexual abuse included willful and intentional indecent exposure of private parts of the body in the presence of another, touching of private parts of another person, the possession of sexually explicit pictures of offenders or staff, taking of such photographs and voyeurism.

J.   SEXUAL HARRASSMENT:  repeated and unwelcomed sexual advances, requests for sexual favors, or verbal comments, gestures or actions of a derogatory or offensive sexual nature by an offender or staff member directed to an offender.

K.   SUNSTANTIATED ALLEGATION:  an allegation that was investigated and determined to have occurred.

L.   UNSUNSTANIATED ALLEGATION:   an allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.

## .3204    POLICY

The North Carolina Department of Public Safety (NCDPS) is committed to a standard of zero-tolerance of sexual abuse and sexual harassment of offenders, either by staff, offenders, contractors, or volunteers. Therefore it is the policy of the Division of Adult Corrections to provide a safe, humane and appropriately secure environment, free from the threat of sexual abuse or harassment for all offenders, by maintaining a program of prevention, detection, response, investigation, prosecution and tracking.

## .3205    PROCEDURES

England v. Onyia, et al.; EDNC 5:24-CT-3006                                                    0976
Supplemental Responses      CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ      Document 76-3      Filed 03/26/26      Page 160 of 295

A.   New Employee Training

1.   All new employees shall receive the sexual abuse and harassment 101 training that addresses the agency's standard of zero tolerance of sexual abuse or harassment towards offenders either by staff, contractors, volunteer's or by other offenders.

2.   New employees will be instructed on employee's responsibility when responding to sexual abuse and harassment, offender's right to be free from sexual abuse and harassment, offender's and employee's right to be free from retaliation for reporting sexual abuse and harassment, the dynamics of sexual abuse and harassment in confinement, common reactions of sexual abuse and harassment, detect and respond to signs of threatened offenders and actual sexual abuse, how to avoid inappropriate relationships with offenders, how to communicate professionally with offenders and unique attributes of working in a confinement setting.

B.   Annual Refresher Training

1.   All staff shall receive annual refresher training on offender sexual abuse and sexual harassment issues.

2.   All staff will receive annual training emphasizing the agency's standard of zero tolerance, duty to report and also cover current sexual abuse and harassment policies and procedures.

C.   Offender Education

1.   All offenders shall receive, during reception, information explaining the agency's zero-tolerance policy regarding sexual abuse and harassment and how to report incidents or suspicions of sexual abuse and harassment. Offenders will be educated on prevention, self-protection, reporting sexual assaults/misconduct, evidence collection and preservation, treatment and counseling, and appropriate staff-offender relationships

2.   Appropriate provisions shall be made as necessary for offenders not fluent in English, persons with disabilities and those with low literacy levels.

3.   All materials provided to offenders on the subject of sexual abuse and harassment and any lesson plans used during any presentation on this topic shall be approved by the DPS PREA office.

D.   General Provisions

England v. Onyia, et al.; EDNC 5:24-CT-3006                                            0977
Supplemental Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 161 of 295

1. All offenders shall receive a mental health screening at reception. This screening shall include a review of any history of sexual abuse-victimization or sexually predatory behavior.

2. Any housing concerns noted by mental health staff regarding an offender's history of sexual abuse-victimization or sexually predatory behavior shall be communicated to the offender's facility management. Facility management shall then interview and discuss with the offender these concerns. As a result of said interview, facility staff may facilitate a bed or unit reassignment and/or a transfer request, if deemed appropriate, consistent with standard procedures.

3. In any incident involving a staff member as an aggressor, the staff member shall remain separated from the victim until the conclusion of the investigation. This may involve reassignment or administrative leave pending the investigation.

4. Offenders will be held accountable for knowingly making false allegations of sexual abuse or harassment against staff or another offender. If it is clearly established that a false accusation has been made, the offender may face disciplinary action.

5. Substantiated allegations of conduct that appears to be criminal shall be referred for prosecution

6. The facility investigator and law enforcement investigator shall work together with the local county prosecutor's office to assure appropriate criminal prosecution of cases of sexual abuse. Every care is to be taken to ensure that evidence in not contaminated, and that the crime scene is preserved, if at all possible. The investigation shall be done in a very thorough manner to ensure that the most complete case possible can be provided to the local District Attorney's Office to aid in any prosecution.

7. Retaliation against staff or offenders making an allegation of offender sexual abuse or harassment is prohibited.

8. Offenders shall be subject to disciplinary action following an administrative finding that the offender engaged in offender on offender sexual abuse or following a criminal finding of guilt for offender on offender sexual abuse.

9. The Facility Investigator and all others involved in the PREA process will ensure the confidentiality of PREA complaints as well as the data collected through the investigation except to cooperate with local law enforcement, to take and enforce disciplinary action, to defend against claims by the offender for violation of the offender's rights for having been subjected to sexual abuse and to otherwise comply with the law.

England v. Onyia, et al.; EDNC 5:24-CT-3006                                  0978
Supplemental Responses    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

10. When the quality of evidence appears to support criminal prosecution, the DPS investigators shall only be permitted to continue interviews after consulting with local law enforcement as to whether interviews may be an obstacle for subsequent criminal prosecution.

11. Announcement of cross gender staff working offender housing units at the beginning of the shift. Announcement will be documented on shift narrative. Unit sergeant will be responsible for calling it into master control.

12. PREA flowchart on reporting will be discussed monthly in shift line-up and documented on shift narrative and monthly report. Flowcharts will be in each Unit and each staff will review and notate monthly that they have reviewed.

13. PREA investigator tool box will be maintained in the Arsenal.

14. On-call PREA investigator roster will be maintained in Master Control.

F. Reporting Sexual Abuse and Harassment

1. An offender may report sexual abuse or harassment to any employee.

2. An offender may report sexual abuse or harassment through the Administrative Remedy Process.

3. Offenders may report sexual abuse and harassment through the toll free PREA telephone number for reporting directly to the PREA office.

4. Third party reporting can be made via email, phone or letter.

5. Any employee that receives a report of a sexual abuse or possible sexual abuse, whether verbally or in writing, shall immediately notify the shift supervisor and complete a written statement for an incident report. The shift supervisor shall assure that the alleged victim/offender and aggressor are physically separated, either through the placement of one or both offenders in segregation or some other effective means. The alleged offender/victim shall be advised by the employee receiving the report and/or the shift supervisor to not shower or otherwise clean them selves, or if the assault was oral, to not drink, eat, brush their teeth or otherwise take any action that could damage or destroy evidence. If an alleged assault has occurred, or other circumstances dictate, arrangements shall be promptly made to have the alleged offender/victim examined by medical services. All allegations of sexual assault shall be reported to facility management and documented.

6. Staff has a duty to report any allegations that offenders are having sexual relationships with other offenders or with staff.

England v. Onyia, et al.; EDNC 5:24-CT-3006                                    0979
Supplemental Responses          CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 163 of 295

7. Staff must report any retaliation against offenders or staff who reported sexual abuse or harassment.

8. All reports of sexual abuse and harassment are to be forwarded to the Facility Head and the PREA Office.

9. Local law enforcement shall be notified if there is evidence or suspicion that criminal conduct may have occurred.

10. Failure of staff to report alleged incidents of sexual abuse and harassment will be subject to disciplinary action.

11. If it is reported that an offender was abused while at another facility, the facility that received the allegation shall notify the appropriate agency where the alleged abuse occurred. This notification must take place within 72 hours of receiving the allegation and it must be documented.

G.    PREA Support Person (PSP)

1. A designated PREA Support Person shall be notified as soon as possible, but no later than the next business day, that an alleged sexual assault has occurred. This person will consult with the investigator on the case and offer assistance as is appropriate based on their training. With the offender victim's consent, the PREA Support Person may sit in on administrative interviews of the offender, The PREA Support Person may not however, in any manner, obstruct or interfere in the course of the investigation.

2. The PSP shall monitor retaliation against the victim and any offender who either reports the allegations or cooperates with the investigation of sexual abuse or harassment.

3. The PSP will monitor for a minimum of 90 days and complete documentation on form OPA-124. This form will be forwarded to the PREA Compliance Manager.

4. The PSP will inform the victim of the disposition of the PREA investigation.

H.    PREA Compliance Manager (PCM)/ Secondary PREA Compliance Manager (SPCM)

1. The PCM shall monitor for retaliation against staff that either report or cooperate with the investigation of sexual abuse or harassment.

2. The PCM will monitor the staff for a minimum of 90 days and document the results on form OPA-122 (PREA sexual abuse and harassment retaliation report)

England v. Onyia, et al.; EDNC 5:24-CT-3006                                                    0980
Supplemental Responses          CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 164 of 295

3. A copy of the form will be forwarded to the DPS PREA Office and to the region director.

4. A post incident review will be conducted by the PCM for all substantiated and unsubstantiated allegations of sexual abuse.

5. The post incident review shall be completed within 30 days and forwarded to the regional director and DPS PREA office.

6. The PREA Compliance Manager cannot be designated as the PREA Support Person.

I. Investigations

1. If alleged sexual abuse is reported or discovered, an immediate preliminary investigation shall occur. If there is evidence that an assault may have occurred, the PCM or designee shall be immediately notified. Notification shall be immediately made to the PREA investigator. When conducting PREA investigations that involve abuse that may lead to criminal charges if substantiated, law enforcement needs to be contacted. This decision will be made by the Associate Warden for Operations, Deputy Warden or Warden. This information needs to be documented in the PREA report. If a designated PREA Support Person is on site they shall also be notified. Otherwise, they shall be notified no later than the next business day. The victim/offender should be informed of designated PSP.

2. In order to preserve the integrity of the investigation, one person, or a specific team, shall be designated to investigate an incident, and only that person(s) shall be involved in the collection of evidence and interviewing of potential witnesses.

3. A thorough investigation is necessary to ensure the potential for prosecution if it is determined that criminal activity has been committed.

4. A determination shall be made, based upon the amount of time that has passed since the alleged incident and the possibility of evidence still existing, as to whether the alleged aggressor, if known, should be placed in a segregation cell to preserve forensic evidence. If an offender is placed in a segregation cell for purposes of preserving forensic evidence, the offender shall be strip searched and all possessions taken from him.

5. If it is determined that evidence may still exist and it is possible, the crime scene shall be secured and any potential evidence shall remain in place for law enforcement examination and investigation. If the crime scene cannot be secured, the crime scene shall be photographed and/or video taped, and the evidence, if any, collected, and placed in an evidence bag with an evidence form attached.

England v. Onyia, et al.; EDNC 5:24-CT-3006                                    0981
Supplemental Responses        CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 165 of 295

6. The only persons that should be entering a secured crime scene are law enforcement, the investigator, or medical staff, as needed. A log shall be maintained of anyone entering the crime scene and at what time they entered. Anyone entering the crime scene should be videotaped as additional documentation. The area shall remain secured as a crime scene until law enforcement releases it.

7. When the alleged offender/victim returns from medical services, he shall be placed in administrative segregation for protective housing if necessary. If the facility does not have segregation housing available, the offender shall be placed in another designated single cell or transferred, if necessary, to a facility with a single cell available. Placement in protective housing under this provision does not require that the offender be placed on watch status unless such a status has been otherwise initiated. The offender shall be listed as a protective control pending the investigation. Care should be taken by staff not to penalize the offender/victim because of the allegations.

8. The alleged offender abuser shall be held in segregation until the investigation is complete.

9. During the course of the investigation the alleged victim and the alleged aggressor shall remain separated.

10. When outside agencies investigate sexual abuse, the facility shall cooperate with outside investigators and shall endeavor to remain informed about the progress of the investigation.

J.     Medical Evaluation and Evidence Collection

1. Any offender that is housed at Central Prison who reports that he has been sexually abused will be seen in the Urgent Care located in the Regional Medical Center at Central Prison where Medical Services will follow medical protocol, which includes provisions for examination, documentation, collection of forensic evidences, testing for sexually transmitted diseases, counseling, and prophylactic treatment. Medical Services will ensure that the offenders receive medical follow up and is offered and referred for mental health services.

2. In the event that the offender has incurred injuries that can not be treated by Medical Services Staff at Central Prison arrangements will be made to have the offender transported to the Emergency Department at a local hospital for appropriate treatment.

3. Forensic evidence collected by an outside emergency department will only be released to law enforcement. Facility staff should not attempt to retrieve this evidence from the hospital.

England v. Onyia, et al.; EDNC 5:24-CT-3006                                              0982
Supplemental Responses          CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ     Document 76-3     Filed 03/26/26     Page 166 of 295

4. Forensic evidence collected by the Urgent Care at Central Prison will be released to the Facility Investigator ensuring that the chain of custody is not broken. The Facility Investigator will transport the forensic evidence to the State Bureau of Investigation laboratory where it will be tested and the results forwarded to the Facility Investigator.

5. In preparation of transporting the offender to the hospital's emergency room, medical protocol shall be followed in order to preserve any possible evidence. If appropriate, the bed sheet and offender's clothing shall be placed in an evidence bag with an appropriate chain of evidence form attached.

K.    Screening for risk of victimization and abusiveness

1. All offenders shall receive a mental health screening within 72 hours at reception. This screening shall use an objective screening instrument that assesses the following minimum criteria:

   a. Whether the offender has a mental, physical, or developmental disability.

   b. The age of the offender.

   c. The physical build of the offender.

   d. Whether the offender has previously been incarcerated.

   e. Whether the offender's criminal history is exclusively nonviolent.

   f. Whether the offender has prior convictions for sex offenses against an adult or child.

   g. Whether the offender is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming.

   h. Whether the offender has previously experienced sexual victimization.

   i. The offender's own perception of vulnerability.

   j. Whether the offender is detained solely for civil immigration purposes.

2. The initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the agency, in assessing offenders for risk of being sexually abusive.

3. All offenders shall be reassessed within 30 days of arrival to a facility. Any housing concerns noted by mental health staff regarding an offender's history of sexual abuse-

England v. Onyia, et al.; EDNC 5:24-CT-3006                                                    0983
Supplemental Responses          CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 167 of 295

victimization or sexually predatory behavior shall be communicated to the offender's facility management. Facility management shall then interview and discuss with the offender these concerns. As a result of said interview facility staff may facilitate a bed or unit reassignment and/or a transfer request if deemed appropriate, consistent with standard procedures.

L.     Medical and Mental Health Screening – History of Sexual Abuse

1. If the screening for risk of victimization and abusiveness indicates that a prison offender has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, staff shall ensure that the offender is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.

2. If the screening for risk of victimization and abusiveness indicated that a prison offender has previously perpetrated sexual abuse, whether is occurred in an institutional setting or in the community, staff shall ensure that the offender is offered a follow-up meeting with a mental health practitioner within 14 days of the offender screening.

3. Any information related to sexual victimization or abusiveness that occurred in an institutional setting shall be strictly limited to medical and mental health practitioners and other staff, as necessary, to inform treatment plans and security and management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State and local law.

4. Medical and mental health practitioners shall obtain informed consent from offenders before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the offender is under the age of 18.

M.    Use of Screening Information

1. The information from the screening for risk of victimization and abusiveness shall be used to inform housing, bed, work, education, and program assignment with the goal of keeping separate those offenders at high risk of being sexually victimization from those at high risk of being sexually abusive.

N.    Individualized determination shall be made about how to ensure the safety of each offender.

1. In deciding whether to assign a transgender or intersex offender to a facility for male or female offenders, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the offender's health and safety, and whether the placement would present management or security problems.

England v. Onyia, et al.; EDNC 5:24-CT-3006                                0984
Supplemental Responses      CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

2. Placement and programming assignments for each transgender or intersex offender shall be reassessed at least twice each year to review any threats to safety experienced by the offender.

3. A transgender or intersex offender's own views with respect to his or her own safety shall be given serious consideration.

4. Transgender and intersex offenders shall be given the opportunity to shower separately from other offenders

O. Protective Custody

1. Offenders at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is not available alternative means of separation from likely abusers. If a facility cannot conduct such as assessment immediately, the facility may hold the offender in involuntary segregated housing for less than 24 hours while completing the assessment.

2. Offenders placed in segregated housing for this purpose shall have access to programs, privileges, education, and work opportunities to the extent possible. If the facility restricts access to programs, privileges, education or work opportunities, the facility shall document:

   a. The opportunities that have been limited.

   b. The duration of the limitation.

   c. The reasons for such limitations.

3. The facility shall assign such offenders to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.

4. If an involuntary segregated housing assignment is made, the facility shall clearly document:

   a. The basis for the facility's concerns for the offender's safety.

   b. The reason why no alternative means of separation can be arranged.

5. Every 30 days, the facility shall afford each offender a review to determine whether there is a continuing need for separation from the general population.

England v. Onyia, et al.; EDNC 5:24-CT-3006
Supplemental Responses                    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER                    0985

<u>**Attachments**</u>:

OPA-T100 Offender PREA Education Acknowledgement Form
OPA-I10   Post Incident Review
OPA-I20   Incident Scene Tracking Log
OPA-I21   PREA Evidence Chain of Custody Log
OPA-I22   PREA Sexual Abuse & Harassment Retaliation Report (Staff)
OPA-I24   PREA Sexual Abuse & Harassment Retaliation Report
(Offender/Juvenile)
OPA-I30   PREA Support Services
OPA-T10   PREA Information for Person(s) with Direct & Indirect Contact with
                Offenders/Offenders/Juveniles
OPA-T30   Cross Gender Announcement & Acknowledgement
DC-540    Mental Health Services Referral
PCI-PIRT  PREA Incident Report Tracking
Sexual Abuse Response Team Plan


*Denise Jackson*                            11/02/21

---

Facility Head                                Date

4.3200_11_02_21.doc

England v. Onyia, et al.; EDNC 5:24-CT-3006                              0986
Supplemental Responses        CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ     Document 76-3     Filed 03/26/26     Page 170 of 295

DC-138A
Rev. 1/18

## <u>Notice to Offender</u>

You have been accused of violating the offender conduct rules and an investigation has begun.

**The following are your rights in the offender disciplinary process:**

*I want This* (1) → You have a right to at least 24 hours advance written notice of the disciplinary charges before the hearing.

2. You have a right to be informed of the alleged misconduct, and to make verbal and/or written statements to the Investigating Officer.

3. You have a right during the investigation to request in writing to the Investigating Officer that a written witness statement(s) or evidence be gathered, or evidence or witness(es) be present at the hearing, if charges are referred. If you cannot write, you may request that the Investigating Officer transcribe your oral request(s) on the witness form, then sign and date the form. Failure to make requests on the offender witness form shall be deemed a waiver of such requests.

4. You have a right to request that the Facility Head/Designee appoint a staff member to assist you at the hearing.

*I want This* (5) → You have a right to have the substance of the evidence read to you and the opportunity to explain or refute the evidence at the disciplinary hearing.

6. You have a right to appeal to the Prisons Director within 15 days from the date of the hearing.

7. Violation of these rights by staff may be grounds for dismissal of the charge(s).

8. You may waive these rights in writing or by overt refusal to cooperate with established disciplinary procedures associated with these rights.

9. You may request to waive a hearing before the Facility Head/Designee or Hearing Officer, acknowledge your guilt of the offense(s), waive your right to appeal and accept sanctions consistent with policy.

**CERTIFICATION: I FULLY UNDERSTAND AND ACKNOWLEDGE RECEIPT OF THIS NOTICE.**

Jonathan England    0702210    12-21-22    07:20
(Print Offender name)    (OPUS#)    (Date of Offense)    (Time of Offense)

_Jon England_           12-28-22
(Offender Signature)        (Date)

              12-28-22
(Investigating Officer's Signature and OPUS ID)    (Date)

Distribution: Facility files, Copy-Offender

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 171 of 295    0896

OFFENDER CLEVESY STATED THAT PERT DID A SEARCH AND OFFICERS WINDLEY AND ONYIA WENT TO OFFENDER ENGLAND CELL KNOWING THEY WEREN'T SUPPOSED TO BE NEAR HIM BECAUSE OF A PREA. HE STATED THAT OFFICER WINDLEY WAS TRYING TO INTIMIDATE OFFENDER ENGLAND BY TELLING HIM THAT "HE WAS HERE" AND SAID IT OVER AND OVER. HE STATED OFFICER ONYIA WAS AT OFFENDER ENGLAND DOOR TELLING HIM TO STRIP DOWN AND OFFENDER ENGLAND REFUSED. HE STATED THEN OFFENDER ENGLAND WAS CUFFED AND THEY WENT IN HIS CELL TO ROUGH HIM UP. HE STATED OFFENDER ENGLAND CAME OUT LIMPING WITH RED MARKS ON HIS TORSO. OFFICER WINDLEY STATED THAT HE DID NOT TAUNT OR SAY ANYTHING TO OFFENDER ENGLAND. HE STATED THAT OFFENDER ENGLAND WAS THE FIRST TO START FLUSHING HIS TOILET WHEN THEY CAME ON THE BLOCK THAT IS WHAT LED THEM TO HIS CELL. SERGEANT SLACZKA STATED HE OVERHEARD OFFENDER ENGLAND BEING VERY LOUD AND DISRUPTIVE FROM HIS CELL. HE STATED WHEN HE APPROACED HE OBSERVED OFFICER WINDLEY AND ONYIA HAD OFFENDER ENGLAND PLACED AGAINST THE WALL. HE STATED HE ESCORTED OFFENDER ENGLAND OFF THE BLOCK AND PLACED HIM IN FULL RESTRAINTS. SERGEANT SLACZKA STATED HE DIDN'T OBSERVE OFFICERS ONYIA, WINDLEY, OR OSBORNE USING EXCESSIVE FORCE OR HEAR OFFICER WINDLEY AND ONYIA MAKE ANY STATEMENTS RELATED TO PREA. NURSE MILLER STATED OFFENDER ENGLAND WAS MEDICALLY SCREENED FOLLOWING A PERT SEARCH. SHE STATED HE COMPLAINED OF SEVERAL INJURIES. HE ALLEGED EXCESSIVE USE OF FORCE DURING SEARCH. VITALS WERE WITHIN NORMAL LIMITS, #1 INJURY WAS A SMALL MINOR KNEE ABRASION, KNEED HAD FULL RANGE OF MOTION, BUT OFFENDER COMPLAINED OF LEVEL 4 THROBBING PAIN. #2 INJURY WAS A VERY MINOR THIN 3 INCH SCRATCH ON RIGHT BUTTOCK OFFENDER STATED LEVEL 4 THROBBING PAIN. INJURY #3 WAS PAINFUL WRIST FROM HANDCUFFS TOP RIGHT WRIST MILD SWELLING. HE WAS VERY IRRITABLE AND ANGRY. THE CAMERA FOOTAGE WAS REVIEWED AND THE INCIDENT COULD NOT BE SEEN CLEARLY DUE TO OCCURRING IN THE CELL. STAFF REPORTED TO OFFENDER ENGLAND CELL DUE TO HIM FLUSHING HIS TOILET OVER AND OVER THAT IS WHAT BROUGHT ATTENTION TO HIM. DUE TO MY INVESTIGATION I RECOMMEND OFFENDER ENGLAND BE CHARGED WITH A B25 OF THE OFFENDER DISCIPLINARY PROCEDURES.

STAFF ASSISTANCE REQUESTED: NO      STAFF:
WITNESSES REQUESTED BY STATEMENT: YES      IN PERSON: YES
PHYSICAL EVIDENCE: YES

INVESTIGATION STAT:   CHG. RECOMMD        PROCESSING STAT: INVESTIGATED
     CHARGES:     B25

DATE SUBMITTED TO SUPERINTENDENT: 01/08/23     TIME: 09:33

INVESTIGATOR: PRJ16 - PERRY, RICHARD J.

DC - 138F
1/18

# Request for Extension of Time

Date **1/9/23**

To: **Ms. N. Faust**

From: **Mrs. S. Hudson**

I hereby request an extension of time regarding the disciplinary report pertaining to

| | |
|---|---|
| Name of Offender | **Jonathan England** |
| OPUS Number | **0702210** |
| Date/Time of Offense | **12/21/22 @ 0720** |
| Facility/Number | **CP/3100** |

_____ The disciplinary report was returned for additional information or further investigation.

_____ Offender was not available for the hearing due to medical/mental status.

**X** The disciplinary/investigation report was not forwarded to the superintendent's office within the allotted time.

_____ The offender was absent from the facility from _____ to _____ (See Explanation)

_____ The offender has transferred to _____ from _____ (See Explanation)

Explanation: **Workload of the unit**

_____

_____

_____

_____

I approve an extension of **10** days.

Approving Authority _**N. Faust**_ _**1/9/23 @ 0950**_
(Signature)        (Date/Time)

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RN Document 76-3 Filed 02/26/26 Page 173 of 295
0893

INMATE NAME: ENGLAND                              NCDOC#: 0702210
FACILITY:    CENTRAL PRISON         #: 3100       CUSTODY LEVEL: CLOSE
OFFENSE REPORTED BY: WINDLEY, DARNELL L.          TO: HUDSON, SHA-KEEBA M.


DATE OF OFFENSE:           12/21/22    TIME: 07:20
OFFENSE REPORTED:          12/21/22    TIME: 08:15
INVESTIGATOR ASSIGNED:     12/21/22    TIME: 15:05
INVESTIGATION BEGAN:       12/21/22    TIME: 15:07
COMPLETION DATE:           01/08/23    TIME: 09:33

SUMMARY OF FACTS:

A 15 EXTENSION WAS REQUESTED AND GRANTED FROM CHUM II S. HUDSON DUE TO WORK LOAD.

ON DECEMBER 21, 2022 AT APPROXIMATELY 7:20AM OFFICER JOEL OSBORNE CONDUCTED A UNCLOTHED SEARCH OF OFFENDER JONATHON ENGLAND 0702210 DURING A PERT SEARCH. OFFENDER ENGLAND BECAME COMBATIVE AND AGRESSIVE BY ATTEMPTING TO JERK AWAY. OFFICER OSBORNE STATED HE OBSERVED OFFICERS DARNELL WINDLEY AND OKECHIUKU ONYIA PLACE OFFENDER ENGLAND ON THE WALL TO GAIN CONTROL OF HIM. OFFICER OSBORNE PLACED RESTRAINTS ON OFFENDER ENGLAND AND SERGEANT KAMIL SLACZKA ESCORTED HIM OFF THE BLOCK. I VERIFIED THAT OFFENDER ENGLAND IS NOT ADA, DD, OR IN PATIENT MENTAL HEALTH. OFFENDER ENGLAND WAS READ HIS RIGHTS SIGNED AND RECIEVED COPY. OFFENDER ENGLAND STATED HE WAS WOKE UP BETWEEN 7:00-8:00AM TO THE SOUND OF THREE OFFICERS OUTSIDE HIS DOOR OFFICER WINDLEY, OSBORNE, AND ONYIA. HE STATED OFFICERS WINDLEY AND ONYIA AREN'T SUPPOSED TO BE AROUND HIM BECAUSE OF AN ACTIVE PREA INVESTIGATION. HE STATED OFFICER ONYIA PLACED HIS FACE AGAINST THE CELL WINDOW AND ASKED HIM TO "STRIP NAKED, AND SQUAT AND COUGH" HE STATED HE WOULD COMPLY BUT NOT FOR ONYIA OR WINDLEY. HE STATED OFFICER WINDLEY WAS OUTSIDE HIS DOOR STATING "I'M HERE, I'M OUT HERE WANNA PUT A PREA ON ME, I'M RIGHT HERE". HE STATED OFFICER OSBORNE TOLD HIM TO CUFF UP AT THAT TIME. HE STATED THE FOOD PASSAGE OPENED AND HE BACKE UP TO THE DOOR AND LET OFFICER OSBORNE PLACE CUFFS ON HIM BEHIND HIS BACK. HE STATED HE WAS STANDING IN HIS UNDERWEAR AND SOCKS WITH BACK AGAINST THE INSIDE OF HIS DOOR WITH HIS HANDS THROUGH THE FOOD PASSAGE. HE STATED WHEN THE DOOR OPENS THE TWO OFFICERS HE HAS A PREA AGAINST RUSHED IN AND SHOVED HIM IN FRONT OF HIS TOILET AND STARTED PUNCHING HIM IN LEGS AND SIDE. HE STATED THEY WERE PULLING HIS BOXERS DOWN WHILE HE WAS CUFFED AND HITTING HIM. HE STATED OFFICER OSBORNE RAN IN AND PUNCHED HIM ON THE LEFT SIDE OF HIS HEAD BEHIND LEFT EAR. HE STATED SERGEANT SLACZKA COMES IN THE CELL AND YELL ALL THREE OF THEM TO "STOP GUYS, QUIT, STOP". SERGEANT SLACKZA THEN TELLS HIM TO COME WITH AND WALKS HIM OUT OF THE CELL OFF THE BLOCK. OFFENDER ENGLAND STATED OUT OF THE 25 OR 30 PERT OFFICERS THAT WERE IN 2B EASTSIDE SEARCHING HOW DID THE TWO HE HAS AN ACTIVE PREA ON COME TO HIS CELL? HE REQUESTED A WRITTEN STATEMENT BE GATHERED FROM OFFENDER GAVIN CLEVESY 1668818, REQUESTED SERGEANT SLACKA AND NURSE MILLER BE A LIVE WITNESS AT HIS HEARING; AND CAMERA FOOTAGE FROM 2B EAST AND PICTURES OF HIS RIGHT BUTT CHEEK BE VIEWED AS PHYSICAL EVIDENCE, NO STAFF ASSISTANCE REQUESTED.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-CT-03006-M-RJ   Document 76-3   Filed 02/26/26   Page 174 of 295          0894

Johnathan England v. Onyia, et al. 5:24-cv-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ Document 76-3 Filed 02/28/26 Page 175 of 295    0216

# North Carolina Department of Adult Correction
## Restrictive Housing Evaluation

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: | M | Facility: | MARI |
| Date: | 02/15/2024 07:45 | Provider: | Hewitt, Allen D M.A. Staff | | |

### Treatment Setting
Outpatient Program at MARION CI.

### Reason for Services
M3

### Violence Alerts
There are no elevated risk factors presently noted for offender ENGLAND.

### Escape Alerts
There are no elevated risk factors presently noted for offender ENGLAND.

### Self-Injury Alerts
There are no elevated risk factors presently noted for offender ENGLAND.

### MSE/Behavioral Observations
Alert and oriented, inmate presented with a cooperative attitude, denying any current distress. Rapport was comfortably established. Hygiene & grooming were adequate. Eye contact, facial expression & psychomotor activity were within normal limits. Speech was normal in rate, volume, & clarity; & conversation, spontaneous, lucid & relevant. Overall inmate appeared to be relatively open & honest, without evidence of denial, evasiveness & dissimulation. Mood was euthymic; & affect, appropriate, stable, genuine, expressive and broad in range. Thought process appeared rational, coherent, organized & goal-directed. Thought content was appropriate to setting, denying anxiety, phobias, obsessions, compulsions, depression, mania, paranoid or other delusions. Perceptual processes were reality based. Judgment, insight & impulse control did not appear disturbed. Reality testing was intact.
Offender is new to Marion and is currently in RH waiting for a bed to open in the RDU program.
Offender reports being med compliant, the meds are working without any side effects. Offender reports no issues other than having to wait to enter the program.

### Progress Towards Goals
Offender is under no duress currently but he is entering the RDU which indicates infractions in his recent past.

### Current Adjustment to Restrictive Housing
There do not appear to be current mental health contraindications for housing in RH at this time.

### Plan/Diagnostic Changes
none

### Follow-Up/Next Appointment
30 days

| | | | |
|---|---|---|---|
| **Co-Pay Required:** | No | **Cosign Required:** | No |
| **Telephone/Verbal Order:** | No | | |
| **Standing Order:** | No | | |

Completed by Hewitt, Allen D M.A. Staff Psychologist on 02/15/2024 09:37

Requested to be reviewed by Yearick, Kenneth H Ph.D Asst. Dir. of Beh. Health.

Review documentation will be displayed on the following page.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendant's Disco very Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    Page 176 of 295    0215

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other☐ Name: ___Jonathan England___   NCDOC: (Offender Only) ___0702210___

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person Obtaining statement: _____

Date: ___4-10-23___      Time: ___1313___

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No          Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

Offender ___Jonathan England___        Opus# ___0702210___        refused to make a
written statement for his disciplinary hearing.

Witnessed by: ___Sgt. Slaczka___
Witnessed by: ___Sgt. Rica___

_____

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness ___Refused___          Date _4/10/13_ Time _0908_

---

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendant's Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 178 of 295

0830

## STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other ☐ Name: Jonathan England    NCDPS: (Offender Only) 0702210

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person obtaining statement: _____ C. Cory _____

Date: 12-28-22    Time: 1:30

---

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☑ Yes   ☐ No. If yes, list names: Gavin Clevesy #1668818

I request live witness(es) be present at my hearing: ☑ Yes   ☐ No. If yes, list names: Seargeant K. SLAZCKA and Nurse MIDDLER

I request physical evidence be reviewed at my hearing: ☑ Yes ☐ No  Camera Footage From "BU-206 EAST" "UNIT-1" upper level
Pictures of Right Butt Cheek Taken By Sgt. VANDER    Offender Initials CC
Showing marks and scratches✓

I request staff assistance at my hearing: ☐ Yes ☑ No

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

of them punching me in my legs & side ✓ Officers ONIYA and WINDLEY both are pulling my Underwear/Boxers down while they were hitting me ✓ My hands were cuffed behind my back and I had a hold of the back of my boxer waist band trying to keep them from pulling my boxers down✓ c/o ONIYA say's to me "you told them I tried to Rape you" Referring to the "PREA" I had put on him and WINDLEY a couple of weeks ago due to the 11-28-22 incident. c/o OSBORNE runs in and punches me in the left side of my head behind my left ear and knees me in the stomach✓ Seargeant SLAZCKA runs into my cell and yells at all three of them to "Stop✓ Guy's stop✓ Quit✓ Stop✓" Sgt. SLAZCKA tells me to "Come on✓ Come with me✓" Sgt. SLAZCKA walks with me out of my cell, down the stairs and out of the block✓ Out of the 25 or 30 "PERT" officers that were in BU-EAST that morning searching why did the two I had Active "PREA on come to me-P PURE RETALIATION✓ Policy was violated in several way's by these 3 Officers, especially by ONIYA & WINDLEY✓ And this "disciplinary" write up is simply further retalitation (Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness Jon England    Date 12-28-22 Time 1:30pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses—CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RN Document 76-9 Filed 03/26/26    Page 179 of 295    0763

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Lindsay Stover          NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)     Administrative Specialist II SLJ05 _____

Name and OPUS Number of Accused Offender(s):     Jonathan England #0702210 _____

Name of Person Obtaining statement: ____ Martha Arguello _____

Date: ____ 5/16/23 ____          Time: ____ 3:55pm ____

| FOR ACCUSED OFFENDER USE ONLY: |
| --- |
| I Request written statements be gathered in my behalf: ☐ Yes    ☐ No. If yes, list names: _____ |
| I request live witness(es) be present at my hearing: ☐ Yes    ☐ No. If yes, list names: _____ |
| I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No |
| I request staff assistance at my hearing: ☐ Yes    ☐ No          Offender Initials: _____ |

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On April 11, 2023, Administrative Specialist Lindsay Stover received a letter addressed to the Warden from offender
Jonathan England #0702210 regarding PREA Allegations that occurred on December 21, 2022 when Officers Onyia and
Windley from the PERT team came into his cell and punched him while he was handcuffed behind his back and pulled his
underwear down. This was reported to the PREA Compliance Manager. End of statement.

(Statement may be continued on an attached sheet.)

| I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact. |
| --- |
| Signature of witness _Lindsay Stover_          Date 5/16/23 Time 1:46pm |

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

0734

Jonathan England
#0702210
Central Prison
MSC 4285
Raleigh, N.C
27606.

MAILED FROM CENTRAL PRISON



US POSTAGE PITNEY BOWES

ZIP 27606  $ 000.60
02 1W
0001379921

RECEIVED
JAN 1 0 2023
DPS
PREA

Department of Public Safety PREA Office
4201 Mail Service Center
Raleigh, N.C
27699.

MSC
4201

attn
Charlotte
Williams

RECEIVED

DEC 3 0 2022

DPS
Office of the Secretary

Jonathan England *etc.*

Jonathan England
E0702210
Central Prison
MSC 4285
Raleigh, N.C
27606

MAILED FROM CENTRAL PRISON



US POSTAG

ZIP 27606 $
02 1W
0001379921

Department of Public Safety PREA Office
4201 Mail Service Center
Raleigh, N.C
27699.

MSC
4201

Attn
Charl
Will

RT

D\_\_ B

DP
Office of the

Carbon Copy/cc

Page 1 of 8

12-26-22

NC DPS PREA Office,

Hello my name is Jonathan England. I am currently housed at "Central Prison" here in Raleigh. I am serving a 77-105 month sentence and am about 16 months in on that sentence. I have been in and out of prison since 2006 and at no time during all of my other incarcerations did I feel like I needed to file a "PREA". Until now. I am writing to your office today in regards to two seperate incidents that have happend in less than 30 days apart from each other. The November 28th 2022 incident. And now the December 21st 2022 incident. Both incidents involve the same two officers. There is "Camera Footage" to show proof of both incidents. Both incidents involve "Sexual" misconduct and the use of Unnecessary force and very Malicous behavior by these officers. Again, there is "Camera Footage" to show proof. Camera Footage Will also show these two officers retaliating again'st me because I had a Active "PREA" Investigation on them due to the first incident. This whole Thing has gotten WAY OUT OF HAND. All I ask is that your office to PLEASE read my letter. Come to Central Prison and review the Camera Footage on the enclosed dates at the times listed.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

0735

If your office will just check into what I'm saying and do your own investigation you will surely see that I am telling the Truth. And with that said here is the First incident.

On Monday, November 28th 2022 between 9am - 9:30 Officer O. ONIYA was removing a pair of Handcuffs from my wrists and had both of his hands + arms stuck through the "Trap" door and inside my cell. For well over a minute Officer ONIYA tried to remove the handcuffs. A very simple task. Officer ONIYA became aggressive and started twisting, yanking and Jerking on the handcuffs. This was hurting my wrists. Officer ONIYA finally got one cuff off and as he goes to remove the other cuff he pinched me on my right butt cheek, I Jumped and spun around like what the hell?? I had been handcuffed behind my back. And had my back to my cell door so he could take the cuffs off. He pinches me I spun around. Now I am facing forward toward my cell door. I stuck my arm and hand out on the "Trap" so the other cuff could be removed. Officer ONIYA again goes to twisting and pulling on the handcuff causing marks and welps on my wrist. Officer ONIYA's actions continues for about a minute or so. I believe Officer ONIYA was being malicous, trying to intentionally hurt me. This is caught on camera.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 06/26/25    Page 184 of 295    0736

Officer D. WINDLEY then grabs the handcuff and he starts twisting and pulling on the handcuff and my wrist causing me more pain, marks, welps and eventually open wounds. I yelled saying they were being to rough. Officer WINDLEY sprays me with pepper spray. For no good reason. Officer ONIYA grabs the cuff again and starts back twisting the cuff on my wrist again. Finally officer ONIYA removes the handcuff and I jerk my hand/arm inside my cell. when walking away officer WINDLEY tells me to "suck HIS DICK". Other prisoners heard him say this and will verify what I'm saying. Seargeant PYATT took pictures of the damage done to my wrists right after the incident took place. There are two "Security Cameras" in front of my cell and will show proof of the incident. This all took place on the Upper level of "UNIT 1" at cell "BU 206 EAST" here at Central Prison in Raleigh, North Carolina.

As I said, this is the First incident that took place on Monday, November 28th 2022.

And it was between 9am — 9:30am that morning. Please Just watch the Camera Footage and you make your own opinion to the incident.

The closest camera to my cell is about 30 feet from my cell door.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 185 of 295
0737

This is the Second incident that <u>Just</u> took place a couple of day's ago。

On Wednesday, December 21rst 2022 between 7am-8am I was awoken to the sound of three officers right outside of my cell door. Officer O. ONIYA, Officer D. WINDLEY and Officer Osborne were standing at my cell door "BU-#206 EAST" on the Upper Level of "UNIT-1". I got out of my bed and came to my cell door to see what they wanted. Officer ONIYA, Officer WINDLEY are <u>NOT</u> suppose to be near me due to the "Active" on-going "PREA Investigation I have on both of them due to the sexual and physical assault from the 11-28-22 incident. I went to my cell door. Officer ONIYA with his face up again'st the window in my cell door tells me to "Strip naked, Lift my dick + balls, then he wanted me to turn around squat + cough I told him I would strip but NOT for him or WINDLEY. Officer Osborne was shining his Flashlight in my face。 Officer WINDLEY outside my door taunting me saying "I'm here, I'm out here。 Wanna put a PREA on me。 I'm right here "。 Officer Osborne tells me to "cuff up"。 The "Trap" door opend and I backed up to my cell door and Officer Osborne handcuffed me behind my back. I'm standing with my back again'st the inside of my cell door with both of my wrist and hands handcuffed behind my back。

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/06/26   Page 186 of 295   0738

Seargeant VANDERHOF puts me in a holding cell in "A-Block EAST" and leaves me standing there for **over** 3 Hours Handcuffed behind my back and chained ▽ There is a "Security Camera" about 10 ft from this holding cell and will surely verify the time frame that I'm left like this ▽ Around 10Am Sgt. VANDERHOF came to me and took pictures of me due to the Sexual assault I had Just recieved by ONIYA + WINDLEY. And due to the unnecessary use of force and assault I had recieved by officers ONIYA, WINDLEY + OSBORNE. Seargeant VANDERHOF <u>refused</u> to take pictures of the scratches + marks on my right butt cheek where ONIYA + WINDLEY had violently punched me and pulled my underwear down ▽ After arguing with Sgt. VANDERHOF because he kept refusing to take pictures of my right butt cheek I hollared for Lt. YOUNG ▽ Lieutenant YOUNG came to me and he told Sgt. VANDERHOF to take the picture of my right butt cheek ▽ This is caught on camera ▽ A "RN" Nurse MIDDLER came to me around 9:30am to 10Am while in this holding cell and she looked at my injurys and asked me some questions. Nurse MIDDLER put a "Note Pad" again'st my right butt cheek and drew out on the Note pad the size of the mark and scratches on my right Butt cheek ▽

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 187 of 295     0740

My cell door opens and officers ONIYA and WINDLEY both rush me ▽ Shoving me over in front of my toilet both of them punching me in my right thigh + stomach and my left knee ▽ Officer Osborne runs in and punches me in the left side of my head behind my left ear ▽ Osborne then knees me in my stomach ▽ Officer ONIYA + WINDLEY both start pulling my underwear down while they are punchin me ▽ All I had on was underwear /Boxers and a pair of socks. Both of them are pulling my Boxers down while their hiting me ▽ My hands coffed behind my back I had a hold of the back of my waist band on my boxers trying to keep them from pulling my boxers down ▽ Officer ONIYA say's to me "You told them I Tried to Rape you" ▽ Reffering to to the PREA I had put on him + WINDLEY a couple of weeks ago. I was cuffed behind my back the whole time they beat me and kneed me ▽ My boxers were more than half way down off me when Seargeant K. SLAZCKA runs into my cell and yells at all three of them to "Stop ▽ Guy Stop ▽ Quit ▽ Stop ▽" Sgt. SLAZCKA tells me to "Come on ▽ Come with me" Sgt. SLAZCKA walks with me out of my cell, down the stairs and out of the block ▽ Out in the hallway on the upper level of UNIT — 1 a Seargeant VANDERHOF + SLAZCKA wrap a silver chain around my waist twice and places a "Black Box" on the handcuffs behind my back and runs the chain through the cuffs ▽

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses  CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Nurse MILLER looked at my knees, wrists, butt cheek, legs and she couldn't see the knot on the left side of my head where officer OSBORNE had hit me because I have very long hair that covers it. My wrists were hurting badly and marked up and swollen due to the beating I took while in handcuffs and also due to standing for over 3 Hours in cuffs + chain while in holding cell. It's been 5 day's since all of this happend and my wrists + knees are still hurting and bothering me. I've put in a "sick call" and waiting to be seen by medical. While in the holding cell I spoke to the warden for a few minutes. Mr. James. I told Mr. James what had happend. There is absolutely no doubt about it, officers O. ONIYA + D. WINDLEY retaliated again'st me due to the "PREA" I had put on them about 2 or 3 weeks prior to this second incident. Two seperate incidents on Two seperate dates. Same Two Officers. Both incidents involve the SAME two officers doing the SAME kinda stuff. They were taunting me, hiting me, kneeing me and pulling my boxers/underwear off me and doing all of this while there's a "Active" PREA already on them. If that ain't retaliation I don't know what is. There was 25 or 30 PERT officers in my block conducting searches.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 189 of 295
0741

So if there's 25 or 30 "PERT" officers in my block searching then why does the two officers that I have a Active PREA on come straight to me? Pure Retaliation
All im asking is that your office read my letter and then watch the video footage here at "C.P" and you will surely see i'm telling the truth
I'd like to see officer ONIYA, WINDLEY, and OSBORNE have to take a "polygraph" Test
I have wrote my family about all of this too
And I will be contacting a lawyer to see what they suggest. I'm held accountable for my mistakes whe I make mistakes. And these three officers need to be held accountable for their actions
Not to mention they beat on me while I was cuff behind my back. All 3 of them. Thats again'st Policy. So is leaving me handcuffed + chained for over 3 hours in a holding cell. And for what? Because I would'nt get naked for two officers that I had a Active PREA on. They Are In The Wrong. Please Just watch the camera Footage and come talk to me. Nurse Miller was suppose to brought me a Ice Pack and IBU Profen rigl after the second incident but she never came back
Please Get Back With Me. Thank You. Jon England

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses- CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 190 of 295 0742

### HEALTH SERVICES

<u>9-20-2022</u>
Date

I, __JONATHAN ENGLAND  0702210__ , refuse treatment recommended by the Department of Public Safety, Health Services staff for the following condition(s):

DESCRIBE CONDITION IN LAYMAN'S TERMINOLOGY:

Offender states " I do not want to receive any medical screening including vital signs." When asked why not he states "I don't have to if I don't want".

The following treatment(s) was/were recommended:

Recommended that offender receive Medical Screening  prior to transfer from dorm to 24 RHU/-Seg.

Department of Public Safety, Health Services staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment:

Worsening Medical Condition, Delay in Treatment, Delay in Medical Care, possible death.

I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment.  I hereby assume all responsibility for my physical and/or mental condition, and release the Department of Public Safety and its employees from any and all liability for respecting and following my expressed wishes and directions.

WILLIAMS, KATHY R RN      9-20-2022
Counseled by            Date

Signature of Witness      Date

Pt Refused to sign    9.2022
Patient's Signature        Date

HARNETT CI

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses  CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 191 of 295   0685

NORTH CAROLINA DEPARTMENT OF CORRECTION PRD 7/14/29

## SICK CALL APPOINTMENT REQUEST

Jonathan England
Inmate Name (please print)

0702210
Inmate Number

O-Dorm
1 - #25
Dormitory

Duty Assignment

8-28-22
Date

Complete this form and put it in the locked sick call box. The form will be picked up by medical staff and your appointment will be posted as outlined in the medical orientation. Failure to report for an appointment when scheduled is considered a missed appointment and you will not be rescheduled. You will have to submit another request to be seen. **DO NOT USE THIS FORM FOR EMERGENCY REQUESTS. SEE A CUSTODY OFFICER FOR ANY MEDICAL EMERGENCIES.**

WRITE YOUR MEDICAL REQUESTS IN THIS SPACE (Be specific) I need to have my teeth cleaned and I recently had a filling come out on my back bottom left molar. I need new filling put in molar and teeth cleaned. Thank You For Your Time.

I understand that in accordance with NC Division of Adult Corrections Co-Payment Policy, I will be charged a co-payment for applicable health care appointments. This request authorizes disbursement from my trust fund account for those health care visits.

Inmate Signature: Jm. England    Date: 8-28-22

### INMATE: DO NOT WRITE BELOW THIS LINE

TRIAGED DATE 8/24/22 TIME 0911 TRIAGE BY CM TITLE RDH
Name

DISPOSITION: ☐ Nurse ☐ MD/PE ☒ Dental ☐ MH ☐ Other

### SICK CALL APPOINTMENT

ACTION TAKEN (Be specific and include DATE/TIME): _____

For additional space use DC-387

HCI 3805

Facility Name and Number

This form is not to be amended, revised, or altered without approval of the Medical Records Committee.

File: Outpatient Record, Section VI

DC-602 (Revised 6/12)    NCR 1

Signature/Title

PRINT Inmate Name    Jonathan D England

Inmate Number    0702210

Inmate Unit    01-25

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 192 of 295 0686

# NORTH CAROLINA DEPARTMENT OF CORRECTION ~~PRD-Life~~
## SICK CALL APPOINTMENT REQUEST

Jonathan England     0702210    03 - #13       7-30-22
Inmate Name (please print)     Inmate Number    Dormitory    Duty Assignment    Date

Complete this form and put it in the locked sick call box. The form will be picked up by medical staff and your appointment will be posted as outlined in the medical orientation. Failure to report for an appointment when scheduled is considered a missed appointment and you will not be rescheduled. You will have to submit another request to be seen. **DO NOT USE THIS FORM FOR EMERGENCY REQUESTS. SEE A CUSTODY OFFICER FOR ANY MEDICAL EMERGENCIES.**

WRITE YOUR MEDICAL REQUESTS IN THIS SPACE (Be specific) A "filling" came out of my bottom left back teeth recently. I need a new filling put back in teeth. Also I need my teeth cleaned.     Thank You.

I understand that in accordance with NC Division of Adult Corrections Co-Payment Policy, I will be charged a co-payment for applicable health care appointments. This request authorizes disbursement from my trust fund account for those health care visits.

Inmate Signature: Jon England       Date: 7-30-22

### INMATE: DO NOT WRITE BELOW THIS LINE

TRIAGED DATE 8/9/22   TIME 082/   TRIAGE BY CM (Name)   TITLE RDH

**DISPOSITION:** ☐ Nurse    ☐ MD/PE    ☐ Dental    ☐ MH    ☐ Other

### SICK CALL APPOINTMENT

ACTION TAKEN (Be specific and include DATE/TIME): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

HCI 8805      For additional space use DC-387

Facility Name and Number

This form is not to be amended. revised. or altered without approval of the Medical Records Committee.

File: Outpatient Record, Section VI

DC-602 (Revised 6/12)    NCR 1

Signature/Title

**PRINT** Inmate Name   Jonathan D. England

Inmate Number   0702210

Inmate Unit   03 - 013

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## BEHAVIORAL HEALTH SERVICES

## INFORMED CONSENT FOR OUTPATIENT TREATMENT SERVICES

The Behavioral Health Services section provides screening, monitoring, and crisis services to all offenders. Individuals who participate in regularly scheduled treatment are on the mental health caseload. As a part of the caseload, you will have regularly scheduled contacts with a clinician, a treatment plan, and may be referred (as necessary) for additional services such as a psychiatric evaluation for medication. Your treatment may involve different clinicians at different times based on staffing or other factors. It is important to understand that clinicians are assigned by supervisors to work with specific offenders. In other words, you may not choose the clinician.

While on the caseload, you will be expected to participate in your treatment. In order for therapy to be most effective you will need to use what you learn in therapy throughout your daily life. You may need to do different things, think differently, and/or associate with different people to find a solution to some of your problems. And, because therapy often involves discussing unpleasant parts of your life, you may experience uncomfortable feelings like sadness, guilt, anger, frustration, loneliness, and helplessness. It is likely that therapy will help you uncover some of the behaviors, attitudes, and social relationships that are contributing to your problem. If you make a genuine commitment to working on these issues in therapy, you may be in a better position to build positive relationships, find positive solutions to everyday problems, and reduce feelings of distress in your life. Therapy has been shown to benefit individuals who engage in it. How much you will benefit will depend, in part, on your level of commitment and your desire for change. Also, if you need to talk with your assigned clinician/therapist before your next scheduled appointment, you can simply write a letter or mental health referral (DC-540). There are no fees charged to any offender for behavioral health services.

I, the undersigned, have read the information in this document and have had an opportunity to ask questions and have my questions answered. I understand this consent to participate in outpatient treatment is effective until behavioral health treatment is terminated or I withdraw my consent. I understand I may change my decision at any time. By signing below, I acknowledge my understanding of the above statement and consent to outpatient behavioral health treatment.

| _Jonathan England_ | _Jon England_ | 6-13-22 |
|---|---|---|
| *Offender or Guardian of Person Name* | *Offender or Guardian of Person Signature* | *Date* |
| _Janice Church, MA_ | _Janice Church, MA_ | 06/13/2022 |
| *Staff Witness Name* | *Staff Witness Signature* | *Date* |

**I refuse or withdraw my consent for Outpatient Treatment participation. I understand that refusing or withdrawing my consent will not prevent me from receiving the same general screenings, crisis services, or other monitoring services available to and required by policy for all other offenders during my incarceration.**

| | | |
|---|---|---|
| *Offender or Guardian of Person Name* | *Offender or Guardian of Person Signature* | *Date* |
| *Staff Witness Name* | *Staff Witness Signature* | *Date* |

| | |
|---|---|
| This form is not to be amended, revised, or altered without approval of the Behavioral Health Documentation Committee. | **Offender Name:** _England, Jonathan_ |
| Scan Type: "Mental Health – Confidentiality/Consent" Attach to: "Outpatient Consent" | **Offender Number:** _0702210_ |
| DC–947-OP    (Rev. 10/2021) | **Facility:** _FCI #3720_ |

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses – CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 194 of 295

0688

UNC School of Medicine Department of Radiology report for:
Central Prison Healthcare Complex

**Name:** JONATHAN D ENGLAND                    **Exam Date:** 6/21/2023 2:45 PM
**DOB:** 2/21/1984                              **Gender:** M
**Age:** 39y                                    **MRN:** 0702210
**Ordering:** LINDWOOD A ROBINSON, MD           **Room #:**
**Radiologist:** John Tobben                    **Accession:** 265300

IMPRESSION:
1. Edema within the ACL without fiber disruption, which may reflect
sprain.
2. Tendinosis and low-grade insertional tear of the quadriceps
tendon.
3. Patellofemoral chondrosis .

Electronically Signed
  By: John  Tobben
  On: 06/22/2023 16:16

Electronically Signed By: John Tobben   6/22/2023 4:17 PM

Anterior Cruciate Ligament (ACL): a cruciate ligament of each knee that attaches the front of the tibia with the back of the femur and functions especially to prevent hyperextension of the knee and is subject to injury especially by tearing.

Note: Edema: an abnormal infiltration and excess accumulation of serous fluid in connective tissue or in a serous cavity - called also dropsy.

Quadriceps: the large muscle at the front of your upper leg. The greater extensor muscle of the front of the thigh that is divided into four parts.

Page 2 of 2

Jonathan England v. Onyia et al 5:24-CT-3006
Defendants' Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 195 of 295
0520

### UNC School of Medicine Department of Radiology report for:
### Central Prison Healthcare Complex

| | |
|---|---|
| **Name:** JONATHAN D ENGLAND | **Exam Date:** 6/21/2023 2:45 PM |
| **DOB:** 2/21/1984 | **Gender:** M |
| **Age:** 39y | **MRN:** 0702210 |
| **Ordering:** LINDWOOD A ROBINSON, MD | **Room #:** |
| **Radiologist:** John Tobben | **Accession:** 265300 |

EXAM:
MRI KNEE W/O CONTRAST RIGHT

CLINICAL DATA: R-KNEE PAIN, DECREASED ROM/STRENGTH AFTER BLUNT
TRAUMA

TECHNIQUE:
MRI of the right knee was performed using a local coil.
Multisequence, multiplanar images were obtained without contrast.

COMPARISON: Knee x-rays dated 04/19/2023

FINDINGS:
Medial meniscus: Intact.

Lateral meniscus: Intact. Anterior horn appears somewhat diminutive *(Tiny)*
without evidence of tear.

Cruciate ligaments: Anterior cruciate ligament demonstrates
increased intrasubstance T2 signal without fiber disruption.
Posterior cruciate ligament is intact.

Collateral ligaments: Medial collateral *(MCL)* ligament is intact. Lateral
collateral is intact.

Tendons: Thickening distal quadriceps tendon with small insertional
tear medially. Prominent edema of the quadriceps fat pad. The
pateller tendon is intact. Other tendons are intact.

Bone: Background marrow signal is within normal limits. Negative for
fracture. No suspicious marrow replacing lesion.

Joint: No large joint effusion.

Cartilage: Cartilage fissuring/loss along the lateral *(kneecap)* patellar facet
with subchondral cyst formation. Medial and lateral compartment
cartilage is intact.

Soft tissues: Unremarkable

*[handwritten left margin, sideways: Lateral: Sideways]*
*[handwritten left margin, sideways: Edema; Abnormal Swelling]*

*[stamp: RECEIVED JUN 2 2 2023 CPHC-Radiology]*

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

| | | | |
|---|---|---|---|
| Reviewing Auth: | TYNDALL II, DAVID E. | INVEST COMPLETE | 06/14/23 |
| Superintendent: | HARTLEY, MICHELLE A. | CONSULTATION | 06/14/23 |
| Regional Director: | HUTCHERSON, SHEMELL L. | REG DIR APPROVED | 06/15/23 |

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-BN    Document 76-3    Filed 02/26/26    Page 197 of 295          0756

**Facility Approver Comments**

I have reviewed this incident and agree with the investigator's outcome.
Video footage and photographs are attached to this report.

N.M.Faust

A.W.O.

April 17, 23

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I have reviewed this report and agree with the findings of the
investigator. The reported force used was minimal and justifiable to
obtain the correctional objective. The offender's allegations were
unsubstantiated. Video and photos attached.

Michelle Hartley

Deputy Warden

5/23/23

**Regional Director Comments**

I concur with the facility findings.

## Participants

| Name | Type | Title | Additional Information |
|---|---|---|---|
| ENGLAND, JONATHAN (0702210) | OFFENDER | | Use of Force by OSBORNE, JOEL, L. at 07:20 AM<br>Use of Force by ONYIA, OKECHUKWU M. at 07:20 AM<br>Use of Force by SLACZKA, KAMIL at 07:20 AM<br>Use of Force by WINDLEY, DARNELL L. at 07:20 AM |
| MILLER, ROBIN C. (MRC26) | STAFF | CHARGE NURSE | |
| ONYIA, OKECHUKWU M. (OOM01) | STAFF | CORR SERGEANT III | Use of Force on ENGLAND, JONATHAN at 07:20 AM |
| OSBORNE, JOEL, L. (OJL12) | STAFF | CORR OFFICER III | Use of Force on ENGLAND, JONATHAN at 07:20 AM |
| SLACZKA, KAMIL (SKX24) | STAFF | CORR SERGEANT III | Use of Force on ENGLAND, JONATHAN at 07:20 AM |
| WINDLEY, DARNELL L. (WDL84) | STAFF | CORR SERGEANT III | Use of Force on ENGLAND, JONATHAN at 07:20 AM |

## Use of Force

| Staff / Role | Force Type | Inmate | Anticipated | Location | Time |
|---|---|---|---|---|---|
| OSBORNE, JOEL, L.(OJL12) INITIAL PARTICIPANT | MECHANICAL RESTRAINTS | ENGLAND, JONATHAN (0702210) | N | SINGLE CELL | 12/21/22 07:20 AM |
| ONYIA, OKECHUKWU M.(OOM01) INITIAL PARTICIPANT | HANDS ON PHYSICAL FORCE | ENGLAND, JONATHAN (0702210) | N | SINGLE CELL | 12/21/22 07:20 AM |
| SLACZKA, KAMIL(SKX24) ADDITIONAL PARTICIPANT | MECHANICAL RESTRAINTS | ENGLAND, JONATHAN (0702210) | N | SINGLE CELL | 12/21/22 07:20 AM |
| WINDLEY, DARNELL L.(WDL84) INITIAL PARTICIPANT | HANDS ON PHYSICAL FORCE | ENGLAND, JONATHAN (0702210) | N | SINGLE CELL | 12/21/22 07:20 AM |

## Notifications

| Notification | Who was Notified | Date / Time |
|---|---|---|
| OFFICER IN CHARGE ( 13 ) | CAPT. WILLIAM ELDERDICE | 12/21/22 08:15 AM |

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-6   Filed 03/26/26   Page 199 of 295          0753

**Medical Comments**

Registered Nurse Robin Miller stated she medically screened Offender England following a PERT search earlier that morning. She stated Offender complained of several injuries and requested vital signs be taken. He denied homicidal/suicidal ideation and alleged excessive force during the search. She noted injury #1 was a small, minor left knee abrasion, knee had full range of motion, he complained of level 4 throbbing pain. Injury #2 was a very minor thin 3inch scratch on right buttock and he complained of level 4 throbbing pain. Injury #3 was painful wrists from the handcuffs top right wrist had mild swelling, otherwise showed no sign of injury. He was very irritable and angry but cooperative and alert. He was cleared to remain in restrictive housing unit.

**Reviewing Authority Comments**

I have reviewed this report and agree with the findings.

Captain David Tyndall, 6/14/23

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# North Carolina Department of Public Safety
## Clinical Encounter

| | | |
|---|---|---|
| Offender Name: ENGLAND, JONATHAN D | | Off #: 0702210 |
| Date of Birth: 02/21/1984 | Sex: M   Race: WHITE | Facility: CENT |
| Encounter Date: 12/21/2022 09:50 | Provider: Miller, Robin C RN | Unit: BBKU2 |

Use of Force Evaluation encounter performed at Restrictive Housing Unit.

**SUBJECTIVE:**

COMPLAINT **1**          Provider: Miller, Robin C RN

Chief Complaint:    Pain - Extremity

Subjective:      "They barged into my cell and and pushed me around for no reason.  My knee is killing me."

**Pain Location:**  Knee-Left

Pain Scale:    4

Pain Qualities:    Throbbing

History of Trauma:        Yes

When:  0730

Injury:   Claims PERT team treated him roughly when they entered cell for room search.

Mechanism:

Onset:    1-5 Hours

Duration:

Exacerbating Factors:    Standing

Relieving Factors:   None

Comments:    Incident occurred at 0730. Offender has one mild abrasion on left knee - 1/2" x 1/4".  No bleeding, no redness, no bruising.  Full ROM

COMPLAINT **2**          Provider: Miller, Robin C RN

Chief Complaint:    Pain

Subjective:      "My butt cheek is on fire.  I don't know what they did, but it's killing me."

**Pain Location:**   Other

Pain Scale:    4

Pain Qualities:

History of Trauma:

Onset:    1-5 Hours

Duration:

Exacerbating Factors:    None

Relieving Factors:   None

Comments:    Offender has a very minor, thin 3" scratch on the outer aspect of his upper right buttock.  No bleeding, no swelling, no bruising. Skin is intact.

COMPLAINT **3**          Provider: Miller, Robin C RN

Chief Complaint:    Pain - Extremity

Subjective:      "They've had these  handcuffs on me for hours, and both wrists hurt."

**Pain Location:**   Multiple Locations

Pain Scale:    6

Pain Qualities:    Throbbing

History of Trauma:        Yes

When:  0730

Injury:   Complained cuffs were on too tight and for too long

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Mechanism: Handcuffs

Onset: 1-5 Hours

Duration:

Exacerbating Factors: None

Relieving Factors: None

Comments: Skin on both wrists was intact, no bruising, slight redness where cuffs made contact with skin. When cuffs were removed, the top of right wrist had minimal, visible swelling. The area was whitish in color.

## OBJECTIVE:

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 12/21/2022 | 09:50 CENT | 97.7 | 36.5 | Oral | Miller, Robin C RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 12/21/2022 | 09:50 CENT | 64 | Via Machine | | Miller, Robin C RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 12/21/2022 | 09:50 CENT | 16 | Miller, Robin C RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 12/21/2022 | 09:50 CENT | 110/80 | Left Arm | Standing | Adult-regular | Miller, Robin C RN |

**SpO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 12/21/2022 | 09:50 CENT | 100 | Room Air | Miller, Robin C RN |

**Exam:**

**Diagnostics**

**Vital Signs**

Yes: Vital Sign Obtained (See Flow Sheet)

**General**

**Affect**

Yes: Irritable, Agitated

**Appearance**

Yes: Appears in Distress, Visible Injury, Well Developed/Well Nourished, Alert and Oriented to Time, Place, and Person

No: Writhing in Pain

Offender claims unnecessary use of force during room search, but he was vague in describing what occurred. He was angry that his room was searched.

**Skin**

**General**

Yes: Localized Edema

## ASSESSMENT:

Pain, Acute

## PLAN:

## OTC REPORTED

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 202 of 295          0550

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## (NCDPS) DIVISION OF PRISONS (DOP)
### HEALTH AND WELLNESS
### SICK CALL APPOINTMENT REQUEST

Jonathan England          O702210   BU-206 EAST          12-23-22
Offender Name print)      OPUS Number   Dormitory   Duty Assignment      Date

Complete this form and put it in the locked sick call box. The form will be picked up by Health and Wellness staff and your appointment will be posted as outlined in the facility health and wellness orientation. Failure to report for an appointment when scheduled is considered a missed appointment and you will have to submit another sick call appointment request to be seen. **DO NOT USE THIS FORM FOR EMERGENCY REQUESTS. SEE A CUSTODY OFFICER FOR ANY MEDICAL EMERGENCIES.**

WRITE SPECIFIC MEDICAL REQUESTS/CONCERNS HERE: My Wrists + my right knee. are still hurting due to the assault that I recieved by Officers O. ONIYA D. WIDLEY and Osborne on 12-21-22. Please schedule me a appointment. Thank you.

I understand that in accordance with NCDPS, DOP, Health and Wellness Co-Payment Policy, I will be charged a co-payment for applicable health and wellness appointments. This request authorizes disbursement from my trust fund account for those health and wellness visits.

Offender Signature: Jm England          Date: 12-23-22

**OFFENDER: DO NOT WRITE BELOW THIS**

TRIAGED DATE_____ TIME_____ TRIAGE BY_____ TITLE_____
                                                            Name

DISPOSITION:   ☐ Nurse   ☐ MD/PE   ☐ Dental   ☐ MH   ☐ Other

ACTION TAKEN (Be specific and include DATE/TIME):

SCHEDULED FOR SICK CALL. 12/31/22

_____          _____
Facility Name and Number          Signature/Title

                                  PRINT
                                  Offender Name _____

This form is not to be amended, revised, or altered without approval from Health and Wellness Management. Scan into HERO

Offender OPUS Number_____

Jonathan England v. Daniel Widley et al 5-24-CT-3006   Offender Unit
Defendants' Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER   0543

DC-483 (Revised 04/12)

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
# NUTRITIONAL ASSESSMENT FORM

**Facility:** CENTRAL PRISON    **Number:** 3100    **Date:** 12/28/2022

**Inmate Name:** ENGLAND, JONATHAN D    **Number:** 0702210    **Date of Last Assessment:** NONE ON FILE

**S:**    **Subjective data: (completed by the facility medical department or facility dietitian)**
PATIENT C/O INCREASING WEIGHT LOSS

PLEASE ASSESS FOR NEED OF NUTRITIONAL SUPPLEMENT

**O:**    **Anthropometric data: (completed by the facility medical department or facility dietitian)**
DOB/Age: 02/21/1984 / 38 yrs. old    Height: 5'06"    Weight/Date: 139 lbs. 12/26/2022
Weight history (include admission weight & dates): 142(06/22) 154(06/22) 149(08/22) 148(09/22) 139(12/22)
Laboratory values with dates: NO RECENT LABS AVAILABLE
Diagnosis: DYSPEPSIA
Medications: REMERON, EFFEXOR    Activity level: 1111111 31
Previous diets (include order and discontinue dates):
Current diet: REGULAR    Food allergies:
Comments: -WT HX: INSIGNIFICANT WT LOSS OF 5.9%/ 8.8# X 3 MONTHS (148#, 09/26/22)
-CANTEEN CLEAR X 1 MONTH (LIKELY R/T CONTROL STATUS)

HUNTINGTON, LAYNE N 01/04/2023
Signature of medical personnel/dietitian completing form & date

**A:**    **Nutritional Requirements: (completed by an RD)**
Ideal body weight: 142 lbs.    % Ideal body weight: 97 %    BMI: 22.4
Injury Factor: 1.0    Activity Factor: 1.3    Protein Factor: 0.8    Protein Need: 56 g/d
Resting Energy Exp: 1495 cals.    Est. Energy Need: 1944 cals.    Total Calories Needed: 1944 cals.
Comments: OFFENDER IS 97% OF IBW, BMI NORMAL AT 22.4, INSIGNIFICANT WT LOSS DETAILED
ABOVE - NOT DESIRED, RX/DX/LABS REVIEWED. PRO NEEDS INCREASED TO MEET DRI. WILL
PROVIDE SHORT TERM, SUPPLEMENTATION GIVEN INSIGNIFICANT WT LOSS AND NO ACCESS TO
CANTEEN. RECOMMEND REGULAR W/ SNACK DIET TO MEET NUTRITION NEEDS AND PREVENT
FURTHER WT LOSS.

**P:**    **Recommendations: (completed by an RD)**
Recommended diet: REGULAR W/SNACK    For: 3 MONTHS
1. ENCOURAGE PO INTAKE >75% OF MEALS AND SNACKS.
2. RECOMMEND MONTHLY WT CHECKS X 3 MONTHS.
3. ENCOURAGE PHYSICAL ACTIVITY AS TOLERATED, PER FACILITY POLICY AND PROVIDER
RECOMMENDATIONS.
4. MONITOR WEIGHT/LABS PER NURSING PROTOCOL. CONSULT RD FOR ANY SIGNIFICANT
CHANGES.

HUNTINGTON, LAYNE N  01/04/2023
RD Signature & Date

File in Section II - Outpatient Medical Jacket or in Inpatient File when appropriate.

Printed on: 01/04/2023

*** ATTENTION: To accept this recommendation, select DIETARY RECOMMENDATION from the Standard Diet List on the
EHR Diet Screen.

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## (NCDPS) DIVISION OF PRISONS (DOP)
## HEALTH AND WELLNESS
## SICK CALL APPOINTMENT REQUEST

Jonathan England | 0702210 | UNIT-1 BU-206 EAST | 12-19-22
Offender Name print) | OPUS Number | Dormitory — Duty Assignment | Date

Complete this form and put it in the locked sick call box. The form will be picked up by Health and Wellness staff and your appointment will be posted as outlined in the facility health and wellness orientation. Failure to report for an appointment when scheduled is considered a missed appointment and you will have to submit another sick call appointment request to be seen. **DO NOT USE THIS FORM FOR EMERGENCY REQUESTS. SEE A CUSTODY OFFICER FOR ANY MEDICAL EMERGENCIES.**

WRITE SPECIFIC MEDICAL REQUESTS/CONCERNS HERE: Dr. Robinson, I am on "Effexer" for my Bi-polar Depression and I'm also on "Remeron". I have lost weight since comming back to Prison this June. And I stay hungry all the time. I am writing to you sir and I respectfully request a "Snack" Bag at night. Please help me out sir. Thank you sir.

I understand that in accordance with NCDPS, DOP, Health and Wellness Co-Payment Policy, I will be charged a co-payment for applicable health and wellness appointments. This request authorizes disbursement from my trust fund account for those health and wellness visits.

Offender Signature: Jon England                   Date: 12-19-22

### OFFENDER: DO NOT WRITE BELOW THIS

TRIAGED DATE 12/24/22 TIME 0929  TRIAGE BY A. Zawi RN  TITLE Lead OSR
                                                    Name

**DISPOSITION:** ☐ Nurse    ☐ MD/PE    ☐ Dental    ☐ MH    ☐ Other

ACTION TAKEN (Be specific and include DATE/TIME):
- Requesting your weight be chk'd. to see where you are.
- The 2 medications you mentioned do not normally cause weight loss, more usually, they cause weight gain
- Will refer you as indicated to the Provider
- He can refer you to the Dietician and they can approve or disapprove supplementation as needed.

CP 3/00
Facility Name and Number

A. Pawi RN
Signature/Title

PRINT
Offender Name _____

Offender OPUS Number _____

This form is not to be amended, revised, or altered without approval from Health and Wellness Management. Scan into HERO

DC-602 (Revised 10/2020)

Offender Unit _____

Jonathan England v. ... et al. 5:24-CT-3006
Defendants' Discovery Responses  CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

#2          CC./Carbon Copy

Jonathan England     0702210     Central Prison     12-28-2022
_Offender Name print_          _OPUS Number_     BU-206     _Duty Assignment_     _Date_
                                          _Dormitory_

Complete this form and put it in the locked sick call box. The form will be picked up by Health and Wellness staff and your appointment will be posted as outlined in the facility health and wellness orientation. Failure to report for an appointment when scheduled is considered a missed appointment and you will have to submit another sick call appointment request to be seen. **DO NOT USE THIS FORM FOR EMERGENCY REQUESTS. SEE A CUSTODY OFFICER FOR ANY MEDICAL EMERGENCIES.**

WRITE SPECIFIC MEDICAL REQUESTS/CONCERNS HERE: I respectfully request something for Pain. My wrists + knees are still hurting me due to assault I recieved last week on 12-21-22. Please schedule me a Medical appointment. This is second "Sick Call" I've filled out and turned in on this incident.

I understand that in accordance with NCDPS, DOP, Health and Wellness Co-Payment Policy, I will be charged a co-payment for applicable health and wellness appointments. This request authorizes disbursement from my trust fund account for those health and wellness visits.

No Response
Back on
First "Sick Call".

Offender Signature: _Jon England_          Date: 12-28-2022

**OFFENDER: DO NOT WRITE BELOW THIS**

TRIAGED DATE 1-10-13  TIME 0940  TRIAGE BY Sccc [  ]  TITLE L.s
                                          _Name_

DISPOSITION:  ☐ Nurse     ☐ MD/PE     ☐ Dental     ☐ MH     ☐ Other

ACTION TAKEN (Be specific and include DATE/TIME):

his sick call scheduld
No [  ] inj[  ] on [  ] of
firee Aid

_____          Sccc Adur ba
Facility Name and Number                Signature/Title

PRINT
Offender Name _____

This form is not to be amended, revised, or altered
without approval from Health and Wellness Management.     Offender OPUS Number _____
Scan into HERO
DC-602 (Revised 10/2020)                Offender Unit _____

# North Carolina Department of Adult Correction
## Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: | M | Race: | WHITE |
| Encounter Date: | 11/03/2024 20:42 | Provider: | Ward, Wesley E RN | Facility: | MARI |

**Reviewed with New Encounter Note by Chung, Keven R MD on 11/04/2024 11:07.**

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
NCDAC - MARI
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 207 of 295
0074

# North Carolina Department of Adult Correction
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M | Race: WHITE | Facility: | MARI |
| Note Date: | 11/03/2024 20:42 | Provider: | Ward, Wesley E RN | Unit: | DU1N- |

Medication Renewal/Review encounter performed at Non Patient Contact.

**Administrative Notes:**

ADMINISTRATIVE NOTE **1** Provider: Ward, Wesley E RN

pt request reorder of: IBUPROFEN 800 MG TAB
Take one (1) tablet (800 mg) by mouth three times daily as needed Exp: 10/27/24. Pt stated it helps with leg and wrist pain.

**Co-Pay Required:** No  **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:** No

Completed by Ward, Wesley E RN on 11/03/2024 20:44

Requested to be reviewed by Chung, Keven R MD.

Review documentation will be displayed on the following page.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# North Carolina Department of Adult Correction
## Vision Screens

**Vision Screen on** 06/03/2022 12:26

**Blindness:**

| | | | |
|---|---|---|---|
| **Distance Vision:** | Right Eye: 20/15 | Left Eye: 20/15 | Both Eyes: |
| **Near Vision:** | Right Eye: 20/20 | Left Eye: 20/20 | Both Eyes: |

**With Corrective Lenses**

| | | | |
|---|---|---|---|
| **Distance Vision:** | Right Eye: | Left Eye: | Both Eyes: |
| **Near Vision:** | Right Eye: | Left Eye: | Both Eyes: |

**Present Glasses - Distance**

|  | Sphere | Cylinder | Axis | Add |
|---|---|---|---|---|
| R: | | | | |
| L: | | | | |

**Refraction - Distance**

|  | Sphere | Cylinder | Axis | Add |
|---|---|---|---|---|
| R: | | | | |
| L: | | | | |

**Color Test:**

**Tonometry:**   R:          L:

**Comments:**

   Orig Entered:   06/03/2022 12:27 EST   Ross, Terry W LPN

**Vision Screen on** 06/26/2020 09:40

**Blindness:**

| | | | |
|---|---|---|---|
| **Distance Vision:** | Right Eye: 20/25 | Left Eye: 20/25 | Both Eyes: 20/25 |
| **Near Vision:** | Right Eye: 20/20 | Left Eye: 20/20 | Both Eyes: 20/20 |

**With Corrective Lenses**

| | | | |
|---|---|---|---|
| **Distance Vision:** | Right Eye: | Left Eye: | Both Eyes: |
| **Near Vision:** | Right Eye: | Left Eye: | Both Eyes: |

**Present Glasses - Distance**

|  | Sphere | Cylinder | Axis | Add |
|---|---|---|---|---|
| R: | | | | |
| L: | | | | |

**Refraction - Distance**

|  | Sphere | Cylinder | Axis | Add |
|---|---|---|---|---|
| R: | | | | |
| L: | | | | |

**Color Test:**

**Tonometry:**   R:          L:

**Comments:**

   Orig Entered:   06/26/2020 09:42 EST   Hammill, Amanda M LPN

**Vision Screen on** 03/01/2019 20:26

**Blindness:**

| | | | |
|---|---|---|---|
| **Distance Vision:** | Right Eye: 20/20 | Left Eye: 20/20 | Both Eyes: |
| **Near Vision:** | Right Eye: 20/20 | Left Eye: 20/20 | Both Eyes: |

**With Corrective Lenses**

Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

| Description | Type | Code Type | Code | Status Date | Status | Diag. Date |
|---|---|---|---|---|---|---|
| Pain, unspecified | | | | | | |
| 05/31/2023 14:35 EST  Robinson, Lindwood A. MD | Temporary/Acute | ICD-10 | R52 | 05/31/2023 | Current | 05/31/2023 |
| ~~Ankylosis, left knee~~ | | | | | | |
| ~~07/01/2022 14:14 EST  Patane, Jeffrey D PA~~ ~~--d~~ | ~~Temporary/Acute~~ | ~~ICD-10~~ | ~~M24.662~~ | ~~06/14/2022~~ | ~~Current~~ | ~~06/14/2022~~ |
| 06/14/2022 08:49 EST  High, Newton D PA | Temporary/Acute | ICD-10 | M24.662 | 06/14/2022 | Current | 06/14/2022 |
| ~~Aftercare Following Surgery Injury And Trauma~~ | | | | | | |
| ~~07/01/2022 14:13 EST  Patane, Jeffrey D PA~~ ~~--d~~ | ~~Temporary/Acute~~ | | | ~~05/28/2015~~ | ~~Current~~ | ~~05/28/2015~~ |
| 05/28/2015 08:16 EST  Evans, Charlotte A MD | Temporary/Acute | | | 05/28/2015 | Current | 05/28/2015 |
| Tobacco Use Disorder | | | | | | |
| 06/28/2022 17:51 EST  Weinel, Katie V. MD Psychiatrist | History/Resolved | DSM-V | 305.1 | 06/28/2022 | | |
| Alcohol Use Disorder, Mild | | | | | | |
| 06/28/2022 17:51 EST  Weinel, Katie V. MD Psychiatrist | History/Resolved | DSM-V | 305.00 | 06/28/2022 | | |
| Amphetamine-type Substance/Other or Unspecified Stimulant Use Disorder, Moderate or Severe | | | | | | |
| 06/28/2022 17:51 EST  Weinel, Katie V. MD Psychiatrist | History/Resolved | DSM-V | 304.40 | 06/28/2022 | | |
| Opioid Use Disorder, Mild | | | | | | |
| 06/28/2022 17:51 EST  Weinel, Katie V. MD Psychiatrist | History/Resolved | DSM-V | 305.50 | 06/28/2022 | | 06/28/2022 |
| Cocaine Use Disorder, Moderate or Severe | | | | | | |
| 06/28/2022 17:51 EST  Weinel, Katie V. MD Psychiatrist | History/Resolved | DSM-V | 304.20 | 06/28/2022 | | |

**Total:** 20

Generated 12/03/2024 11:07 by Doyle, Janet M Medical Records    NCDAC - ALBE    Page 2 of 2

Jonathan England v. Onyia, et al.
Defendants' Discovery Responses

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 210 of 295

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

0169

# NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION
## (NCDAC) DIVISION OF PRISONS (DOP)
## HEALTH AND WELLNESS
## SICK CALL APPOINTMENT REQUEST

Jonathan England          0702210     DU4N-121 "RDU"      5/9/24
(Offender Name print)     OPUS Number   Dormitory  Duty Assignment   Date

Complete this form and put it in the locked sick call box. The form will be picked up by Health and Wellness staff and your appointment will be posted as outlined in the facility health and wellness orientation. Failure to report for an appointment when scheduled is considered a missed appointment and you will have to submit another sick call appointment request to be seen. **DO NOT USE THIS FORM FOR EMERGENCY REQUESTS. SEE A CUSTODY OFFICER FOR ANY MEDICAL EMERGENCIES.**

WRITE SPECIFIC MEDICAL REQUESTS/CONCERNS HERE: Dr. Keven Chung, Hello sir I think I may have missed my "Emerge Ortho" appointment today with Dr. Bell. A guard woke me up Early this morning saying Something about medical of something? I was asleep and had my ear plugs in due to the noise in my block, Plus the "Remeron" im on makes me groggy in the mornings. Sir if I missed my "Emerg Ortho" appt. Please reschedule me to see Dr. Bell.

I understand that in accordance with NCDAC, DOP, Health and Wellness Co-Payment Policy, I will be charged a co-payment for applicable health and wellness appointments. This request authorizes disbursement from my trust fund account for those health and wellness visits.

Thank you For your Time.

Offender Signature: Jon England          Date: 5/9/24

### OFFENDER: DO NOT WRITE BELOW THIS

TRIAGED DATE 5-11-24 TIME 0000 TRIAGE BY Carl Luukado TITLE RN
                                          Name
DISPOSITION:  ☒ Nurse    ☐ MD/PE    ☐ Dental    ☐ MH    ☐ Other ③

ACTION TAKEN (Be specific and include DATE/TIME):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Facility Name and Number

This form is not to be amended, revised, or altered without approval from Health and Wellness Management. Scan into HERO

PRINT
Offender Name  Ledford, Jonathan

Offender OPUS Number  0702210

Jonathan England v. ... 1:24-CR-3006 Document 76-8 Filed 03/26/25 Page 211 of 295
Defendants' Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

0229

# NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION

## MEDICAL TREATMENT REFUSAL

**HEALTH SERVICES**

5-9-2024
Date

I, __JONATHAN ENGLAND  0702210__, refuse treatment recommended by the Department of Adult Correction, Health Services staff for the following condition(s):

DESCRIBE CONDITION IN LAYMAN'S TERMINOLOGY:

 You were scheduled for orthopedic follow-up after EMG testing.

The following treatment(s) was/were recommended:

Go to your scheduled appointment.

Department of Adult Correction, Health Services staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment:

Refusing to go to your appointments can interrupt or delay diagnosis and/or treatment. Failure to address your muscle and skeletal concerns can allow problems to worsen with loss of use or permanent disability as a possible consequence.

I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and release the Department of Adult Correction and its employees from any and all liability for respecting and following my expressed wishes and directions.

| | |
|---|---|
| MASON, BARBARA E RN          5-9-2024 | |
| Counseled by          Date | Patient's Signature          Date |

Signature of Witness          Date

MARION CI

Jonathan England v. Onvia et al 5-24-CI-3006
Defendants' Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 3:24-cv-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 212 of 295
0230

# North Carolina Department of Adult Correction
# Clinical Encounter

| | | | |
|---|---|---|---|
| Offender Name: ENGLAND, JONATHAN D | | | Off #: 0702210 |
| Date of Birth: 02/21/1984 | Sex: M Race: WHITE | | Facility: FOOT |
| Encounter Date: 11/20/2023 13:23 | Provider: Gentry, Christopher M | | Unit: EU3D- |

Sick Call encounter performed at Restrictive Housing Unit.

**SUBJECTIVE:**

COMPLAINT 1 Provider: Gentry, Christopher M LPN

Chief Complaint: Medication Refill

Subjective: · Requesting my wrist brace renewed as well as IBU started back. The Diclofenac is not working.

**Pain Location:**

Pain Scale:

Pain Qualities:

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

**ROS:**

**History**

**Personal Medical**

No: Medical conditions related to encounter

**OBJECTIVE:**

**Exam:**

**Diagnostics**

**Vital Signs**

No: Vital Sign Obtained (See Flow Sheet)

**Medication Review**

Yes: Current Medication List

No: Allergies

Rx.: Synthroid Remeron Effexor

**General**

**Appearance**

No: Appears in Pain, Visible Injury

ROM appears WNL. No discoloration. Diclofenac refusal obtained.

**Musculoskeletal**

**Wrist/Hand/Fingers ROM and Tests**

Yes: Radial Pulse Normal, Capillary Refill Normal

**Ankle/Foot/Toes ROM and Tests**

Yes: Dorsalis Pedis Normal, Posterior Tibialis Normal, Capillary Refill Normal

**Other**

Yes: Weight Bearing

No: Crepitus, Deformity, Loss of Function (Describe), Pain on Palpation of Effected Area

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# North Carolina Department of Adult Correction
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M  Race: WHITE | | Facility: | FOOT |
| Note Date: | 11/21/2023 13:14 | Provider: Clark, Karen C NP | | Unit: | EU3D- |

Review Note encounter performed at Non Patient Contact.

**Administrative Notes:**

ADMINISTRATIVE NOTE  **1**       Provider:  Clark, Karen C NP

Review refusal of Diclofenac by inmate on 11/21/23.

**Other:**

No active order found

**Co-Pay Required:**        No        **Cosign Required:**  No

**Telephone/Verbal Order:**   No

**Standing Order:**         No

Completed by Clark, Karen C NP on 11/21/2023 13:15

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER        Page 214 of 295        0273

Offender Name: ENGLAND, JONATHAN D
Date of Birth: 02/21/1984
Encounter Date: 06/07/2023 08:11

Sex: M  Race: WHITE
Provider: Robinson, Lindwood A.

Off #: 0702210
Facility: CENT
Unit: BBKU2

**Exam:**

Yes: Normal

**Musculoskeletal**

**Wrist/Hand/Fingers**

No: Full Range of Motion

**Knee**

Yes: Symmetric

No: Normal Exam, Non-tender on Palpation, Normal Active ROM, Normal Passive ROM

**ASSESSMENT:**

Pain, unspecified, R52 - Current, Temporary/Acute, Not Improved/Same

**PLAN:**

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| MRI-Knee - Joint-Without Contrast [Right] | One Time | | 06/19/2023 | Routine |

Authorization Number:

Specific reason(s) for request (Complaints and findings):

> 39 yo wm c/o persistent right wrist pain and right knee pain, began greater than 6 months ago after blunt trauma. decreased ROM, mild pain, no swelling, decreased strength. Xrays unremarkable. Not improved with conservative treatment; NSAIDs, modified activity.

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| MRI-Wrist - Joint-Without Contrast [Right] | One Time | | 06/19/2023 | Routine |

Authorization Number:

Specific reason(s) for request (Complaints and findings):

> 39 yo wm c/o persistent right wrist pain and right knee pain, began greater than 6 months ago after blunt trauma. decreased ROM, mild pain, no swelling, decreased strength. Xrays unremarkable. Not improved with conservative treatment; NSAIDs, modified activity. right wrist

**New Consultation Requests:**

| Consultation/Procedure | Due Date | SubType | Priority | Translator | Language |
|---|---|---|---|---|---|
| Dietitian | | Nutritional Assessment | Rush (review within 7 days) | No | |

Reason for Request:
patient on effexor with persistent weighg loss and poor gains
Prior authorized for snack bag, please assess for continuation

| Consultation/Procedure | Due Date | SubType | Priority | Translator | Language |
|---|---|---|---|---|---|
| UR Request | | Procedure | Rush (review within 7 days) | No | |

Reason for Request:
39 yo wm c/o persistent right wrist pain and right knee pain, began greater than 6 months ago after blunt trauma. decreased ROM, mild pain, no swelling, decreased strength. Xrays unremarkable. Not improved with conservative treatment; NSAIDs, modified activity. please approve MRI right wrist

| Consultation/Procedure | Due Date | SubType | Priority | Translator | Language |
|---|---|---|---|---|---|
| UR Request | | Procedure | Rush (review within 7 days) | No | |

Reason for Request:
39 yo wm c/o persistent right wrist pain and right knee pain, began greater than 6 months ago after blunt trauma. decreased ROM, mild pain, no swelling, decreased strength. Xrays unremarkable. Not improved with conservative treatment; NSAIDs, modified activity. please approve MRI right knee

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ  Document 76-3  Filed 02/28/26  Page 215 of 295          0321

Offender Name: ENGLAND, JONATHAN D    Off #: 0702210

Date of Birth: 02/21/1984    Sex: M   Race: WHITE    Facility: CENT

Encounter Date: 06/07/2023 08:11    Provider: Robinson, Lindwood A.    Unit: BBKU2

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Provider Clinic | 06/28/2023 00:00 | Physician |
|    f/u MRI wrist and knee send to Ortho | | |

**Other:**

f/u PC

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/07/2023 | Counseling | Compliance - Treatment | Robinson, Lindwood | Verbalizes Understanding |

**Co-Pay Required:** No    **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:** No

Completed by Robinson, Lindwood A. MD on 06/07/2023 08:20

Jonathan England v. Onyia, et al. 5:24-CT-3006

Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26    Page 216 of 295    0322

# North Carolina Department of Adult Correction
## Clinical Encounter

| | | | |
|---|---|---|---|
| Offender Name: ENGLAND, JONATHAN D | | Off #: | 0702210 |
| Date of Birth: 02/21/1984 | Sex: M Race: WHITE | Facility: | CENT |
| Encounter Date: 06/07/2023 08:11 | Provider: Robinson, Lindwood A. | Unit: | BBKU2 |

Provider Evaluation encounter performed at Clinic.

**SUBJECTIVE:**

COMPLAINT 1 Provider: Robinson, Lindwood A. MD

Chief Complaint: Pain - Extremity

Subjective: 39 yo wm c/o persistent right wrist pain and right knee pain, began greater than 6 months ago after blunt trauma. decreased ROM, mild pain, no swelling, decreased strength. Xrays unremarkable. Not improved with conservative treatment; NSAIDs, modified activity.

**Pain Location:**

Pain Scale:

Pain Qualities:

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 06/07/2023 | 08:11 CENT | 97.2 | 36.2 | Oral | Galvan, Isamar CMA |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 06/07/2023 | 08:11 CENT | 80 | Via Machine | | Galvan, Isamar CMA |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 06/07/2023 | 08:11 CENT | 16 | Galvan, Isamar CMA |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 06/07/2023 | 08:11 CENT | 129/86 | Right Arm | Sitting | Adult-regular | Galvan, Isamar CMA |

**SpO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 06/07/2023 | 08:11 CENT | 98 | Room Air | Galvan, Isamar CMA |

**Exam:**

**General**

**Appearance**

Yes: Appears Well

**Cardiovascular**

**Auscultation**

Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2

**Peripheral Vascular**

**General**

Jonathan England v. Onvia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 217 of 295        0320

# North Carolina Department of Adult Correction
## Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: | M  Race: WHITE | | Facility: | CENT |
| Note Date: | 06/22/2023 22:24 | Provider: | Robinson, Lindwood A. | | Unit: | IBK1U |

Review Note encounter performed at Non Patient Contact.

**Administrative Notes:**

ADMINISTRATIVE NOTE  **1**        Provider:  Robinson, Lindwood A. MD

MRI right wrist- ganglion cyst

MRI right knee MRI -low grade quadracep tendon tear, ACL sprain

**Co-Pay Required:**        No        **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:**        No

Completed by Robinson, Lindwood A. MD on 06/22/2023 22:34

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26    Page 218 of 295    0319

# North Carolina Department of Adult Correction
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M Race: WHITE | Facility: | CENT |
| Note Date: | 06/22/2023 22:28 | Provider: Robinson, Lindwood A. | Unit: | IBK1U |

Provider Evaluation encounter performed at Non Patient Contact.

**Administrative Notes:**

ADMINISTRATIVE NOTE **1** Provider: Robinson, Lindwood A. MD

39 YO WM C/O PERSISTENT RIGHT WRIST PAIN AND RIGHT KNEE PAIN, BEGAN GREATER THAN 6 MONTHS AGO AFTER BLUNT TRAUMA. DECREASED ROM, MILD PAIN, NO SWELLING, DECREASED STRENGTH. XRAYS UNREMARKABLE. NOT IMPROVED WITH CONSERVATIVE TREATMENT; NSAIDS, MODIFIED ACTIVITY.

MRI right knee MRI -low grade quadracep tendon tear, ACL sprain

9 YO WM C/O PERSISTENT RIGHT WRIST PAIN AND RIGHT KNEE PAIN, BEGAN GREATER THAN 6 MONTHS AGO AFTER BLUNT TRAUMA. DECREASED ROM, MILD PAIN, NO SWELLING, DECREASED STRENGTH. XRAYS UNREMARKABLE. NOT IMPROVED WITH CONSERVATIVE TREATMENT; NSAIDS, MODIFIED ACTIVITY.

MRI right wrist- ganglion cyst

please approve ortho consult

**New Consultation Requests:**

| Consultation/Procedure | Due Date | SubType | Priority | Translator | Language |
|---|---|---|---|---|---|
| UR Request | | Orthopedic Consult | Rush (review within 7 days) | No | |

Reason for Request:

39 YO WM C/O PERSISTENT RIGHT WRIST PAIN AND RIGHT KNEE PAIN, BEGAN GREATER THAN 6 MONTHS AGO AFTER BLUNT TRAUMA. DECREASED ROM, MILD PAIN, NO SWELLING, DECREASED STRENGTH. XRAYS UNREMARKABLE. NOT IMPROVED WITH CONSERVATIVE TREATMENT; NSAIDS, MODIFIED ACTIVITY.

MRI right knee MRI -low grade quadracep tendon tear, ACL sprain

9 YO WM C/O PERSISTENT RIGHT WRIST PAIN AND RIGHT KNEE PAIN, BEGAN GREATER THAN 6 MONTHS AGO AFTER BLUNT TRAUMA. DECREASED ROM, MILD PAIN, NO SWELLING, DECREASED STRENGTH. XRAYS UNREMARKABLE. NOT IMPROVED WITH CONSERVATIVE TREATMENT; NSAIDS, MODIFIED ACTIVITY.

MRI right wrist- ganglion cyst

please approve ortho consult

| | | | |
|---|---|---|---|
| **Co-Pay Required:** | No | **Cosign Required:** No | |
| **Telephone/Verbal Order:** | No | | |
| **Standing Order:** | No | | |

Completed by Robinson, Lindwood A. MD on 06/22/2023 22:33

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses- CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 219 of 295 0318

# North Carolina Department of Adult Correction
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M | Race: WHITE | Facility: | FOOT |
| Note Date: | 06/29/2023 09:50 | Provider: | Watts, Tenika D Lab | Unit: | HU1S- |

Laboratory Services encounter performed at Clinic.
**Administrative Notes:**

    ADMINISTRATIVE NOTE   **1**       Provider:   Watts, Tenika D Lab Tech

        Labs drawn from left ac x1 attempt with 21-gauge butterfly needle, offender tolerated well.

**Co-Pay Required:**      No      **Cosign Required:** No

**Telephone/Verbal Order:**   No

**Standing Order:**      No

Completed by Watts, Tenika D Lab Tech on 06/29/2023 10:20

Jonathan England v. Ohyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    Page 220 of 295     0317

## ENGLAND, Jonathan (id #9653515, dob: 02/21/1984)

Reviewed Surgical History
. Appendectomy

## Past Medical History

Reviewed Past Medical History
ADD/ADHD: **Y**
Bipolar: **Y**
Depression: **Y**
Seizures/Epilepsy: **Y**
Weight loss: **Y**

## Screening

None recorded.

## HPI

Patient is seen in the clinic today as a 39-year-old gentleman seen as a new patient to our office in consultation at the request of the Department of Corrections for evaluation of a right knee injury sustained back in December when he was involved with an altercation with officers and was taken to the ground hurting his right knee. The patient has dealt with pain since and underwent a recent MRI and presents today for evaluation and treatment denying any paresthesias dysesthesias or any radicular discomfort.

## ROS

**Constitutional:** Constitutional: no significant weight gain or loss and no fever.

**HEENT:** Eyes: no irritation, dry eyes, vision change, or sore throat.

**Cardiovascular:** Cardiovascular: no palpitations or chest pain.

**Respiratory:** Respiratory: no cough or shortness of breath and No COPD.

**Gastrointestinal:** Gastrointestinal: no vomiting or diarrhea and not vomiting blood.

**Genitourinary:** Genitourinary: no blood in urine or difficulty urinating.

**Musculoskeletal:** Musculoskeletal: no swelling in Joints and **Joint Pain.**

**Integumentary:** Skin: no rashes or varicose veins.

**Neurologic:** Neurologic: no numbness, seizures, dizziness, or difficulty with balance.

**Endocrine:** temperature intolerance (normal) to heat.

**Hematologic/Lymphatic:** Hematologic/Lymphatic no bruising or swollen glands.

## Physical Exam

General: Pleasant, cooperative patient, alert and Oriented x 4, no apparent distress.
HEENT: Atraumatic, Normocephalic. Neck is supple, trachea is midline, no JVD.
Skin: No obvious masses, rashes, lesions or changes in pigmentation. Warm and dry with good turgor.
Abdomen: Soft, non-tender. No distention, guarding or rigidity.
Cardiovascular: Regular rate and rhythm, good peripheral pulses.
Lungs: Good air entry bilaterally, no adventitious air sounds.
Psychiatric: Normal mood and affect
Neurological: Grossly neurovascularly intact. Deep tendon relflexes 2+, strength 5/5.
MSK: In regards to his right knee, patient has a relatively benign exam with full range of motion full-strength and no effusion with no structural instability with passive manipulation.

X-rays are reviewed of his right knee AP lateral notch and sunrise view shows no acute fracture dislocation or subluxation no foreign bodies or loose bodies noted with no acute pathology present. Joint spaces well-maintained and clear tricompartmentally.

MRI of the right knee without contrast from June 21, 2023 describes that there is no joint effusion no major arthritic changes of any significance with mild edema within the ACL without fiber disruption which reflects mild sprain with tendinosis and low-grade interstitial tear of the quadriceps tendon with patellofemoral chondromalacia

## Procedure Documentation

None recorded.

## Assessment / Plan

1. Jonathan England has quadriceps strain with patellofemoral chondromalacia and old healed ACL sprain.

Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# ENGLAND, Jonathan (id #9653515, dob: 02/21/1984)

At this point time we have chose to maintain a nonsurgical approach in treating this patient's pathology recommending NSAIDs and anti-inflammatories as well as activity modification and give the pathology more time to heal. I see no benefit gained by aggressive orthopedic intervention and certainly no surgical pathology at the present moment. We will plan reassessment for his knee on as-needed basis. All of the discussion was held today using layman's terms and to the patient's satisfaction. The patient had an opportunity to ask questions, all of which were answered to their satisfaction.

This note was created using voice recognition software and inadvertent typographical errors, word omissions, or word substitutions may exist. Occasionally, this may alter the intended meaning of the note.

## 1. Pain of right knee region
M25.561: Pain in right knee
- XRAY KNEE 4 OR MORE VIEW


Return to Office
- William Bell, MD for 3-New Patient 15 at 3-O-Morganton on 07/18/2023 at 02:30 PM

Encounter Sign-Off
Encounter signed-off by Kyle Munday, PA, 07/07/2023.

Encounter performed and documented by Kyle Munday, PA
Encounter reviewed & signed by Kyle Munday, PA on 07/07/2023 at 2:33pm

Jonathan England v. Onyia et al. 5:24-CT-3006
Defendants' Discovery Responses    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 222 of 295
0512

# NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION

## Incident Report

**Incident No:** 3100-22-1160
**Facility:** CENTRAL PRISON
**Investigating Officer:** PERRY, RICHARD J.
**SRG Related:** No
**Law Enforcement:** LAW ENFORCEMENT NOT INVOLVED

**Incident Time:** 12/21/22 07:20 AM
**Reported By:** WINDLEY, DARNELL L.
**Reported By Time:** 12/21/22 08:15 AM
**Status:** REG DIR APPROVED

| Seq | Event Type | Time | Location |
|---|---|---|---|
| 10 | Use Of Force Unanticipated | 12/21/22 07:20 AM | SINGLE CELL |

### Investigator Comments

On December 21, 2022 at approximately 7:20am Officer Joel Osborne conducted an unclothed search of offender Jonathon England 0702210 during a PERT search. Offender England became combative and aggressive attempting to jerk away. officer Osborne stated he observed Officer Darnell Windley and Officer Okechiuku Onyia place Offender England on the wall to gain control of him., Officer Osborne placed restraints on Offender England and Sergeant Kamil Slaczka escorted him off the block. Offender England provided a written statement. Offender England stated that he was woke between 7:00-8:00am to the sound of three Officers outside his door Officer Windley, Officer Osborne, and Officer Onyia. He stated that Officer Windley and Officer Onyia aren't supposed to be around him because of an active PREA investigation. He stated Officer Onyia placed his face against the cell window and asked him to strip naked, squat, and cough. He stated he would comply but not for Onyia or Windley. He stated Officer Windley was outside his door stating, "I'm here, I'm here want to put a PREA on me, I'm right here". He stated Officer Osborne told him to cuff up and at that time the food passage door opened he backed up to the door to let Officer Osborne place cuffs on him behind his back. He stated he was standing in his underwear and socks with back against the inside of his door with his hands through the food passage. Offender England stated when the door opened Officer Windley and Onyia rushed in and shoved him in front of his toilet and started punching him in the legs and side. He stated they were pulling his boxers down while he was cuffed and hitting him. He stated Officer Osborne ran in and punched him on the left side of the head behind his left ear. He stated Sergeant Slaczka comes in the cell and yelled at all three of them to "Stop guys, quit, stop". Sergeant Slaczka then escorted Offender England off the block. Offender England said out of the 25 or 50 PERT Officers that were on 2B Eastside searching why did the two he has an active PREA on come to his cell. Officer Osborne provided an additional statement and stated that at no time was excessive force used during this incident and there wasn't anything said about PREA. Sergeant Slaczka stated that he was conducting searches during the PERT activation, and he overheard Offender England being very loud and

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ Document 76-6 Filed 03/28/25 Page 223 of 295

0751

disruptive from his cell. He stated when he approached the cell he observed Officer Windley and Officer Onyia had Offender England placed against the wall. He stated he took control of Offender England and escorted him off the cell block due to him being disruptive. Sergeant Slaczka placed a set of full restraints on Offender England and placed him the 2A Eastside holding cell. Sergeant Slaczka stated at no point did he observe Officer Windley, Onyia, or Osborne using excessive force. He stated he didn't hear Office Windley or Onyia make any statements related to PREA and didn't observe them pull down Offender England boxers. Registered Nurse Robin Miller stated she medically screened Offender England following a PERT search earlier that morning. She stated Offender complained of several injuries and requested vital signs be taken. He denied homicidal/suicidal ideation and alleged excessive force during the search. She noted injury #1 was a small, minor left knee abrasion, knee had full range of motion, he complained of level 4 throbbing pain. Injury #2 was a very minor thin 3inch scratch on right buttock and he complained of level 4 throbbing pain. Injury #3 was painful wrists from the handcuffs top right wrist had mild swelling, otherwise showed no sign of injury. He was very irritable and angry but cooperative and alert. He was cleared to remain in restrictive housing unit. Offender England was charged with a B25 of the Offender disciplinary procedures. Photos of Offender England are attached and video. The use of force was in compliance with policy and procedures. Offender England was attempting to jerk away so minimal force was used to gain compliance. Officer Onyia and Officer Windley were on the block during the PERT search and approached his cell first due to him repeatedly flushing his toilet. Offender England had made PREA allegations against Officer Onyia and Officer Windley a month prior to the search.

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☐ Offender ☐ Other ☑ Name: _Jonathan England_  NCDPS: (Offender Only) _0702210_

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person obtaining statement: _Lt. L. Hand_

Date: _11/28/22_   Time: _1 45pm_

---

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☐ Yes  ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes  ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes  ☐No

I request staff assistance at my hearing: ☐ Yes  ☐No    Offender Initials _LN_   M.F.

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

Inmate Jonathan England #0702210, was offered a opportunity to give a written or verbal statement. He refused

Lt. Hand

Sgt. M. Freeman

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Refused to Sign_   Date _11/28/22_ Time _1 42pm_

Lt. Hand / Sgt. M. Freeman

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 225 of 295      0706

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: BOLANLE OJO, RN  NCDPS: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) _____ 03G02 , RNNUJ1 _____

Name and OPUS Number of Accused Offender(s): Jonathan England # 6702210

Name of Person obtaining statement: _____ F. R. Harry _____

Date: 11/28/22 _____ Time: _____ 11:00 AM

FOR ACCUSED OFFENDER USE ONLY:

I request written statements be gathered in my behalf: ☐ Yes  ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes  ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes  ☐ No

I request staff assistance at my hearing: ☐ Yes  ☐ No        Offender Initials _____

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On 11/28/22, around 1020am, offender Jonathan England was medically screened after he was pepper sprayed when he was refused to be un cuffed. He refused decontamination - He stated, "I have washed up in my room". He was alert and oriented. He was able to move both hands without difficulty. No swelling and no open area noted.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____ Bolanle Ojo Rnos _____ Date 11/28/22 Time 1037

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants discovery Responses  CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ  Document 76-3  Filed 03/26/26  Page 226 of 295  0705

# North Carolina Department of Public Safety
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M  Race: WHITE | Facility: | CENT |
| Note Date: | 11/28/2022 10:29 | Provider: Ojo, Bolanle G RN | Unit: | BBKU2 |

Use of Force Evaluation encounter performed at Housing Unit.

**Administrative Notes:**

ADMINISTRATIVE NOTE  **1**        Provider:  Ojo, Bolanle G RN

offender was screened after being peppered after he refused to be uncuffed. He refused decontamination, He stated, "I have washed up in my room". He was alert and oriented, able to move both hands without difficulty. No swelling, no open area noted. Instructed to inform nursing via sick call if he develop any symptoms later.

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 11/28/2022 | 10:39 CENT | Refused | 0.0 | | Ojo, Bolanle G RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 11/28/2022 | 10:39 CENT | Refused | | | Ojo, Bolanle G RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 11/28/2022 | 10:39 CENT | Refused | | | | Ojo, Bolanle G RN |

**Co-Pay Required:**       No        **Cosign Required:**  No

**Telephone/Verbal Order:**  No

**Standing Order:**         No

Completed by Ojo, Bolanle G RN on 11/28/2022 10:40

Jonathan England v. Onyia, et al 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 227 of 295        0553

# North Carolina Department of Public Safety
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M | Race:WHITE | Facility: | CENT |
| Note Date: | 11/06/2022 15:48 | Provider: | Adams, Sara E LPN | Unit: | BBKU2 |

Sick Call encounter performed at Non Patient Contact.
**Administrative Notes:**

    ADMINISTRATIVE NOTE  **1**      Provider:  Adams, Sara E LPN

       Weight loss concern secondary to Effexor referred to MH provider.


**Co-Pay Required:**      No     **Cosign Required:** No

**Telephone/Verbal Order:**  No

**Standing Order:**       No

Completed by Adams, Sara E LPN on 11/06/2022 15:49

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    Page 228 of 295    0554

# North Carolina Department of Public Safety
## Missed Appointment

| | | | | |
|---|---|---|---|---|
| Offender Name: ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: 02/21/1984 | Sex: | M | Facility: CENT | |
| Date: 01/04/2023 10:30 | Provider: | Gunter, Morgan E Psy.D Psych. | | |

### Treatment Setting

Outpatient Program at CENTRAL PRISON.

### Reason for Missed Appointments

Offender was unable to be seen during psychology clinic due to limited staff shortage on the unit. He will continue to be seen during weekly rounds. No concerns regarding the offender's wellbeing have been reported by staff. The offender is aware of how to self-refer for mental health services should he need to be seen prior to his next scheduled appointment.

*This report was created 14 days after the beating.*

**Co-Pay Required:** No       **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:** No

Completed by Gunter, Morgan E Psy.D Psych. Serv. Coord. on 01/04/2023 14:07

Johnathan England v. Onya, et al. 5:24-CV-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 229 of 295

0468

# North Carolina Department of Public Safety
# General Administrative Notes

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: | M | Facility: CENT | |
| Date: | 01/11/2023 08:57 | Provider: | Sheitman, Brian B MD | | |

## Comments

Patient's psychotropic medications will soon expire. EMR reviewed. I will re-order Mirtazapine and venlafaxine for 30 days pending a follow-up psychiatric appointment.

## Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| C872494 | MIRTAZAPINE 15 MG TAB | 01/11/2023 08:57 | Take one (1) tablet by mouth at bedtime ** Direct Observation Therapy ** x 30 day(s) Pill Line Only |
| | Indication: Other Specified/Unspecified Depressive Disorder | | |
| C872495 | VENLAFAXINE XR 150 MG CAP | 01/11/2023 08:57 | Take one (1) capsule by mouth daily ** Direct Observation Therapy ** x 30 day(s) Pill Line Only |
| | Indication: Other Specified/Unspecified Depressive Disorder | | |

**Co-Pay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:** No

Completed by Sheitman, Brian B MD Psychiatrist on 01/11/2023 08:58

Jonathan England v. Onyet, et al. 3:24-CP-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other ☐ Name: Gavin Clevesy _____ NCDPS: (Offender Only) 1068818

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): Jonathan England (0702210)

Name of Person obtaining statement: Bareeka Hudson

Date: 3-23-23 _____ Time: 1903

---

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☐ Yes ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes ☐ No

I request staff assistance at my hearing: ☐ Yes ☐ No          Offender Initials _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On 12/24/22 at lunch time SGT Mccort came upto Bu 206 East and told J.England that he was a Rat and a snitch

On 2/13/23 SGT Mccort asked J.England if he was still running from Onyia and Windley with the false proa.

On 2/23/23 C/o Amerson was passing out lunch trays, inmate J.England said he didnt get any dessert on his tray. She said she would check on it. She never came back and then her and England had words and she called SGT Mccort to come and help when he came in England wasn't kicking the door Mccort asked him what was wrong and England said he didnt get any dessert on his tray Mccort opened the trap and sprayed England and said take that bitch.

On 2/27/23 Mccort came in to count a 2:00pm and when he passed Englands door he called him a rat and a snitch

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____ Date 3-23-23 Time 1159

---

DC-138B
Rev. 1/18

## STATEMENT BY WITNESS

Staff ☐ Offender ☐ Other ☐ Name: Uhuru-Obatuiye-Allan NCDPS: (Offender Only) 1646217

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): Jonathan England (0702210)

Name of Person obtaining statement: Maretha Hudson

Date: 3/23/23                                    Time: 1905

---

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No

I request staff assistance at my hearing: ☐ Yes    ☐ No          Offender Initials _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

Refused to make a statement

Hudson / Sgt M. Joan

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness Refused                                    Date 3-23-23 Time 7:00

Hudson / Sgt M. Joan



# PRISON RAPE ELIMINATION ACT (PREA)
# OFFENDER/JUVENILE RETALIATION
# MONITORING AND PERIOD STATUS CHECKS

Facility **Central Prison** PREA Support Person: **L. Hicks** Incident # if applicable: **22-782**

Retaliation of: **England, Jonathan** OPUS # if applicable: **0702210**
(Last, First)

In accordance with PREA National Standards §115.67, §115.267, and §115.367, the North Carolina Department of Public Safety is mandated to protect all offenders/juveniles from retaliation. The PREA Support Person (PSP) is designated to monitor the offender/juvenile who is the alleged victim, and the offender/juvenile who reported the incident of sexual abuse or sexual harassment. While monitoring for retaliation, **periodic status checks are required.**

Instructions:
1. Upon notification of a sexual abuse or sexual harassment allegation, the assigned assigned PSP will initiate monitoring of the alleged victim, the offender or juvenile that reported the allegation or cooperated with officials during the investigation.
2. Monitoring will continue for a minimum of 90 days, or beyond 90 days if the initial monitoring indicates a continuing need.
3. Termination of monitoring prior to minimum of 90 days requires:
    a) the allegation to be determined unfounded; and
    b) approval by facility head to terminate monitoring
4. Document periodic status checks on this form.
5. Upon completion of the monitoring period, the PSP will conduct a final status check and review for retaliation. The results will be documented on this form.

**(A) PERIODIC STATUS CHECKS:** The following periodic status checks, which included a review of disciplinary reports and any housing and/or program changes, have been completed.
*(Note: It is recommended that periodic status checks be documented in this section at a minimum of every 30 days.)*

Date: **4/13/23** Comments: **No retaliation Noted** PSP Initials: **LH**
Date: **5/14/23** Comments: **No retaliation Noted** PSP Initials: **LH**
Date: **6/15/23** Comments: **No retaliation Noted / Investigation Completed** PSP Initials: **LH**
Date: _____ Comments: _____ PSP Initials: _____
Date: _____ Comments: _____ PSP Initials: _____

**(B) FINAL STATUS CHECK AND REVIEW:** Retaliation monitoring has concluded and has determined that there was:

☑ (NO) signs and/or complaints of retaliation     ☐ (YES) Signs and/or complaints of retaliation

**(C) COMMENTS:** Any additional comments are listed below.

_____ **6/15/23**
PREA Support Person
(Signature/Date)

_____
Facility Head
(Signature/Date)

Distribution:
PREA Compliance Manager
Region Office

Form OPA-124
Rev. 02.05.2016

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-8 Filed 08/26/25 Page 233 of 295    0750



# PRISON RAPE ELIMINATION ACT (PREA)
## OFFENDER/JUVENILE RETALIATION
## MONITORING AND PERIOD STATUS CHECKS



Facility: **Central Prison**  PREA Support Person: **L. Hicks**  Incident # if applicable **#22-782**

Retaliation of: **L. Hicks**  OPUS # if applicable: **0702210**
(Last, First)

In accordance with PREA National Standards §115.67, §115.267, and §115.367, the North Carolina Department of Public Safety is mandated to protect all offenders/juveniles from retaliation. The PREA Support Person (PSP) is designated to monitor the offender/juvenile who is the alleged victim, and the offender/juvenile who reported the incident of sexual abuse or sexual harassment. While monitoring for retaliation, **periodic status checks are required.**

Instructions:
1. Upon notification of a sexual abuse or sexual harassment allegation, the assigned assigned PSP will initiate monitoring of the alleged victim, the offender or juvenile that reported the allegation or cooperated with officials during the investigation.
2. Monitoring will continue for a minimum of 90 days, or beyond 90 days if the initial monitoring indicates a continuing need.
3. Termination of monitoring prior to minimum of 90 days requires:
    a) the allegation to be determined unfounded; and
    b) approval by facility head to terminate monitoring
4. Document periodic status checks on this form.
5. Upon completion of the monitoring period, the PSP will conduct a final status check and review for retaliation. The results will be documented on this form.

**(A) PERIODIC STATUS CHECKS:** The following periodic status checks, which included a review of disciplinary reports and any housing and/or program changes, have been completed.
*(Note: It is recommended that periodic status checks be documented in this section at a minimum of every 30 days.)*

Date: **12/16/22** Comments: **No Retaliation Noted / Refused to Speak** PSP Initials: **LH**
Date: **12/21/22** Comments: **Infractions incurred (B25) / No retaliation** PSP Initials: **LH**
Date: **1/16/23** Comments: **No retaliations noted** PSP Initials: **LH**
Date: **2/16/23** Comments: **No retaliation noted / Pending investigation** PSP Initials: **LH**
Date: **2/23/23** Comments: **Guilty Infractions B24, B25** PSP Initials: **LH**
**3/16/23 - Pending Infractions / No retaliation at this time**    **LH**

**(B) FINAL STATUS CHECK AND REVIEW:** Retaliation monitoring has concluded and has determined that there was:

☐ (NO) signs and/or complaints of retaliation  ☐ (YES) Signs and/or complaints of retaliation

**(C) COMMENTS:** Any additional comments are listed below.

_____ **6/5/23**
PREA Support Person
(Signature/Date)

Facility Head
(Signature/Date)

Distribution:
PREA Compliance Manager
Region Office

Form OPA-124
Rev. (May 2016)

Jonathan England v. Onvia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
Case 5:24-CT-03006-M-RN Document 26-3 Filed 05/26/25 Page 234 of 295
0749

Jonathan England v. Onyia, et al. 5:24-CT-3006 Defendants' Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

0746

**Facility:** CENTRAL PRISON (3100)

| Incident | Incident Time | How Reported | Who Reported | Date Reported | Validity | LEA Refer |
|---|---|---|---|---|---|---|
| 3100-22-782 | 11/28/22 09:15 AM | CUSTODY STAFF | OUTLAW, VENECIA S. (OVS02) | 12/15/22 | UNFOUND/DID NOT OCCUR | N |

| Event Sequence | Time | Location | Type of Sexual Misconduct | Nature |
|---|---|---|---|---|
| 10 | 11/28/22 09:15 AM | SINGLE CELL BU-206 | STAFF SEXUAL HARASSMENT | SEXUAL HARASSMENT BY STF |

| Participant Type | Participant Name | Race | Gender | Age At Time | Admin Actions |
|---|---|---|---|---|---|
| AGGRESSOR | ONYIA, OKECHUKWU M. (OOM01) | BLACK/AFRICAN AMERICAN | MALE | 39 | STAFF OTHER |
| AGGRESSOR | WINDLEY, DARNELL L. (WDL84) | BLACK/AFRICAN AMERICAN | MALE | 30 | STAFF OTHER |
| VICTIM | ENGLAND, JONATHAN (0702210) | WHITE | MALE | 38 | VICTIM CONFINED TO OWN CELL |

| Incident | Incident Time | How Reported | Who Reported | Date Reported | Validity | LEA Refer |
|---|---|---|---|---|---|---|
| 3100-22-1198 | 12/21/22 07:20 AM | INMATE VICTIM | ENGLAND, JONATHAN D (0702210) | 05/16/23 | NON PREA PRELIMINARY REVIEW | N |

| Event Sequence | Time | Location | Type of Sexual Misconduct | Nature |
|---|---|---|---|---|
| 10 | 12/21/22 07:20 AM | SINGLE CELL BU-206 | STAFF SEXUAL HARASSMENT | SEXUAL HARASSMENT BY STF |

| Participant Type | Participant Name | Race | Gender | Age At Time | Admin Actions |
|---|---|---|---|---|---|
| AGGRESSOR | ONYIA, OKECHUKWU M. (OOM01) | BLACK/AFRICAN AMERICAN | MALE | 39 | STAFF OTHER |
| AGGRESSOR | WINDLEY, DARNELL L. (WDL84) | BLACK/AFRICAN AMERICAN | MALE | 30 | STAFF OTHER |
| VICTIM | ENGLAND, JONATHAN (0702210) | WHITE | MALE | 38 | VICTIM CONFINED TO OWN CELL |

PREA Incidents for CENTRAL PRISON    2

Case 5:24-ct-03006-M-RJ     Document 76-3     Filed 03/26/26     Page 235 of 295

Note: The 3100-22-1198 12/21/22 07:20am Incident was reported by me to Warden Jamel James on 12/21/22, not 05/16/23 as claimed above. Also reported beating incident to assistant Unit-1 manager Sha-keeba Hudson on 12/22/22.

DC-138B
Rev. 1/18

#3

## STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other ☐ Name: __Jonathan England__    NCDOC: (Offender Only) __0702210__

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person Obtaining statement: __Sergeant Nichole King__

Date: __6/14/23__    Time: __10:15pm__

FOR ACCUSED OFFENDER USE ONLY:

I Request written statements be gathered in my behalf: ☐ Yes  ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes  ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes  ☐ No

I request staff assistance at my hearing: ☐ Yes  ☐ No    Offender Initials: _____

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

Then C/o OSBORNE handcuffed me through my trap and my celldoor opend and C/o ONIYA & C/o WINDLEY both rushed me, shoving me towards the back of my cell while they were punching me in my legs, knees and side of my stomach. C/o osborne stood at doorway and watched them beat me while i'm handcuffed behind my back. Then windley & oniya started pulling my underwear down off me while they were hitting me. C/o osborne comes into my cell punches me in the left side of my head and knees me in the stomach. Seargant Kamil Slazcka came in and made them stop. I was then chained up and put in "A-EAST" holding cell for over 3 Hours chained handcuffed behind back. Camera Footage needs to be reviewed on both Incidents and on both dates. (Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____    Date __1-16-23__ Time __11:40 pm__

Re-Submitting Grievance

CC

2-1-23

Ms. Natosha Lynch,

Hello my name is Jonathan England. I sent you a Grievance on Monday, 1-30-23 regarding a incident that took place on 12-21-22 here in and at my cell involving three "Central Prison" officers. This incident included "Sexual"/"Physical" abuse. I'm not asking for any kind of special treatment. I am asking that my Grievance be processed as per policy. There has been two seperate incidents since i've been here. The first incident took place on 11-28-22 and the second incident took place on 12-21-2 You processed the 11-28-22 Grievance and it is currently in STEP-3. So there's no reason for my 12-21-22 incident grievance to not be accepted. Again, I'm not asking for any kind of special treatment. Please process my grievance and send me the "Pink" Copy sealed in a envelope for privacy. Thank You.

Jonathan England #0702210

Sincerly,

UNIT-1, BU-206 EAST

Jon England

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

"PREA"/"Retaliation"

DC–410 (Rev. 02/22)

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: Jonathan England          Offender #: 0702210

Location: Central Prison, upper Level "UNIT-1" BU-206 EAST  Date: 1-30-2023

Grievance Statement: On Wednesday, December 21rst 2022 between 7am-8am Officers O. ONIYA, D. WINDLEY and J. OSBORNE came to my Cell BU-206 EAST. Officers ONIYA and WINDLEY are NOT suppose to be around me due to Active "PREA's" that I have on them from another incident that took Place on 11-28-22 also involving Sexual/Physical misconduct. ONIYA tells me to "Strip Naked Lift My Dick and Balls Then Turn Around Squat and Cough?" I told c/o ONIYA that I would Strip but NOT for him or c/o WINDLEY. c/o WINDLEY Standing outside my cell door taunting me saying "I'm Here I'm out Here! Wanna Put a PREA on me? I'm Right Here!" Then c/o OSBORNE handcuffs me behind my back through the "Trap" and holds the chain between the cuffs. A minute later my celldoor opens and both ONIYA & WINDLEY rush me shoving me into the back left side of my cell! Both WINDLEY & ONIYA Punching me in my legs, Knees and the side of my Stomach! c/o ONIYA say's to me "You Told Them I Raped You?" Referring to the active PREA I had put on him and WINDLEY a couple of weeks prior to this particular incident. c/o OSBORNE stood at doorway watching ONIYA + WINDLEY beat on me while I'm handcuffed behind my back! WINDLEY + ONIYA start pulling my underwear down off me while they were hitting me! Pure retaliation by ONIYA + WINDLEY! OSBORNE comes into my cell and he Punches me in the left side of my head behind my leftearand knees me in the Stomach! Sgt. k SLAZCKA runs up in my cell yelling "Stop, Guys quit, stop!" Sgt. SLAZCKA escorts me out into the hallway where he and Sgt. C. VANDERHOF Wrap a chain around me and hook it to the handcuffs behind my back and put me in "A-EAST" Holding cell and leave me over 3 Hours!

What remedy would resolve your grievance?: Again, I Want to be kept Seperated From Officers O. ONIYA, D. WINDLEY due to the "Sexual"and"Physical"misconduct that is on-going with these two officers! Also To be kept away from c/o J. OSBORNE due to the Physical Misconduct! And to Safely

Serve the rest of my Sentence without further retaliation by Central Prison Staff while housed at "Central Prison" in Raleigh, North Carolina. Thank You.

Offender Signature: Jonathan England    1-30-23

---

**OFFICIAL USE**

Date received: 2 /6 /23          Lynn —
                                 Receiving Officer Signature

Facility #: 3100   Year: 2023   Housing #: BBKU2   Sequence #: 00178

RECEIVED
FEB - 6 REC'D
UNDER
Central Prison
AWO Office    Staff ID

inside mail

Distribution: White - Facility Copy; Pink - Offender Copy

Please Send me the "Pink" Copy Sealed in a envelope for Privacy. There Is a "Three Day" Time Limit For Acceptance according to Chapter G. Section.0307(3)

Jonathan England v. Oniya, et al 5:24-ct-3006
Defendants Case 5:24-ct-03006-M Document 76-3 PROFILE Filed 03/26/26   Page 238 of 295    0793

This Is a Grievance of a Confidential Nature.

"Confidential" Grievance

Submiting This To Mr. Todd Ishee Director of Prisons. Sir I'm Not asking for any kind of special Treatment, Just want my Grievance processed according to policy

DC-410 (Rev. 02/22)

*Jonathan England*

RECEIVED JAN 2 4 2023

NCDPS - Prisons

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
## ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: **Jonathan England**     Offender #: **0702210**

Location: **Central Prison/Upper Level-UNIT-1, BU-206 EAST**     Date: **1-8-2023**

Grievance Statement: On Monday, November 28th 2022 between 9am-9:30am Officer O. ONIYA was removing a pair of Handcuffs from my wrists and had both of his hands + arms stuck through the "Trap" door and inside my cell. For well over a minute C/o ONIYA tried to remove the cuffs. C/o ONIYA became aggressive and started twisting, yanking + jerking on the cuffs. This was hurting my wrists. C/o ONIYA finally got one cuff off and he pinched me on my right butt cheek. I jumped and spun around. Now facing the door I stuck my arm and hand out on the "Trap" so the other cuff could be removed. C/o ONIYA again goes to twisting, pulling on the cuff causing marks and welps on my wrist. C/o ONIYA's actions Continues for about a minute or so. I believe C/o ONIYA was being malicous trying to intentionally hurt me. Officer D. WINDLEY then grabs the cuff and he starts twisting and pulling on the handcuff and my wrist causing me more pain, marks, welps and eventually open wounds. I yelled saying they were being to rough. C/o WINDLEY sprays me with pepper spray. C/o ONIYA grabs the cuff again and starts back twisting the cuff on my wrist again. Finally ONIYA removes the cuff and I jerk my hand inside my cell. Walking away officer WINDLEY tells me to "SUCK HIS D**K". Seargeant PYATT took pictures of the damage done to my wrists. There's Two Security Cameras in my housing block and will show proof of this incident. This all took place on the upper LEVEL of UNIT-1, cell BU-206 EAST @ Central Prison Raleigh NC.

What remedy would resolve your grievance?: I want to be kept seperated from officers O. ONIYA and D. WINDLEY due to the "Sexual" and "Physical" misconduct exhibited by these two officers. And for a "PREA" Investigation to be conducted without any kind of retaliation by correctional officers or staff members. I want to serve my time safely.

Offender Signature: *Jonathan England*   1-8-2023     Thank you

---

**OFFICIAL USE**

Date received: **2/6/23**

Receiving Officer Signature

Facility #: **3100**     Year: **2023**     Housing #: **BBKU2**

RECEIVED FEB ... RECD
LND95
00177
Sequence # Central Prison AWO Office

Distribution: White - Facility Copy; Pink - Offender Copy

Please send me "Pink" copy which is my copy. Thank you.

This is my second time submiting this Grievance. Submited first one on 12-27-2022

to Warden ... I'm Re-submiting to Mr. Ishee.

Jonathan England v. Oniya, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 06/26/25   Page 239 of 295

0789

 **North Carolina Department of Adult Correction**

Roy Cooper, Governor

Todd E. Ishee, Secretary

## Step One - Unit Response

**Regarding Grievance No.: 3100-2023-BBKU2-00177**
**Received: 02/06/2023**

**Inmate:     ENGLAND, JONATHAN D - 0702210**
**Location:  3100-CENTRAL PRISON - BBKU2006**

Your grievance has been identified as an allegation of inmate sexual abuse or harassment. Your grievance has been forwarded to the Facility Head for appropriate action according to the Prison Rape Elimination Act of 2003 and the Division for Adult Correction, Prisons, Inmate Sexual Abuse and Sexual Harassment Policy, Chapter F, Section .3400.

| | |
|---|---|
| 02/07/2023 | CORBETT-MOORE, BRENDA D. |
| *Date* | *Staff Electronic Signature* |

(A)____ Agree with grievance response        (B)_✔_ Appeal to Step Two (24-hour limit)

| | |
|---|---|
| 2 - 8 - 2023 | *Jon England* |
| *Date* | *Inmate Signature* |

| | |
|---|---|
| | |
| *Date* | *Witness Signature (optional)* |

cc: CTS

**MAILING ADDRESS:**
4285 MAIL SERVICE CENTER
RALEIGH, NC 27699-4285



**OFFICE LOCATION:**
1300 WESTERN BLVD
RALEIGH, NC 27606-4285
Telephone: (919)733-0800
Fax: (919)715-3226

WWW.NCDPS.GOV

An Equal Opportunity Employer

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER   Page 240 of 295

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 08/26/25

0790



# #4

CC RECEIVED — FEB - 7 REC'D — Central Prison AWO Office

DC-410 (Rev. 02/22)

"PREA"/Retaliation

RECEIVED
FEB 06 2023
WARDEN'S OFFICE

## NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
## ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: **Jonathan England**    Offender #: **0702210**

Location: **Central Prison, Upper level UNIT-1 BU-206 EAST** Date: **1-6-2023**

Grievance Statement: On Wednesday, December 21rst 2022 between 7am-8am Officers O. ONIYA, D. WINDLEY and J. OSBORNE came to my cell BU-206 East. Officers ONIYA & WINDLEY are NOT suppose to be around me due to active "PREA's" that I have on them from another incident that took place on 11-28-22 also involving "Sexual"/Physical" misconduct. c/o ONIYA tells me to "Strip Naked & lift my Dick and Balls then turn around squat + cough". I told ONIYA that I would strip but NOT for him or c/o WINDLEY. c/o WINDLEY standing outside my cell door taunting me saying "I'm Here! I'm out Here! Wanna put a PREA on me! I'm Right Here!" c/o OSBORNE handcuffs me behind my back through the "Trap" door and holds the chain between the cuffs. A minute later my cell door opens and both ONIYA & WINDLEY rush me shoving me into the back left side of my cell! Both WINDLEY & ONIYA punching me in my legs, knees and the side of my stomach! ONIYA say's to me "You told them I Raped you!" Referring to the active "PREA" I had put on him + WINDLEY a couple of weeks prior to this particular incident. c/o OSBORNE stood at doorway watching ONIYA & WINDLEY beat on me while I'm handcuffed behind my back! WINDLEY & ONIYA start pulling my underwear down off me while they were hitting me! Pure retaliation by both ONIYA & WINDLEY due to the PREA I had on them! OSBORNE comes into my cell + punches me in the left side of my head and knee's me in the stomach! Sgt. K. SLAZCKA runs in my cell yelling at them "Stop! Guy's stop! Quit!" Sgt. SLAZCKA escorts me out in the Hallway where he and Sgt. C. VANDERHOOF wrap a chain around me + run it through the handcuffs behind my back and put me in "A-East" Holding cell and leave me for OVER 3 Hours!

What remedy would resolve your grievance?: Again, I want to be kept Seperated from Officers O. ONIYA and D. WINDLEY due to the Sexual and Physical misconduct that is on-going with these two Officers! To be kept away from Officer J. OSBORNE due to the Physical misconduct! And to safely serve the rest of my sentence WITHOUT further retaliation by Central Prison staff while I'm housed at Central Prison in Raleigh, North Carolina. Thank You!

Offender Signature: **Jonathan England 1-6-2023**

---

| **OFFICIAL USE** |
| --- |

Date received: **2,7,23**    _____ Receiving Officer Signature    **WD05** Staff ID

Facility #: **3100**    Year: **2023**    Housing #: **BBK12**    Sequence #: **00217**

Distribution: White - Facility Copy; Pink - Offender Copy

Please Send me the "Pink" offender copy to me sealed in a envelope for Privacy. Thank You.

Jonathan England Enviral et al-CP-0702210
Defendants Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    0800

## North Carolina Department of Adult Correction
### Inmate Grievance Resolution Board
4207 MAIL SERVICE CENTER, RALEIGH, NC 27699-4207

State of North Carolina
Roy Cooper
Governor

Kimberly D. Grande
Executive Director

Members
David W. Addison, Esq.
Robert E. Campbell, Esq.
Phyllis S. Leary
Travis F. Ellis, Esq.
Carlton B. Joyner

### Step Three - Administrative Remedy Response

| | | | |
|---|---|---|---|
| Inmate: | ENGLAND,JONATHAN D | Tracking No: | 0000583970 |
| Inmate #: | 0702210 | Unit Grievance No: | 3100-2023-BBKU2-00217 |
| Location: | 3100-CENTRAL PRISON - BBKU2006 | Date Received: | 03/01/2023 |
| | 4285 MAIL SERVICE CENTER | | |

Grievance Examiner: Findings and Disposition Order

This examiner has reviewed this grievance and the response given by staff in the Step 1 and Step 2 responses.

The allegations appear to involved in an on-going investigation 3100-22-782. The facility advised that the allegations were also referred through internal investigation. There has been no determination made as to the allegations at this point. However, the offender denied any injury to medical staff and has been advised as to how to seek support or information from the facility PSP. The allegations appear to have been handled in accordance with the PREA policy. The offender is advised that he may be disciplined for false allegations on staff should the allegations be determined to be unfounded. The offender is encouraged to resolve his differences with custody staff in a constructive manner.

Thus, the grievance is dismissed as lacking any supporting evidence.

03/09/2023
_Date_

GRANDE, KIMBERLY D.
_Inmate Grievance Examiner Electronic Signature_

cc: CTS

_Note: I never denied any injury to medical staff. See nurse Miller's statement_

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER



# North Carolina Department of Public Safety

*Prisons*

Roy Cooper, Governor
Todd E. Ishee, Secretary

Brandshawn Harris, Chief Deputy Secretary
Peter Buchholtz, Director

To:     ENGLAND,JONATHAN D(#0702210)
        3100
        CENTRAL PRISON

From:   The PREA Office

Date: Jan 5, 2023

Re:     Sexual Abuse or Sexual Harassment Allegation(s)

The North Carolina Department of Public Safety, PREA Office is in receipt of your allegation(s).
The allegation has been forwarded for appropriate action. You may be contacted if additional
information is necessary.

In accordance with the Prison Rape Elimination Act (PREA) of 2003, any information obtained
during the course of an investigation is confidential.

Thank you for contacting the NCDPS PREA Office with your concerns.


Sincerely,


PREA Office
NC Department of Public Safety


_Jon Engfel_ 1-10-23
Offender Signature

_[signature]_ 1/10/23
Staff Signature

**MAILING ADDRESS:**
4201 MAIL SERVICE CENTER
RALEIGH, NC 27699-4201



**OFFICE LOCATION:**
512 N. SALISBURY STREET
RALEIGH, NC 27699-4201
Telephone: (919)733-4080

WWW.NCDPS.GOV

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 243 of 295   0732



RECEIVED
JAN 7 REC'D
Central Prison
AWO Office

DC–410 (Rev. 02/22)



RECEIVED
JAN 4 2023
WARDEN'S OFFICE
C.P. ADMINISTRATION

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: Jonathan David England     Offender #: 0702210

Location: "Central Prison" Upper Level Unit-1, BU #206 EAST Date: 12-22-2022

Grievance Statement: On Monday, November 28th 2022 between 9am - 9:30am Officer O. ONIYA was removing a pair of handcuffs from my wrists and had both of his hands + arms stuck through the trap door and inside my cell. For well over a minute c/o ONIYA tried to remove the cuffs. c/o ONIYA became aggressive and started twisting, yanking + jerking on the cuffs♥ This was hurting my wrists♥ Officer ONIYA finally got one cuff off and he pinched me on my right butt cheek I jumped and spin around♥ Now facing the door I stuck my arm and hand out on the trap so the other cuff could be removed. c/o ONIYA again goes to twisting, pulling on the cuff causing marks and welps on my wrist♥ c/o ONIYA's actions continues for about a minute or so. I believe c/o ONIYA was being malicous trying to intentionally hurt me.♥ Officer D. WINDLEY then grabs the cuff and he starts twisting and pulling on the handcuff and my wrist causing me more pain, marks, welps and eventually open wounds ♥ I yelled saying they were being to rough♥ Officer WINDLEY sprays me with pepper spray♥ c/o ONIYA grabs the cuff again and starts back twisting the cuff on my wrist again ♥ Finally c/o ONIYA removes the cuff and I jerk my hand/arm inside my cell♥ Walking away Officer WINDLEY tells me to "Suck His D∞k"♥ Other prisoners heard him say this and will verify what im saying. Seargeant PYATT took pictures of the damage done to my wrists♥ There are two security cameras in front of my cell and will show proof of the incident♥ This all took place on upper level of UNIT-1, Cell BU-206 East side at "Central Prison" in Raleigh, North Carolina.

What remedy would resolve your grievance?: I want to be kept Seperated from officers O. ONIYA and D. WINDLEY due to the "sexual" and "physical" misconduct exhibited by these two officers♥ And for a "PREA" Investigation to be conducted without having any kind of retaliation by other Correctional Officers or staff members while in housed at 'Central Prison.

Offender Signature: Jonathan England     Thank You ♥

---

### OFFICIAL USE

Date received: 1, 7 23     _Lynch_     LNDO5
Receiving Officer Signature     Staff ID

Facility #: 3100     Year: 2023     Housing #: BBKU     Sequence #: 00025

Distribution: White - Facility Copy; Pink - Offender Copy

Jonathan England v. Onyia et al. 5:24-CT-3006
Defendants'     Case 5:24-ct-03006-M-RJ     Document 76-3     Filed 02/20/26     Page 244 of 295
0731

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Robin Miller          NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)     Staff Nurse, RN   MRC26 _____

Name and OPUS Number of Accused Offender(s):     England, Jonathan  0702210 _____

Name of Person Obtaining statement: _____

Date: ___12.21-22___          Time: ___15:10___

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No          Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

At 0950 on 12-21-22, offender on Unit 1 was medically screened following a PERT search earlier that morning. Offender complained of several injuries, requested/received vital signs being taken, denied homicidal/suicidal ideation and alleged excessive use of force during the search. His VS were within normal limits. #1 injury was a small, minor Left knee abrasion - knee had full range of motion, but offender complained of level 4 throbbing pain. #2 injury was a very minor, thin 3 inch scratch on Right buttock. Offender also c/o level 4 throbbing pain. Injury #3 was painful wrists from the handcuffs. Top of Right wrist had mild swelling; otherwise, wrists showed no sign of injury. He was very irritable and angry, but cooperative and alert & oriented x 3. He was medically cleared to remain on restrictive housing unit.

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Robin Miller, RN_          Date 12-21-22 Time 1500

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☐ Offender ☐ Other ☑ Name: Gavin Clevesy    NCDPS: (Offender Only) #1668818

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): Jonathan England _____

Name of Person obtaining statement: C. Perry _____

Date: 12-28-2022    Time: 12:21

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☐ Yes  ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes  ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes  ☐ No

I request staff assistance at my hearing: ☐ Yes  ☐ No    Offender Initials _____

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On 12/21/22 at around 7:30 am the Qrt team did a search in B2 east, and officers Windley and Oniya went to cell Bu2ose for a search they knew they were not supposed to be doing because Jonathan England has an active P.R.E.A. Investigation on them. While standing outside the door Windley was trying to intimidate inmate England by telling him that "he was here" he said this over, and over. Officer Oniya was at the door telling inmate England to strip down and to squat and cough which inmate England refused. Then they put him in handcuffs, opened his door and ran in his cell and roughed inmate England up he came out of his cell with red marks on his torso and he was limping like somebody had hurt his leg.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____    Date 12-28-22 Time 12:21 pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-6   Filed 02/26/26   Page 246 of 295    0903

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Okechukun Onyia    NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)  Correctional Officer III ; 00M01

Name and OPUS Number of Accused Offender(s):  Jonathan England 0702210

Name of Person Obtaining statement:  Sergeant Nichole King

Date: 6/14/23    Time: 10:15pm

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No.  If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes  ☐ No

I request staff assistance at my hearing: ☐ Yes  ☐ No     Offender Initials: _____

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event; and if possible, any factual information relative to possible reasons for the misconduct.)

In reference to Nov 28th at 0930hrs, I correctional officer Onyia didn't illegally or inappropreately touch offender Jonathan England 0702210 house # BU-206 (2B East side) of unit 9.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness ___Onyia___    Date 1/17/23 Time 0635hrs

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: Angela Moore     NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)    Registered Nurse- Charge   MAD-63

Name and OPUS Number of Accused Offender(s):   England, Jonathan 0702210

Name of Person Obtaining statement: Sgt Nichole King

Date: 6/14/23      Time: 10:15pm

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes . ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No      Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On 12/15/2022 @ 2050, offender seen for PREA screening. Offender states that on 28 NOV 2022, officer pinched him on the butt while taking off his cuffs. Denies injuries. No evidence to collect. Complaint filed with PREA office confirmed.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Angela Moore RN_   Date 12/15/22   Time 2059

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

DC-138B
Rev. 1/18

## STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other☐ Name: Jonathan England     NCDOC: (Offender Only) 0702210

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person Obtaining statement: Sergeant Nichole King.

Date: 6/4/23     Time: 10:15pm

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes ☐ No

I request staff assistance at my hearing: ☐ Yes ☐ No     Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On Monday, November 28th 2022 9:15am Officers O. ONIYA and D. WINDLEY returned me to my cell BU-206. C/o WINDLEY + ONIYA had Just brought be back from DHO. C/o O. ONIYA Had both of his hands + arms inside my cell through my Trap door for over a minute trying to remove a pair of Handcuffs from my wrists. Finally he got one cuff off and he pinched me on my right ass cheek and I jumped forward and spun around cussing at him ∇ I stuck my arm and hand out the trap So the other cuff could be removed and oniya started maliciously twisting the cuff on my wrist causing marks, brusies and welps on my wrist ∇ Then C/o windley started twisting on the cuff using his handcuff key. I started raising hell due to the pain being caused by the Handcuff being twisted on

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Jon E/and_     Date 1-16-23 Time 11:40 pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses- CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    Page 249 of 295    0743
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26

## STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other☐Name: Jonathan England        NCDOC: (Offender Only) 0702210

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person Obtaining statement: Sgt Nichole King

Date: 6|14|23        Time: 10:15pm

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No        Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

my wrist ∇ c/o windley sprays me with pepper spray for no good reason ∇ c/o ONIYA then grabs the cuff again and again starts back twisting on the handcuff ∇ Oniya Finally gets the second cuff removed and I jerked my hand & arm inside the cell ∇ As they are walking away c/o windley tells me to "Suck His Dick" ∇

All this took place on 11-28-22 and I tried to give Ms. Shakeeba Hudson the paperwork on 12-8-22 regarding the "PREA" and she told me that "She didn't have anything to do with that" Then on the 15th or the 14th MS. Hudson finally took my paperwork.

Then on 12-21-22 c/o windley + ONIYA come to me while they had PREAs on then and they tried to make me strip/ and I refused. PERT was doing a search.

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Jm Ghul_        Date 1-16-23 Time 11:40pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-CT-03006-M-RJ   Document 76-3   Filed 05/26/25   Page 250 of 295        0744

Seargant Pyatt came to me and took pictures of the damage done to my wrists right after this incident. Sgt. Pyatt took 3 or 4 pictures with a digital camera. Camera footage in my block will clearly show both officers WINDLEY and ONYIA being very aggressive, abusive and useing excessive force in a very simple task of removing a pair of handcuffs. This whole ordeal had me upset and cursing while I was washing the pepper spray off me at my sink and officer WINDLY said "SUCK MY DICK". Other prisoners in the block heard him say this. And these prisoners will vouche for me and they are going to write statements on my behalf. And because of how officer ONYIA pinched me on my ass cheek I want to persue a "PREA" on him. And with officer WINDLEY telling me to "suck his dick" I feel like a "PREA" investigation should be conducted on him as well. It is not right for these two officers to act the way they acted. And it was REALLY wrong for officer ONYIA to pinch me like he did. And I started not to say anything about the ass pinching for fear of retalliation from both ONYIA and WINDLEY. But these two officers need to be held accountable for their misconduct and their un-lawful actions. I'm held accountable for my mistakes when I make a mistake. And no one is above the law, not even a officer. A nurse came to me today and she had ONYIA with her.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-Rj Document 76-3 Filed 03/26/26 Page 251 of 295 0729

The nurse asked me if I wanted a shower and I said no but I want to do a "Emergency" sick call on my wrist. She denied me the Emergency sick call. I have had trouble getting my "Grievances" processed since i've been here and because How i've had trouble with getting my grievances processed here and due to the severity of the misconduct by these two Officers I mailed out a 4 page letter today (11-28-22) to the Commissioner of Prisons, Mr. Todd Ishee detailing exactly what took place this morning in and around my cell. I mailed it to Mr. Ishee today marked as a "Confidential" grievance or matter and am hopeing to hear back from him.

I want to be Kept away from both officer ONYIA and officer WINDaly the rest of the time I'm at Central Prison & I don't want to even see them. I'm writing my family about this whole incident. And I'm contacting a law firm to see what all they suggest.

Jon England #0702210

Monday, November 28 2022

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 252 of 295

0730

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: Robin Miller          NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)    Staff Nurse, RN  MRC26 _____

Name and OPUS Number of Accused Offender(s):   England, Jonathan  0702210 _____

Name of Person Obtaining statement: _____ Perry _____

Date: __12.21-22__          Time: __15:10__

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No          Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

---

At 0950 on 12-21-22, offender on Unit 1 was medically screened following a PERT search earlier that morning. Offender complained of several injuries, requested/received vital signs being taken, denied homicidal/suicidal ideation and alleged excessive use of force during the search. His VS were within normal limits. #1 injury was a small, minor Left knee abrasion - knee had full range of motion, but offender complained of level 4 throbbing pain. #2 injury was a very minor, thin 3 inch scratch on Right buttock. Offender also c/o level 4 throbbing pain. Injury #3 was painful wrists from the handcuffs. Top of Right wrist had mild swelling; otherwise, wrists showed no sign of injury. He was very irritable and angry, but cooperative and alert & oriented x3. He was medically cleared to remain on restrictive housing unit.

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness: _Robin Miller RN_          Date 12-21-22 Time 1500

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 253 of 295      0761

CC
DC-138B
Rev. 1/18

## STATEMENT BY WITNESS

Staff ☐ Offender ☑ Other ☐ Name: Jonathan England          NCDPS: (Offender Only) 0702210

Position or Title of Witness: (Staff Only- Include Staff ID) _____

Name and OPUS Number of Accused Offender(s): _____

Name of Person obtaining statement: _____ R. C. Perry _____

Date: 12-28-2022          Time: 1:30p

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☑ Yes    ☐ No. If yes, list names: Gavin Clevesy #1668813

I request live witness(es) be present at my hearing: ☑ Yes    ☐ No. If yes, list names: Seargeant K. SdAZCKA and Nurse MIddER

I request physical evidence be reviewed at my hearing: ☑ Yes    ☐ No   Camera Footage from "BU-206 EAST" Digital Photos taken with digital camera by sgt Vanderhof of my knee and marks and scratches on Right But chee

I request staff assistance at my hearing: ☐ Yes    ☑ No          Offender Initials JE

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On wed, December 21rst 2022 between 7-8am I was awoken to the sound of three officers right outside my cell door. c/o O.ONIYA, c/o D. WINDLEY, c/o OSBORNE. Officers ONIYA & WINDLEY are NOT suppose to be around me due to the "Active" on-going "PREA" Investigation I have on both of them due to the sexual + fysical assault I received from them on the 11-28-22 incident c/o ONIYA with his face up again'st my cell window tells me to "STRIP NAKED, LIFT MY DICK AND BALLS THEN TURN AROUND SQUAT & COUGH." I told c/o ONIYA I would strip but NOT for him or WINDOW c/o WINDLEY was outside my door taunting me saying "I'M HERE ∇ I'M OUT HERE ∇ WANNA PUT A PREA ON ME ∇ I'M RIGHT HERE ∇" then Officer OSBORNE tells me to "CUFF UP". The "Trap" door opend and I backed up to my cell door and let c/o OSBORNE handcuff me behind my back. I'm standing in my underwear + socks with my back again'st the inside of my cell door with both of my wrists/hands handcuffed behind my back with my hands stuck through the Trap. c/o OSBORNE, who is 4 times my size, has a hold of the chain between the Handcuffs. My cell door opens and the two Officers that I have "Active" PREA's on both rush me ∇ c/o ONIYA & c/o WINDLEY both rush me Shoving me over in front of my toilet both of

PAGE 1 of 2          (Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Jon England_          Date 12-28-22 Time 1:30pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses  CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 12/21/2022 | 09:50 | 100 | Room Air | Miller, Robin C RN |
| Orig Entered: 12/21/2022 11:24 EST | | | | Miller, Robin C RN |
| 09/21/2022 | 00:19 | 100 | Room Air | Abraham, Haddis K RN |
| Orig Entered: 09/21/2022 00:20 EST | | | | Abraham, Haddis K RN |
| 08/14/2022 | 13:14 | Refused | | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:20 EST | | | | Berry, Sheryldean RN |
| 08/14/2022 | 13:09 | Refused | | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:14 EST | | | | Berry, Sheryldean RN |
| 06/29/2022 | 11:14 | 99 | | Blumer, Eleath H RN |
| Orig Entered: 06/29/2022 11:18 EST | | | | Blumer, Eleath H RN |
| 06/14/2022 | 08:38 | 96 | | High, Newton D PA |
| Orig Entered: 06/14/2022 08:40 EST | | | | High, Newton D PA |
| 06/10/2022 | 16:02 | 99 | Room Air | Goforth, Thomas L LPN |
| Orig Entered: 06/10/2022 16:05 EST | | | | Goforth, Thomas L LPN |
| 06/03/2022 | 12:14 | 98 | Room Air | Ross, Terry W LPN |
| Orig Entered: 06/03/2022 12:26 EST | | | | Ross, Terry W LPN |

## Height:

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 09/21/2022 | 00:19 | Unavailab | 0.0 | Abraham, Haddis K RN |
| Orig Entered: 09/21/2022 00:20 EST | | | | Abraham, Haddis K RN |
| 08/14/2022 | 13:14 | Refused | 0.0 | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:20 EST | | | | Berry, Sheryldean RN |
| 08/14/2022 | 13:09 | Refused | 0.0 | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:14 EST | | | | Berry, Sheryldean RN |
| 06/29/2022 | 11:14 | 66.0 | 167.6 | Blumer, Eleath H RN |
| Orig Entered: 06/29/2022 11:18 EST | | | | Blumer, Eleath H RN |
| 06/14/2022 | 08:38 | 66.0 | 167.6 | High, Newton D PA |
| Orig Entered: 06/14/2022 08:40 EST | | | | High, Newton D PA |
| 06/10/2022 | 16:02 | 66.0 | 167.6 | Goforth, Thomas L LPN |
| Orig Entered: 06/10/2022 16:05 EST | | | | Goforth, Thomas L LPN |
| 06/03/2022 | 12:14 | 65.0 | 165.1 | Ross, Terry W LPN |
| Orig Entered: 06/03/2022 12:26 EST | | | | Ross, Terry W LPN |

## Weight:

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 12/26/2022 | 10:08 CENT | 139.2 | 63.1 | | Jones, Angela M CHAII |
| Orig Entered: 12/26/2022 10:09 EST | | | | | Jones, Angela M CHAII |
| 09/26/2022 | 11:09 CENT | 148.0 | 67.1 | | Dantzler, Brandon A CHA II |
| Orig Entered: 09/26/2022 11:10 EST | | | | | Dantzler, Brandon A CHA II |
| 09/21/2022 | 00:19 CENT | Unavail | 0.0 | | Abraham, Haddis K RN |
| Orig Entered: 09/21/2022 00:20 EST | | | | | Abraham, Haddis K RN |
| 08/28/2022 | 15:35 HARN | 149.4 | 67.8 | | Kelley, Antoinette J RN |
| Orig Entered: 08/28/2022 15:36 EST | | | | | Kelley, Antoinette J RN |
| 08/14/2022 | 13:14 HARN | Refuse | 0.0 | | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:20 EST | | | | | Berry, Sheryldean RN |
| 08/14/2022 | 13:09 HARN | Refuse | 0.0 | | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:14 EST | | | | | Berry, Sheryldean RN |
| 07/29/2022 | 19:47 HARN | Refuse | 0.0 | | Kelley, Antoinette J RN |
| Orig Entered: 07/29/2022 19:48 EST | | | | | Kelley, Antoinette J RN |
| 06/29/2022 | 20:35 HARN | 154.4 | 70.0 | | McCormick, Tiffany M RN |

Defendants Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26 Page 255 of 295    0612

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 06/03/2022 | 12:14 | 58 | Via Machine | | Ross, Terry W LPN |

Orig Entered: 06/03/2022 12:26 EST   Ross, Terry W LPN

## Respirations:

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 12/21/2022 | 09:50 CENT | 16 | Miller, Robin C RN |
| Orig Entered: 12/21/2022 11:24 EST | | | Miller, Robin C RN |
| 10/29/2022 | 18:07 CENT | 18 | Goddard, Annette F CHA II |
| Orig Entered: 10/29/2022 18:08 EST | | | Goddard, Annette F CHA II |
| 09/21/2022 | 00:19 CENT | 16 | Abraham, Haddis K RN |
| Orig Entered: 09/21/2022 00:20 EST | | | Abraham, Haddis K RN |
| 08/14/2022 | 13:14 HARN | Refused | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:20 EST | | | Berry, Sheryldean RN |
| 08/14/2022 | 13:09 HARN | Refused | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:14 EST | | | Berry, Sheryldean RN |
| 06/29/2022 | 11:14 HARN | 16 | Blumer, Eleath H RN |
| Orig Entered: 06/29/2022 11:18 EST | | | Blumer, Eleath H RN |
| 06/14/2022 | 08:38 FOOT | 17 | High, Newton D PA |
| Orig Entered: 06/14/2022 08:40 EST | | | High, Newton D PA |
| 06/10/2022 | 16:02 FOOT | 16 | Goforth, Thomas L LPN |
| Orig Entered: 06/10/2022 16:05 EST | | | Goforth, Thomas L LPN |
| 06/03/2022 | 12:14 FOOT | 14 | Ross, Terry W LPN |
| Orig Entered: 06/03/2022 12:26 EST | | | Ross, Terry W LPN |

## Blood Pressure:

*Note: This happened with me Standing in cell # BU-206, because Nurse Robin Miller had to use a manual hand pump device to get my Blood Pressure she could not get Machine to work while I was Standing in At East holding cell.*

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| → 12/21/2022 | 09:50 | 110/80 | Left Arm | (Standing) | Adult-regular | Miller, Robin C RN |
| Orig Entered: 12/21/2022 11:24 EST | | | Miller, Robin C RN | | | |
| 11/28/2022 | 10:39 | Refused | | | | Ojo, Bolanle G RN |
| Orig Entered: 11/28/2022 10:40 EST | | | Ojo, Bolanle G RN | | | |
| 11/28/2022 | 07:57 | Refused | | | | Pack, Taunya H CHA II |
| Orig Entered: 11/28/2022 07:58 EST | | | Pack, Taunya H CHA II | | | |
| 10/29/2022 | 18:07 | 128/68 | | | | Goddard, Annette F CHA II |
| Orig Entered: 10/29/2022 18:08 EST | | | Goddard, Annette F CHA II | | | |
| 09/21/2022 | 00:19 | 128/88 | | | | Abraham, Haddis K RN |
| Orig Entered: 09/21/2022 00:20 EST | | | Abraham, Haddis K RN | | | |
| 08/14/2022 | 13:14 | Refused | | | | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:20 EST | | | Berry, Sheryldean RN | | | |
| 08/14/2022 | 13:09 | Refused | | | | Berry, Sheryldean RN |
| Orig Entered: 08/14/2022 13:14 EST | | | Berry, Sheryldean RN | | | |
| 06/29/2022 | 11:14 | 133/87 | Right Arm | Sitting | | Blumer, Eleath H RN |
| Orig Entered: 06/29/2022 11:18 EST | | | Blumer, Eleath H RN | | | |
| 06/14/2022 | 08:38 | 124/81 | | | | High, Newton D PA |
| Orig Entered: 06/14/2022 08:40 EST | | | High, Newton D PA | | | |
| 06/10/2022 | 16:02 | 112/70 | Left Arm | Sitting | Adult-large | Goforth, Thomas L LPN |
| Orig Entered: 06/10/2022 16:05 EST | | | Goforth, Thomas L LPN | | | |
| 06/03/2022 | 12:14 | 124/88 | Right Arm | Sitting | Adult-large | Ross, Terry W LPN |
| Orig Entered: 06/03/2022 12:26 EST | | | Ross, Terry W LPN | | | |

## SpO2:

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|

Jonathan England v. Olivia Davis, et al. et Motion
NCDAC - ALBE
Page 2 of 4
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 256 of 295
0611

*Note: See also First and Second Set of Interrogatories for Robin Miller pages 13 + 7. (3)(14) RESPONSE.*

APPROXIMATELY 11:22 HOURS, OFFICER AMERSON ARRIVES AT OFFENDER ENGLAND'S CELL DOOR, HANDS OFFENDER ENGLAND A FOOD TRAY, TAKES WHAT APPEARS TO BE AN EMPTY TRAY AND PROCEEDS TO WALK AWAY FROM THE CELL DOOR, AS MS. WILKINS IS APPROACHING. THE VIDEO DOES NOT APPEAR TO SHOW AN ALTERCATION BETWEEN OFFENDER ENGLAND AND STAFF. REVIEW OF VIDEO FROM THE SAME DATE AT APPROXIMATELY 1545 HOURS, SHOW SGT. MCCOURT APPROACHING OFFENDER ENGLAND CELL AND HANDING HIM A FOOD TRAY, THERE IS NO INDICATION IF THE TRAY IS EMPTY OR NOT. SGT. MCCOURT PROCEEDS TO FEED THE REMAINING OFFENDERS, THEN CIRCLES BACK TO BU-202 AND HANDS HIM WHAT APPEARS TO BE A SNACK BAG FROM THE FOOD CART. THERE IS NO VIDEO OF SGT. MCCOURT REMOVING A NAME TAG FROM A SNACK BAG PRIOR TO GIVING THE BAGS OUT. ADDITIONALLY, OFFENDER ENGLAND ALLEGES THAT ON 2/27/23 AT APPROXIMATELY 1215 HOURS, SGT. MCCOURT CAME INTO HIS BLOCK TO PASS OUT LUNCH TRAYS, AS OFFENDER ENGLAND WAS LIFTING THE LID TO HIS TRAY, SGT. MCCOURT PULLED THE TRAY AWAY FROM HIM THEN PUSHED THE TRAY BACK TO HIM STATING THAT HE WOULD "SHOVE IT INTO MY CELL ON THE FLOOR." CAMERA FOOTAGE DOES NOT SHOW SGT. MCCOURT ENTERING THE AREA WHERE OFFENDER ENGLAND IS HOUSED. IT HAS BEEN VERIFIED THAT OFFENDER ENGLAND IS NOT DD, ADA, OR HOUSED IN INPATIENT MENTAL HEALTH. OFFENDER ENGLAND WAS READ THE REPORTING PARTY'S STATEMENT, ADVISED OF HIS RIGHTS, SIGNED AND RECEIVED A COPY. OFFENDER ENGLAND WAS AFFORDED THE OPPORTUNITY TO MAKE A VERBAL OR WRITTEN STATEMENT. OFFENDER ENGLAND REQUESTED WRITTEN STATEMENTS BE GATHERED FROM GAVIN CLEVESY (1068818) AND OFFENDER UHURU OBATAIYE- ALLAH (1646217), OFFENDER CLEVESY AND OBATAIYE- ALLAH BE PRESENT AT THE HEARING, AND CAMERA FOOTAGE BE REVIEWED. OFFENDER ENGLAND DID NOT REQUEST STAFF ASSISTANCE. OFFENDER ENGLAND WROTE IN HIS STATEMENT, THE A-18 CHARGE IS FURTHER RETALIATION DUE TO THE ACTIVE PREA INVESTIGATION. OFFENDER ENGLAND ALSO REPEATS THE ALLEGATIONS ADDRESSED BY MS. ARGUELLO DATED 12/24/22 AT 11AM, 2/13, 23 AT 4:25PM IN HIS STATEMENT IN ADDITION TO STATING THAT ON 2/27/23 SGT. MCCOURT CALLED HIM A RAT. OFFENDER OBATIATYE- ALLAH REFUSED TO MAKE A STATEMENT, WITNESSED BY SGT. MALIKA FARMER. OFFENDER CLEVESY WROTE IN HIS STATEMENT THAT ON 12/24/22 SGT. MCCOURT CALLED OFFENDER ENGLAND A RAT AND A SNITCH. ON 2/13/23 SGT. MCCOURT ASKED OFFENDER ENGLAND IF HE WAS STILL RUNNING FROM OFFICERS ONIYA AND WINDLEY WITH THE FAKE PREA. ON 2/23/23 OFFICER AMERSON AND OFFENDER ENGLAND EXCHANGED WORDS DUE TO OFFENDER ENGLAND NOT HAVING DESSERT ON HIS TRAY. SGT. MCCOURT ENTERED THE AREA, OFFENDER ENGLAND TOLD SGT. MCCOURT THAT HE DIDN'T GET DESSERT WHEN SGT. MCCOURT UNSECURED THE FOOD PASSAGE DOOR AND SPRAYED ENGLAND, SAYING TAKE THAT BITCH. OFFENDER CLEVESY ALSO WROTE THAT ON 2/27/23, WHEN SGT. MCCOURT CAME IN TO COUNT HE CALLED OFFENDER ENGLAND A RAT AND A SNITCH. STATEMENTS WERE OBTAINED FROM SGT. MCCOURT, OFFICER AMERSON AND MS. WILKINS. SGT. MCCOURT WROTE THAT AT NO TIME DID HE RETALIATE AGAINST OFFENDER ENGLAND FOR HAVING A PREA AGAINST STAFF. SGT. MCCOURT STATED THAT ON 2/23/23 HE REPORTED TO THE CELL BLOCK AND GAVE OFFENDER ENGLAND SEVERAL DIRECTIVES TO STOP KICKING THE CELL DOOR AND HE REFUSED WHILE STATING "THAT BLACK RAT BITCH IS GOING TO LISTEN TO ME." OC PEPPER SPRAY WAS AS ADMINISTERED TO GAIN COMPLIANCE. AT NO TIME DID HE SAY "TAKE THAT BITCH." OFFENDER ENGLAND RECEIVED A FULL TRAY AT 3:45PM AS DID THE OTHER OFFENDERS. HE DID NOTHING OUT OF

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 02/26/26   Page 257 of 295          0858

INMATE NAME: ENGLAND                          NCDOC#: 0702210
FACILITY:    CENTRAL PRISON      #: 3100      CUSTODY LEVEL: CLOSE
OFFENSE REPORTED BY: ARGUELLO, MARTHA J.      TO: HUDSON, SHA-KEEBA M.

4/6/23

DATE OF OFFENSE:          03/23/23    TIME: 09:35
OFFENSE REPORTED:         03/23/23    TIME: 12:00
INVESTIGATOR ASSIGNED:    03/23/23    TIME: 17:35
INVESTIGATION BEGAN:      03/23/23    TIME: 17:37
COMPLETION DATE:          04/06/23    TIME: 20:27

SUMMARY OF FACTS:

A 15-DAY EXTENSION WAS GRANTED BY CHUM III MS. VENECIA OUTLAW DUE TO THE WORKLOAD OF THE UNIT. ON MARCH 23, 2303 AT APPROXIMATELY 0935 HOURS, FACILITY COMPLIANCE SPECIALIST MARTHA ARGUELLO WAS REVIEWING CAMERA FOOTAGE FOR A RESPONSE TO A GRIEVANCE SUBMITTED BY OFFENDER JONATHAN ENGLAND (0702210) REGARDING HIS ALLEGATIONS OF PREA RETALIATION FROM SGT. MCCOURT. OFFENDER ENGLAND ALLEGES ON 12/24/22 AT APPROXIMATELY 11:00 AM, SGT. MCCOURT HANDED HIM A TRAY A STATED "HEY I HEARD YOU GOT YOUR ASS BEAT THE OTHER DAY" AND STATED HE WAS A RAT/SNITCH, CHECKED OFF FROM THE LAST PRISON HE WAS AT, AND THE PREA WAS FAKE" REVIEW OF VIDEO DOES NOT SHOW SGT. MCCOURT ENTERING THE LOCATION WHERE OFFENDER ENGLAND IS HOUSED. OFFENDER ENGLAND MADE ADDITIONAL ALLEGATIONS STATING ON 2/13/23 AT 4:25 PM, SGT. MCCOURT BROUGHT HIS DINNER TRAY AND ASKED "IF I WAS STILL RUNNING FROM THOSE BOYS?", OFFENDER ENGLAND STATED WHAT BOYS AND SGT. MCCOURT REPLIED, "ONIYA AND WINDLEY". SGT. MCCOURT THEN REFERRED TO THE RETALIATION AND PHYSICAL ASSAULT ON 12/21 WAS FAKE. OFFENDER ENGLAND ALSO ALLEGES THAT SGT MCCOURT STATED THAT THE CAMERAS WORK WHEN THEY ARE TURNED ON, AFTER OFFENDER ENGLAND STATED CAMERAS DON'T LIE. REVIEW OF CAMERA FOOTAGE DID NOT SHOW SGT. MCCOURT ENTERING THE LOCATION WHERE OFFENDER ENGLAND IS HOUSED AND THE CAMERAS WERE FULLY OPERATIONAL. OFFENDER ENGLAND ALLEGES THAT ON 2/23/23 AT 11:15 HOURS, OFFICER AMERSON GAVE HIM A TRAY WITH NO DESSERT AND WHEN HE ASKED FOR ANOTHER TRAY, SHE BLEW HIM OFF AND EXCHANGED CURSE WORDS AT WHICH TIME HE BEGAN TO KICK THE CELL DOOR. OFFENDER ENGLAND STATED THAT HE STOPPED KICKING WHEN SGT. MCCOURT ENTERED THE BLOCK, SGT. MCCOURT ASKED HIM WHAT WAS THE PROBLEM. OFFENDER ENGLAND INFORMED SGT. MCCOURT THAT HE DIDN'T HAVE APPLES ON HIS TRAY. SGT. MCCOURT OPENED THE FOOD PASSAGE DOOR AND STATED "LET ME SEE" AND WHEN HE WENT TO HAND SGT. MCCOURT THE TRAY, SGT. MCCOURT ADMINISTERED OC PEPPER SPRAY IN HIS FACE AND STATED "TAKE THAT BITCH." ON THE SAME DAY AT APPROXIMATELY 3:45 PM, SGT. MCCOURT PASSED HIM AN EMPTY DINNER TRAY TO BE FUNNY AND REFUSED TO EXCHANGE IT FOR A TRAY WITH FOOD. OFFENDER ENGLAND ALSO STATED THAT SGT. MCCOURT REFUSED TO GIVE HIM HIS SNACK BAG AND REMOVED HIS NAME FROM THE TAG, GIVING THE BAG TO THE OFFENDER IN CELL BU-202. AS SGT. MCCOURT WALKED PAST HIS CELL AGAIN HE STATED, "THAT'S WHAT YOU GET FOR DOING FAKE PREA'S AND CUSSING OFFICER AMERSON. VIDEO FOOTAGE SHOW OFFICER AMERSON ARRIVING ON THE BLOCK AT APPROXIMATELY 11:18 HOURS WITH PROGRAM SUPERVISOR MS. GERMEL WILKINS. AT

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 258 of 295          0857

POLICY AND DO HIS JOB TO THE BEST OF HIS ABILITY. OFFICER AMERSON WROTE IN A STATEMENT THAT AS SHE WAS PASSING OUT FOOD TRAYS, OFFENDER ENGLAND STATED THAT SOMETHING WAS MISSING ON HIS FOOD TRAY. OFFICER AMERSON STATED THAT SHE WOULD GET ANOTHER TRAY FOR OFFENDER ENGLAND AFTER SHE FINISH FEEDING. OFFENDER ENGLAND BEGAN KICKING AND CALLED HER A "BLACK RAT BITCH." AT NO TIME DID OFFICER AMERSON CURSE AT OFFENDER ENGLAND. MS. WILKINS STATED THAT SHE WAS CONDUCTING ROUNDS AND AT NO TIME DID SHE WITNESS A VERBAL ALTERCATION BETWEEN OFFICER AMERSON AND OFFENDER ENGLAND. CAMERA FOOTAGE FOR THE ALLEGATIONS MENTIONED BY OFFENDER ENGLAND WERE REVIEWED BY MS. ARGUELLO AS THE REPORTING PARTY, AND THERE WAS NO VIDEO EVIDENCE TO SUPPORT THAT STAFF RETALIATED AGAINST OFFENDER ENGLAND IN ANY WAY. STAFF WERE PERFORMING THEIR JOB DUTIES. OFFENDER ENGLAND IS ATTEMPTING TO CIRCUMVENT DISCIPLINARY PROCEDURES ON 2/23/23. BASED ON THE GATHERED INFORMATION THE CHARGE ON A-18 IS APPROPRIATE. HOWEVER IT IS THE RECOMMENDATION OF THIS INVESTIGATIOR THAT THE A-18 BE DISMISSED DUE TO LACK OF EVIDENCE.

STAFF ASSISTANCE REQUESTED: NO     STAFF:
WITNESSES REQUESTED BY STATEMENT: YES     IN PERSON: NO
PHYSICAL EVIDENCE: NO

INVESTIGATION STAT:  DIS. RECOMMD       PROCESSING STAT: INVESTIGATED
    CHARGES:   A18

DATE SUBMITTED TO SUPERINTENDENT: 04/06/23   TIME: 20:27

INVESTIGATOR: RSM14 - HUDSON, SHA-KEEBA M.

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 259 of 295   0859

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Martha Arguello _____ NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)  **Facility Compliance Specialist**  FMJ 23

Name and OPUS Number of Accused Offender(s): Jonathan England #0702210 _____

Name of Person Obtaining statement: Shakeela Huan _____

Date: 3/23/23 _____ Time: 1740 _____

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No        Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

---

On 03/23/2023 at approxiamtely 0935 hours, I Facility Compliance Specialist was reviewing video footage for a response to a grievance submitted by offender Jonathan England #0702210 regarding his allegations of PREA retaliation from Sgt. McCourt in Unit 1. Upon review of the video on 12/24/2022 at 11:00 am, offender alleges Sgt. McCourt handed him a tray and stated "Hey I heard you got your ass beat the other day" and stated he was a rat/snitch, checked off from the last prison he was at, and the PREA he had was fake. The video on 12/24/2022 did not show Sgt. McCourt even entering the location where offender England is housed. Upon review of the video on 2/13/23 at 4:25 pm, offender alleges Sgt. McCourt brought his dinner tray and asked "if I was still running from those boys?" and offender asked what boys at which time Sgt. McCourt stated "Oniya and Windley", offender stated he guessed he was, then Sgt. McCourt referred to the retaliation and physical assault on 12/21 was fake to, at which time Sgt. McCourt said "yeah", offender stated cameras don't lie. Offender reported Sgt. McCourt stated "yeah when they are turned on they don't lie". Offender asked if cameras work with the sergeant replying "yeah they work, when they are turned on they work". The video on 2/13/23 did not show Sgt. McCourt even entering the location where offender England is housed and the cameras were fully operational. Upon review of the video on 2/23/23 at 11:15 am, offender alleges Officer Anderson gave him a tray with no dessert and when he asked for another tray, she blew him off and they exchanged curse words because she blew him

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Martha Arguello_  Date 3/23/23 Time 11:40am

---

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ  Document 76-3  Filed 03/26/26  Page 260 of 295        0860

A. INMATE NAME: ENGLAND, JONATHAN D.    NCDOC#: 0702210
   FACILITY:    CENTRAL PRISON    #: 3100    DATE OF REPORT: 04/10/23
   CRIME ( ) MISD.    INMATE ACTIVITY AT    CUSTODY LEVEL AT    DATE OF OFFENSE
   CLASS (X) FELON    TIME OF OFFENSE: 1    TIME OF OFFENSE: 2    03/23/23
   SSA    (X)

   OFFENSE CLASS & NUMBER    I: A18    II:    III:
   SUMMARY : THIS DISCIPLINARY IS BEING DISMISSED PER THE REQUEST OF THE
            INVESTIGATOR.
            SGT.C.MANGUM
            4/10/23 @ 0813 HRS
---------------------------------------------------------------------------------
   I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE
   HEARING OFFICER.
       INMATE'S SIGNATURE: _____    DATE: _____
   IS STAFF ASSISTANCE REQUESTED?: N    STAFF ASSIGNED:
   MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN
   EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
       INMATE'S SIGNATURE: _____    DATE: _____
---------------------------------------------------------------------------------
B. SUPERINTENDENT'S DECISION:
   OFFENSE:    I: A18    II:    III:
   INMATE PLEA:    NO PLEA

C. HEARING OFFICER'S DECISION:
   OFFENSE:    I:    II:    III:
   INMATE PLEA:
   ACTIVATE SUSPENDED SENTENCE DATED:    FOR ARTICLE(S)
---------------------------------------------------------------------------------
I.    II.    III.
OFFENSE CLASS& NO: A-18    OFFENSE CLASS& NO:  -    OFFENSE CLASS& NO:  -
 0 DAYS RHDP    DAYS RHDP    DAYS RHDP
    SUSPEND    MONTHS    SUSPEND    MONTHS    SUSPEND    MONTHS
    DAYS CRED TIME LOSS    DAYS CRED TIME LOSS    DAYS CRED TIME LOSS
    SUSPEND 0 MONTHS    SUSPEND    MONTHS    SUSPEND    MONTHS
 0 HOURS EXTRA DUTY    HOURS EXTRA DUTY    HOURS EXTRA DUTY
    SUSPEND    MONTHS    SUSPEND    MONTHS    SUSPEND    MONTHS
SUSPENSION OF    SUSPENSION OF    SUSPENSION OF

    PRIVILEGES    DAS    PRIVILEGES    DAS    PRIVILEGES    DAS
    SUSPEND    MONTHS    SUSPEND    MONTHS    SUSPEND    MONTHS
DEMOTE TO:    DEMOTE TO:    DEMOTE TO:
    SUSPEND    MONTHS    SUSPEND    MONTHS    SUSPEND    MONTHS
MONTHS DRAW LIMITED    MONTHS DRAW LIMITED    MONTHS DRAW LIMITED
    SUSPEND    MONTHS    SUSPEND    MONTHS    SUSPEND    MONTHS
---------------------------------------------------------------------------------

APPROVED BY: 3100  - GENERAL SURGERY ?    ON 04/09/23  AT 20:27 (UNIT)

FACILITY HEAD/DESIGNEE REVIEW:

    SIGNATURE: _____    DATE: _____

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M Document 76-3    Filed 06/26/26    Page 261 of 295    0856

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION     04/10/23
ISSR154 (55)          RECORD OF HEARING          PAGE    1


INMATE NAME: ENGLAND, JONATHAN D.          NCDOC#: 0702210
OFFENSE DATE: 03/23/23     TIME: 09:35     LOCATION: CENTRAL PRISON
HEARING DATE: 04/10/23     TIME: 11:07     LOCATION: CENTRAL PRISON


SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING
RELATING TO GUILT OR INNOCENCE:
    OFFENSE DISMISSED PER REQUEST OF FACILITY. NO PACKAGE
    AVAILABLE.


HEARING OFFICER DECISION:
 OFFENSE: I. A18     II.      III.
     DISMISSED


HEARING OFFICER: RDR03 - RAYNOR, DONNIE R.
    RECORDER: RDR03 - RAYNOR, DONNIE R.

INMATE SIGNATURE: _Record Only_          DATE: _4 / 10 / 23_

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26     Page 262 of 295     0855

A. INMATE NAME: ENGLAND, JONATHAN D.          NCDOC#: 0702210
   FACILITY:    CENTRAL PRISON     #: 3100   DATE OF REPORT: 04/10/23
   CRIME ( ) MISD.     INMATE ACTIVITY AT    CUSTODY LEVEL AT    DATE OF OFFENSE
   CLASS (X) FELON     TIME OF OFFENSE: 1    TIME OF OFFENSE: 2   03/23/23
   SSA   (X)

   OFFENSE CLASS & NUMBER   I: A18      II:          III:
   SUMMARY : THIS DISCIPLINARY IS BEING DISMISSED PER THE REQUEST OF THE
             INVESTIGATOR.
             SGT.C.MANGUM
             4/10/23 @ 0813 HRS

---

   I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE
   HEARING OFFICER.
       INMATE'S SIGNATURE: _____     DATE: _____
   IS STAFF ASSISTANCE REQUESTED?: N   STAFF ASSIGNED: _____
   MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN
   EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
       INMATE'S SIGNATURE: _____     DATE: _____

---

B. SUPERINTENDENT'S DECISION:
   OFFENSE:              I: A18       II:          III:
   INMATE PLEA:             NO PLEA

C. HEARING OFFICER'S DECISION:
   OFFENSE:              I: A18       II:          III:
   INMATE PLEA:             NO PLEA
   VERDICT:                 DISMISSED

D. SANCTIONS IMPOSED:
   ACTIVATE SUSPENDED SENTENCE DATED:           FOR ARTICLE(S)

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: A-18 | OFFENSE CLASS& NO:  - | OFFENSE CLASS& NO:  - |
| 0 DAYS RHDP | DAYS RHDP | DAYS RHDP |
| SUSPEND   MONTHS | SUSPEND   MONTHS | SUSPEND   MONTHS |
| DAYS CRED TIME LOSS | DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND 0 MONTHS | SUSPEND   MONTHS | SUSPEND   MONTHS |
| 0 HOURS EXTRA DUTY | HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND   MONTHS | SUSPEND   MONTHS | SUSPEND   MONTHS |
| SUSPENSION OF | SUSPENSION OF | SUSPENSION OF |
| PRIVILEGES      DAS | PRIVILEGES      DAS | PRIVILEGES      DAS |
| SUSPEND   MONTHS | SUSPEND   MONTHS | SUSPEND   MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND   MONTHS | SUSPEND   MONTHS | SUSPEND   MONTHS |
| MONTHS DRAW LIMITED | MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |
| SUSPEND   MONTHS | SUSPEND   MONTHS | SUSPEND   MONTHS |

---

APPROVED BY: 3100  - GENERAL SURGERY  ?   ON 04/09/23  AT 20:27  (UNIT)
             RDR03 - RAYNOR, DONNIE R.     ON 04/10/23  AT 11:07  (DHO)

FACILITY HEAD/DESIGNEE REVIEW:

   SIGNATURE: _____     DATE: _____

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

A. INMATE NAME: ENGLAND, JONATHAN D.          NCDOC#: 0702210
   FACILITY:   CENTRAL PRISON          #: 3100   DATE OF REPORT: 04/10/23
   CRIME ( ) MISD.    INMATE ACTIVITY AT    CUSTODY LEVEL AT    DATE OF OFFENSE
   CLASS (X) FELON    TIME OF OFFENSE: 1    TIME OF OFFENSE: 2   03/23/23
   SSA   (X)

   OFFENSE CLASS & NUMBER    I: A18    II:          III:
   SUMMARY : THIS DISCIPLINARY IS BEING DISMISSED PER THE REQUEST OF THE
             INVESTIGATOR.
             SGT.C.MANGUM
             4/10/23 @ 0813 HRS
---------------------------------------------------------------------------
   I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE
   HEARING OFFICER.
       INMATE'S SIGNATURE: _____    DATE: _____
   IS STAFF ASSISTANCE REQUESTED?: N  STAFF ASSIGNED:
   MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN
   EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
       INMATE'S SIGNATURE: _____    DATE: _____
---------------------------------------------------------------------------
B. SUPERINTENDENT'S DECISION:
   OFFENSE:              I: A18          II:          III:
   INMATE PLEA:          NO PLEA

C. HEARING OFFICER'S DECISION:
   OFFENSE:              I: A18          II:          III:
   INMATE PLEA:          NO PLEA
   VERDICT:              DISMISSED

D. SANCTIONS IMPOSED:
   ACTIVATE SUSPENDED SENTENCE DATED:          FOR ARTICLE(S)
---------------------------------------------------------------------------
I.                          II.                          III.
OFFENSE CLASS& NO: A-18     OFFENSE CLASS& NO:  -        OFFENSE CLASS& NO:  -
 0 DAYS RHDP                    DAYS RHDP                    DAYS RHDP
    SUSPEND   MONTHS            SUSPEND   MONTHS            SUSPEND    MONTHS
    DAYS CRED TIME LOSS         DAYS CRED TIME LOSS        DAYS CRED TIME LOSS
    SUSPEND 0 MONTHS            SUSPEND   MONTHS            SUSPEND    MONTHS
 0 HOURS EXTRA DUTY             HOURS EXTRA DUTY            HOURS EXTRA DUTY
    SUSPEND   MONTHS            SUSPEND   MONTHS            SUSPEND    MONTHS
SUSPENSION OF               SUSPENSION OF                SUSPENSION OF

   PRIVILEGES       DAS        PRIVILEGES       DAS        PRIVILEGES       DAS
    SUSPEND   MONTHS            SUSPEND   MONTHS            SUSPEND    MONTHS
DEMOTE TO:                  DEMOTE TO:                   DEMOTE TO:
    SUSPEND   MONTHS            SUSPEND   MONTHS            SUSPEND    MONTHS
 MONTHS DRAW LIMITED         MONTHS DRAW LIMITED         MONTHS DRAW LIMITED
    SUSPEND   MONTHS            SUSPEND   MONTHS            SUSPEND   MONTHS
---------------------------------------------------------------------------

APPROVED BY: 3100  - GENERAL SURGERY          ON 04/09/23  AT 20:27 (UNIT)
             RDR03 - RAYNOR, DONNIE R.         ON 04/10/23  AT 11:07 (DHO)

FACILITY HEAD/DESIGNEE REVIEW:

       SIGNATURE: _____          DATE: _____

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses- CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: __Martha Arguello__                    NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)    __Facility Compliance Specialist__

Name and OPUS Number of Accused Offender(s):    __Jonathan England #0702210__

Name of Person Obtaining statement: _____

Date: _____    Time: _____

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No

I request staff assistance at my hearing: ☐ Yes    ☐ No                    Offender Initials: _____

---

(Note: This statement must give a factu al account of the ev ents witnessed. Of particular importance is information as to what was observed, where and when it o ccurred, who was involv ed, names of other witnesses to the event, and if possible, any factual informati on re lative to possible reasons for the misconduct. )

---

arrives at offender England's cell and hands the offender a food tray, takes what appears to be an empty tray and proceeds to walk away from the cell door as Ms. Wilkins is approaching the area conducting her nromal duties. At about 1123 hours Officer Amerson gives a food tray to the next two cells and when she finishes, you see her return to offender England's cell for about 10 seconds, however you also see Ms. Wilkins approach his cell as if to speak to him as well just a second before she goes to the cell. This video does not appear to show an altercation between offender and staff. The video on 2/23/23 at 1545 hours shows Sgt. McCourt approaching offender England's cell and handing him what appears to be a food tray, however there is no indication as to whether it is empty or not. Sgt. McCourt then proceeds to feed the remaining offeners, then circles back to cell BU-202 and hands what appears to be a snack bag from the food cart. There is no video of Sgt. McCourt removing a name tag from a snack bag prior to giving the bags out, therefore, no way of knowing who gets a snack bag based on video evidence. Upon review of the video on 2/27/23 at approximately 12:15 pm, offender alleges Sgt. McCourt came into his block to pass out lunch trays and when he opened the trap to hand him a tray, he began to lift the lid to see if there was actually food on it at which time Sgt. McCourt pulled the tray away from him so the offender tried bringing the tray back into his cell. Offender stated that is when Sgt. McCourt pushed the tray back toward him and stated he would "shove it into my cell and into the floor" Offender reported Sgt. McCourt

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness __Martha Arguello__                    Date _3/23/23_ Time _11 40 am_

DC-138B
Rev. 1/18

## STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Martha Arguello _____ NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)    **Facility Compliance Specialist** _____

Name and OPUS Number of Accused Offender(s):    Jonathan England #0702210 _____

Name of Person Obtaining statement: _____

Date: _____                      Time: _____

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes    ☐ No.  If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes    ☐ No.  If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No

I request staff assistance at my hearing: ☐ Yes    ☐ No                 Offender Initials: _____

---

(Note:  This statement must give a factual account of the events witnessed.  Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct. )

---

then let go of the tray and shut his trap door at which time he told the sergeant he would check his tray everytime he served food and Sgt. McCourt replied "no were not and you just won't get a tray when I feed" and "he would give my tray to cell BU-208 everytime." The video on 2/27/23 did not show Sgt. McCourt even entering the location where offender England is housed. I recommend disciplinary charges for this offender due to false allegations toward staff for PREA retaliation as there is no video evidence to support they have retaliated against this offender in any way. Staff were simply performing there job duties and this offender appears to be trying to circumvent the disciplinary procedures from being sprayed as a result of disobeying a direct order and using profanity toward staff on 2/23/23.

_____

_____

_____

_____

_____

_____

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Martha Arguello_                       Date 3/23/23 Time 1140am

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Martha Arguello _____ NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)    **Facility Compliance Specialist** _____

Name and OPUS Number of Accused Offender(s):    Jonathan England #0702210 _____

Name of Person Obtaining statement: _____

Date: _____    Time: _____

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No

I request staff assistance at my hearing: ☐ Yes    ☐ No    Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct. )

---

off at which time he began to kick the cell door due to no call buttons to gain attention from other staff for help. Offender stated he stopped kicking when Sgt. McCourt arrived in the block and Sgt. McCourt asked him what the problem was when he came to the cell door, so he told him there were no apples on his tray. Offender stated Sgt. McCourt opened the trap door and stated "let me see" and when he went to hand Sgt. McCourt the tray, he got sprayed with a large can of pepper spray in the face and then Sgt. McCourt slams the trap shut and stated "take that bitch". Offender stated at 3:45 pm the same day, Sgt. McCourt comes back to pass out dinner trays and gave him an empty tray to be funny and Sgt. McCourt refused to take back the empty tray or exchange the empty tray for a tray with food on it. Offender stated he asked for snack bag and Sgt. McCourt refused to give him his snack bag and removed his name tag from it, then gave it to prisoner in cell BU-202. Offender reported the sergeant then stated as he walked past his cell again "that's what you get for doing fake PREA's and cussing C/O Anderson. The video on 2/23/23 shows Officer Amerson arriving on the block at about 1118 hours with what appears to be lunch trays along with Programs Supervisor Ms. Wilkins by her side. At approximately 1120 hour an unidentified medical staff person arrives at offender England's cell with Officer Amerson arriving right after to open the trap door and then immeidatiately continues to feed the other offenders while the medical staff has what appears to be a conversation with offender England. At approximately 1122 hours, Officer Amerson

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness  *Martha Arguello* _____    Date 3/23/23 Time 11:40 am

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: <u>Martha Arguello</u>    NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)    <u>Facility Compliance Specialist    FMJ 23</u>

Name and OPUS Number of Accused Offender(s):    <u>Jonathan England #0702210</u>

Name of Person Obtaining statement: _____

Date: _____    Time: _____

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes    ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No

I request staff assistance at my hearing: ☐ Yes    ☐ No    Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

---

On 03/23/2023 at approxiamtely 0935 hours, I Facility Compliance Specialist was reviewing video footage for a response to a grievance submitted by offender Jonathan England #0702210 regarding his allegations of PREA retaliation from Sgt. McCourt in Unit 1. Upon review of the video on 12/24/2022 at 11:00 am, offender alleges Sgt. McCourt handed him a tray and stated "Hey I heard you got your ass beat the other day" and stated he was a rat/snitch, checked off from the last prison he was at, and the PREA he had was fake. The video on 12/24/2022 did not show Sgt. McCourt even entering the location where offender England is housed. Upon review of the video on 2/13/23 at 4:25 pm, offender alleges Sgt. McCourt brought his dinner tray and asked "if I was still running from those boys?" and offender asked what boys at which time Sgt. McCourt stated "Oniya and Windley", offender stated he guessed he was, then Sgt. McCourt referred to the retaliation and physical assault on 12/21 was fake to, at which time Sgt. McCourt said "yeah", offender stated cameras don't lie. Offender reported Sgt. McCourt stated "yeah when they are turned on they don't lie". Offender asked if cameras work with the sergeant replying "yeah they work, when they are turned on they work". The video on 2/13/23 did not show Sgt. McCourt even entering the location where offender England is housed and the cameras were fully operational. Upon review of the video on 2/23/23 at 11:15 am, offender alleges Officer Anderson gave him a tray with no dessert and when he asked for another tray, she blew him off and they exchanged curse words because she blew him

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness *Martha Arguello*    Date 3/23/23 Time 11:40am

---

"PREA"/"Retaliation"

CC
RECEIVED
MAR 2 0 RECD
Central Prison
AWO Office

DC-410 (Rev. 02/22)

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: Jonathan England          Offender #: 0702.210

Location: Central Prison/UNIT-1, BU-#206 East          Date: 2-28-23

Grievance Statement: On Monday, February 13th 2023 at 4:25pm Seargeant McCort brought me my diner tray and he asked me "IF I Was still runing from those Boy's"? I asked What Boy's? He said "ONIYA & WINDdEY". I said Yeah I guess I am. He then referred to the "PREA" as Fake. And I said I Guess the Retaliation and physical Assault on 12-21 of last year was fake to huh? He said "Yeah". I replyed The Camera's Don't die▪ Sgt. McCort says "Yeah when They Are Turned on They Don't die" I asked if the Camera's work in the block? He said "Yeah They work▪ When They Are Turned on They work"▪

What remedy would resolve your grievance?: For Seargeant McCort to keep his comments to hisself. My opinion Sgt. McCort needs to be re-trained on the seriousness of the "Prison Rape Elimination Act of 2003".

Offender Signature: Jonathan England          Thank You.

---

## OFFICIAL USE

Date received: 3/20/23

Lynch
Receiving Officer Signature

WND05
Staff ID

Facility #: 310          Year: 2023          Housing #: BBKU2          Sequence #: 00375

Distribution: White - Facility Copy; Pink - Offender Copy

Please seal in a envelope for Privacy. Thank You.

Jonathan England v. Onyia, et al., 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER          Page 269 of 295          086900

CC

RECEIVED

DC-410 (Rev. 02/22)  MAR 2 0 REC'D

Central Prison
AWO Office

RECEIVED

MAR 0 6 2023

WARDEN'S OFFICE

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: Jonathan England            Offender #: 0702210

Location: Central Prison/UNIT-1, BU-206 East     Date: 2-28-23

Grievance Statement: On Saturday, December 24th 2022 at 11am while passing out lunch tray's in my block "BU-East" on the upper Level of UNIT-1 Seargeant McCort handed me my tray and say's to me "Hey I Heard You Got Your Ass Beat The Other Day." I said Yeah I Reckon I Did. On his way out of the block he said that I was a Rat/snitch and that I checked✓ off from the last prison I was at. Both of these statements are not true. Sgt. McCort said these things outloud inorder to try and turn other prisoners in my block again'st me. These statements may very well put me in danger once I get back to "Reglar Pop."

What remedy would resolve your grievance?: Seargeant McCort needs to keep his smart remarks to himself. This is further retaliation by Sgt. Mccort due to the "PREA" Investigation that is on-going. Regardless of how Mr. McCort feels about the "PREA" his opinion/comments are not needed or wanted.

Offender Signature: Jonathan England        Thank You.

---

### OFFICIAL USE

Date received: 3 20 23

_____Lynch_____
Receiving Officer Signature

LNDC05
Staff ID

Facility #: 3100     Year: 2023     Housing #: BBKU2     Sequence #: 00375

Distribution: White - Facility Copy; Pink - Offender Copy

Please _____ in a envelope for Privacy. Thank You.

# "PREA"/"Retaliation" ④

RECEIVED

DC-410 (Rev. 02/22)

MAR 2 0 RECD

Central Prison
AWO Office

## NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
### PRISONS
### ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: Jonathan England        Offender #: 0702210

Location: Central Prison/UNIT-1, BU-#206 East    Date: 2-28-23

Grievance Statement: On Monday, February 27th 2023 at 12:15pm Seargeant McCort came in my block passing out lunch tray's. He opend my trap and handed me my tray. I lifted the lid on the food tray to check and make sure there was food on it this time. He then pulled the tray back away from me as I was trying to bring the tray into my cell. Then he pushed my tray back toward me and said he would "shove" it into my cell and into the floor" He let go of the tray and shut my trap. I said We are going to check my tray everytime you serve. He said "NO we're not and you just wont get a tray when I feed". He then said "He would give my tray to cell BU-208 every time."

What remedy would resolve your grievance?: For Seargeant McCort to not be allowed to serve tray's in "BU-EAST" on upper level of UNIT-1. It is obvious that Mr. McCort is not interested in following DAC policy when it comes to serving trays. Again, For the "PREA" retaliation to stop!

Offender Signature: Jonathan England

---

### OFFICIAL USE

Date received: 3/20/23    _Lynn_ Receiving Officer Signature    LNP05 Staff ID

Facility #: 3100    Year: 2023    Housing #: BBKU8    Sequence #: 00375

Distribution: White - Facility Copy; Pink - Offender Copy

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    Page 271 of 295    0868

Please _____ in an envelope. For Privacy. Thank You.

CC **RECEIVED**

MAR 2 0 RECD

DC-410 (Rev. 02/22)

Central Prison
AWO Office

# NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY
## PRISONS
## ADMINISTRATIVE REMEDY PROCEDURE

Offender Name: Jonathan England                  Offender #: 0702210

Location: Central Prison/UNIT-1, BU-206 East Date: 2-28-23

Grievance Statement: On Thursday February 23rd 2023 at about 11:15 am c/o Anderson gave me a lunch tray that had no desert on it. I informed her there was no cooked apples on the tray. She mumbled under her breath and blew me off. She & I exchanged curse words. c/o Anderson then said that she would never feed me again. I kicked my door in order to get another c/o to come help me. There's No "Call Buttons" in the cells thus a person has to kick the door for help. I stopped kicking door as Seargeant McCort comes in my block. Sgt. McCort comes to my cell door and asked me what the problem was and I told him there was no apples on my tray. He opens my Trap door and say's "Let Me See it". I go to hand him the tray and he spray's me in the face with a large can of pepper spray! He slam's his trap shut & says "Take That Bitch." Then at about 3:45pm Sgt. McCort was passing out diner trays and he handed me a empty tray trying to be funny. He refused to take the empty tray back. He refused to give me a tray with food on it! I asked Sgt. McCort for my "Snack Bag" and he refused to give me my snack Bag! He removed my NAME TAG from my snack Bag and gave my Snack Bag to another prisoner! As He walked back by my cell door Sgt. McCort say's "That's what you get for doing fake PREA's and Cussing at c/o Anderson." According to N.C. DAC Policy & Procedures, Chapter-B, Section .0204(8)(12) "Food May Not be used as a Form of disciplinary Sanctions."

What remedy would resolve your grievance?: For the "PREA" retaliation to stop! This is the second retaliation incident that has taken place here on UNIT-1 at Central Prison since I filed the "PREA"! And for Seargeant McCort to follow DAC Policy when serving food and not spray me for invaid reasons! And for c/o Anderson also to follow policy when serving Food.

Offender Signature: Jonathan England          Thank You.

---

### OFFICIAL USE

Date received: 3-20-23

Lyne
Receiving Officer Signature

WND05
Staff ID

Facility #: 3101     Year: 2023     Housing #: BBKu2     Sequence #: 60375

Distribution: White - Facility Copy; Pink - Offender Copy

Please Jonathan England Monyet et al 5:24-CT-3906 sealed in a envelope for Privacy. Thank You.

INMATE NAME: ENGLAND, JONATHAN D.        NCDOC#: 0702210
OFFENSE DATE: 02/23/23    TIME: 11:30    LOCATION: CENTRAL PRISON
HEARING DATE: 04/10/23    TIME: 13:12    LOCATION: CENTRAL PRISON

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING
RELATING TO GUILT OR INNOCENCE:
    BAG. OFFICER AMERSON ALSO STATES THE INCIDENT OCCURRED AS
    REPORTED AND AT NO TIME DID SHE CURSE INMATE ENGLAND OR
    STATE SHE WOULD NOT FEED HIM AGAIN. THE I/O INDICATED THEY
    REVIEWED THE VIDEO AND STATES OFFICER AMERSON CAN BE SEEN
    FEEDING INMATE ENGLAND AND THEN MOMENTS LATER GOES BACK TO
    THE CELL. SHE THEN BEGINS FEEDING THE LOWER TIER. SGT.
    MCCOURTS REPORTS TO THE CELL AND SPEAKS WITH HIM. HE THEN
    ADMINISTERS PEPPER SPRAY, SECURES THE FOOD PASSAGE DOOR AND
    THEN WALKS AWAY. THIS DHO ALSO REVIEWED THE VIDEO. AFTER
    OFFICER AMERSON DELIVERS THE TRAY, THE LOCK ON THE DOOR CAN
    BE SEEN VIBRATING AS INMATE ENGLAND CONTINIOUSLY KICKS OR
    BEATS THE DOOR. SGT. MCCOURT ARRIVES AND SPEAKS WITH I/M
    ENGLAND FOR SEVERAL MINUTES, WITH HIS MACE CANNISTER STILL
    IN THE HOLSTER. SGT. MCCOURT IS STANDING DIRECTLY IN FRONT
    OF THE CELL AS WOULD BE EXPECTED. HE THEN DRAWS THE MACE
    CONTAINER AND APPEARS TO SPRAY IT INTO THE CELL HOWEVER IT
    CAN NOT BE SEEN AS HE IS IN FRONT OF THE CELL. HE THEN
    LEAVES THE AREA. HE DID SPEAK WITH INMATE ENGLAND FOR
    SEVERAL MOMMENTS WITH NO MACE DRAWN. IT DID NOT APPEAR HE
    USED MACE UPON ARRIVING AT THE CELL AS CLAIMED BY THE I/M.
    BASED ON THE REPORTING PARTY'S STATEMENT AND ALL EVIDENCE
    PROVIDED I AM FINDING THE INMATE GUILTY WITH PUNISHMENT
    IMPOSED PER POLICY. APPEAL FORMS GIVEN TO SGT. MANGUM TO
    FORWARD TO THE INMATE AS HE REFUSED TO ATTEND THE HEARING.
    DISCIPLINARY HISTORY CONSIDERED.

HEARING OFFICER DECISION:
 OFFENSE: I. B24     II. B25     III.
      GUILTY     GUILTY

HEARING OFFICER: RDR03 - RAYNOR, DONNIE R.
    RECORDER: RDR03 - RAYNOR, DONNIE R.

INMATE SIGNATURE: _refused to attend_    DATE: _4/10/23_

                        _cmangum_

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 273 of 295      0826

INMATE NAME: ENGLAND, JONATHAN D.        NCDOC#: 0702210
OFFENSE DATE: 02/23/23    TIME: 11:30    LOCATION: CENTRAL PRISON
HEARING DATE: 04/10/23    TIME: 13:12    LOCATION: CENTRAL PRISON

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING
RELATING TO GUILT OR INNOCENCE:

10 DAY EXT. GRANTED BY MR. PENNELL DUE TO DHO SCHEDULE.
INMATE REFUSED TO ATTEND WITH A DC-138G AND B ATTACHED,
WITNESSED BY SGT. K. SLACZKA AND SGT. R. RIVERA. I ENTERED
NO PLEA IN THE INMATE'S BEHALF AND REVIEWED THE PACKAGE. THE
FOLLOWING IS A SUMMARY. OFFICER Y. AMERSON STATES THAT ON
2-23-23 AT APPROX. 1130 SHE WAS PASSING OUT FOOD TRAYS ON
BC2B EAST. UPON RECEIVING HIS TRAY, INMATE JONATHAN ENGLAND
STATED IT WAS MISSING AN ITEM. OFFICER AMERSON ADVISED HIM
ONCE SHE FINISHED PASSING OUT TRAYS, SHE WOULD GET HIM A
NEW TRAY. INMATE ENGLAND THEN BEGAN KICKING THE CELL DOOR
AND CALLED HER A BLACK RAT BITCH. SHE THEN CALLED FOR
ASSISTANCE. SGT. S. MCCOURT REPORTED TO THE AREA AND ISSUED
SEVERAL ORDERS FOR INMATE ENGLAND TO STOP KICKING THE CELL
DOOR. HE REFUSED TO COMPLY AND PEPPER SPRAY WAS DEPLOYED BY
SGT. MCCOURT. HE THEN LEFT THE AREA AND FEEDING RESUMED.
SGT. S. MCCOURT STATES THAT ON 2-23-23 AT APPROX. 1130 HE
REPORTED TO INMATE JONATHAN ENGLAND'S CELL DUE TO THE INMAT
KICKING HIS CELL DOOR. UPON ARRIVING HE ORDERED INMATE
ENGLAND TO STOP CUSSING OFFICER AMERSON AND TO STOP KICKING
THE CELL DOOR. HE REFUSED TO COMPLY STATING " THAT BLACK
RAT BITCH IS GOING TO LISTEN TO ME." SGT. MCCOURT OPENED THE
FOOD PASAGE DOOR AND ADMINISTERED PEPPER SPRAY TO THE
INMATE'S FACIAL AREA. HE THEN LEFT THE AREA. INMATE ENGLAND
MADE A WRITTEN STATEMENT. HE DID NOT REQUEST WRITTEN
XSTATEMENTS, LIVE WITNESSES OR STAFF ASSISTANCE. HE REQUESTED
CAMERA FOOTAGE AS EVIDENCE. INMATE STATES ON 2-23-23 AT
APPROX. 1115 OFFICER AMERSON GAVE HIM A TRAY WITH NO
DESSERT. SHE MUMBLED UNDER HER BREATH AND BLEW HIM OFF. THEY
EXCHANGED CURSE WORDS. SHE SAID SHE WOULD NEVER FEED HIM
AGAIN. HE BEGAN KICKING HIS DOOR. THEY HAVE TO TO GET HELP.
HE STOPPED AS SOON AS SGT. MCCOURT ARRIVED. THE SGT. ASKED
WHAT WAS WRONG AND HE TOLD HIM. THE SGT. ASKED TO SEE THE
TRAY. WHEN HE TURNED TO SHOW HIM THE TRAY HE WAS SPRAYED IN
THE FACE WITH PEPPER SPRAY. HE THEN SLAMMED THE TRAP AND
SAID TAKE THAT BITCH. INMATE ENGLAND'S STATEMENT GOES ON TO
DISCUSS OTHER ACTIONS AT OTHER TIMES BY SGT. MCCOURT THAT
HAS NOTHING TO DO WITH THE INCIDENT. HE STATES AS SGT.
MCCOURT LEFT HE SAID THAT'S WHAT YOU GET FOR DOING FAKE
PREA'S AND CUSSING AMERSON. INMATE ENGLAND STATES THIS WRITE
UP IS RETALIATION FOR PREA COMPLAINTS HE HAS FILED. SGT.
MCCOURT AND OFFICER AMERSON BOTH MADE ADDENDUM STATEMENTS
TO ADDRESS THE INMATE'S CLAIMS. SGT. MCCOURT STATES THE
INCIDENT OCCURRED AS REPORTED AND HE NEVER SLAMMED THE FOOD
PASSAGE DOOR NOR DID HE SAY " TAKE THAT BITCH." HE FURTHER
DENIED ANY WRONG DOING REGARDING THE INMATE'S TRAY OR SNACK

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Response 06-CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 274 of 295      0825

DC-138B
Rev. 1/18

## STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: Damon Windley          NCDPS: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) Correctional officer III WDL34

Name and OPUS Number of Accused Offender(s): _____

Name of Person obtaining statement: _____

Date: 1.2-23          Time: 901

### FOR ACCUSED OFFENDER USE ONLY:

I request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☑ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No          Offender Initials _____

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

an During the cell search on 12/21/22 between 7 and 8an I Correctional officer III Damon Windley did not toubuild or say anything to inmate Jonathan England. 0702210. Inmate England was the first to start flushing his toiled and thats what led us to his door.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Damon Windley_          Date 1/2/22 Time 901am

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-8   Filed 03/26/26   Page 275 of 295          0758

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: Kamil Slaczka NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) Correctional Sergeant (SKX24)

Name and OPUS Number of Accused Offender(s): Jonathan England-0702210

Name of Person Obtaining statement: _____ C. Perry

Date: 1·2·23     Time: 9:15 am

| FOR ACCUSED OFFENDER USE ONLY: |
|---|
| I Request written statements be gathered in my behalf: ☐ Yes ☐ No. If yes, list names: _____ |
| I request live witness(es) be present at my hearing: ☐ Yes ☐ No. If yes, list names: _____ |
| I request physical evidence be reviewed at my hearing: ☐ Yes ☐ No |
| I request staff assistance at my hearing: ☐ Yes ☐ No     Offender Initials: _____ |

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

In regards to inmate Jonathan England (0702210) statement. On 12-21-22 I correctional Sergeant Kamil Slaczka (SKX24) was conducting cell searches due to a PERT activation on BC-2B east side. I overheard inmate England being very loud and disruptive from his cell. I walked up to inmate England cell BU-206 and observed that Officer Onyia and Windley had inmate England placed against the wall. I took control of inmate England and escorted him off the cell block due to him being disruptive. I placed inmate England in a set of full restraints consisting of a black box, pad lock and waist chain. I escorted inmate England to BC-2A east side holding cell to await for medical so that he could be medically screened. I left the area without further incident. At no point in time did I observe Officer Windley, Onyia or Osborne using excessive force on inmate England. At no point in time did officers Windley or Onyia pull inmate England's boxers off. At no point in time did officer Onyia or Windley make any statements related to PREA.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____     Date 01-02-23 Time 9:15am

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☒ Offender ☐ Other ☐ Name: Joel Osborne     NCDPS: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) Correctional officer III (OJL42)

Name and OPUS Number of Accused Offender(s): Jonathan England (0702210

Name of Person obtaining statement: T.C. Terry

Date: 1-8-23     Time: 9:00

---

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No     Offender Initials _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On 12/21/22 at approx. 0720 while on Unit I during a PERT Activation I officer Joel Osborne (OJL42) conducted a strip search on offender Jonathan England (0702210) offender England became combative by pulling away officer Osborne observed officer's Windley and Onyia place offender England on wall to gain control of offender England. I then placed restraints on offender England. I then observed Sgt Sloc2ka escort offender England off the block. there was no essesive force during this incident and the weren't anything said about PRCP offend left block without and further incident.

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____     Date 1/8/23 Time 0900

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses — CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 02/26/26 Page 277 of 295     0897

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other ☐ Name: Damon Windley     NCDPS: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) Correctional officer III WDL84

Name and OPUS Number of Accused Offender(s): _____

Name of Person obtaining statement: _____

Date: 1-2-23      Time: 901

---

**FOR ACCUSED OFFENDER USE ONLY:**

I request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No      Offender Initials _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On During the cell search on 12/21/22 between 7 and 8am I Correctional officer III Damon Windley did not taught or say anything to inmate Jonathan England 0702210. Inmate England was the first to start flushing his toilet and that's what led us to his door.

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Windley_     Date 1/2/23   Time 901am

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Okechukwu Onyia  NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)  Correctional Sgt.; 00M01

Name and OPUS Number of Accused Offender(s):  Jonathan England 0702210

Name of Person Obtaining statement: Martha Arguello

Date: 5/16/23          Time: 3:55pm

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes  ☐ No. If yes, list names: _____

_____

I request live witness(es) be present at my hearing: ☐ Yes  ☐ No. If yes, list names: _____

_____

I request physical evidence be reviewed at my hearing: ☐ Yes  ☐ No

I request staff assistance at my hearing: ☐ Yes  ☐ No        Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

On 12/21/22, at approximately 0720hrs, I correctional Sgt. Onyia went on 2B East side (cell EU-206) with PERT members. Offender Jonathan England 0702210 housed in EU-206 flushed his toilet more than one time and was instructed to stop flushing; he failed to comply. I assisted in taking control of offender Jonathan England 0702210 hand once his cell EU-206 was opened. Offender Jonathan England 0702210 was aggressive while attempting to take control of his hand. Restraints was placed on offender Jonathan England 0702210 and passed on to Sgt. Slaczka. At no point in time did I pull down offender Jonathan England shorts, pants etc., and neither did I punch or assault offender Jonathan England in his cell (EU-206). I don't recall offender Jonathan England being in cuffs prior to entering his cell (EU-206).

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____        Date 5/16/23 Time 1200hrs

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses  CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ  Document 76-3  Filed 02/26/26  Page 279 of 295   0770

CC

Statement By Witness      3/30/2023

I, Gavin Cleesy have heard and witnessed Sgt. McCort come on my block Bu-East numerous times over the course, of about 2½ monthes and call Jonathan England a "Rat" a "Snitch" and a "Check off" this has been going on since the end of December (2022) Sgt. McCort has said these things out loud to where everybody in the block could hear, This has happend over and over, I have heard Sgt McCort talk about Jons PREA is a False and laugh at Jon a few days after Jon got beat up by Los Oniya, Windley and Osborne. I'm in the next cell right beside Jon and have been for 6 monthes now.

SGT. McCort even gave Jon an empty tray one day at dinner and even gave away his snack bag to another prisoner. Jon tried to get Sgt McCort to stop playing games and give him a tray with food on it but Sgt. McCort refused.

Jon also tried to get Sgt McCort to give him his snack bag and Sgt McCort refused, And gave it to cell Bu-202 EAST.

Several times since December (2022) Sgt. McCort has called Jonathan England a "Rat, a "Snitch" over and over.

"Unit 1"

Gavin Cleesy ~~[signature]~~  #1008818 Bu 207 EAST

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses   CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

# NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION

## Incident Report

**Incident No:** 3100-23-177

**Facility:** CENTRAL PRISON

**Investigating Officer:** RANES, MICHAEL A.

**SRG Related:** No

**Law Enforcement:** LAW ENFORCEMENT NOT INVOLVED

**Incident Time:** 02/23/23 11:30 AM

**Reported By:** AMERSON,YADIRA S

**Reported By Time:** 02/23/23 11:30 AM

**Status:** REG DIR APPROVED

| Seq | Event Type | Time | Location |
|---|---|---|---|
| 10 | Use Of Force Unanticipated | 02/23/23 11:30 AM | SINGLE CELL BU-206 |

### Investigator Comments

On 02-23-23 at approximately 1133 hours Correctional Officer Yadira Amerson was passing out lunch trays on BC-2B east side. Officer Amerson arrived at cell BU-206 housing inmate Jonathan England (0702210). Officer Amerson unsecured the food passage door and gave Offender England his food tray. Offender England accepted his food tray. Officer Amerson secured the food passage door and kept on passing out food trays. Offender England began to yell that he did not receive the right portions on his food tray. Officer Amerson told Offender England to wait until she is done passing out the rest of the food trays and she will fix the issue. Offender England stated, "No get the OIC in here now". Offender England then began to kick the cell door. Officer Amerson called for assistance to the cell block. Correctional Sergeant Shon McCourt reported. Sergeant McCourt gave Offender England a direct order to stop kicking the cell door and offender England refused. Sergeant McCourt unsecured the food passage door and administered a burst of OC pepper spray to Offender England's facial area. Offender England stopped kicking the cell door. Sgt. McCourt secured the food passage and exited the cell block. Correctional Officer Ethan Crosby offered Offender England the opportunity to be decontaminated and Offender England refused. Offender England stated at about 11:15 Officer Amerson gave him a lunch tray without a dessert on it. He stated he told her there was not any apples on the tray. He stated that him and Officer Amerson exchanged curse words and Officer Amerson stated that she wouldn't feed him again when she fed his block. He stated he was kicking the door to get the attention of another officer to come help him since there are no call buttons in the cell, so he had to kick the door. Offender England stated he stopped kicking the door when Sergeant McCourt arrived. He stated Sergeant McCourt asked him what the problem was and he advised him that there are no apples on the tray and when he went to hand Sergeant McCourt the tray through the food passage Sergeant McCourt pepper sprayed him and stated, "Take that bitch". He stated later that day Sergeant McCourt fed his block and handed him and empty tray and refused to take the empty tray back and refused to give him his snack bag. He stated the snack bag was given to someone else. He stated Sergeant McCourt stated, "That is what

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☑ Offender ☐ Other☐ Name: Darnell Windlay _____ NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) Correctional officer III WDLP4 _____

Name and OPUS Number of Accused Offender(s): Jonathan England 0702210 _____

Name of Person Obtaining statement: _____ Martha Arguello _____

Date: 5/16/23     Time: 3:55 pm

┌─────────────────────────────────────────────────────────────────────────────┐
FOR ACCUSED OFFENDER USE ONLY:

I Request written statements be gathered in my behalf: ☐ Yes ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes ☐ No

I request staff assistance at my hearing: ☐ Yes ☐ No     Offender Initials: _____
└─────────────────────────────────────────────────────────────────────────────┘

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct.)

At no time did I use force on Jonathan England in his cell. Inmate England was handcuffed before his cell door opened.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _Darnell Windlay_     Date 5-16-23 Time 12:01 pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER    Page 282 of 295    0771
Case 5:24-ct-03006-M-RJ Document 76-3 Filed 03/26/26

# North Carolina Department of Public Safety
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: M | Race: WHITE | Facility: | CENT |
| Note Date: | 12/15/2022 20:37 | Provider: | Moore, Angela D RN | Unit: | BBKU2 |

Nursing Note encounter performed at Restrictive Housing Unit.

**Administrative Notes:**

ADMINISTRATIVE NOTE **1**      Provider: Moore, Angela D RN

PREA COMPLAINT Initiated by Lt Unit 1 on this date.

Offender states he was assaulted by officer on 28 NOV 2022 inside the door of his cell. He states the officer "pinched him on the butt". Denies injuries. No evidence to collect. PREA reported per Lt U1.

**Co-Pay Required:**      No      **Cosign Required:** No

**Telephone/Verbal Order:**      No

**Standing Order:**      No

Completed by Moore, Angela D RN on 12/15/2022 20:58

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

| Offender Name: ENGLAND, JONATHAN D | | Off #: | 0702210 |
|---|---|---|---|

Offender Name: ENGLAND, JONATHAN D

Date of Birth: 02/21/1984

Encounter Date: 12/21/2022 09:50

Sex: M   Race: WHITE

Provider: Miller, Robin C RN

Off #: 0702210

Facility: CENT

Unit: BBKU2

## New OTC:

| Medication | OTC Source | Start Date | Stop Date |
|---|---|---|---|
| ACETAMINOPHEN 325 MG TAB | Stock | 12/21/2022 | 12/26/2022 23:59 |

Order Detail:  2 tabs po TID prn X 5 days.    *Not True*

## Disposition:

Follow-up at Sick Call as Needed

## Other:

2 cold packs given    *Not True*

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 12/21/2022 | Counseling | Access to Care | Miller, Robin | Verbalizes Understanding |

**Co-Pay Required:**   No      **Cosign Required:** No

**Telephone/Verbal Order:**   No

**Standing Order:**   No

Completed by Miller, Robin C RN on 12/21/2022 13:00

Generated 12/21/2022 13:00 by Miller, Robin C RN
Jonathan England v. Onyla, et al. 5:24-CT-3006          NCDPS - CENT                              Page 3 of 3
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ  Document 76-3  Filed 03/26/26   Page 284 of 295      0551

DC-138B
Rev. 2/08

## STATEMENT BY WITNESS

Staff ☑ Inmate ☐ Other ☐ Name: __NATOSHA LYNCH__ NCDOC: (Inmate Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID) __CORRECTIONAL OFFICER III    (LND05)__

Name and OPUS Number of Accused Inmate(s): __JONATHAN ENGLAND    (OPUS# 0702210)__

Name of Person Obtaining statement: __Sergeant Nicholc King__

Date: __6|14|23__ Time: __10:15pm__

| FOR ACCUSED INMATE USE ONLY: |
|---|
| I Request written statements be gathered in my behalf: ☐ Yes    ☐ No. If yes, list names: _____ |
| I request live witness(es) be present at my hearing: ☐ Yes    ☐ No. If yes, list names: _____ |
| I request physical evidence be reviewed at my hearing: ☐ Yes    ☐ No |
| I request staff assistance at my hearing: ☐ Yes    ☐ No                 Inmate Initials _____ |

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct. )

On 01/07/23 at approximately 1230 hours I, Officer Lynch, received a grievance from offender Jonathan England
(OPUS# 0702210) that contained PREA allegations. Grievance 3100-2023-BBKU2-00025 has been forwarded to the
PREA Compliance Manager.

(Statement may be continued on an attached sheet.)

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness __Natosha Lynch__ Date __1/7/23__ Time __1645__

DC-138B
Rev. 1/18

# STATEMENT BY WITNESS

Staff ☐ Offender ☐ Other☐ Name: Venecia Outlaw _____ NCDOC: (Offender Only) _____

Position or Title of Witness: (Staff Only- Include Staff ID)   CHUM III (OVS02) _____

Name and OPUS Number of Accused Offender(s):   JONATHAN ENGLAND 0702210 _____

Name of Person Obtaining statement: Sergeant Nichole King _____

Date: 6/14/23 _____   Time: 10.15pm _____

---

**FOR ACCUSED OFFENDER USE ONLY:**

I Request written statements be gathered in my behalf: ☐ Yes   ☐ No. If yes, list names: _____

I request live witness(es) be present at my hearing: ☐ Yes   ☐ No. If yes, list names: _____

I request physical evidence be reviewed at my hearing: ☐ Yes   ☐ No

I request staff assistance at my hearing: ☐ Yes   ☐ No          Offender Initials: _____

---

(Note: This statement must give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, names of other witnesses to the event, and if possible, any factual information relative to possible reasons for the misconduct. )

---

On 12/15/22 at approximately 1630 hours I, Venecia Outlaw, recieved a statement from the above offender. The

statement made PREA allegations against staff. The offender stated that officer Darnell Windley told him to suck his

penis. The offender also stated that officer Okechukwu Onyia pinched his buttocks. The offender was medically screened.

---

(Statement may be continued on an attached sheet.)

---

I have read the above statement and affirm that it is based on personal observation of the events described and that it is, to the best of my knowledge, a true and accurate statement of fact.

Signature of witness _____   Date 12/15/22   Time 7:22pm

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RN Document 76-3 Filed 03/26/26   Page 286 of 295   0722

# North Carolina Department of Adult Correction
## Restrictive Housing Evaluation

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
| Date of Birth: | 02/21/1984 | Sex: | M | Facility: | MARI |
| Date: | 09/20/2024 12:00 | Provider: | Stang, Jonathan R M.S. Clinical | | |

### Treatment Setting
Outpatient Program at MARION CI.

### Reason for Services
RDU follow-up

### Violence Alerts
There are no elevated risk factors presently noted for offender ENGLAND.

### Escape Alerts
There are no elevated risk factors presently noted for offender ENGLAND.

### Self-Injury Alerts
There are no elevated risk factors presently noted for offender ENGLAND.

### MSE/Behavioral Observations
Offender England was met at his cell; he refused to get out of bed and simply stated, "I'm good; taking my meds; everything is good." After providing this report, he rolled over, facing the opposite direction of this writer.

### Progress Towards Goals
Deferred. Offender England did not engage with this writer. It is noteworthy that Offender England, according to Custody Staff, spends much of his time in bed yet isn't disruptive.

### Current Adjustment to Restrictive Housing
Although Offender England continues to not engage with this clinician, he is cooperative, per Custody Staff and is medication compliant, per MAR. Based on this, there are no contraindications for continued placement in restrictive housing.

### Plan/Diagnostic Changes
None

### Follow-Up/Next Appointment
Within 30 days.

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Restrictive Housing Evaluation | 10/18/2024 00:00 | Stang, Jonathan R Clinical Social Worker |
| RDU follow-up | | |

**Co-Pay Required:** No     **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:** No

Completed by Stang, Jonathan R M.S. Clinical Social Worker on 09/20/2024 15:12

Requested to be reviewed by Yearick, Kenneth H Ph.D Asst. Dir. of Beh. Health.

Review documentation will be displayed on the following page.

Jonathan England v. Thomas et al 5:24CT3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/26   Page 287 of 295    0184

| Offender Name: | ENGLAND, JONATHAN D | | | Off #: | 0702210 |
|---|---|---|---|---|---|
| Date of Birth: | 02/21/1984 | Sex: | M | Facility: MARI | |
| Date: | 10/25/2024 00:00 | Provider: | Torrence, Brandy K PMHNP | | |

## New Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | LamoTRIgine | 10/25/2024 00:00 | 25 mg By Mouth at bedtime x 60 day(s) Pill Line Only -- Take 1 tablet by mouth at bedtime for 14 days. On day 15, begin taking 2 tablets by mouth at bedtime. Monitor for and report rash. |

Indication: Other Specified/Unspecified Depressive Disorder

## Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| A5613149 | MIRTAZAPINE 15 MG TAB | 10/25/2024 00:00 | Take one (1) tablet by mouth at bedtime x 180 day(s) Pill Line Only |

Indication: Other Specified/Unspecified Depressive Disorder

| | | | |
|---|---|---|---|
| A5613159 | VENLAFAXINE XR 75 MG CAP | 10/25/2024 00:00 | Take three (3) capsules (=225mg) by mouth at bedtime x 180 day(s) Pill Line Only |

Indication: Other Specified/Unspecified Depressive Disorder

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Mental Health Progress Note | 11/29/2024 00:00 | Psychiatrist |
| f/u after adding lamictal | | |

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/25/2024 | Counseling | Medication Side Effects | Torrence, Brandy | Verbalizes Understanding |

| | | | |
|---|---|---|---|
| **Co-Pay Required:** | No | **Cosign Required:** No | |
| **Telephone/Verbal Order:** | No | | |
| **Standing Order:** | No | | |

Completed by Torrence, Brandy K PMHNP on 10/26/2024 21:03

Johnathan England v. Onyilee et al. 5:24-ct-3006
Defendants' Discovery Responses    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ    Document 76-3    Filed 03/26/26    Page 288 of 295    0183

A. INMATE NAME: ENGLAND, JONATHAN D.          NCDOC#: 0702210
   FACILITY:   CENTRAL PRISON          #: 3100   DATE OF REPORT: 06/12/23
   CRIME ( ) MISD.   INMATE ACTIVITY AT   CUSTODY LEVEL AT   DATE OF OFFENSE
   CLASS (X) FELON   TIME OF OFFENSE: 1   TIME OF OFFENSE: 2   12/21/22
   SSA   (X)

   OFFENSE CLASS & NUMBER   I: B25   II:          III:
   SUMMARY : A 10-DAY EXTENSION WAS REQUESTED AND GRANTED BY ASSOCIATE
             WARDEN N. FAUST DUE TO THE WORKLOAD OF THE UNIT.
             ON DECEMBER 21, 2022 AT APPROXIMATELY 0720 HOURS, DURING A
             PERT ACTIVATION OFFICERS J. OSBORNE, D. WINDLEY AND O. ONIYA
             WERE ON 2B EASTSIDE CONDUCTING SEARCHES. OFFICER OSBORNE WAS
             CONDUCTING A COMPLETE SEARCH OF OFFENDER JONATHAN ENGLAND
             (0702210) WHEN HE BECAME COMBATIVE AND AGGRESSIVE AND
             ATTEMPTED TO PULL AWAY. FORCE WAS USED TO GAIN COMPLIANCE.
             NO PLEA WAS ENTERED FOR THE B25 OFFENSE.  CHARGE IS BEING
             REFERRED TO THE DHO FOR DISPOSITION.  OFFENDER ENGLAND IS
             UNABLE TO SIGN THE BATCH JOB DUE TO HOUSING RESTRICTIONS
             CONSISTENT WITH SOP'S FOR RESTRICTIVE HOUSING. WITNESSED BY
             OFFICER NASH. OFFENDER ENGLAND WAS PROVIDED WITH A COPY OF
             THE BATCH JOB.
-------------------------------------------------------------------------
   I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE
   HEARING OFFICER.
       INMATE'S SIGNATURE: _____   DATE: _____
   IS STAFF ASSISTANCE REQUESTED?: N   STAFF ASSIGNED: _____
   MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN
   EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
       INMATE'S SIGNATURE: _____   DATE: _____
-------------------------------------------------------------------------
B. SUPERINTENDENT'S DECISION:
   OFFENSE:          I: B25          II:          III:
   INMATE PLEA:          NO PLEA

C. HEARING OFFICER'S DECISION:
   OFFENSE:          I: B25          II:          III:
   INMATE PLEA:          NO PLEA
   VERDICT:          DISMISSED

D. SANCTIONS IMPOSED:
   ACTIVATE SUSPENDED SENTENCE DATED:          FOR ARTICLE(S)
-------------------------------------------------------------------------
I.                          II.                          III.
OFFENSE CLASS& NO: B-25     OFFENSE CLASS& NO:  -        OFFENSE CLASS& NO:  -
 0 DAYS RHDP                  DAYS RHDP                    DAYS RHDP
    SUSPEND   MONTHS             SUSPEND   MONTHS             SUSPEND   MONTHS
    DAYS CRED TIME LOSS         DAYS CRED TIME LOSS         DAYS CRED TIME LOSS
    SUSPEND 0 MONTHS            SUSPEND   MONTHS             SUSPEND   MONTHS
 0 HOURS EXTRA DUTY           HOURS EXTRA DUTY            HOURS EXTRA DUTY
    SUSPEND   MONTHS             SUSPEND   MONTHS             SUSPEND   MONTHS
SUSPENSION OF               SUSPENSION OF                SUSPENSION OF

   PRIVILEGES'   DAS          PRIVILEGES'   DAS           PRIVILEGES'   DAS
    SUSPEND   MONTHS             SUSPEND   MONTHS             SUSPEND   MONTHS
DEMOTE TO:                  DEMOTE TO:                   DEMOTE TO:

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

INMATE NAME: ENGLAND, JONATHAN D.                    NCDOC#: 0702210
       SUSPEND    MONTHS              SUSPEND   MONTHS              SUSPEND    MONTHS
MONTHS DRAW LIMITED         MONTHS DRAW LIMITED         MONTHS DRAW LIMITED
       SUSPEND    MONTHS              SUSPEND   MONTHS              SUSPEND    MONTHS
-----------------------------------------------------------------------------------

APPROVED BY: RSM14 - HUDSON, SHA-KEEBA M.    ON 01/20/23  AT 19:14 (UNIT)
             RDR03 - RAYNOR, DONNIE R.       ON 06/12/23  AT 12:09 (DHO)

FACILITY HEAD/DESIGNEE REVIEW:

        SIGNATURE: _____    DATE: _____

DC – 138F
11/93 (Rev)

# Request for Extension of Time

Date: 1-30-22

To: _Mr. Matt Pennell_

From: _Dannie Raynor_

I hereby request an extension of time regarding the disciplinary report pertaining to

Name of Inmate    _Jonathan England_
NCDOC Number    _0702210_
Date/Time of offense    _12-21-22 0720_
Facility/Number    **Central Prison 3100**

_____ The disciplinary report was returned for additional information or further investigation.

_____ Inmate was not available for the hearing due to medical/mental status.

_____ The disciplinary report / investigation report was not forwarded to the superintendent's office within the allotted time.

_____ The inmate was absent from the facility from _____ to _____. (See Explanation)

_____ The inmate has transferred to _____ from _____. (See Explanation)

Explanation: _DHO schedule_

I approve an extension of ___~~10~~ 99 DR___ days

Approving Authority _M. Pennell DR_    _1-30-23_ 1344
                            Signature                Date/Time

Distribution: Original – Facility Files

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants' Discovery Responses    Case 5:24-ct-03006-M-RJ   Document 76-3   Filed 03/26/25   Page 291 of 295   0892
CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

INMATE NAME: ENGLAND, JONATHAN D.        NCDOC#: 0702210
OFFENSE DATE: 12/21/22    TIME: 07:20    LOCATION: CENTRAL PRISON
HEARING DATE: 06/12/23    TIME: 12:09    LOCATION: CENTRAL PRISON

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING
RELATING TO GUILT OR INNOCENCE:
    99 DAY EXT. GRANTED BY MR. PENNELL DUE TO DHO SCHEDULE.
    OFFENSE DISMISSED PER EMAIL TO DEPUTY WARDEN HARTLEY.
    INMATE'S ALLEGATIONS ARE UNDER REVIEW.

HEARING OFFICER DECISION:
 OFFENSE: I. B25    II.        III.
     DISMISSED

HEARING OFFICER: RDR03 - RAYNOR, DONNIE R.
   RECORDER: RDR03 - RAYNOR, DONNIE R.

INMATE SIGNATURE: _record only_          DATE: _6/12/23_

Jonathan England v. Onyia, et al. 5:24-CT-3006
Defendants Discovery Responses - CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
Case 5:24-ct-03006-M-RJ  Document 76-3  Filed 03/26/26   Page 292 of 295      0891

**From:** Hartley, Michelle <michelle.hartley@dac.nc.gov>
**Sent:** Friday, June 9, 2023 10:25 AM
**To:** Raynor, Donnie <Donnie.Raynor@dac.nc.gov>
**Subject:** Re: Jonathan England 0702210

I am ok with it being dismissed.

Michelle Hartley
Deputy Warden
NC Department of Adult Correction
Central Prison
1300 Western Blvd.
Raleigh, NC 27606
(919) 733-0800
michelle.hartley@dac.nc.gov



**NC** Department of Adult Correction
PROTECTION · INNOVATION
REHABILITATION

**From:** Raynor, Donnie <Donnie.Raynor@dac.nc.gov>
**Sent:** Friday, June 9, 2023 10:07 AM
**To:** Hartley, Michelle <michelle.hartley@dac.nc.gov>
**Subject:** Jonathan England 0702210

This inmate has a pending disciplinary from 12-21-22 at 0720, a B25 offense. I think it happened during a PERT institutional search. The inmate snatched away from staff resulting in force being used. During the investigation he made PREA allegations that are still, approx. 5 and ½ months later, under review. I have not seen the package, but reading the investigative summary and charging comments, I don't see where he was given any orders to disobey. He will not plead guilty. With there appearing to be issues with the investigation and considering the length of time since it occurred, I really don't think anybody will want to reinvestigate it with there being outside staff involved, which would make reinvestigation difficult if it happened yesterday. I would suggest it be dismissed. What do you think?

Email correspondence to and from this address may be subject to the North Carolina Public Records Law and may be disclosed to third parties by an authorized state official.

England v. Onyia, et al.; 5-24-CT-3006
Supplemental Production          CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
0987
Case 5.24-ct-03006-M-RJ     Document 76-3     Filed 03/26/26     Page 293 of 295

Note: Received on Tuesday, September 9, 2025. Central Prison Unit-5 WRB



# PRISON RAPE ELIMINATION ACT (PREA)
# SUPPORT SERVICES



Central Prison
**Facility**
*Facilidad*

11/28/22
**Incident Date**
*Fecha de Incidente*

#22-782
**Incident # if applicable**
*Incidente # si es aplicable*

Laure Hicks
**Print Assigned PSP**
*Print PSP Asignado*

England, Jonathan
**Print Alleged Victim**
*Print Victima Presunta*

0702210
**OPUS # if applicable**
*OPUS # si es aplicable*

## SECTION I

Instructions: Brief the alleged victim on the role of the PREA Support Person (PSP) and retaliation

PSP Role - is to provide support to you, the alleged victim, and answer questions you may have regarding the investigation into the allegations of sexual abuse and harassment. Should you have questions about the investigative process and/ or require professional resources offered by community-based advocates and/ or mental health professionals found in the facility, please make a request to see me as your assigned PSP. Should you ever require support services prior to release, seek assistance of a PSP at the your facility.

*Rol de PSP - es proporcionar apoyo a usted la victima presunta, y responder a las preguntas que pueda tener en relación a la investigación sobre las denuncias de abusos sexuales y acoso. Si tiene preguntas sobre el proceso de investigación y/ o requerir recursos profesionales ofrecidos por los defensores de la comunidad y/ o profesionales de salud mental que se encuentran en la instalación, por favor haga una solicitud a verme como in PSP asignado. Si alguna vez, necesitara los servicios de apoyo antes de su liberación, solicitar la asistencia de una PSP a su instalación.*

Retaliation is prohibited by the NC Department of Public Safety. Report retaliation to any staff member, a third party, or the PREA office.

*La tomar está prohibida por el Departamento de Seguridad Pública de Carolina del Norte. Informe represalia a cualquier miembro del personal, alguin afuera del departamento, o a la oficina de PREA*

I, the alleged victim, have been briefed by the assigned PREA Support Person and:

*Yo, la victima presunta, he sido informado por la persona asignada PREA y apoyo:*

[ ] Request support services/
*Solicito los servicios de apoyo*

[X] Do not request support services/
*No solicito los servicios de apoyo*

Refused to sign
**Signature Alleged Victim**
*Firma Victima Presunta*

**Date**
*Fecha*

**Signature PREA Support Person**
*Firma PREA persona de apoyo*

12/16/22
**Date**
*Fecha*

## SECTION II

Instructions: Brief the alleged victim on the outcome of the investigation.

The outcome of this sexual abuse or sexual harassment investigation has been determined to be:

*El resultado de este investigación de abuso sexual o acoso sexual ha determinado que:*

[ ] Unfounded/*infundado*   [ ] Unsubstantiated/*Sin pruebas*   [ ] Substantiated *fundamentada*

**Signature Alleged Victim**
*Firma Victima Presunta*

**Date**
*Fecha*

**Signature PREA Support Person**
*Firma PREA persona de apoyo*

**Date**
*Fecha*

Distribution:
Alleged Victim
File

CONFIDENTIAL

Form OPA 130
Rev. 06/30/20

Jonathan England v. Onyia, et al 5:24-CT-3006
Defendants' Discovery Responses CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER



# PREA SUPPORT SERVICES
# STATUS NOTIFICATION



Central Prison
_(Facility)_

11/28/22
_(Incident Date)_

C. Hicks
_(Assigned PSP)_





English Jonathan #0702210
_(Alleged Victim ID# if applicable)_

_(Alleged Abuser ID#)_

As required by PREA National Standards (§115.73, §115.273, and §115.373), NCDPS will inform the alleged victim (unless the allegation was determined unfounded) whenever any of the following action(s) involving the alleged abuser has occurred as a result of this incident:

## SECTION I: STAFF

A: The staff member has been temporarily reassigned away from the alleged victim's housing unit.

_Refused to sign_
(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     12/16/22 (Date)

B: The staff member is no longer posted within the alleged victim's housing unit.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

C: The staff member is no longer employed at the facility.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

D: NCDPS has learned that the staff member has been indicted on a charge related to sexual abuse within the facility.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

E: NCDPS has learned that the staff member has been convicted on a charge related to sexual abuse within the facility.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

## SECTION II: OFFENDER/JUVENILE

A: The alleged abuser has been temporarily reassigned away from from the alleged victim's housing unit.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

B: NCDPS has learned that the alleged abuser has been indicted on a charge related to sexual abuse within the facility.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

C: NCDPS has learned that the alleged abuser has been convicted on a charge related to sexual abuse within the facility.

(Signature: Alleged Victim)     (Date)     (Signature: PREA Support Person)     (Date)

_*All subsequent notifications or attempts will utilize this original document. The obligation to report under this standard will terminate if the alleged victim is released from the agency's custody._

Distribution:
File

CONFIDENTIAL
PREVIOUS EDITION IS OBSOLETE

Form OPA-130A
Rev 04-01-2014